**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

      Defendant.

---

**MEMORANDUM IN SUPPORT OF DEFENDANT SUNCOR ENERGY (U.S.A.) INC.'S
MOTION TO DISMISS OR STAY THE SECOND THROUGH FIFTH CLAIMS FOR
RELIEF OF PLAINTIFFS' COMPLAINT**

---

      Defendant Suncor Energy (U.S.A.) Inc. ("Suncor") submits this memorandum in support of its motion to dismiss or stay the Second through Fifth Claims for Relief of Plaintiffs' Complaint ("Comp.") (Dkt. 1).

**FACTS RELEVANT TO THE SECOND THROUGH FIFTH CLAIMS FOR RELIEF**

      The Second Claim for Relief in the Complaint alleges that Suncor breached the implied covenant of good faith and fair dealing in a Master Product Purchase and Sale Agreement ("Master PSA") between Suncor and Plaintiff Western Convenience Stores, Inc. ("WCS") in two respects: (i) by withdrawing credit Suncor had extended to WCS; and (ii) by suspending fuel sales to WCS. Comp. ¶¶ 40-41. A copy of the Master PSA is attached as Exhibit 1.[1] Plaintiff

---

[1] The Master PSA is specifically referenced in the Complaint, Comp. ¶¶ 6, 8, 39, and is the basis for the alleged breaches of the implied covenant of good faith and fair dealing asserted in the Second Claim. *Id.* ¶ 39. Accordingly, the Court may properly consider it on a motion to dismiss under Rule 12(b)(6). *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384

WCS concedes that the Master PSA "govern[s] all transactions or agreements entered into or consummated between WCS and Suncor for the purchase and sale of fuel." *Id.* ¶ 8. The Master PSA has two express provisions governing the issues raised in the Second Claim for Relief. Concerning Suncor's withdrawal of credit, the Master PSA reads in pertinent part:

> Suncor, at its sole and absolute discretion, may extend credit or a line of credit to [WCS] on such terms as Suncor may specify from time to time, and [WCS] shall pay for Products strictly in accordance with such terms and other payment terms applicable at the time of delivery. *Suncor reserves the right to modify or withdraw credit and/or credit terms at any time without prior notice to [WCS]*.

Ex. 1 at A-3 ¶ 16 (emphasis added).

Concerning the suspension of fuel sales, the Master PSA states:

> Unless otherwise agreed to in writing, Suncor shall furnish [WCS] with invoices for all Product sold and delivered to [WCS] hereunder, and [WCS] shall, upon receipt of each invoice, make payment to Suncor immediately in accordance with the terms of payment provisions of this Agreement without any deduction or set-off. . . .  All payments hereunder shall be made by Electronic Funds Transfer ("EFT") or Automated Clearing House ("ACH") into such account(s) as designated by Suncor, unless otherwise agreed by the Parties.  [WCS] agrees to execute an EFT or ACH authorization agreement in a form approved by Suncor from time to time.  *In the event that [WCS] fails or ceases to make payment to Suncor pursuant to the manner and method set forth above, Suncor shall have the right immediately to cease supplying or selling Product to [WCS] and to terminate this Agreement.*

Ex. 1 at A-1 ¶ 5 (emphasis added); *see also id*. at A-3 ¶ 17 (permitting Suncor "without notice, [to] suspend indefinitely any and all sales of Product to [WCS]" upon "[WCS's] failure to timely

---

(10th Cir. 1997) ("if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss") (citing cases).

pay any invoice"). WCS admits that, upon Suncor's withdrawal of credit, it ceased to make payment for prior fuel purchases.[2] Comp. ¶ 22.

The Third Claim for Relief alleges that Suncor breached the implied covenant of good faith and fair dealing in a Terminal Access Agreement ("TAA") between Suncor and plaintiff Western Truck One, LLC ("WTO"). *Id.* ¶¶ 44-45. A copy of the TAA is attached as Exhibit 2.[3] In pertinent part, the TAA states:

> The Parties hereby acknowledge and agree that any permission of access granted by Suncor to the West Plant Terminal, East Plant Terminal, Asphalt Unit Terminal, and/or any other Suncor terminal . . . *may be revoked immediately by Suncor, without cause, as a matter of right with respect to [WTO]*, any Agent, any transportation vehicle, any particular order or load, or this Agreement in its entirety upon notice (either oral or written, including e-mail) to [WTO].

