## TERMINAL ACCESS AGREEMENT
(Master Agreement)

This Terminal Access Agreement (the "<u>Agreement</u>"), effective as of the 10th day of May, 2006 (the "<u>Effective Date</u>"), is entered into by and between Suncor Energy (U.S.A.) Inc. ("<u>Suncor</u>"), and Western Truck One, LLC

a _____ corporation (hereinafter the "<u>Carrier</u>"). Suncor and Carrier may be collectively referred to as the "<u>Parties</u>," and each individually as a "<u>Party</u>." For purposes of this Agreement, all references to Carrier shall include and incorporate all of its employees and authorized representatives, including, without limitation, its designated drivers.

In consideration of the covenants and agreements of the Parties herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each of the Parties, intending to be legally bound, hereby agrees as follows:

1. <u>Definition of Agent</u>. For purposes of this Agreement, "<u>Agent</u>" shall mean any person or party, (other than Carrier or its employees) acting for or on behalf of Carrier at Carrier's request, who has been expressly granted access to any Suncor terminal (as defined below) pursuant to a separate terminal access agreement with Suncor. For purposes of this Agreement, "<u>Unauthorized Agent</u>" shall mean any person or party acting for or on behalf of Carrier who has not been expressly granted access to any Suncor terminal (as defined below) pursuant to this Agreement or a separate terminal access agreement with Suncor.

2. <u>Scope of Applicability</u>. This Agreement shall govern Carrier's rights, obligations, and liabilities in connection with its access to each of the following Suncor terminals, if, whenever, and for such duration that Suncor grants Carrier express permission in writing (whether pursuant to this Agreement or a subsequent authorization) to access one or more such terminal(s): (1) Suncor's terminal located at 5575 Brighton Boulevard, Commerce City, Colorado 80022 (the "<u>West Plant Terminal</u>"), (2) Suncor's terminal located within its East Plant refinery at 5800 Brighton Boulevard, Commerce City, Colorado 80022 (the "<u>East Plant Terminal</u>"), (3) Suncor's terminal located at 680 Railroad Blvd., Grand Junction, Colorado 81505 (the "<u>Grand Junction Terminal</u>"), (4) Suncor's terminal for its Asphalt Unit located at 3875 E. 56th Avenue, Commerce City, Colorado 80022 (the "<u>Asphalt Unit Terminal</u>"), and (5) any other terminal owned, acquired, developed, or built by Suncor located in the State of Colorado (each, a "<u>Suncor terminal</u>" and collectively, the "<u>Suncor terminals</u>").

3. <u>Grant of Permission To Access</u>. Subject to the terms and conditions of this Agreement, Suncor grants Carrier permission to enter and access one or more of the following Suncor terminals (as indicated by an "X" in the box corresponding to each such Suncor terminal and approved by Suncor by the marking of its initials next to each such designated terminal) for the sole purpose of loading and offloading petroleum products and other products as agreed between the Parties (collectively the "<u>Product</u>") into the transport vehicles owned, leased, controlled, or otherwise used by Carrier and driving such vehicles into and away from the applicable Suncor terminal during such times and in such manner as established or agreed by Suncor:

| | | |
|---|---|---|
| ☒ | West Plant Terminal | _____ Approved by Suncor |
| ☒ | East Plant Terminal | _____ Approved by Suncor |
| ☒ | Grand Junction Terminal | _____ Approved by Suncor |
| ☐ | Asphalt Unit Terminal | _____ Approved by Suncor |

The grant of access to Carrier in this <u>Section 3</u> shall not apply to nor extend to any Suncor terminal listed above that does not have an "X" marked in its corresponding box and which is not

1

**EXHIBIT 1**

expressly approved by Suncor above. Carrier shall only be granted access to any such other Suncor terminals pursuant to a subsequent written authorization signed and delivered by Suncor and for such duration as granted by Suncor therein, in which event the Parties agree that such access shall be governed pursuant to the terms of this Agreement. Further, the grant of access in this Section 3 shall neither apply nor extend to any of Carrier's Agents or Unauthorized Agents. Carrier's Agents and Unauthorized Agents shall only be granted access to any Suncor terminal upon (a) Carrier's written request, and (b) each such Agent's execution of a terminal access agreement in a form approved by Suncor.

