

Steven J. Ewing
SUNCOR ENERGY (U.S.A.) INC.

717 17th Street, Suite 2900
Denver, CO 80202
Telephone: 303.793.8066
Facsimile: 303.793.8003
sewing@suncor.com

May 25, 2011

Western Convenience Stores, Inc.
Attn: Angelia Spillman
6746 South Revere Parkway #125
Centennial, CO 80112
Fax: 303.706.0345
e-mail: angelia@westernconveniencestores.com

Western Truck One, LLC
Attn: Hossein Taraghi
6746 South Revere Parkway #125
Centennial, CO 80112
Fax: 303.706.0345
e-mail: hossein@westernconveniencestores.com

**VIA FACSIMILE AND E-MAIL**

Re:   Confirmation of Suspension of all Product Sales to Western Convenience Stores, Inc. and Revocation of Terminal Access to Western Truck One, LLC

Dear Mr. Taraghi and Ms. Spillman:

By this letter, Suncor Energy (U.S.A.) Inc. ("Suncor") hereby confirms that Suncor (a) has suspended all sales of petroleum products to Western Convenience Stores, Inc. ("Western"), and (b) has revoked Western Truck One, LLC's ("WTO") access to all of Suncor's terminals pursuant to the parties' Terminal Access Agreement (Master Agreement), effective as of May 10, 2006 (the "TAA").

**SUSPENSION OF PRODUCT SALES TO WESTERN**

As you are aware, Western is obligated, pursuant to Section 5 of the General Terms and Conditions ("GT&Cs") attached as Exhibit A to the Master Product Purchase and Sale Agreement between Western and Suncor dated as of January 17, 2007 (the "Master PSA") to make payment to Suncor for all petroleum Product (as defined in the Master PSA) sold and delivered to Western by electronic funds transfer ("EFT") or Automated Clearing House ("ACH") transactions. On or about April 28, 2011, Western informed Suncor that it was changing its operating bank account, and requested and authorized Suncor to draw funds from Western's account with Bellco Credit Union ("Bellco") for Product sold and delivered to Western by

**EXHIBIT 9**

Suncor. Thereafter, on May 16, 2011, Western changed course and requested that Suncor draw funds from its account with Vectra Bank, rather than Bellco. To that end, Western and Suncor entered into that certain Electronic Funds Transfer Authorization, dated May 16, 2011 (the "Vectra EFT Agreement"), pursuant to which Western authorized Suncor to draw funds from Western's account with Vectra Bank identified in the Vectra EFT Agreement as payment for all Product sold and delivered to Western by Suncor. On or about May 19, 2011, Suncor was informed that Western's account with Bellco had been closed.

On Friday, May 20, 2011, Steve Moss, Suncor's Manger of Unbranded Sales, notified Mr. Taraghi, on behalf of Western, via phone that (a) Suncor had decided, based on the recommendation of its credit department, that Western no longer qualified for the extension of credit based on a recent review of Western's financials and creditworthiness, and (b) as a result, Suncor would require performance assurance, in the form of pre-payment, before Suncor would sell any further Product to Western after Tuesday, May 24, 2011. At that time, Suncor was going to allow Western to lift Product through Tuesday, May 24, 2011 -- prior to the pre-payment requirement going into effect -- as a courtesy, but without waiving any of its rights under the Master PSA.

On or about May 18, 2011, pursuant to the Vectra EFT Agreement and in the ordinary course of business, Suncor originated a draw request from Vectra Bank in the amount of $436,710.80 as payment for the Product sold and delivered by Suncor to Western on or about May 9, 2011. On Monday, May 23, 2011, Suncor was notified that this draw request was denied for insufficient funds.

In addition, on Friday, May 20, 2011, pursuant to the EFT Agreement and in the ordinary course of business, Suncor originated another draw request in the amount of $785,694.85 for Product sold and delivered by Suncor to Western from on or about May 11-13, 2011. On Tuesday, May 24, 2011, Suncor was notified that this draw request was denied because the payment was stopped by Western. In addition, Western has taken delivery of further volumes of Product from Suncor for which Suncor has not yet received payment.

