IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant.

---

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS
OR STAY SECOND THROUGH FIFTH CLAIMS FOR RELIEF**

---

Plaintiffs Western Convenience Stores and Western Truck One, LLC, by and through their attorneys, Bennington Johnson Biermann & Craigmile, LLC, respond as follows to *Defendant Suncor Energy (U.S.A.) Inc.'s Motion to Dismiss or Stay the Second Through Fifth Claim for Relief of Plaintiffs' Complaint,* ECF Document 12 (hereinafter "Motion"):

### I.  SUMMARY OF RESPONSE

Suncor's Motion is notable not for what it states but for what it ignores.  On its request to dismiss certain of Plaintiffs' state law claims under Rule 12(b)(6), Suncor disregards Complaint allegations regarding oral agreements, course of conduct, and written agreements other than the agreements it attaches to its Motion, as well as Complaint allegations that assert a breach of the agreements attached.  On its alternative request to stay those claims, Suncor fails to disclose, among other things: (a) that Plaintiffs never served their state court Complaint; (b) that Suncor answered that Complaint and asserted counterclaims and third party claims only after it became

aware of this action; and (c) that the state law claims are intrinsically related to the federal antitrust claim asserted in this action because Suncor terminated the parties' contractual relationship (as well as Plaintiffs' ability to take delivery of fuel purchased by third parties) immediately upon Plaintiffs' complaints of Suncor's price discrimination.

## II.  BACKGROUND

### A.  ALLEGATIONS OF COMPLAINT RELEVANT TO MOTION

For the past twenty years, Plaintiff Western Convenience Stores, Inc. ("WCS") has been in the business of operating convenience stores in Colorado and Nebraska that sell as principal products gasoline and diesel fuel (collectively "fuel").  *ECF Document 1 (hereinafter "Complaint") ¶ 7.*  WCS is an independent retailer that is known as a "discounter" in the industry and does not identify with a single supplier or sell self-branded fuel.  *Id.*  Plaintiff Western Truck One, LLC ("WTO") is a trucking company that transports to WCS stores fuel loaded onto WTO vehicles at terminals such as those operated by Defendant Suncor Energy (U.S.A.), Inc. ("Suncor").  *Id. ¶ 9.*  WTO operates 10 trucks, 24 hours per day, every day, in a non-stop delivery operation of 8 to 10 million gallons of fuel per month to WCS's 42 retail stores.  *Id.*

Until the parties' present dispute arose, WTO loaded not only fuel purchased directly from Suncor, but also fuel purchased by WCS from third-parties (*i.e.*, middlemen) who purchase Suncor fuel and resell it to others via Suncor's terminals.  *Id. ¶ 11.*  When a middleman delivers fuel at a Suncor terminal, the fee for using the terminal is paid by that middleman, thus relieving Suncor from depending on the creditworthiness of the ultimate purchaser, *e.g.,* WCS, in order to be paid for use of the Suncor terminal.  *Id. ¶ 12.*  This access to fuel from middlemen was of particular importance to WCS during the parties' relationship as Suncor occasionally put WCS on

allocation, that is, limited the amount of fuel that WCS could purchase directly from Suncor during a given period.  *Id.* ¶ *13*.  When allocations occurred, WCS could still obtain fuel from middlemen to make up for consumer demand at WCS's 42 retail facilities not supplied directly by Suncor.  *Id.*

Over the course of its relationship with Suncor, WCS has purchased, and WTO has transported from Suncor terminals, billions of dollars in Suncor fuel retailed by WCS in Colorado and Nebraska.  *Id.* ¶ *15*.  Suncor has supplied WCS a substantial portion of the fuel it has retailed pursuant to a *Master Product Purchase and Sale Agreement* and incorporated "General Terms and Conditions" ("Master Agreement"), and WTO has obtained access to Suncor terminals via a *Terminal Access Agreement* ("Access Agreement").  *Id.* ¶¶ *8,10*.  As alleged in the Complaint, while the Master Agreement "purport[s] to govern all transactions or agreements entered into or consummated between WCS and Suncor for the purchase and sale of fuel" (*id.* ¶ *8*) the parties' relationship was also governed by: predecessor agreements (*id.* ¶ *8, 10*); oral agreements (*id.* ¶¶ *8, 10, 14*); other written agreements (*id.*¶ *16*); Suncor's verbal and implied promise and the parties custom and practice regarding WCS's ability to purchase fuel from middlemen (*id.* ¶ *14*); and a custom and practice for several years regarding WCS's credit terms for the purchase of Suncor fuel (*id.* ¶ *16*).

