**Westlaw**

Page 1

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Tenth Circuit Rule 32.1. (Find CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
HAYNES TRANE SERVICE AGENCY, INC. and Frederick M. Haynes, Plaintiffs-Appellees-Cross-Appellants,
v.
AMERICAN STANDARD, INC., d/b/a The Trane Company, Defendant-Appellant-Cross-Appellee.

Nos. 00-1171, 00-1206, 00-1207.
Aug. 27, 2002.

Franchisee that sold heating and air conditioning equipment brought action against franchisor after franchisor terminated sales franchise agreement and distributorship agreement, alleging breach of both agreements, breach of various implied covenants, breach of fiduciary duty, and violation of federal antitrust laws. Franchisor asserted counterclaims of fraud, unjust enrichment, and for an accounting. Following jury trial, the United States District Court entered judgment, and both parties appealed. The Court of Appeals, VanBebber, Senior District Judge, sitting by designation, held that: (1) under Wisconsin law, sales franchise agreement, which was for an indeterminate period and which stated that it could be terminated by either party upon 30 days notice to the other, was terminable at will with 30 days notice; (2) under Wisconsin law, after court determined that sales franchise agreement, by its terms, was terminable at will, franchisor could not be found to have breached the implied covenants by terminating the agreement; (3) under Texas law, franchisor's fraud claim could not be considered as an affirmative defense to franchisee's breach of contract claim; (4) franchisor did not waive its counterclaims for unjust enrichment and for an accounting by proceeding with its fraud claim against franchisee; and (5) franchisor's pricing policies did not amount to vertical price fixing absent any evidence of an antitrust injury.

Affirmed in part, vacated in part, reversed in part, and remanded.

West Headnotes

**[1] Contracts 95 ⚷═215(1)**

95 Contracts
    95II Construction and Operation
        95II(D) Place and Time
            95k215 Duration of Contract in General
                95k215(1) k. In General. Most Cited Cases

Under Wisconsin law, contracts effective for an indeterminate period are terminable without cause unless the contract expressly provides otherwise.

**[2] Contracts 95 ⚷═215(1)**

95 Contracts
    95II Construction and Operation
        95II(D) Place and Time
            95k215 Duration of Contract in General
                95k215(1) k. In General. Most Cited Cases

Under Wisconsin law, franchise agreement is terminable at will when it does not specify whether good cause is required for termination.

**[3] Contracts 95 ⚷═217**

95 Contracts
    95II Construction and Operation
        95II(D) Place and Time
            95k217 k. Option to Renew or Terminate Contract. Most Cited Cases

Under Wisconsin law, sales franchise agree-

Exhibit F

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

ment, which was for an indeterminate period and which stated that it could be terminated by either party upon 30 days notice to the other, was terminable at will with 30 days notice, even though the parties had been performing under the agreement for more than 30 years.

**[4] Contracts 95 168**

95 Contracts
    95II Construction and Operation
        95II(A) General Rules of Construction
            95k168 k. Terms Implied as Part of Contract. Most Cited Cases

Under Wisconsin law, the implied covenants of good faith, fair dealing, and cooperation are recognized.

**[5] Contracts 95 312(1)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(1) k. In General. Most Cited Cases

Under Wisconsin law, conduct authorized by a contract cannot be a breach of the implied covenants of good faith, fair dealing, and cooperation.

**[6] Contracts 95 312(1)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(1) k. In General. Most Cited Cases

Under Wisconsin law, after court determined that sales franchise agreement, by its terms, was terminable at will, franchisor could not be found to have breached the implied covenants by terminating the agreement.

**[7] Contracts 95 248**

95 Contracts
    95III Modification and Merger
        95k248 k. Questions for Jury. Most Cited Cases

**Federal Courts 170B 907**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk907 k. Submission of Questions or Interrogatories to Jury. Most Cited Cases

Under Wisconsin law, evidence that franchisor's officials had stated in franchisee meetings that franchisor's policy was to terminate franchise holders only for cause was sufficient to create fact issue for jury as to whether franchisor should have been equitably estopped from denying that franchise agreement had been modified to require good cause for termination; thus, federal district court committed reversible error when it refused to submit to jury the question of whether sales franchise agreement was modified to include a good cause requirement.

**[8] Contracts 95 238(2)**

95 Contracts
    95III Modification and Merger
        95k238 Written Contracts
            95k238(2) k. Parol Modification. Most Cited Cases

Under Wisconsin law, unless a contract is one required by law to be in writing, the contract can be modified orally although it provides that it can be modified only in writing.

**[9] Contracts 95 328(1)**

95 Contracts
    95VI Actions for Breach
        95k328 Defenses
            95k328(1) k. In General. Most Cited Cases

Under Texas law, franchisor's fraud claim, which was that franchisee had been submitting false

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

"claimback" forms to franchisor, could not be considered as an affirmative defense to franchisee's breach of contract claim, which was that franchisor breached its distributorship agreement by terminating without proper notice; fraud claim sounded in tort and was not a prior breach of the parties' distributorship agreement, and fraud independent of a contract was not a proper affirmative defense to a claim that a contract was breached.

**[10] Contracts 95 328(1)**

95 Contracts
    95VI Actions for Breach
        95k328 Defenses
            95k328(1) k. In General. Most Cited Cases

Under Texas law, fraud that is a prior material breach of a contract may be a viable affirmative defense to a breach of contract claim.

**[11] Federal Courts 170B 932.1**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(L) Determination and Disposition of Cause
            170Bk932 Reversal or Vacation of Judgment in General
                170Bk932.1 k. In General. Most Cited Cases

Court cannot let a verdict stand where juror confusion is evident, and appellate court must reverse the judgment with respect to those verdicts.

**[12] Contracts 95 323(1)**

95 Contracts
    95V Performance or Breach
        95k323 Questions for Jury
            95k323(1) k. In General. Most Cited Cases

Judgment as a matter of law on claim for breach of distributorship agreement was appropriate absent any evidence of damages resulting from the alleged breach. Fed.Rules Civ.Proc.Rule 50(a), 28 U.S.C.A.

**[13] Contracts 95 312(1)**

95 Contracts
    95V Performance or Breach
        95k312 Acts or Omissions Constituting Breach in General
            95k312(1) k. In General. Most Cited Cases

Under Texas law, franchisor's termination of distributorship agreement did not breach the implied duty of good faith and fair dealing under the Uniform Commercial Code (UCC), where the agreement specifically gave the franchisor the right to terminate without cause with 90 days' notice.

**[14] Contracts 95 168**

95 Contracts
    95II Construction and Operation
        95II(A) General Rules of Construction
            95k168 k. Terms Implied as Part of Contract. Most Cited Cases

Under Texas law, an implied covenant cannot contradict the express terms of a contract.

**[15] Fraud 184 66**

184 Fraud
    184II Actions
        184II(F) Trial
            184k66 k. Verdict and Findings. Most Cited Cases

Franchisor's counterclaim for fraud had to be re-tried, where jury returned inconsistent verdicts, demonstrating that it was confused, and because there was sufficient evidence to support the fraud counterclaim, federal district court failed to properly remedy the confusion by dismissing the fraud counterclaim.