Ex. 2 ¶ 4 (emphasis added). WTO concedes that Suncor gave written notice of its revocation of terminal access on May 25, 2011. Comp. ¶¶ 23-24.

The Fourth and Fifth Claims for Relief purport to allege claims for tortious interference with contract. In the Fourth Claim, Plaintiff WCS alleges that Suncor's revocation of terminal access interfered with unspecified contracts between WCS and certain third parties for the purchase of fuel from those third parties at Suncor terminals. *Id*. ¶¶ 48-49. In the Fifth Claim, Plaintiff WTO alleges that the revocation of terminal access interfered with unspecified contracts between WTO, WCS, and third parties for the transport of motor fuels. *Id*. ¶¶ 53-54.

A few additional facts are relevant to Suncor's request for a stay of the claims in question. On May 27, about three weeks before filing this case, Plaintiffs filed the same claims in

---

[2] As a result of WCS's actions, Suncor has not been paid for more than $3.7 million of fuel that WCS purchased between May 9, 2011 and May 23, 2011.

[3] The TAA is central to the Third through Fifth Claims for Relief, *see* Comp. ¶¶ 10, 44-45, 48-49, 53-54, and may also be considered by the Court on this motion under *GFF Corp*., 130 F.3d at 1384.

Colorado state court, making allegations that are virtually verbatim to those asserted in the Complaint in this action. *See Western Convenience Stores, Inc. and Western Truck One, LLC v. Suncor Energy (U.S.A.) Inc.*, No. 11CV3860 (District Court, City and County of Denver) (attached hereto as Exhibit 3). Thus, there is parallel litigation pending on the same claims in both state court and this Court. Suncor has already answered the state-court complaint and moved for summary judgment on the same claims that are alleged in Second through Fifth Claims of Plaintiffs' federal Complaint. In addition, Suncor has filed a counterclaim against WCS in state court arising out of the same factual nucleus as the claims asserted by Plaintiffs in those proceedings and a third-party claim against WCS's principals based on a $3 million personal guaranty. WCS has answered the counterclaim, its principals have answered the third-party claim, and Suncor has now moved for summary judgment on those claims as well.

## ARGUMENT

**I.   THE SECOND THROUGH FIFTH CLAIMS FOR RELIEF SHOULD BE STAYED PENDING ADJUDICATION OF THOSE CLAIMS IN COLORADO STATE COURT**

A.   <u>Burden of Proof</u>.  Plaintiffs bear the burden of establishing the jurisdiction of the Court over the Second through Fifth Claims for Relief. *Green v. Napolitano*, 627 F.3d 1341, 1344 (10th Cir. 2010).

B.   <u>Consideration of Documents Outside the Complaint</u>.  Suncor's request for a stay rests on the pendency of parallel litigation in Colorado state court. Therefore, Suncor has attached a copy of the state-court complaint filed by Plaintiffs as Exhibit 3 to this memorandum.

C.   <u>Basis for Granting a Stay</u>.  The Second through Fifth Claims for Relief should be stayed in this Court pending their adjudication in Colorado state court. Those claims would not ordinarily be litigated in this Court. They raise questions only under Colorado state law, and there is no diversity among the parties. *See* Comp. ¶¶ 1-3 (WCS is a Colorado corporation,

WTO is a Colorado limited liability company, and Suncor has its principal place of business in Colorado). None lies within the original jurisdiction of this Court. As Plaintiffs concede, *see* Comp. ¶ 5, to the extent that there is federal jurisdiction over the Second through Fifth Claims at all, it exists only under the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367(a). Only because Plaintiffs, *after* filing their state-court complaint, chose to bring a claim of unlawful price discrimination under the Robinson-Patman Act, 15 U.S.C. § 13(a), [4] is there any colorable basis for asserting the Second through Fifth Claims in this forum.