4. Revocation of Access Rights. The Parties hereby acknowledge and agree that ==any permission of access granted by Suncor== to the West Plant Terminal, East Plant Terminal, Grand Junction Terminal, Asphalt Unit Terminal, and/or any other Suncor terminal, including, without limitation, pursuant to Section 3 of this Agreement or any other subsequent authorization, ==may be revoked immediately by Suncor, without cause, as a matter of right== with respect to Carrier, any Agent, any transportation vehicle, any particular order or load, or this Agreement in its entirety upon notice (either oral or written, including by e-mail) to Carrier; provided, however, that if such notice is oral, Suncor shall provide written confirmation to Carrier within five (5) days after the oral notice. Upon Carrier's receipt of such notice, Carrier shall immediately cause any and all Access Devices (as defined herein) issued to Carrier and its Agents to be immediately returned to Suncor. Unless Suncor expressly terminates this Agreement in a written notice to Carrier, any revocation of access by Suncor pursuant to this Section shall not result in a termination of this Agreement, and any subsequent access, if any, granted to Carrier by Suncor to any Suncor terminal shall be governed by the terms of this Agreement.

5. Carrier Liability (Access Devices). Carrier shall assume full responsibility for the actions of its designated drivers, employees, Agents, and Unauthorized Agents, including, without limitation, with respect to any unauthorized use of any access card or key ("Access Device") issued to them. Carrier, its employees, designated drivers or Agents, as applicable, shall each be required to execute a separate agreement in order to receive an Access Device from Suncor (an "Access Device Agreement"). Carrier is liable and will be invoiced directly for all Product improperly taken from a Suncor terminal where an Access Device issued to one of its designated drivers, employees, or Agents (or improperly issued to one of its Unauthorized Agents) was used in obtaining such Product. If such Access Device becomes lost or stolen or otherwise comes into the possession of someone not authorized by Carrier and Suncor to use the Access Device, Carrier shall notify Suncor or the applicable Suncor terminal supervisor, as designated by Suncor, immediately by telephone, and confirm such oral notification in writing by e-mail or facsimile at the address and number in Section 6 within four (4) hours thereafter. This notice shall be deemed delivered as of the time of the oral, telephonic notification, if, and only if, the written confirmation is timely and properly delivered. Otherwise, notice shall be deemed delivered upon actual receipt of the written confirmation by Suncor. Notwithstanding anything to the contrary, Carrier shall be responsible for any Product obtained with the lost or stolen Access Device until notice to Suncor is deemed delivered.

6. Notices. Except as otherwise expressly provided herein, all notices required or permitted under this Agreement shall be in writing and shall be delivered to the applicable party at the address and contact information set forth below by e-mail, facsimile, or by registered or certified mail, return receipt requested and postage prepaid. Any such notice, so addressed and mailed or transmitted, shall be deemed received as of the date that the transmission is received or, if sent by registered or certified mail, the post-marked date of the mailing:

    To Suncor:

        Suncor Energy (U.S.A.) Inc.
        7800 E. Orchard Road, Suite 300
        Greenwood Village, CO 80111

Attn: Product Movement Coordinator

Tel: 303.793.8091
Facsimile: 303.793.8003
E-mail: usproductmovements@suncor.com

With a copy to:

Suncor Energy (U.S.A.) Inc.
7800 E. Orchard Road, Suite 300
Greenwood Village, Colorado 80111
Attn: Legal Department

Fax: 303.793.8057

To Carrier: Western Truck One LLC
6146 S. Revere Pkwy
#125
Centennial, Co 80112
Attn: Hossein Taraghi
Phone: 303-706-0340
Fax: 303-706-0345
E-mail: hossein@westernconveniencestores.com

Notice may be given at such other place or to such other person as a Party may designate to the other Party in writing.

7. <u>Suncor Rules and Regulations; Driver Agreements.</u> Carrier and its Agents shall abide by all rules and regulations promulgated by Suncor and any modifications or additions thereto, whether adopted before or after the date of this Agreement, with respect to use of or access to any Suncor terminal. All such changes, modifications, and amendments shall become binding upon Carrier and its Agents when posted at the applicable Suncor terminal(s) or delivered to Carrier. Carrier hereby acknowledges receipt of a copy of the current applicable rules and regulations and agrees to ensure that its Agents and employees will adhere to such operating guidelines while in the applicable Suncor terminal(s). In addition, each designated driver of Carrier or its Agents shall be required to execute a driver agreement in a form provided by Suncor (each, a "<u>Driver Agreement</u>") for each Suncor terminal to which Carrier has been granted permission to access, before each designated driver shall be permitted to access each such Suncor terminal. Carrier and its Agents shall comply with all applicable federal, state and local laws, statutes, ordinances, rules and regulations, and good standard industry practices, and operate in a manner that does not interfere with the operations of Suncor and others on or within any Suncor terminal.