As set forth in Section 16 of the GT&Cs, Suncor may extend credit or a line of credit to Western on such terms as Suncor shall specify from time to time and has the right to modify or withdraw such credit and/or credit terms at any time without notice.

As provided in Section 17 of the GT&Cs, if Suncor, in its sole discretion, believes that it has grounds for insecurity regarding performance of Western for any reason, including, without limitation, failure to timely pay an invoice, Suncor may, *without notice*, suspend indefinitely any and all sales of Product to Western and make Performance Assurance (as defined in the GT&Cs and which includes prepayment) a condition precedent to further supply of Product and/or extension of credit to Western.

On May 23, 2011, I had a phone conversation with Mr. Taraghi. During that phone conversation I, on behalf of Suncor, notified Mr. Taraghi, on behalf of Western, that due to Western's lack of creditworthiness, Western's failure to pay invoices for Product received, and its actions resulting in the dishonorment of electronic payments to Suncor by Western's financial institutions, Suncor has elected to suspend all Product sales to Western effective immediately – on Monday, May 23, 2011.

By this letter, Suncor is hereby confirming the exercise of its rights under the Master PSA to withhold and suspend delivery of all Product to Western. The foregoing election by Suncor

shall not constitute a waiver of any additional rights or remedies available to Suncor under the Master PSA, any contract subject to the Master PSA, at law or in equity, and Suncor hereby reserves all such additional available rights and remedies.

## REVOCATION OF ACCESS TO SUNCOR TERMINALS

As you know, Section 4 of the TAA by and between WTO and Suncor provides as follows:

> 4. Revocation of Access Rights. The Parties hereby acknowledge and agree that any permission of access granted by Suncor to the West Plant Terminal, East Plant Terminal, Grand Junction Terminal, Asphalt Unit Terminal, and/or any other Suncor terminal, including, without limitation, pursuant to Section 3 of this Agreement or any other subsequent authorization, may be revoked, suspended, or restricted immediately by Suncor, without cause, as a matter of right with respect to Carrier [WTO], any Agent, any transportation vehicle or trailer, any particular order or load, or this Agreement in its entirety upon notice (either oral or written, including by e-mail) to Carrier; provided, however, that if such notice is oral, Suncor shall provide written confirmation to Carrier within five (5) days after the oral notice. Upon Carrier's receipt of such notice, Carrier shall immediately cause any and all Access Devices (as defined herein) issued to Carrier and its Agents to be immediately returned to Suncor. Unless Suncor expressly terminates this Agreement in a written notice to Carrier, any revocation of access by Suncor pursuant to this Section shall not result in a termination of this Agreement, and any subsequent access, if any, granted to Carrier by Suncor to any Suncor terminal shall be governed by the terms of this Agreement.

Under the TAA, WTO had been granted access to three Suncor terminals: (1) the West Plant Terminal, (2) the East Plant Terminal, and (3) the Grand Junction Terminal (as such terms are defined in the TAA).

Today, Wednesday, May 25, 2011, I had a telephone conversation with Mr. Taraghi, and I, on behalf of Suncor, notified Mr. Taraghi, on behalf of WTO, that Suncor was revoking WTO's access to all of Suncor's terminals, including the three Suncor terminals listed above, effective immediately today. In addition, I also confirmed that Suncor was not terminating the TAA itself, but was merely revoking WTO's access pursuant to Section 4 of the TAA.

By this letter, I am hereby also demanding that WTO immediately return all Access Devices (as defined in the TAA). You can return them to my attention.

Suncor hereby expressly retains, and does not waive, any and all rights and remedies available to Suncor under the TAA, at law or in equity.

If you have any further questions with respect to the above, please do not hesitate to contact me at the number provided above.

Very truly yours,

*Steven J. Ewing* (signature)

Steven J. Ewing
Director, Rack Forward Sales & Services