On multiple occasions beginning in late April 2011, without basis or notice, Suncor cut WCS off from fuel delivery, contrary to the parties' oral and written agreements and in a manner that caused substantial disruption to WCS's business.  *Id.* ¶ *17*.  During a meeting on May 18, 2011, the parties discussed that all of Suncor's retailers were having a tough year, Suncor proposed changes to WCS's payment terms, and WCS raised complaints that Suncor was

granting substantial discounts and rebates to its competitors that were not being provided to Suncor. *Id. ¶¶ 18-20.* Suncor admitted the discounts and rebates had been provided to the competitors and indicated it would determine whether the discounts and rebates could be made available to WCS. *Id. ¶ 20.* That never occurred. *Id.*

Within two days of WCS's complaints of price discrimination, Suncor notified WCS that it was revoking its 10-day credit practice for fuel sales. *Id. ¶ 22.* Within a week of those complaints, Suncor not only had suspended all direct fuel sales to WCS, but also had revoked WTO's access to Suncor terminals, thus precluding WTO from taking delivery of fuel purchased not only from Suncor, but also from the third-party middlemen. *Id. ¶¶ 22-23.*

**B.   PROCEDURAL BACKGROUND AND STATUS OF THIS ACTION AND STATE COURT ACTION**

Viewing Suncor's actions as a breach and repudiation of the parties' agreements (*id. ¶ 22*), on May 27, 2011, WCS and WTO filed an action in Denver District Court alleging claims for breach of contract and tortious interference with its relationship with middlemen (hereinafter the "State Action"). *See Motion Exhibit 3, State Action Complaint.* WCS and WTO have never served the Complaint in the State Action on Suncor. *Exhibit A, Declaration of Kenneth R. Bennington ¶ 2; Exhibit B, State Action E-Filing Docket.*

Contemporaneously with filing the State Action Complaint, counsel for WCS and WTO investigated facts and law relating to the price discrimination and antitrust claims under the Robinson-Patman Act, 15 U.S.C. § 13(a), federal subject matter jurisdiction over those antitrust claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337(a), and federal supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367. *Exhibit A ¶ 3.* Upon determining that the factual elements were present to support a Robinson-Patman Act claim (*see*

*Complaint ¶¶ 25-31*), and that the federal courts have exclusive jurisdiction over that claim and supplemental jurisdiction over the pendent state law claims, WCS and WTO commenced this action on June 17, 2011.  *Id.*  The ECF system accepted the complaint for filing on June 20, 2011, and WCS/WTO's counsel provided to Suncor's counsel a courtesy copy the next day, June 21, 2011.  *Id.* ¶ *4; Exhibit C, Email Correspondence Attaching Complaint.*

Although it had never been served with the State Action *Complaint*, late at night on June 21, Suncor filed in the State Action an *Answer and Counterclaims.  Exhibit B at 4; Exhibit D.* Suncor never attempted to serve the *Answer and Counterclaims* on WCS or WTO.  *Exhibit A ¶ 5; Exhibit D at 10.*  A month later, on July 20, 2011, Suncor filed an *Amended Answer, Counterclaims and Third-Party Complaint* in the State Action and had that pleading served. *Exhibit A ¶ 6.*[1]  Shortly after service, WCS and WTO moved to dismiss or stay the State Action on the grounds that: (a) jurisdiction over WCS/WTO's Robinson-Patman Act claim is exclusive in the federal courts and supplemental jurisdiction exists for all claims arising out of the termination of the parties' contractual relationship; (b) the state law claims and antitrust claims are integrally related as the termination occurred immediately after (and, as asserted by WCS/WTO, because of) WCS's complaints of price discrimination; (c) Plaintiffs' presently pending federal court action (*i.e.,* this action) is the only proceeding that can resolve all of the claims between the parties in one action; and (d) dismissal or stay of the State Action would avoid piecemeal litigation, prevent inconsistent judgments and promote economy of judicial resources.  *See, e.g., Exhibit E, Motion to Dismiss or Stay in State Action.*  Plaintiffs' *Motion to*

---

[1]  The Third-Party Complaint asserts claims on a personal guaranty of WCS's payment obligations against Hossein Taraghi (Plaintiffs' owner and the individual who had raised the price discrimination complaints) and Debra Taraghi, Mr. Taraghi's wife.