**[16] Fraud 184 58(1)**

184 Fraud
    184II Actions
        184II(D) Evidence

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

        184k58 Weight and Sufficiency
           184k58(1) k. In General. Most Cited Cases

Under Colorado law, direct evidence of fraudulent transactions is not required; circumstantial evidence from which the jury could infer fraud is sufficient for the jury to find fraud.

**[17] Evidence 157 🔑135(1)**

157 Evidence
    157IV Admissibility in General
        157IV(C) Similar Facts and Transactions
           157k133 Showing Intent or Malice or Motive
           157k135 Fraud
               157k135(1) k. In General. Most Cited Cases

Specific examples of fraudulent transactions, which were used to support franchisor's claim that franchisee made false statements in its claimback transactions with franchisor, did not amount to inadmissible evidence of other bad acts, where the general statements of wrongdoing were offered, not as evidence of other bad acts, but as primary evidence of an ongoing fraudulent pattern or practice. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**[18] Federal Civil Procedure 170A 🔑783**

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(C) Answer
           170AVII(C)3 Set-Offs, Counterclaims and Cross-Claims
               170Ak782 Sufficiency of Counterclaims
               170Ak783 k. Alternate, Hypothetical and Inconsistent Counterclaims. Most Cited Cases

Under Colorado or Texas law, franchisor did not waive its counterclaims for unjust enrichment and for an accounting by proceeding with its fraud claim against franchisee, which had allegedly submitted fraudulent claimback forms to franchisor; federal rules permitted franchisor to state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds, and both Texas and Colorado courts would allowed pursuit of claims for both fraud and unjust enrichment. Fed.Rules Civ.Proc.Rule 8, 28 U.S.C.A.

**[19] Account 9 🔑1**

9 Account
    9I Right of Action and Defenses
        9k1 k. Nature and Grounds of Right to an Account. Most Cited Cases

**Account 9 🔑6**

9 Account
    9I Right of Action and Defenses
        9k6 k. Complicated Transactions or Circumstances. Most Cited Cases

Equitable claim for an accounting is not cognizable where an adequate remedy exists at law; however, an accounting may yet be appropriate where the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them.

**[20] Federal Civil Procedure 170A 🔑2515**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
           170AXVII(C)2 Particular Cases
               170Ak2515 k. Tort Cases in General. Most Cited Cases

Material fact issues regarding whether franchisee and franchisor were involved in fiduciary or confidential relationship and, if so, whether franchisor breached any fiduciary duty, precluded summary judgment on claim of breach of fiduciary duty.

**[21] Antitrust and Trade Regulation 29T 🔑823**

29T Antitrust and Trade Regulation
    29TX Antitrust and Prices

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

29TX(C) Resale Price Maintenance
    29Tk823 k. In General. Most Cited Cases
  (Formerly 265k17(1.12))

Franchisor's pricing policies regarding allocation of profit in sales involving both franchise products and non-franchise products did not amount to vertical price fixing, in violation of the Sherman Act, absent any evidence of an "antitrust injury," which required showing of an anticompetitive effect. Sherman Act, § 1 et seq., as amended, 15 U.S.C.A. § 1 et seq.

**\*788** Charles B. Hecht, Michelle W. Stern, John Lawrence Hamil, Lisa F. Perfrement, Hamil Professional Corporation, Denver, CO, for Plaintiff-Counter-Defendant-Appellee.

Andrew M. Low, Dale R. Harris, Meredith A. Munro, Geoffrey H. Simon, John Allen Francis, Davis, Graham & Stubbs, Denver, CO, Donald B. Ayer, Kathleen M. Laubenstein, Lawrence D. Rosenberg, Jones, Day, Reavis & Pogue, Washington, DC, Defendant-Counter-Claimant-Appellant.

Before MURPHY and BALDOCK, Circuit Judges, and VANBEBBER, Senior District Judge.[FN*]

> FN* The Honorable G. Thomas Van-Bebber, Senior District Judge, United States District Court for the District of Kansas, sitting by designation.

### ORDER AND JUDGMENT[FN**]

> FN** This order and judgment is not binding precedent, except under the doctrines of law or the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

VANBEBBER, Senior District Judge.

**\*\*1** This action arose out of the termination of two separate contracts: a sales franchise **\*789** agreement between a manufacturer of heating and air conditioning equipment, American Standard, Inc., d/b/a/ The Trane Company ("Trane"), and Frederick Haynes ("Haynes"); and a distributorship agreement between Trane and Haynes's family-owned business, Haynes Trane Service Agency, Inc. ("HTSA").

In 1968, Haynes entered into a sales franchise agreement with Trane. Under that contract, Haynes became a sales agent for Trane's large commercial systems. The contract was for an indeterminate period and stated that it could "be terminated by either party upon 30 days notice to the other." Haynes also formed HTSA, largely in order to fulfill his responsibilities under his sales franchise agreement with Trane. HTSA's employees solicited orders for Trane commercial systems and performed start-up and warranty services. HTSA also serviced and repaired Trane products and those of other manufacturers.

In 1990, Trane and HTSA entered into a distributorship agreement, whereby HTSA became a wholesale distributor of Trane's "unitary products," which are light commercial and residential products. The distributorship agreement did not include Trane's large commercial systems, for which Haynes continued to hold his sales franchise agreement. HTSA's distributorship agreement was for a term of one year, and it did not contain a renewal option. However, Trane and HTSA entered into new distributorship agreements every year through 1995. Each distributorship agreement was terminable "by either party, with or without cause, upon 90 days written notice." Under Trane's distributorship agreements, including those with HTSA, distributors bought unitary products from Trane at a set price and resold them at a profit. At times, market forces might require a distributor to resell a unitary product at an unusually low price. When this occurred, a distributor could complete a "claimback form" and submit it to Trane for a re-

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

bate, which would be credited to the distributor through Trane's "claimback program."

Early in 1995, Trane began auditing HTSA's claimback forms. Trane concluded that there was evidence of fraud by HTSA. Trane decided to terminate both Haynes's sales franchise agreement and HTSA's distributorship agreement. The sales franchise agreement was terminated, effective in thirty days (July 8, 1995); the distributorship agreement was terminated, effective immediately.

Haynes and HTSA filed this action against Trane, advancing claims for breach of both contracts, breach of implied covenants, breach of fiduciary duty, and violation of federal antitrust laws, as well as other claims which are not the subject of this appeal. Trane asserted counterclaims of fraud, unjust enrichment, and for an accounting, along with other counterclaims which are not the subject of this appeal.

Trane filed motions for summary judgment regarding most of Haynes's and HTSA's claims. In an order dated October 2, 1998, the district court entered summary judgment in favor of Trane on the antitrust claims. At a pretrial conference held February 5, 1999, the court announced that Trane's counterclaims for unjust enrichment and an accounting would not be tried to a jury; the court would decide those claims following a jury trial on the remaining claims. At a pretrial conference held September 17, 1999, the court dismissed Haynes's and HTSA's claims for breach of fiduciary duty. It also dismissed HTSA's claim for breach of the **\*790** implied duty of good faith and fair dealing. No reasons for the dismissals were stated on the record.