The exercise of supplemental jurisdiction over pendent state-law claims lies within the discretion of the trial court. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (2001). Supplemental jurisdiction is a "doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). As the Supreme Court has noted, "'district courts [should] deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.'" *Int'l College of Surgeons*, 522 U.S. at 172-73 (brackets in original) (quoting *Cohill*, 484 U.S. at 357). These principles are embodied in the supplemental jurisdiction statute, *id.*, which, among other things, permits this Court to decline to exercise jurisdiction over pendent state-law claims when there are "compelling reasons" for it to do so. 28 U.S.C § 1367(c)(4). Such compelling reasons exist here.

As a matter of both economy and comity, the Second through Fifth Claims should be litigated in Colorado state court. The claims arise under state law, and they would ordinarily be litigated there. The parties have already expended resources in answering the original complaint

---

[4] Plaintiffs' Complaint also includes a claim for price discrimination under Colorado state law, Colo. Rev. Stat. § 6-2-108.

- 5 -

in the state court and in the assertion of a counterclaim and a third-party claim, both of which have been answered. In addition, Suncor has moved for summary judgment on Plaintiffs' claims in the state court proceeding as well as its own counterclaim and third-party claims. A grant of that motion will have the same preclusive effect in this Court that the judgment has in Colorado state court. *See* 28 U.S.C. § 1738; *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367 (1996). Given the pendency of dispositive motions in the state court that may ultimately resolve all of the issues raised by the Second through Fifth Claims for Relief in this action, a stay provides the most efficient use of judicial resources and permits this Court to focus on the Robinson-Patman claim, which is the basis of its jurisdiction over this case in the first instance, and the related Colorado price discrimination claim.

Fairness also supports the issuance of a stay. Plaintiffs themselves chose to file the claims in question in state court. That they subsequently raised issues under federal law does not alter the analysis. The price discrimination claims are, at best, tangential to the issues raised in the Second through Fifth Claims. Indeed, Plaintiffs filed their state-court complaint without once mentioning any alleged price discrimination. Yet their Complaint in this Court makes clear that they were allegedly aware of such potential claims *before* filing that case. *See* Comp. ¶¶ 18-20 (alleging that Plaintiffs raised questions about differential pricing in a meeting on May 18, which was nine days before the filing of the state-court action). Yet despite their knowledge of the potential for federal claims, Plaintiffs nonetheless filed claims in state court identical to those now asserted to be within the supplemental jurisdiction of this Court. There is nothing unfair about requiring Plaintiffs to litigate the Second through Fifth Claims in their original chosen forum.

In other cases, the pendency of parallel state court proceedings has been held to support outright dismissal of pendent claims under 28 U.S.C. § 1367(c)(4). In *Che v. Massachusetts Bay Transportation Authority*, 342 F.3d 31, 37 (1st Cir. 2003), for example, the First Circuit affirmed a district court's decision to decline jurisdiction over state employment-law claims pendent to a federal employment discrimination action because the plaintiff had similar claims pending in the state court. Likewise, in *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992), the district court, after holding that the Eleventh Amendment barred federal jurisdiction over state-law claims against state officers in their official capacities, elected to decline jurisdiction over pendent state-law claims against the same officials in their individual capacities, although the latter claims fell within the court's supplemental jurisdiction. The Fifth Circuit affirmed, noting that "[a]djudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources" and constituted a compelling reason to decline jurisdiction under 28 U.S.C. § 1367(c)(4). *Id.* at 125.

The *Hays* court's reasoning applies with equal force here. The Second through Fifth Claims for Relief are identical to those that Plaintiffs themselves chose to bring in state court. Suncor has responded to those claims and moved for summary judgment on them and other related claims. It should not be subjected to the burden of starting from scratch in this Court merely because Plaintiffs subsequently decided to assert a tenuously-related federal price discrimination claim that they were apparently investigating when they originally filed the state-court litigation.

Finally, a stay does not deprive Plaintiffs of a federal forum. Their price discrimination claims may proceed in this Court. Moreover, the issuance of a stay does not preclude this Court from ultimately addressing the claims in question if there is ever a need to do so. To the extent

that the state-court litigation resolves the Second through Fifth Claims, this Court need not expend time on them. Should anything remain after the state-court litigation, the issuance of a stay will allow those remaining matters to be considered in this Court at the appropriate time and with regard for the outcome of the case in state court. *See Allen v. Bd. of Educ.*, 68 F.3d 401 (10th Cir. 1995); *Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994). Accordingly, Suncor respectfully requests that this Court stay the Second through Fifth Claims of the Complaint.