8. <u>Custody.</u> Carrier and its Agents shall be deemed to have custody of any Product delivered at any Suncor terminal at the time that such Product leaves the load arm at that Suncor terminal. Upon transfer of custody, Carrier shall be solely responsible for the Product, including the Product's quality should it materially differ from the quality of the daily sample taken from the tank delivering the Product to that load arm.

9. <u>Carrier's Customers.</u> Attached hereto as <u>Schedule "A"</u> is a list of Carrier's customers for whom Carrier or its Agents may obtain petroleum products from the Suncor terminals, as applicable.

3

Carrier and its Agents shall obtain petroleum products from each applicable Suncor terminal only for customers of Carrier listed on Schedule "A". If Carrier wishes to add customers, then it shall provide a revised Schedule "A" to Suncor in writing, which shall replace the prior Schedule "A" upon Suncor's consent, which consent may be arbitrarily withheld, conditioned, or delayed. Notwithstanding the foregoing, Carrier shall not be entitled to obtain Product for any customer without that customer's authorization, and Suncor shall have the right to prevent or prohibit Carrier from obtaining Product for any customer at that customer's direction.

10. Carrier's Safety and Environmental Responsibilities. Carrier acknowledges that the loading of Product under this Agreement will be on premises where petroleum products may be stored and dispensed, and vapors therefrom may exist and collect. Carrier also understands and acknowledges that, due to the volatile and combustible nature of Product, the loading of the Product may involve certain dangers beyond the control of Suncor. Carrier shall be responsible for the safety of its employees and Agents, including without limitation in connection with the loading of Product at any applicable Suncor terminal. In addition, Carrier and its Agents shall be responsible for identifying all hazardous conditions within each applicable Suncor terminal. In the event Carrier or its Agents become aware of a hazardous condition caused by the employees, facilities, or equipment of Suncor, such party shall immediately notify Suncor of the hazardous condition and cease any work that could result in injury to any person(s), damage to property, or damage to the environment until the hazardous condition is remedied by Suncor. To the extent that such hazardous condition is caused by the employees, facilities, or equipment of Carrier or its Agents, Carrier or its Agents (as applicable) shall immediately (i) remedy such hazardous condition, (ii) cease any work that could potentially result in injury to any person(s), damage to property, or damage to the environment until the hazardous condition is remedied by Carrier or its Agents (as applicable), and (iii) notify Suncor of such hazardous condition. Carrier and its Agents also warrant and agree that its drivers are specifically trained and screened to safely load, unload, transport, and handle the Product as contemplated by this Agreement, including without limitation, training regarding the loading and offloading of such Product onto and from Carrier's or Agents' vehicles. Carrier and its Agents shall have developed and implemented U.S. Department of Transportation Security Plans in compliance with 49 C.F.R. 172.800. The provisions of this Section shall also apply to Carrier's Unauthorized Agents to the same extent as to Carrier's Agents, including with respect to Carrier's obligations with respect to its Agents as stated herein.

11. Indemnity. Carrier agrees to indemnify, hold harmless, and defend Suncor, its affiliates, and each of their respective officers, directors, agents, employees, representatives, successors, and assigns (collectively, "Suncor and its Affiliates") from and against any and all claims, demands, damages, fines, penalties, losses, causes of action, liabilities, and judgments (collectively, "Claim(s)") of every kind (including all expenses of litigation, court costs, and reasonable attorney's fees), relating to, regarding, or involving damage to any property, injury to or death of any person (including, but not limited to, employees of Carrier or its Agents), or any commingling, degradation, or other events causing Product to fail to meet its applicable specifications after title is transferred to Carrier, resulting from, arising out of, or in any way connected with the acts or omissions to act of Carrier, its officers, Agents, employees, and representatives (collectively, the "Carrier Parties"), including to the extent any such Claim is based in part upon the joint or concurrent negligence or strict liability of Suncor or its Affiliates, or of a third party. Carrier will not be required to indemnify Suncor or its Affiliates for any Claim determined by final judgment of a court of competent jurisdiction to have been caused by the willful misconduct or sole negligence of Suncor or its Affiliates. Carrier also agrees to indemnify, hold harmless, and defend Suncor and its Affiliates from and against any and all Claim(s) resulting from, arising out of, or in any way connected with, any breach of this Agreement by any of the Carrier Parties or the failure of any of the Carrier Parties to comply with any laws including, but not limited to, fines, penalties, and monetary sanctions imposed by any governmental entity, or political subdivision or agency thereof, associated with any such failure.