*Dismiss or Stay* was fully briefed and ripe for ruling on August 26, 2011. *Exhibit A ¶ 7.* As of the date of this Response, the State court has not ruled on that motion. *Id.*

On September 2, 2011, Suncor filed its Motion in this Court, making no mention of the parallel *Motion to Dismiss or Stay* pending in the State Action, the fact that Plaintiffs had never served the Complaint in the State Action, or the fact that Suncor purported to answer and file counterclaims in the State Action after it already knew about and had received a copy of the Complaint filed in this action. On that same date (despite Plaintiffs' pending *Motion to Dismiss or Stay* and the fact that no discovery has been taken), Suncor filed in the State Action a motion for summary judgment on all claims asserted in the never-served complaint as well as on all of its counterclaims and third-party claims against Plaintiffs and the Taraghis. *Exhibit A ¶ 8.* Plaintiffs and the Taraghis have moved in the State Action to stay proceedings on the summary judgment motion pending a determination by the state court of the *Motion to Dismiss or Stay* and pending this Court's determination of its exercise of jurisdiction over the supplemental state law claims. *Id.*

Notably, Suncor has not moved in this action to dismiss Plaintiffs' Robinson-Patman Act claim or their claim asserted in this action under Colorado's antitrust statutes. Thus, those claims will proceed in this Court irrespective of what occurs with respect to the parties' state law claims.

### III.  ARGUMENT

A.  **THE COURT SHOULD DENY DEFENDANT'S MOTION TO DISMISS.**

    1.  **Breach of Contract (Second and Third Claims for Relief)**

        a.  <u>Burden of Proof</u>.  Plaintiffs agree they have the burden of showing a breach of contract, including a breach of contract through a breach of the implied covenant of good faith and fair dealing.

        b.  <u>Elements</u>.  Suncor correctly states elements of a claim for breach of contract via breach of the implied covenant of good faith and fair dealing, but does not cite authority in this section that the covenant of good faith and fair dealing can limit a contractual right to terminate or discharge without cause when there is "an express or implied promise, independent of the covenant of good faith itself, restricting that right."  *Soderlun v. Public Service Company of Colorado,* 944 P.2d 616, 623 (Colo. App. 1997).   The elements for a breach of contract claim are: (1) existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) the defendants' failure to perform the contract; and (4) resulting damages to the plaintiff.  *Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 529 (Colo. App. 2011), *citing W. Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992).

        c.  <u>The Complaint sufficiently alleges elements of breach of contract claims</u>.  Paragraph 8 states that the Master Agreement and incorporated General Terms and Conditions "purport to govern" all of the transactions/agreements between WCS and Suncor for purchase of fuel and further states that such transactions or agreements have been subject to predecessor and oral agreements.  It does <u>not</u> state that the Master Agreement "govern[s] all" such transactions or agreements as Suncor asserts at page 2 of the Motion.  Paragraph 14 alleges that WCS

acquiesced to an uncertain supply of fuel directly from Suncor based on the verbal and implied promise, confirmed by the parties' custom and practice, that WCS could meet its supply requirements, if necessary, by purchasing fuel from middlemen for delivery at Suncor terminals. Paragraph 16 alleges that elements of WCS's credit terms with Suncor were the subject of verbal agreements alone.  Paragraph 17 alleges that, on multiple occasions in 2011, Suncor, without basis or notice, cut off WCS's fuel delivery in contravention of the parties' written and verbal agreements, causing damage in the form of substantial disruption to its business and inability to meet the heavy weekend demand for its retail stores.  Paragraph 22 alleges that Suncor ceased petroleum sales to WCS before knowledge that WCS had dishonored any payment (and within two days of the meeting in which WCS raised complaints of price discrimination).