**\*\*2** The remaining claims were tried to a jury. The district court submitted three claims to the jury: (1) Haynes's claim for breach of the implied covenants of good faith, fair dealing, and cooperation under his sales franchise agreement; (2) HTSA's claim for breach of the distributorship agreement; and (3) Trane's counterclaim for fraud against HTSA.[FN1]

> FN1. At the close of Trane's evidence, the district court entered judgment against Trane on several counterclaims which are not at issue in this appeal.

At the close of Haynes's and HTSA's evidence, the district court entered judgment against Haynes on his claim for breach of the sales franchise agreement, pursuant to Fed.R.Civ.P. 50(a). The jury, in answers to special questions, found that Trane had violated the implied covenants of good faith, fair dealing, and cooperation under the sales franchise agreement and awarded Haynes $8.1 million in damages. The jury also found that Trane had breached its distributorship agreement with HTSA and awarded HTSA $9.9 million in damages.

The jury found in Trane's favor on its fraud counterclaim, but damages were not determined. However, the district court ruled, *sua sponte* at a post-trial hearing, that there was not sufficient evidence to support the jury's verdict for Trane. The court then entered judgment pursuant to Fed.R.Civ.P. 50(a) for HTSA on the fraud counterclaim. At the same hearing, the court dismissed Trane's counterclaims for unjust enrichment and an accounting.

Trane filed three post-trial motions: (1) a motion to amend the judgment on all of its counterclaims, requesting both reinstatement of the verdict on its fraud counterclaim and a trial to determine the amount of damages due Trane because of HTSA's fraud; (2) a motion for judgment in Trane's favor on Plaintiffs' claims as a matter of law, pursuant to Fed.R.Civ.P. 50(b); and (3) an alternative motion for a new trial. The district court denied all three motions. In the order denying Trane's motion to amend the judgment on its counterclaims, the court stated that Trane had waived its counterclaims for unjust enrichment and an accounting by choosing to proceed with its fraud counterclaim.

On appeal, Trane asks us to: (1) vacate the verdict for Haynes on his claim for breach of the implied covenants of good faith, fair dealing, and co-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

operation under his sales franchise agreement; (2) vacate the verdict for HTSA on its claim for breach of its distributorship agreement; (3) reverse the judgment for HTSA on Trane's fraud counterclaim; and (4) reverse the dismissal of Trane's counterclaims for unjust enrichment and an accounting.

Haynes separately cross-appeals for reversal of the dismissal of his claim for breach of contract, should we vacate the verdict on his claim for breach of the implied covenants. HTSA separately cross-appeals for reversal of the dismissal of its claim for breach of the implied duty of good faith and fair dealing. HTSA also separately cross-appeals the district court's jury instructions on fraud, and an evidentiary decision regarding Trane's fraud counterclaim.

Finally, Haynes and HTSA both cross-appeal for reversal of the district court's dismissal of their claims for breach of fiduciary duty and antitrust violations, and they appeal the district court's refusal to award prejudgment interest on their judgments. We exercise jurisdiction pursuant ***791** to 28 U.S.C. § 1291. We affirm in part, vacate in part, reverse in part, and remand for a new trial.

### STANDARDS OF REVIEW

**\*\*3** A district court's ruling on an issue of law is subject to *de novo* review. *Moncrief v. Williston Basin Interstate Pipeline Co.,* 174 F.3d 1150, 1163-64 (10th Cir.1999). A ruling on a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 is also subject to *de novo* review. *Baty v. Williamette Indus., Inc.,* 172 F.3d 1232, 1241 (10th Cir.1999). Likewise, a district court's interpretations of state law and decisions as to the ambiguity of a contract are subject to *de novo* review. *Devery Implement Co. v. J.I. Case Co.,* 944 F.2d 724, 727 (10th Cir.1991); *City of Wichita v. S.W. Bell Tel. Co.,* 24 F.3d 1282, 1287 (10th Cir.1994). A district court's decision that a cause of action has been waived is reviewed under two standards: factual conclusions are reviewed for clear error, and the application of law to those facts is reviewed *de novo. Fed. Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 173 (10th Cir.1992).

### I. TERMINATION OF HAYNES'S SALES FRANCHISE AGREEMENT

The parties stipulated that the issues concerning termination of the sales franchise agreement are governed by Wisconsin law. Before submitting the case to the jury, the district court determined that the sales franchise agreement was terminable without cause by either party on thirty days notice. The court then concluded that Trane did not breach the agreement, because it provided Haynes with thirty days notice of its termination of the agreement. Having made that determination, the district court then permitted the jury to decide whether Trane breached implied covenants of good faith, fair dealing, and cooperation in terminating the sales franchise agreement without cause.

Trane appeals the jury's verdict that it breached the implied covenants under the sales franchise agreement. Haynes conditionally cross-appeals the court's decision that Trane did not breach the sales franchise agreement, asking us to review that decision only if we vacate the jury's verdict on the implied covenants claim. We affirm the district court's decision that Trane did not breach the terms of the sales franchise agreement as it was written. We reverse the court's decision to submit to the jury Haynes's claim for breach of implied covenants, and we remand for further proceedings on the issues of modification of the agreement and the applicability of equitable estoppel.

#### A. Haynes's Claim for Breach of the Sales Franchise Agreement.

[1] The district court correctly concluded that, under Wisconsin law, contracts effective for an indeterminate period are terminable without cause unless the contract expressly provides otherwise. *See Cal. Wine Ass'n v. Wis. Liquor Co.,* 20 Wis.2d 110, 121 N.W.2d 308, 316-18 (1963); *Regal Ware, Inc. v. TSCO Corp.,* No. 98-1592, 1999 WL 415370, at \*4 (Wis.Ct.App. June 23, 1999) ("Because none of the prior agreements ... con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

tained termination dates, the agreements were terminable at will."); *Rakowski Distrib., Inc. v. Marigold Foods, Inc.,* 193 F.3d 504, 508 (7th Cir.1999) (citation omitted) ("[I]n Wisconsin as in other states, service contracts may be terminable at will unless the agreement specifies otherwise or unless some specific statute changes that background rule.").

**\*\*4** [2][3] Haynes urges us to create an exception to this rule for franchise agreements. In support of his argument, **\*792** Haynes offers examples of cases from other jurisdictions that have required cause for the termination of franchise agreements when the agreements are silent. It appears, however, that Wisconsin courts have not adopted such an exception for franchise agreements. In light of *California Wine Ass'n, Regal Ware, Inc.,* and *Rakowski Distributing, Inc.,* we do not believe that, given the opportunity, Wisconsin courts would adopt such an exception.

In *California Wine Ass'n,* the Wisconsin Supreme Court considered whether an implied exclusive distributorship agreement with no termination provisions could be terminated only after reasonable notice. 121 N.W.2d at 316. The parties to the agreement had a relationship which spanned more than 14 years. *Id.* at 312-13. The court appeared to assume that the agreement was terminable at will and merely held that reasonable notice was required before termination. *Id.* at 317 ("The exclusive distribution contracts were implied from the conduct of the parties and could be terminated at will provided there was reasonable notice.").