## II. THE SECOND THROUGH FIFTH CLAIMS FOR RELIEF SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE COGNIZABLE LEGAL CLAIMS

### A. Breach of the Implied Covenant of Good Faith and Fair Dealing (Second and Third Claims for Relief)

1. <u>Burden of Proof</u>. Plaintiffs bear the burden of showing a breach of the implied covenant of good faith and fair dealing. *See Bayou Land Co. v. Talley*, 924 P.2d 136, 155 (Colo. 1996) (affirming dismissal of implied covenant of good faith claim because claimant "has not sustained its claim").

2. <u>Elements</u>. Plaintiffs must allege (1) the existence of valid contracts between WCS and Suncor and WTO and Suncor; and (2) breach of the implied covenant through Suncor's exercise of discretion conferred by the contract to act dishonestly or outside of accepted commercial practices to deprive the other party of the benefit of the contract. *See ADT Sec. Servs. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007).

3. <u>Elements Not Supported by the Complaint</u>. Plaintiffs have not alleged and cannot allege element (2) of the claims. While Colorado law recognizes that there is an implied covenant of good faith and fair dealing in every commercial contract, *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), the implied covenant is not a mechanism for rewriting contract provisions or a tool for "contradict[ing] terms or conditions for which a party has bargained." *Id.*

(citing *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989)). The implied duty applies when one party has discretionary authority to determine certain terms of the contract, such as price, quantity, or time. *Id.* None of those matters is at issue in this case.

The implied covenant of good faith and fair dealing may not be used to "inject new substantive terms into a contract or change its existing terms." *Soderlun v. Public Serv. Co.*, 944 P.2d 616, 623 (Colo. Ct. App. 1997); *see also LPG Holdings, Inc. v. Casino Am., Inc.*, 2000 WL 1637536, at *9 (10th Cir. Nov. 1, 2000) (unpublished) (same). In fact, the implied covenant "does not obligate a party to accept a material change in the terms of the contract or to assume obligations that vary or contradict the contract's express provisions." *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. Ct. App. 1994). When a contract expressly permits a party to terminate or suspend the agreement, or performance of some provision thereof, then the implied covenant of good faith and fair dealing may not be invoked in derogation of, or otherwise used to circumvent, those express contract rights. *See Lutfi v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51 (Colo. Ct. App. 2001) (express contract right of hospital to remove emergency room physician from work schedule precluded physician's claim of breach of the implied covenant of good faith and fair dealing); *Grossman v. Columbine Med. Group*, 12 P.3d 269 (Colo. Ct. App. 2000) (physician has no claim for breach of the implied covenant of good faith and fair dealing when terminated by health plan under contract provision giving plan right to do so without cause); *Soderlun*, 944 P.2d 616 (covenant of good faith and fair dealing cannot limit an employer's right to discharge without cause unless there is express or implied promise, independent of the covenant of good faith itself, restricting that right). "In short, an implied covenant cannot be used to rewrite, contradict, or add to the express terms of

the contract." *McKinnis v. Fitness Together Franchise Corp.*, 2010 WL 5056666, at *4 (D. Colo. Dec. 6, 2010).

In this case, each of the actions that allegedly breach the implied covenants of good faith and fair dealing in the Master PSA and TAA are expressly permitted by the terms of the respective agreements. As to credit, under the Master PSA Suncor has the right to "modify or withdraw credit and/or credit terms at any time without prior notice to [WCS]." Ex. 1 at A-3 ¶ 16. Similarly, the Master PSA grants Suncor the right to suspend product sales if WCS fails to pay for refined products. *Id.* at A-1 ¶ 5; *id.* at A-3 ¶ 17. WCS admits that it ceased paying for fuel upon Suncor's withdrawal of credit. Comp. ¶ 22. That refusal to pay triggered Suncor's right to suspend product sales to WCS. Suncor's exercise of these explicit contracts rights do not, as a matter of law, breach the implied covenant of good faith and fair dealing in the Master PSA. *Lutfi*, 40 P.3d at 59.