12. <u>Insurance.</u> Carrier and its Agents shall, at their own expense, obtain and maintain during the term of this Agreement the following types and amounts of insurance with limits of liability not less than those set out below:

   12.1 <u>Worker's Compensation.</u> Insurance which shall comply with all applicable Workers' Compensation laws and which shall cover all of Carrier's or Agent's employees requesting access any Suncor terminal.

   12.2 <u>Employer Liability.</u> Employer's Liability Insurance shall be provided with a limit of not less than $2,000,000 per occurrence.

   12.3 <u>Commercial General Liability.</u> Commercial General Liability Insurance, including contractual liability, with a combined single limit for bodily injury and property damage of not less than $2,000,000 per occurrence.

   12.4 <u>Commercial Automobile Liability.</u> Commercial Automobile Liability or Trucker's Liability Insurance with a combined single limit for bodily injury and property damage of not less than $2,000,000 per accident. In addition, the applicable Automobile/Trucker's Liability policy shall contain the MCS-90 endorsement.

   12.5 <u>Other Insurance.</u> Such other insurance as required by law or as Carrier considers necessary.

13. <u>Other Insurance Requirements.</u>

   13.1 <u>Applicable to All Suncor Terminals.</u> All of the insurance coverages contained in <u>Section 12</u> above shall include, cover, and insure the West Plant Terminal, East Plant Terminal, Grand Junction Terminal, and Asphalt Unit Terminal, whether or not Carrier has been granted access to each of the foregoing Suncor terminals pursuant to this Agreement.

   13.2 <u>Agent's Insurance.</u> Carrier shall require each Agent of Carrier to: (a) carry and pay for all of the types and amounts of insurance, with the minimum limits of liability, set forth in <u>Section 12</u> of this Agreement, and (b) comply with the requirements set forth in this <u>Section 13.</u>

   13.3 <u>Suncor as Additional Insured.</u> The Commercial General Liability and Commercial Automobile Liability policies above to be provided by Carrier shall be primary and name "Suncor Energy (U.S.A.) Inc." as an additional insured, and shall contain a cross-liability or severability of interest clause.

   13.4 <u>Waiver of Right of Subrogation.</u> For each of the insurance coverages listed in <u>Section 12</u> above, Carrier shall cause its insurers to waive all rights of subrogation against Suncor.

   13.5 <u>Disclaimer Regarding Minimum Requirements.</u> The insurance requirements listed in <u>Section 12</u> above are Suncor's minimum requirements and shall not be considered indicative of the ultimate amounts and types of insurance needed by Carrier or its Agents. Neither failure to comply nor full compliance with the insurance provisions of this Agreement shall limit or relieve Carrier from any of its obligations under this Agreement.

   13.6 <u>Certificates of Insurance.</u> All insurance policies required to be provided by Carrier or its Agents under this Agreement shall be written on policy forms and by insurance companies acceptable to Suncor. Before Carrier or its Agents may enter or access any applicable Suncor terminal (or as otherwise demanded by Suncor), Carrier and its Agents, respectively, shall promptly furnish Suncor with certificates of insurance on forms acceptable to Suncor listing all policies required of Carrier and its Agents under this

Agreement. Such certificates must provide for not less than 30 days' prior notice to Suncor in the event of cancellation or material change affecting Suncor's interests.

13.7  Changes to Requirements; Termination. Suncor shall have the right to make reasonable changes in the insurance required of Carrier and its Agents. This Agreement shall immediately terminate, at Suncor's option, and Suncor shall have the right to revoke Carrier's access, at Suncor's option, in the event Carrier or any of its Agents cease to maintain any or all of the insurance required under this Agreement.

14. Compliance With Laws. In compliance with Title 49, Code of Federal Regulations (CFR) Section 172.602, the undersigned Carrier agrees to comply with and ensure that the provisions thereof will be complied with at all times. Carrier will be responsible to ensure that a D.O.T. Emergency Response Guidebook or equivalent emergency response information conforming to the requirements of said Title 49 will be carried on all vehicles which are loaded at any applicable Suncor terminal.