The Master Agreement did not permit cessation of fuel delivery either in connection with the multiple occasions in which Suncor cut off sales to WCS on Friday afternoons causing substantial interruption to WCS's business and inability to meet known heavy demand or cessation of fuel delivery before knowledge of nonpayment.  *See, e.g., Master Agreement, Terms & Conditions ¶ 5.*  Suncor's actions as alleged in the Complaint form the basis for a claim for breach of the express terms of the Master Agreement and other agreements.  Such actions also form the basis for a claim for breach of the implied covenant of good faith and fair dealing to the extent Suncor suspended or terminated fuel sales in a manner not explicitly permitted by the Master Agreement and outside of accepted commercial practices (*e.g.,* suspension of sales with no basis to cause disruption of WCS's business and termination of sales immediately following a

complaint of price discrimination and before any knowledge of nonpayment by WCS).[2]  Thus, there is no Rule 12(b)(6) basis to dismiss the Second Claim for Relief.

The Complaint also adequately alleges a claim for breach of contract / breach of implied covenant of good faith and fair dealing with respect to Suncor's abrupt termination of Plaintiffs' access to terminals to take delivery of fuel purchased from middlemen.  *See Complaint, Third Claim for Relief.*  As noted above, Paragraph 14 alleges that WCS acquiesced to an uncertain supply of fuel directly from Suncor based on the verbal and implied promise, confirmed by the parties' custom and practice, that WCS could meet its supply requirements, if necessary, by purchasing fuel from middlemen for delivery at Suncor terminals.  Thus, the Third Claim for Relief sufficiently states a claim for breach of the implied covenant of good faith and fair dealing under the principles articulated in *Soderlun, supra,* 944 P.2d at 632.

    **2**.    **Tortious Interference (Fourth and Fifth Claims for Relief)**

        a.    <u>Burden of Proof</u>.  Plaintiffs agree they have the burden of showing a tortious interference with Plaintiffs' contracts with third-party middlemen.

        b.    <u>Elements</u>.  Suncor correctly states elements of a claim for tortious interference with a contractual relationship.

        c.    <u>The Complaint sufficiently alleges element iv.</u>  Paragraphs 23, 49, and 54 allege that Suncor's actions in revoking WTO's access to Suncor's terminals precluded WTO

---

[2] To the extent the Court determines that the "CLAIM FOR RELIEF" allegations could have been more artfully pled to make clear there are claims for both breach of express contract and breach of the implied covenant of good faith and fair dealing, that is a matter that could have been addressed by an amendment as contemplated by Section I.2.c of the Court's Practice Standards.

from loading fuel purchased from third-party middlemen and that this interfered with Plaintiffs' performance of agreements and relationships with middlemen.

Suncor asserts that, to be actionable, alleged interference must be improper. That assertion is also correct, but Suncor does not accurately state the law on the issue. The Colorado Supreme Court instructs that,

> "[i]n determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a)  the nature of the actor's conduct;
>
> (b)  the actor's motive;
>
> (c)  the interests of the other with which the actor's conduct interferes,
>
> (d)  the interests sought to be advanced by the actor;
>
> (e)  the social interests in protecting the freedom of action of the actor and the contractual interests of the other; and
>
> (f)  the relations between the parties."

*Amoco Oil v. Ervin,* 908 P.2d 493, 500 (Colo. 1995), *quoting* Restatement (Second) of Torts § 767 (1979) ("§ 767"). Application of these factors, determination of the appropriate weight for each factor, and determination of whether interference is improper depend on the facts and circumstances of a particular case. *Amoco,* 908 P.2d at 501, *citing* § 767 cmt. A. Whether the interference results in an unlawful restraint of trade or competition is a key consideration in determining whether interference is improper. *Amoco,* 908 P.2d at 501-502, *citing* Restatement (Second) of Torts § 768.