In *Regal Ware, Inc.,* an unpublished opinion by the Wisconsin Court of Appeals, the court considered a series of agreements with no termination provisions. 1999 WL 415370, at \*1, \*4. The parties entered into the agreements over a period of about ten years. *Id.* at \*1-2. The court stated that "[b]ecause none of the ... agreements ... contained termination dates, the agreements were terminable at will." *Id.* As in *California Wine Ass'n,* the court's focus was not on whether the contract was terminable at will, but whether the notice given before termination was reasonable. *Id.* at \*4-6.

In *Rakowski Distributing, Inc.,* the Seventh Circuit briefly addressed whether, under Wisconsin law, a service contract without termination provisions was terminable at will. 193 F.3d at 508. We again note that at-will termination was not a central issue in the case. However, the decision remains instructive. The plaintiff was a small, family-owned trucking company that had done hauling and distribution for Marigold Foods for some ten years. *Id.* at 505. The plaintiff devoted about seventy-five percent of its labor force to hauling for Marigold, bought trailers especially suited to Marigold's products, and installed a lift gate on one of its trailers so that it could service one of Marigold's customers without a loading dock. *Id.* at 505-06. Marigold Foods terminated the hauling contract somewhat unexpectedly. Despite the relationship between the parties and the hardship inflicted on the plaintiff, the Seventh Circuit noted that, under Wisconsin law, "service contracts may be terminated at will unless the agreement specifies otherwise...." *Id.* at 508.

While the agreements that were the subjects of these cases were not sales franchise agreements, the relationships involved were similar to the relationship between Haynes and Trane. In each case, the court appeared to assume that the contract, because it was for an indeterminate period of time and had no express provision to the contrary, was terminable at will. We find these cases persuasive, and we determine that, under Wisconsin law, a franchise agreement is terminable at will when it does not specify whether good cause is required for termination.[FN2] Consequently,**\*793** we affirm the district court's decision that the sales franchise agreement, on its face, was terminable at will with thirty days notice, which was given.

> FN2. Haynes also urges us to apply the principles of the Wisconsin Fair Dealership Law ("WFDL") to import a good cause requirement into the sales franchise

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

agreement. The WFDL is inapplicable, because it applies only to "dealers" operating within the state of Wisconsin. Wis. Stat. Ann. § 135.02(2). Haynes did not operate his franchise in Wisconsin. We decline to impose the obligations of the WFDL on parties to an agreement not covered by the WFDL.

### B. Haynes's Claim for Breach of Implied Covenants.

**\*\*5** [4][5] Wisconsin recognizes the implied covenants of good faith, fair dealing, and cooperation. In re Chayka's Estate, 47 Wis.2d 102, 176 N.W.2d 561, 564 n. 7 (1970). However, Wisconsin courts have held that conduct authorized by a contract cannot be a breach of the implied covenants. See Wausau Med. Ctr. v. Asplund, 182 Wis.2d 274, 514 N.W.2d 34, 43 (1994) ( "[Defendant] could not have breached the implied covenant of good faith by terminating his contract because the contract contemplated that he could do so at any time, as long as he gave sixty days' notice, which he did."); Super Valu Stores, Inc. v. D-Mart Food Stores, Inc., 146 Wis.2d 568, 431 N.W.2d 721, 726 (1988); see also Smith v. Rainsoft Water Conditioning Co., 848 F.Supp. 1413, 1417 (E.D.Wis.1994).

[6] Having decided that, as a matter of law, the sales franchise agreement was terminable at will, the district court should not have allowed the jury to decide whether Trane breached the implied covenants in terminating the sales franchise agreement as written, without cause.<sup>FN3</sup> We find the submission of that claim to be in error, and we vacate the jury's verdict on that claim.

> FN3. Haynes alleged that Trane breached the implied covenants in both *performance* of the contract and *termination* of the contract. After reviewing the jury instructions, we conclude that the district court instructed the jury to find whether Trane breached the implied covenants only with regard to termination of the contract. We also note that Haynes's expert witness only testified about damages resulting from termination of the contract.

[7] Nevertheless, Haynes argues that the district court's decision to submit the implied covenants claim to the jury was not erroneous, because the sales franchise agreement was modified to include a good cause requirement for termination. We first note that there was no written modification of the sales franchise agreement. However, evidence was admitted at trial from which a jury might have found that the sales franchise agreement was otherwise modified to include a good cause requirement. Haynes testified that Trane officials, at franchisee meetings, communicated Trane's policy of only terminating franchise agreements for cause. Trane official Don O'Keefe testified that he interpreted franchise agreements to require cause for termination, and that he had never terminated a franchise agreement without cause. Trane official James Schultz testified that he was not aware of any time when a franchise agreement was terminated except for cause.

[8] Although it was requested to do so, the district court did not submit to the jury the question of whether the contract had been modified. Whether a contract has been modified is a question of fact. Akrosil Div. of Int'l Paper Co. v. Ritrama Duramark, Inc., 847 F.Supp. 623, 628 (E.D.Wis.1994). Moreover, the Wisconsin Supreme Court has held, "It is universally accepted that, unless a contract is one required by law to be in writing, the contract can be modified orally although it provides that it can be modified only in writing." S & M Rotogravure Serv., Inc. v. Baer, 77 Wis.2d 454, 252 N.W.2d 913, 920 (1977).

**\*794** In response, Trane argues on appeal that any modification of Haynes's sales franchise agreement had to be in writing, because any oral modification of the contract to include a good cause requirement would violate the statute of frauds. We cannot locate in the record where Trane preserved this argument for appeal. Violation of the statute of frauds is an affirmative defense that must be raised

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

in the trial court or be deemed waived. Fed.R.Civ.P. 8(c); *Radio Corp. of Am. v. Radio Station KYFM, Inc.,* 424 F.2d 14, 17 (10th Cir.1970). We conclude that Trane waived any statute of frauds defense as to modification of the sales franchise agreement.

**\*\*6** Trane further argues on appeal that the parol evidence rule bars any attempt by Haynes to import a good cause requirement into the agreement. Trane's argument is misplaced. The parol evidence rule only bars evidence of prior or contemporaneous promises that contradict the written terms of an integrated contract. *Fed. Deposit Ins. Corp. v. First Mortgage Investors,* 76 Wis.2d 151, 250 N.W.2d 362, 367 (1977) (citations omitted). The district court properly admitted evidence to support modification which was not evidence of prior or contemporaneous promises.

We conclude that the district court committed reversible error when it refused to submit to the jury the question of whether the sales franchise agreement was modified to include a good cause requirement. We further conclude that the jury should have been requested to make factual determinations which would control the application of an equitable estoppel theory. Special questions or interrogatories should have been submitted and answered.[FN4] Under the doctrine of equitable estoppel, Trane could be estopped from denying that the sales franchise agreement had been modified to require good cause for termination if Trane engaged in action or inaction which induced detrimental reliance by Haynes. *See Gabriel v. Gabriel,* 57 Wis.2d 424, 204 N.W.2d 494, 497 (1973). Haynes testified that Trane officials stated in franchisee meetings that Trane's policy was to only terminate franchise holders for cause. Such evidence is sufficient to create an issue of fact for the jury as to whether Trane should be equitably estopped from denying that the agreement had been modified to require good cause for termination.