Likewise, the Complaint does not allege a breach of the implied covenant of good faith and fair dealing in the TAA. That contract permits Suncor to revoke Plaintiff WTO's access to Suncor terminals "immediately . . . , without cause, as a matter of right." Ex. B ¶ 4. Suncor's exercise of that express contract right does not breach of the implied covenant of good faith and fair dealing in the TAA. *Lutfi*, 40 P.3d at 59.

Plaintiffs' allegations that Suncor's actions "contravened the reasonable expectations of the parties," Comp. ¶¶ 40-41, 45, do not salvage the Second and Third Claims. The parties' reasonable expectations are measured by the express terms of the agreements at issue. *LPG Holdings, Inc.*, 2000 WL 1637536, at *10 ("The 'reasonable expectations' protected by the [implied] covenant [of good faith and fair dealing] must derive from and be consistent with the terms of the underlying contract.") (citing *Amoco*, 908 P.2d at 498). Here, the express provisions

- 10 -

of the Master PSA and TAA specifically contemplated that Suncor could take the very actions that it is alleged to have taken.  As a matter of law, neither WCS nor WTO could have any reasonable expectation that Suncor would not exercise its explicit contract rights.  *See id*. at *10.  Accordingly, neither the Second nor Third Claim states a claim for relief.

Because all of the acts that allegedly breach the implied covenants of good faith and fair dealing in the Master PSA and TAA are expressly sanctioned by those agreements, the Second and Third Claims cannot be salvaged by amendment.  Suncor respectfully requests that they be dismissed with prejudice.

### B. Tortious Interference with Contract (Fourth and Fifth Claims for Relief)

1. Burden of Proof.  Plaintiffs bear the burden of proving tortious interference with contract.  *See Lutfi*, 40 P.3d at 58 (holding that plaintiff failed to prove improper interference with contract).

2. Elements.  To state a claim for relief for intentional interference with contract, Plaintiffs must allege facts that, if proved, would show: "(1) the existence of a contract between the plaintiff and a third party; (2) knowledge by the defendant of this contract or knowledge of facts which would lead him to inquire as to the existence of the contract; (3) intent by the defendant to induce a breach of contract with a third party; (4) action by the defendant which induces a breach of the contract; and (5) damages to the plaintiff."  *Carmen v. Heber*, 601 P.2d 646, 647 (Colo. Ct. App. 1979); *see also Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082, 1084 (Colo. Ct. App. 1973).

3. Elements Not Supported by the Complaint.  Plaintiffs have not alleged and cannot allege element (4).  The tortious interference claims are derivative of the Third Claim of the Plaintiffs' Complaint.  Plaintiffs assert that Suncor's revocation of WTO's access to Suncor

terminals is the purported act of tortious interference. But Suncor had an express contract right to take that action. To be actionable, the alleged interference must be both "intentional *and improper*." *Lutfi*, 40 P.3d at 58 (emphasis in original) (citing *Amoco*, 908 P.2d 493). The exercise of a legitimate contract right cannot constitute improper interference. *Id*. The Fourth and Fifth Claims, therefore, do not state claims for relief. Suncor respectfully requests that they be dismissed as well.

**CONCLUSION**

For the foregoing reasons, Defendant Suncor respectfully requests that the Second through Fifth Claims for Relief in Plaintiffs' Complaint be dismissed with prejudice. Alternatively, Suncor requests that the Court stay those claims pending their adjudication in Colorado state court.

Respectfully submitted,


_s/Anthony J. Shaheen_
Anthony J. Shaheen
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80202-3979
Tel.:  (303) 295-8000
Fax:  (303) 295-9126
E-Mail:  ajshaheen@hollandhart.com


_s/William L. Monts III_
J. Robert Robertson
William L. Monts III
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel.:  (202) 637-5600
Fax:  (202) 637-5910
E-Mail:  robby.robertson@hoganlovells.com
             william.monts@hoganlovells.com

*Attorneys for Defendant*
*Suncor Energy (U.S.A.) Inc.*