15. Term. Upon the execution of this Agreement by the Parties, the term of this Agreement shall commence as of the Effective Date and shall terminate at such time as Suncor provides written notice to Carrier of such termination, which may be provided by Suncor at any time and its sole option and discretion. In addition, this Agreement shall terminate upon Carrier's written notice to Suncor and Carrier's voluntary surrender of all Access Devices issued to it and its Agents (and improperly issued to any of its Unauthorized Agents). Any obligations or liabilities assumed or accrued on or before the date of termination shall survive the termination of this Agreement. As provided in Section 4 of this Agreement, a revocation of the access or permission granted by Suncor to any Suncor terminals pursuant to this Agreement or any other subsequent authorization shall not effect a termination of this Agreement unless this Agreement is expressly terminated in accordance with the terms of this Section.

16. No Limitation on Suncor's Right To Refuse Access. Nothing in this Agreement will be construed to deny or otherwise limit Suncor's right to refuse entry to, or to remove immediately from, any Suncor terminal any person or party, who in the sole and absolute discretion of Suncor, poses a hazard to any Suncor terminal personnel or property.

17. Incident Notification. In addition to its other notice obligations under this Agreement, Carrier agrees to immediately notify Suncor upon the occurrence of any of the following: (a) any breach of any term of this Agreement or any applicable law by Carrier or any of its Agents, or (b) any accident, spill, or environmental incident occurring at any applicable Suncor terminal or relating to the loading, transportation, delivery, or unloading of any Product obtained at any applicable Suncor terminal. Carrier agrees to cooperate with Suncor and provide Suncor with all reasonable information relating to any incident triggering Carrier's notification obligations under this Section.

18. Shipping Documents. With respect to all Product loaded, or otherwise obtained at any applicable Suncor terminal pursuant to this Agreement, Carrier and its Agents agree to: (a) execute a bill of lading (or such other documentation) provided by Suncor, (b) execute any certifications required by law, (c) maintain any such bills of lading and any other documentation provided to, generated by, or handled by Carrier or its Agents in connection with its transportation services for at least one (1) year, or for such longer period of time as required by law, and (d) to provide any such documentation to Suncor upon its request.

19. Confidentiality. Carrier agrees to maintain, and ensure that its employees and Agents maintain, in the strictest confidence all information that Carrier or its Agents acquire, directly or indirectly, from Suncor or any other party in connection with Carrier's or its Agents' loading, unloading, transportation, delivery, or unloading of Product pursuant to this Agreement, including, without limitation, the following: (a) the types of Product sold by Suncor, (b) the volumes of Product sold by Suncor, (c) the destinations for delivery of Product, (d) the contractual partners of Suncor,

6

including without limitation, the purchasers of Product, (e) information relating to the proprietary processes of Suncor, (f) information concerning Suncor's current and future business plans, (g) information relating to Suncor's operations, and (h) any other Suncor-furnished information in connection with this Agreement (collectively "Suncor's Proprietary Information"). Carrier and its Agents shall not disclose any of Suncor's Proprietary Information to any other party, including without limitation any competitor or potential competitor of Suncor, Carrier, or any Agent; provided, however, that Carrier and its Agents shall have the right to disclose only such information as is reasonably necessary in the course of performing its transportation services and other duties in connection with this Agreement. This Section shall apply to any Unauthorized Agents to the same extent as to Carrier's Agents.

20. Force Majeure. If either Party is prevented from performing any of its obligations under this Agreement as a result of an event of Force Majeure (as defined herein), such obligations shall be suspended during the period of Force Majeure, and such party shall incur no liability for not performing such obligations. The claiming party shall promptly notify the other party upon discovering the Force Majeure. This Section shall not apply to any payment or financial obligations due for past performances, nor shall Force Majeure extend the term of this Agreement. For purposes of this Agreement, "Force Majeure" shall mean and include all causes beyond the reasonable control of the party claiming Force Majeure, which shall include without limitation, the following: (1) lightning, earthquakes, fires, storms, floods, washouts and other acts of God, (2) strikes, lockouts, labor disputes or shortages, and any other industrial disturbances, (3) acts of public enemies, sabotages, arrests, restraints, war, riots, and any other civil disturbances, (4) orders, requests, actions, restraints, decisions, rules, laws, and judgments of any government body (including the courts), regulatory authority, or administrative body or agency, (5) any or reduction or unavailability of any product or material necessary to make, refine, or deliver Product, (6) any shutdown or turnaround of any portion of Suncor's refinery, any Suncor terminal, or other Suncor operations, whether planned or unplanned, and (7) any blockage of access to any Suncor terminal by any third party, including without limitation, the Burlington Northern Santa Fe Railroad or Union Pacific Railroad Company.