As alleged in the Complaint, within a week of Plaintiffs' complaint of price discrimination and without any legitimate reason for doing so, Suncor precluded WTO from loading not only fuel purchased directly from Suncor, but also fuel being purchased from third-party middlemen with whom Plaintiffs had contractual relationships, *Complaint ¶¶ 12, 20, 23, 49, 54.* The logical inference from these allegations is that Suncor interfered with Plaintiffs' middlemen relationships as a direct result of the complaints and in furtherance of its actions in restraint of trade as described in the Complaint. Plaintiffs have adequately pled facts and circumstances that give rise to a claim for tortious interference as described in *Amoco Oil v. Ervin.*

Suncor relies on an opinion of the Colorado Court of Appeals for the argument that "the exercise of a legitimate contract right cannot constitute improper interference." *Motion at 12, citing Lufti v. Brighton Cmty. Hosp. Ass'n,* 40 P.3d 51, 58 (Colo. App. 2001). The *Lufti* court did not hold that a party's exercise of contract provision permitting termination as a matter of law insulates the party from any claim of tortious interference with a third party contract arising from termination. Rather, it noted that the defendant's contract with the plaintiff in that case permitted termination and that the plaintiff did not present evidence of improper conduct. *Id.* In this action, there are allegations supporting a finding of interference based on the factors set forth by the Colorado Supreme Court, in particular factors relating to motives or conduct involving the unlawful restraint of trade. It would be error to dismiss the tortious interference claims under Rule 12(b)(6).

B.     THE COURT SHOULD DENY DEFENDANT'S MOTION TO STAY PLAINTIFFS' SECOND THROUGH FIFTH CLAIMS FOR RELIEF.

Federal courts have original jurisdiction over federal statutory claims and exclusive jurisdiction over price discrimination claims under the Robinson-Patman Act. 28 U.S.C. §§ 1331, 1357; *Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304, 2309 n. 5 (1989). Federal courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . . Such supplemental jurisdiction [includes] claims that involve the joinder or intervention of additional parties." 28 U.S.C. 1367(a). "It is well established that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Will v. Calvert Fire Ins. Co.,* 98 S.Ct. 2552, 2557 (1978), *quoting McLellan v. Carland*, 30 S.Ct. 501, 505 (1910).

Here, there is no question that Plaintiffs' state law contract and tortious interference claims are sufficiently related to the antitrust claims that they form part of the same case or controversy. The contract breaches and interference occurred within a week of (and, as Plaintiffs allege, because of) Plaintiffs' complaints of the price discrimination that forms the basis of the Robinson-Patman Act claim.[3] To the extent that Suncor intends to pursue counterclaims against

---

[3]     In fact, the termination of a dealer or other relationship flowing from an antitrust violation in a manner that reduces competition -- such as Suncor's termination of the Master Purchase and Sale Agreement and WCS's access to fuel purchased from third parties immediately following WCS's complaints of price discrimination (*e.g., Complaint, Document 1,* ¶¶ 20-23) -- is an injury the antitrust laws were intended to redress. *See, e.g., Haynes Trane Service Agency, Inc. v. American Standard, Inc.* 51 Fed.Appx. 786, 803, 2002 WL 1972281 **15 (10th Cir. 2002) (*Exhibit F*), *citing Pace Elec., Inc. v. Canon Computer Sys., Inc.*, 213 F.3d 118, 145 (3d Cir. 2000) ("[A] dealer terminated for its refusal to abide by a vertical minimum price fixing agreement suffers antitrust injury.") *Greene v. General Foods Corp.* 517 F.2d 635,

Plaintiff WCS or a third-party claim against the Taraghis for a guaranty of WCS contractual obligations, this Court has supplemental jurisdiction of those claims under 28 U.S.C. § 1367(a).

Under 28 U.S.C. § 1367(c), a federal district court may decline to exercise supplemental jurisdiction over a related state law claim where:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the [federal] court has original jurisdiction;

(3) the [federal] court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Among the factors relevant to a motion for stay of proceedings are "[1] those of comity, [2] the extent of disputed factual (as opposed to legal) issues involved, [3] adequacy of relief available in stat[e] court, [4] avoidance of maneuvers designed to throw sand into judicial machinery, [5] the order in which the courts obtained jurisdiction, [6] the need for comprehensive disposition of litigation, and [7] the desirability of avoiding piecemeal litigation." *State Farm Mut. Auto. Ins. Co. v. Scholes,* 601 F.2d 1151, 1155 (10th Cir.1979).

There are numerous reasons why Plaintiffs' state law claims should proceed in this Court and why Suncor's request for a stay should be denied.