> FN4. Haynes submitted a requested jury instruction on equitable estoppel (Haynes Supp.App. 639) and also argued that his equitable estoppel claim should be submitted to the jury in opposition to Trane's Rule 50(a) motion (App.3458-59).

### II. TERMINATION OF HTSA'S DISTRIBUTORSHIP AGREEMENT
#### *A. HTSA's Claim for Breach of Contract.*

[9] The jury found that Trane breached the distributorship agreement with HTSA and awarded HTSA $9.9 million in damages. The claim should not have been submitted to the jury because HTSA failed to offer any relevant proof of damages. We vacate the jury's damages award as we explain more fully below.

The parties stipulate that Texas law applies to HTSA's breach of contract claim. HTSA alleged that Trane's termination without notice was a breach of the express terms of the distributorship agreement, and the jury found that Trane breached the agreement. Trane asserted an affirmative defense of fraud to HTSA's claim of breach. The affirmative defense was necessarily rejected by the jury when it found for HTSA on the breach issue. But the jury also found that HTSA defrauded Trane by filing false claimback forms, and **\*795** returned a verdict for Trane on its counterclaim for fraud.

The trial court gave the following jury instruction regarding HTSA's breach of contract claim and Trane's affirmative defense of fraud to that claim:

> For [HTSA] to recover from Trane on its claim of breach of the distributor agreement, you must find that, one, Trane failed to terminate the contract in accordance with its terms and, two, [HTSA] has suffered resulting damages.

> **\*\*7** If you find that [HTSA] has proven both of these elements by a preponderance of the evidence, then you must find for [HTSA], unless you also find that Trane has proven its affirmative defense to this claim by a preponderance of the evidence. Trane's affirmative defense to this claim is that [HTSA's] conduct was fraudulent.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

If you find that Trane's affirmative defense has been proven by a preponderance of the evidence, then your verdict on this claim must be in favor of Trane. On the other hand, if you find that Trane failed to terminate the contract in accordance with its terms, and that Trane has not proven its affirmative defense by a preponderance of the evidence, then you must find in favor of [HTSA].

....

For Trane to prove its affirmative defense of fraud *and recover from [HTSA] on its counterclaim for fraud* by following a pattern or practice of falsifying documents submitted in support of claims for payment under the claimback program ..., you must find that Trane has proven all of the following by a preponderance of the evidence....

(App. 3969, 3641) (emphasis added).

By giving this instruction, the district court in effect instructed the jury that Trane must prove the same elements to win on its affirmative defense of fraud as it must prove to win on its counterclaim of fraud. Despite this instruction, the jury found *against* Trane on its affirmative defense and *for* Trane on its counterclaim. Such findings are incompatible under the instruction given.

HTSA argues that the verdicts were not inconsistent, because fraud is not an affirmative defense to a breach of contract claim. HTSA also argues that once the district court granted HTSA's Rule 50 motion with respect to Trane's fraud counterclaim, there was no fraud verdict to be inconsistent with HTSA's breach of contract verdict.

We agree that the district court erred when it permitted Trane's fraud claim to be considered as an affirmative defense to HTSA's breach of contract claim. Fraud is a claim that sounds in tort; and fraud independent of a contract is not a proper affirmative defense to a claim that a contract was breached. *See Kaiser Trading Co. v. Associated Metals & Minerals Corp.,* 321 F.Supp. 923, 928 (N.D.Cal.1970) ("No case could be found, and no commentator has suggested, that a tort committed by one party to a contract against the other, independent of the contract itself, is a defense to a breach of contract action by the tortfeasor.").

[10] Fraud that is a prior material breach of a contract may be a viable affirmative defense to a breach of contract claim. *Hampton v. Minton,* 785 S.W.2d 854, 857-58 (Tex.App.1990). But in this case the district court had already ruled that HTSA's alleged fraud was not a prior breach of the distributorship agreement. Trane failed to appeal that ruling, thus rendering it the law of the case.

[11] The district court should not have instructed the jury that fraud was an affirmative **\*796** defense to HTSA's breach of contract claim. But, whether or not the instruction was valid, the jury obviously was confused by it and reached inconsistent and incompatible verdicts. The district court should have ordered a new trial. A court cannot let a verdict stand where juror confusion is evident, and we must reverse the judgment with respect to those verdicts. *Jarvis v. Commercial Union Assur. Cos.,* 823 F.2d 392, 395-96 (10th Cir.1987) (citations omitted); *Global Van Lines, Inc. v. Nebeker,* 541 F.2d 865, 868 (10th Cir.1976) (citations omitted).

**\*\*8** [12] Our decision does not entitle HTSA to retry its claim for breach of the distributorship agreement. The district court should have dismissed HTSA's claim when Trane moved for judgment as a matter of law at the close of HTSA's evidence. (App.2645-46). Judgment as a matter of law was appropriate under Fed.R.Civ.P. 50(a), because HTSA failed to provide evidence of damages resulting from Trane's breach of the distributorship agreement.

HTSA claimed that Trane's termination without notice breached the agreement. The agreement provided that it could be terminated "(a) by either party, with or without cause, upon 90 days written notice; ...." or for other reasons not at issue here.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

(App. 4680-69). Under the plain language of the agreement, termination itself could not have been the breach. Trane was expressly entitled to terminate the agreement, with or without cause. Modification of the HTSA distributorship agreement was not an issue identified in the district court, nor was there any evidence offered at trial which suggested any modification. The only breach that the jury could reasonably have found was Trane's failure to give 90 days notice before terminating the agreement.

HTSA presented no evidence to support a finding of damages resulting from Trane's failure to give proper 90-day notice of termination. HTSA's damages evidence centered on damages resulting from the fact of termination. HTSA's damages expert, Jon Karraker, repeatedly stated that his calculations were based on damages stemming from termination of the contract. Trane argues, and we agree, that there was no evidence from which the jury could assess damages as a result of Trane's failure to give proper notice, which was the only identifiable breach of the distributorship contract.

HTSA argues on appeal that Trane did not argue the "causation issue" in its Rule 50(a) motion and thus did not properly preserve the issue for review. The phrase "causation issue" is inapt, but we assume that HTSA uses it to refer to the question of whether it offered evidence from which a reasonable jury could assess damages for Trane's failure to give 90 days notice of termination. The record reveals that Trane made several references to HTSA's failure to prove damages, specifically arguing that any damages caused by Trane's failure to give proper notice should be limited to those accruing within 90 days of the notice, and that HTSA did not offer such evidence. (App. 286; App. 340-43; App. 2645-50).

Even if Trane's objections were not clear from the record, this court would exercise its discretion to review the submission of HTSA's damages claim to the jury for plain error. *See Oakland Oil Co. v. Conoco Inc.,* 144 F.3d 1308, 1314 n. 4 (10th Cir.1998). Under the plain error standard, we would reach the same conclusion. Because HTSA failed to present evidence of any damages incurred as a result of Trane's failure to give 90 days notice, the district court should have granted Trane's Rule 50(a) motion. We vacate the jury's verdict awarding damages to HTSA **\*797** for breach of the distributorship agreement.