21. Limitation on Consequential Damages. THE PARTIES AGREE THAT NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR CONSEQUENTIAL, SPECIAL, INDIRECT, PUNITIVE OR EXEMPLARY DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST REVENUES OR PROFITS UNDER ANY CIRCUMSTANCES, AND THE PARTIES EACH HEREBY EXPRESSLY WAIVE THE RIGHT TO MAKE SUCH CLAIM AGAINST THE OTHER.

22. Entire Agreement; Modification. This Agreement, together with each Access Device Agreement and Driver Agreement entered into pursuant this Agreement, contain all the agreements between Suncor and Carrier with respect to the subject matter hereof. Except as otherwise expressly provided herein, this Agreement may only be modified or amended by a written agreement executed by both of the Parties.

23. Headings and Captions. The headings and captions used in this Agreement are for convenience only and shall not be used for the purpose of construction or interpretation, and specifically shall not be construed against or in favor of either Party. When the context so requires, the singular shall include the plural and vice versa.

24. Successors and Assignment. Carrier shall not have, and expressly waives, the right to assign any of its rights or interest in this Agreement to any other party without the prior written consent of Suncor. Suncor shall have the right to assign its right or interest in this Agreement to any party without the consent to Carrier. The provisions of this Agreement shall enure to the benefit of and shall be binding on the Parties hereto, their respective successors, and permitted assigns.

25. Waiver. The delay or failure of any Party to enforce any of its rights under this Agreement arising from any default or breach by the other Party shall not constitute a waiver of any such default, breach, or any of the Party's rights relating thereto. No custom or practice which may arise between the Parties in the course of operating under this Agreement will construed to waive any

7

Party's rights to either ensure the other Party's strict performance with the terms and conditions of this Agreement, or to exercise any rights granted to it as a result of any breach or default under this Agreement. ==Neither Party shall be deemed to have waived any right conferred by this Agreement or under any applicable law unless such waiver is set forth in a written document signed by the Party to be bound, and delivered to the other Party.== No express waiver by either Party of any breach or default by the other Party shall be construed as a waiver of any future breaches or defaults by such other Party.

26. **Severability.** If any term of this Agreement is found to be invalid, illegal or unenforceable, in whole or in part, by a body of competent jurisdiction, that term shall be deemed severed from this Agreement without effect on any other term of the Agreement.

27. **Governing Law.** This Agreement shall be governed by the laws of the State of Colorado, without regard to its conflict of laws principles.

28. **Forum Selection.** Each of the Parties to this Agreement irrevocably and unconditionally consents to the exclusive jurisdiction of the courts of the State of Colorado and of the United States of America located in the City of Denver, Colorado for any such actions, suits or proceedings arising out of or relating to this Agreement or the transactions contemplated hereby, and each of the Parties hereto further agrees not to commence any such action, suit or proceeding relating thereto to such matters except in such courts. Each of the Parties to this Agreement also hereby irrevocably and unconditionally waives any objection to the laying of venue of any such proceeding in the courts of the State of Colorado, and waives and agrees not to plead or to make any claim that any such proceeding brought in any court of the State of Colorado has been brought in an improper or inconvenient forum.

29. **Schedules:** The following schedules are, by this reference, expressly incorporated into and made a part of this Agreement:

    28.1   Schedule "A": List of Carrier's Customers

30. **Conflicting Terms.** In the event that the terms of this Agreement conflict with the terms of any other agreement between Suncor and Carrier or its Agents, the Parties agree that the terms of this Agreement shall control.

31. **Survival.** The following provisions shall survive termination of this Agreement: Sections 5, 10, 11, 19, 21, 27, and 28.

32. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute but one and the same instrument.

SUNCOR ENERGY (U.S.A.) INC.                CARRIER:

                                            Western Truck One, LLC

By: _____                By: _____
Title: _____                Title: President

Carrier to Provide:                         Federal Tax ID # 68-0502669
                                            SCAC Code: WTOL

## SCHEDULE "A"

Customer Name
1. Harpel Oil Company
2. Dats Trucking
3. Cenex (CHS)
4. Koury Transport
5.

Contact Information
Terri - 303-294-0767
Dick - 307-547-3490
Chad - 800-944-3170
Grant - 719-253-0156

Executed this 23 day of May, 2006.

Suncor: _____

Carrier: _____[signature]_____

9