First, the contract and interference claims addressed by the Motion hardly raise complex or novel issues of state law and do not predominate over Plaintiffs' Robinson-Patman Act claim. Suncor has not moved to dismiss the Robinson-Patman claim, nor has Suncor asserted any

---

663 (5th Cir. 1975) (antitrust plaintiff permitted to recover loss of future profits arising from the retaliatory termination of his distributorship).

"exceptional circumstances" or "compelling reasons" for this Court to decline to exercise supplemental jurisdiction over the contract or interference claims. Thus, none of the bases for declining jurisdiction under 28 U.S.C. § 1367(c) are present here.

Second, the majority of the factors outlined in *Scholes* support keeping the contract and interference claims in this Court. The interests of comity, adequacy of relief, comprehensive disposition of litigation, and avoidance of piecemeal litigation all will be served by having a single forum resolve all of the parties' claims. This is particularly the case as Suncor's termination of its relationship with Plaintiffs is both an element of injury under the federal antitrust statutes (*see supra n. 3*) and the basis for portions of Plaintiffs' state law contract and interference claims. As jurisdiction over Plaintiffs' Robinson-Patman claim is exclusive in the federal courts, this is the only action in which all of the parties' claims can be resolved in a single forum. There is no basis for any of the claims to be resolved in a separate action in state court.

Third, the fourth and fifth *Scholes* factors cancel each other out. Suncor is correct that Plaintiffs filed the State Action asserting the contract and interference claims before filing this action. However, it omits that: (a) Plaintiffs never served their State Action complaint as they were investigating the basis for their antitrust claims; (b) Suncor answered the unserved complaint and filed counterclaims in the State Action knowing that this action had been filed and that its counterclaims would be compulsory counterclaims in this case; (c) well before Suncor filed this Motion, Plaintiffs had already moved for dismissal or stay of the State Action based on several of the factors describe above; and (d) Suncor's summary judgment motion in the State Court on all of the claims, counterclaims and third-party claims was filed before the State court has determined Plaintiffs' pending motion to dismiss or stay. To the extent there is a party

engaging in "maneuvers designed to throw sand into judicial machinery," it is Suncor and not Plaintiffs.

Fourth, the motivation behind Suncor's desire to litigate in two courts is plain.  Suncor seeks to obtain judgment against WCS and the Taraghis as personal guarantors in the state court while sequestering in federal court the facts of price discrimination and its retaliatory termination of its contracts with Plaintiffs.  Stated another way, if Suncor is permitted to sever clearly related claims into both the federal and state courts, WCS and the Taraghis are faced with fighting claims stripped of the conduct that gave rise to those claims in the first place.  From Suncor's perspective, that is great strategy.  But from the perspective of fundamental fairness and judicial efficiency, there is nothing to justify having a state court participate in piecemeal litigation that serves one party, Suncor.

## CONCLUSION

Suncor has failed to establish a Rule 12(b)(6) basis for dismissal of Plaintiffs' claims, and its request in the alternative for stay of those claims is based on a small fraction of the relevant facts.  All claims between the parties to this action and the State Action are factually and legally intertwined, and this is the only Court that can adequately and completely resolves the parties' disputes.  Suncor's Motion should be denied in its entirety.

Dated:  September 26, 2011

*s/ Kenneth R. Bennington*

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON
BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
(303) 629-5200

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2011, copies of the foregoing **PLAINTIFFS' RESPONSE TO MOTION TO DISMISS OR STAY SECOND THROUGH FIFTH CLAIMS FOR RELIEF** were served on the following parties via the CM/ECF e-filing system:

| | |
|---|---|
| Anthony J. Shaheen | J. Robert Robertson |
| Keeya M. Jeffrey | William L. Monts III |
| Holland & Hart LLP | Hogan Lovells US LLP |
| 555 17th Street, Suite 3200 | 555 Thirteenth Street, N.W. |
| Denver, CO 80201-8749 | Washington, D.C. 20004-1109 |
| AJShaheen@hollandhart.com | robby.robertson@hoganlovells.com |
| KMJeffrey@hollandhart.com | william.monts@hoganlovells.com |

*s/ Marie Newberger*