### B. HTSA's Claim for Breach of Implied Duty Under the UCC.

**\*\*9** [13] The parties agree that Texas law applies to HTSA's claim for breach of the implied duty of good faith and fair dealing. During a pretrial conference, the district court dismissed that claim. HTSA argues that the dismissal was improper, because Texas law recognizes the implied duty of good faith and fair dealing in contracts for the sale of goods under the Uniform Commercial Code ("UCC").

Trane denies that the UCC applies to the distributorship agreement. However, the Texas Court of Appeals recently held, in accordance with the majority rule, that a distributorship agreement could be subject to the UCC. *Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 787-88 (Tex.App.2001).

[14] Nevertheless we agree that HTSA is not entitled to present evidence that Trane's termination of the distributorship agreement breached the implied duty under the UCC. Under Texas law, an implied covenant cannot contradict the express terms of a contract. *Exxon Corp. v. Atl. Richfield,* 678 S.W.2d 944, 947 (Tex.1984). By the express terms of its agreement, Trane had a right to terminate without cause on 90 days notice. HTSA already has failed to present evidence of any damages stemming from Trane's failure to give 90 days notice before terminating the agreement, and it is not entitled to another bite at that apple.

However, the terms of the distributorship agreement do not preclude HTSA from trying its claim for breach of the implied duty based on

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

Trane's actions prior to termination. HTSA claimed in its First Amended Complaint and in the Pretrial Order that Trane's pretermination conduct constituted a breach of the implied duty. (App. 54; App. 105). Specifically, HTSA claimed that Trane:

> repeatedly withdrew products that Plaintiffs could sell or customers to whom Plaintiffs could sell such products; forced manufacturers of non-Trane equipment to pay Trane what amounted to a royalty on sales by Trane's franchises, including Plaintiffs, of such manufacturers' equipment without informing Plaintiffs; imposed price minimums and maximums and other pricing policies; and imposed numerous restrictions on how Plaintiffs could conduct their business-including restrictions on the purchase and sale of "Commercial After-Market Products" and of non-Trane products.

(App. 105). If HTSA has evidence that those pretermination actions violated the implied duty of good faith and fair dealing, HTSA is entitled to present that evidence at trial.

We reverse the district court and remand for a trial on HTSA's claim with respect to Trane's pretermination actions. If, on remand, the jury determines that the sale of goods was the dominant factor in HTSA's distributorship agreement, thus making it subject to the Texas UCC, then the jury should also determine whether Trane breached the implied duty of good faith and fair dealing required under the UCC for such agreements.

### III. TRANE'S COUNTERCLAIMS
#### A. The Counterclaim for Fraud.

**\*\*10** [15] The jury found for Trane on its fraud counterclaim against HTSA, but it was not asked to assess damages. The district court announced that it would assess damages after trial. However, before **\*798** doing so, the district court overturned the jury's verdict. On January 12, 2000, the district court ruled, *sua sponte,* that "under the standards of Rule 50, the evidence does not support the counterclaim of fraud and, therefore, I'm dismissing it."

(App.3690).<sup>FN5</sup>

> FN5. Because we find that the fraud counterclaim must be retried, we need not decide Trane's assertion that the court had no authority to vacate the verdict without a post-verdict motion by HTSA.

As previously explained, Trane's counterclaim for fraud must be retried. The jury returned inconsistent verdicts, demonstrating that it was confused. HTSA argues that the district court properly remedied this confusion by dismissing Trane's fraud counterclaim. We disagree. We have already discussed why no action short of retrying the case would remedy the inconsistent verdicts. Moreover, we find that there was sufficient evidence to support Trane's fraud counterclaim and the district court should not have dismissed it.

[16] The parties agree that Colorado law applies to Trane's fraud claim. HTSA asserts that the district court was authorized to overturn the verdict because Trane was required to provide direct evidence of false transactions and failed to do so. However, direct evidence of fraudulent transactions is not required under Colorado law. *Kopeikin v. Merchs. Mortgage & Trust Co.,* 679 P.2d 599, 602 (Colo.1984) (*en banc*) (citations omitted) ("We have held repeatedly that fraud may be inferred from circumstantial evidence."). The cases from other jurisdictions cited by HTSA for the proposition that fraud must be proved by direct evidence are inapplicable. Under Colorado law, Trane needed only to produce circumstantial evidence from which the jury could infer fraud in order for the jury to find that HTSA was liable on Trane's counterclaim.

HTSA also argues that the district court erred when it instructed the jury that it only needed to find a pattern of fraudulent conduct in order to decide in favor of Trane on its fraud counterclaim. (App. 3641-42).<sup>FN6</sup> We reject this argument. The pattern and practice defined by the district court in its instruction clearly set forth for the jury the ele-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

ments of fraud, and required the jury to find that each of them had been proved. The evidence that Trane presented at trial was sufficient for the jury to find a pattern of fraud by HTSA in submitting its claimback forms. Denice Louder, billing administrator for HTSA's distributor products group, testified by deposition that most of the claimback forms she submitted contained intentionally false information. She also testified extensively about the creation of false documentation intended to conceal the fraudulent claims. If **\*799** believed, the evidence showed that the submission of false claimback forms and the subsequent concealment of their falsity was routine. Furthermore, the testimony regarding HTSA's pattern of fraud was supplemented by specific examples of claimback submissions that were fraudulent. HTSA asserts that Trane should not have been permitted to adduce evidence of specific fraudulent claimback submissions, because Trane was limited to presenting evidence on 336 claimback transactions which were the subject of a statistical analysis conducted by Trane's expert, Jo Marie Dancik. None of the specific examples of fraud offered by Trane at trial were within the statistical sampling transactions.

> FN6. The instruction, in pertinent part read:
>
> For Trane to ... recover from [HTSA] on its counterclaim for fraud by following a pattern or practice of falsifying documents submitted in support of claims for payment under the claimback program ..., you must find that Trane has proven all of the following by a preponderance of the evidence:
>
> 1. [HTSA] regularly made false representations of past or present fact.
>
> 2. The fact was material.
>
> 3. [HTSA] made the representations knowing them to be false, or [HTSA] was aware that [HTSA] did not know whether it was true or false.
>
> 4. [HTSA] made the representations with the intent that Trane act in reliance on the representations.
>
> 5. Trane relied on the representations.
>
> 6. Trane's reliance was justified; and
>
> 7. This reliance caused damage to Trane by causing it to make payments to which HTSA was not entitled.

**\*\*11** Admission of evidence is within the sound discretion of the trial court. *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 800 (10th Cir.1997) (citation omitted). We do not find that Trane was limited to presenting evidence on the statistical sampling transactions. Only Dancik was limited in her testimony to discussing the transactions that she sampled. We are not persuaded that other witnesses should have been prohibited from discussing claimback transactions which were outside the statistical samples.

[17] HTSA further argues that the district court committed reversible error when it erroneously overruled HTSA's objections, asserted under Fed.R.Evid. 404(b), to introduction of the specific examples of fraudulent transactions. HTSA asserts that the specific examples of fraud were evidence of other bad acts which, under Rule 404(b), could not be used to show that HTSA made false statements in the 336 claimback transactions which were the subject of the statistical sampling conducted by Dancik. HTSA's argument is inapplicable here, where the "general statements of wrongdoing" were offered, not as evidence of other bad acts, but as primary evidence of an ongoing fraudulent pattern or practice.

We conclude that the district court did not err when it admitted specific evidence of HTSA's allegedly fraudulent acts in order to show a pattern or practice of fraud. Furthermore, the district court did not err when it overruled HTSA's objections made

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

under Rule 404(b).[FN7] We find no error in the instructions that were given on the fraud counterclaim (with the exception of treating fraud as an affirmative defense to HTSA's breach of contract claim, as previously discussed), and we conclude that the verdict of the jury was supported by the record. The district court's post-trial dismissal was an impermissible re-weighing of the evidence. *Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988).

> FN7. HTSA also argues that the district court committed reversible error when it admitted evidence of fraudulent acts under Fed.R.Evid. 406. However, HTSA has not indicated where in the record it preserved this objection for appeal. In any event, the question is moot, because we have determined that the evidence was properly admitted under Fed.R.Evid. 402. "If evidence is admissible under any of the Federal Rules of Evidence, this court may affirm the admission." *United States v. Robinson,* 978 F.2d 1554, 1562 (10th Cir.1992).

The jury was entitled to find, under the instructions they were given, that Trane proved its fraud counterclaim. Nevertheless, we remand for retrial of the counterclaim because the verdict, under the instructions given, was inconsistent with HTSA's breach of contract verdict.

### B. The Counterclaims for Unjust Enrichment and an Accounting.

[18] After trial, the district court dismissed Trane's counterclaims for unjust ***800** enrichment and an accounting, holding that Trane had waived them by pursuing its fraud counterclaim. Trane argues on appeal that it was not required to make an election, but that it was entitled under Fed.R.Civ.P. 8 to plead in the alternative. HTSA makes no response to that argument, but claims that Trane did not prove its unjust enrichment claim; or, in the alternative, that unjust enrichment is a legal claim, so that the only error the district court could have committed was its refusal to submit the claim to a jury. HTSA also argues that Trane was not entitled to the equitable remedy of an accounting because it had an adequate legal remedy. We reject HTSA's arguments as unresponsive to the issue on appeal, and we reverse the dismissal of the claims and remand them for consideration on the merits.

**\*\*12** The parties use both Texas and Colorado law to support their positions. It is irrelevant which state's law applies, since the law is the same in both states.

We can find no support for the district court's conclusion that the two counterclaims were waived when Trane proceeded with its fraud counterclaim. Trane correctly points out that Fed.R.Civ.P. 8 permits a party to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds." Furthermore, both Texas and Colorado courts have allowed plaintiffs to pursue claims for both fraud and unjust enrichment. *See Ludlow v. DeBerry,* 959 S.W.2d 265, 275, 279 (Tex.App.1997); *Bock v. Am. Growth Fund Sponsors, Inc.,* 904 P.2d 1381, 1384, 1387 (Colo.Ct.App.1995). We hold that the district court erred in finding that Trane waived its counterclaims for unjust enrichment and an accounting.[FN8]

> FN8. HTSA's assertion that Trane failed to offer adequate proof of its waived counterclaims is without merit, since the substance of those claims was never before the court or the jury.

Both Colorado and Texas courts have recognized that claims for unjust enrichment are equitable. *Salzman v. Bachrach,* 996 P.2d 1263, 1265 (Colo.2000) (en banc); *Bransom v. Standard Hardware, Inc.,* 874 S.W.2d 919, 927 (Tex.App.1994). On remand, the district court should make findings as to whether or not Trane has an adequate remedy at law with respect to its counterclaim for unjust enrichment before determining whether the claim may be tried to the court.

[19] The same determination should be made

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

with respect to Trane's counterclaim for an accounting. An equitable claim for an accounting is not cognizable where an adequate remedy exists at law. *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) (citations omitted). However, an accounting may yet be appropriate where "the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *Id.* (citation and internal quotation marks omitted). Here, Trane claims nearly 3,000 claimback submissions are at issue. The district court declined to submit the issue of damages to the jury in the first instance, because of the complexity of the fraud counterclaim. We conclude that this case is one where the accounts are so complicated that an equitable accounting may be warranted.

### IV. PLAINTIFFS' CLAIMS FOR BREACH OF FIDUCIARY DUTY

[20] At a pretrial conference, without explanation, the district court dismissed Haynes's and HTSA's claims for breach of fiduciary duty. Trane previously had **\*801** moved for summary judgment on those claims, and Trane's motion was ripe for consideration at the pretrial conference. Because the district court had affidavits and other evidence before it on these claims, we assume that it considered such evidence. We therefore review the dismissal of Haynes's and HTSA's claims for breach of fiduciary duty as a grant of summary judgment pursuant to Trane's motion, and we determine that the decision was in error as to both Plaintiffs.

The parties agree that the claims for breach of fiduciary duty are governed by Colorado law. Colorado courts recognize a cause of action for breach of fiduciary duty, but they do not appear to have specifically addressed whether such a cause of action is available in the context of a franchise relationship or a distributorship relationship. The only Colorado case we have found or been provided addressing the existence of a fiduciary duty in a franchise relationship is *Mr. Steak, Inc. v. Belleview Steak, Inc.,* 38 Colo.App. 278, 555 P.2d 179 (1976). But that case provides no guidance on whether Colorado courts would recognize such a duty.

**\*\*13** Some courts have found no inherent fiduciary duty in a franchise or distributorship relationship. *See Marcella & Co., Inc. v. Avon Prods., Inc.,* 282 A.D.2d 718, 724 N.Y.S.2d 192 (N.Y.App.Div.), *leave to appeal denied,* 96 N.Y.2d 721, 733 N.Y.S.2d 374, 759 N.E.2d 373 (2001); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594-96 (Tex.1992); *Power Motive Corp. v. Mannesmann Demag Corp.,* 617 F.Supp. 1048, 1051 (D.Colo.1985) (applying Ohio law). Other courts have held that a fiduciary duty may arise in a franchise relationship, depending on the relationship between the parties. *See Gen. Bus. Machs. v. Nat'l Semiconductor Datachecker/DTS,* 664 F.Supp. 1422, 1425 (D.Utah 1987); *Carter Equip. Co. v. John Deere Indus. Equip. Co.,* 681 F.2d 386, 390-91 (5th Cir.1982).

In the absence of direction from Colorado courts that fiduciary duties never can arise in franchise relationships, we will apply the test that Colorado courts generally apply when determining whether there has been a breach of fiduciary duty. Fiduciary duties may arise when parties are engaged in a fiduciary, or confidential, relationship. *Moses v. Diocese of Colo.,* 863 P.2d 310, 321 (Colo.1993) (en banc). " 'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.' " *Id.* (quoting Restatement (Second) of Torts § 874 cmt. a (1979)). Such a duty may arise when one party is in a superior position relative to the other party. *Id.* (citations omitted); *First Nat'l Bank of Meeker v. Theos,* 794 P.2d 1055, 1060-61 (Colo.Ct.App.1990). But "[a]n unequal relationship does not automatically create a fiduciary duty. In order to be liable, the superior party must assume a duty to act in the dependent party's best interest." *Moses,* 863 P.2d at 322 (citations omitted). "A fiduciary relationship can arise out of a relationship of blood, business, friendship, or association." *Id.; see*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

*also First Nat'l Bank of Meeker,* 794 P.2d at 1061 (setting forth test).

Haynes testified in an affidavit concerning his long relationship with Trane, the assurances of Trane, and the trust engendered by those assurances. (Haynes Supp.App. 121-22). This evidence is sufficient to create a genuine issue of material fact as to whether Haynes and Trane were involved in a fiduciary or confidential relationship and, if so, whether Trane breached that duty. Accordingly, we reverse and remand for trial on this issue.

### *802 V. PLAINTIFFS' ANTITRUST CLAIMS

[21] The district court granted summary judgment for Trane on antitrust claims made by both Haynes and HTSA. These claims stem from Trane's pricing policies. Plaintiffs claimed that Trane's policies regarding the mixed sales of Trane and non-Trane products constituted vertical price fixing, in violation of the Sherman Act, 15 U.S.C. § 1. Plaintiffs sought treble damages under the Clayton Act, 15 U.S.C. § 15.

**\*\*14** Trane's Manual on Policies and Procedures No. 34 regulated the division of profits when Haynes or HTSA made a "mixed sale" comprised of both a Trane product and a non-Trane product. Such sales were permitted when necessary to meet a customer's requirements. Essentially, the manual prevented Plaintiffs from allocating all of the profit from such a sale to the non-Trane product. The manual specified that Haynes or HTSA could keep the first thirty percent of any mark-up over cost on a non-Trane product involved in a mixed sale. After the first thirty percent, Plaintiffs were required to split the mark-up evenly with Trane. In addition, the mark-up of the non-Trane products had to be directly proportional to the mark-up of the Trane products, based on the lowest price at which Trane would sell its products. Haynes and HTSA contend that the provisions of the manual violate federal antitrust law, because they effectively mandate minimum prices for Trane products and maximum prices for non-Trane products.

To survive summary judgment, a plaintiff must demonstrate an "antitrust injury," which is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant['s] acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). The purpose of this requirement is to ensure that "courts connect the alleged injury to the purposes of the antitrust laws. Compensation for that injury must be consistent with the purposes of antitrust law generally and with the rationale for condemning the particular defendant." 2 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law,* ¶ 362a (Revised ed. 1995). "The point is to prevent an award of damages for losses stemming from continued or increased competition rather than diminished competition-a result that otherwise would be 'inimical' to the antitrust laws." *Coors Brewing Co. v. Miller Brewing Co.,* 889 F.Supp. 1394, 1400 (D.Colo.1995) (citations and internal quotation marks omitted).

The district court held that Haynes and HTSA failed to show antitrust injury because they did not present evidence of an injury to competition or the relevant market. In so holding, the district court stated that " 'the injury of the type the antitrust laws were intended to prevent' is an injury to competition or an injury to the relevant market." (App. 96-7). The court then explained Plaintiffs' lack of evidence regarding injury to competition.

Plaintiffs argue on appeal that they are not required to show an anticompetitive effect, because anticompetitive effect is an element of antitrust liability, rather than an antitrust injury. Plaintiffs disagree with the district court's definition of the "injury of the type the antitrust laws are intended to prevent." They claim that the relevant injury is not injury to competition, but rather the "crippl[ing of] the freedom of traders ... thereby restrain[ing] their ability to sell in accordance with their own judg-

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

ment." ***803** *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons,* 340 U.S. 211, 213, 71 S.Ct. 259, 95 L.Ed. 219 (1951), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984).

****15** Haynes and HTSA argue that, because the policies manual interfered with their ability to sell in accordance with their own judgment, they suffered antitrust injury. We disagree. Their definition is too broad. It could be used to find antitrust injury in a situation where pricing regulation resulted in increased competition. In such a case, the alleged injury certainly would not "reflect the anticompetitive effect" of the regulation. *Brunswick Corp.,* 429 U.S. at 489.

Plaintiffs had to show that their alleged injuries reflect the anticompetitive effect of the alleged violation. Implicit in that requirement is the condition that they must first show an actual anticompetitive effect. Plaintiffs offered no evidence that showed an anticompetitive effect, and therefore, showed no antitrust injury.

The result is consistent with the way in which we have analyzed antitrust injury in the past. In *Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745, 754-55 (10th Cir.1999), we held that the plaintiff adequately alleged antitrust injury after finding that the defendants' actions resulted in a reduction of competition from two competitors in the market to one monopolist. Here, Haynes and HTSA made no attempt to show that the policies manual resulted in reduced competition. Rather, they merely offered evidence to suggest that the policies of the manual resulted in a reduction of their profits. We note, as did the district court, that the manual only affected the allocation of internal profits; customers saw no increase or decrease in prices because of its implementation. Moreover, there is no indication that Plaintiffs were foreclosed from competing in the market as a result of the policies. *Cf. Pace Elec., Inc. v. Canon Computer Sys., Inc.,* 213 F.3d 118, 145 (3d Cir.2000) ("[A] dealer terminated for its refusal to abide by a vertical minimum price fixing agreement suffers antitrust injury."). We affirm the district court's grant of summary judgment to Trane on Plaintiffs' antitrust claims.

*CONCLUSION*

For the reasons stated above, we AFFIRM in part, VACATE in part, REVERSE in part, and REMAND. Specifically, we affirm the district court's dismissal of Haynes's claim for breach of the sales franchise agreement as it was written, we reverse and vacate the jury's verdict for Haynes on his claim for breach of implied covenants under the agreement as written, and we remand for further proceedings consistent with this opinion on the issues of modification of the agreement and equitable estoppel.

We reverse the jury's verdict for HTSA as to damages for breach of the express terms of the distributorship agreement with respect to termination. We remand for trial on HTSA's claim for breach of the implied duty with respect to Trane's pretermination actions.

We reverse the district court's decision to overturn the jury's verdict for Trane on its fraud counterclaim and remand for a new trial on the counterclaim. We reverse the district court's dismissal of Trane's counterclaims for unjust enrichment and an accounting, and we remand for consideration of those counterclaims, consistent with this opinion.

****16** We reverse the grant of summary judgment on Haynes's and HTSA's claims for breach of fiduciary duty and remand for trial. We affirm the district court's grant of summary judgment on Haynes's and ***804** HTSA's antitrust claims. Haynes's and HTSA's requests for prejudgment interest have been rendered moot by this opinion.

C.A.10 (Colo.),2002.
Haynes Trane Service Agency, Inc. v. American Standard, Inc.
51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)), 49 UCC Rep.Serv.2d 65
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 51 Fed.Appx. 786, 2002 WL 1972281 (C.A.10 (Colo.)))**

(Colo.)), 49 UCC Rep.Serv.2d 65

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.