IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant.

---

**DEFENDANT SUNCOR ENERGY (U.S.A.) INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS OR STAY THE SECOND THROUGH
FIFTH CLAIMS FOR RELIEF OF PLAINTIFFS' COMPLAINT**

---

Defendant Suncor Energy (U.S.A) Inc. ("Suncor") submits this Reply Memorandum in Support of its Motion to Dismiss or Stay the Second through Fifth Claims of Relief of Plaintiffs' Complaint ("Comp.") (Dkt. No. 1).

**INTRODUCTION**

Western Convenience Stores, Inc.'s ("WCS's") and Western Truck One, LLC's ("WTO's") (collectively "Plaintiffs'") Response to Motion to Dismiss or Stay Second through Fifth Claims for Relief (Dkt No. 18) ("Opp. Mem.") has several fatal flaws. Plaintiffs' arguments in response to Suncor's motion to dismiss are undermined by both Plaintiff's own allegations and admissions and the provisions of the two contracts at issue – which *expressly* authorize the actions that Plaintiffs complain breached *implied* covenants of good faith and fair dealing. In fact, Plaintiffs' arguments expose the Second through Fifth Claims for relief as mere attempts to either rewrite the express covenants contained in the contracts at issue or preclude

Suncor from exercising its rights under those agreements. The law provides neither form of relief to Plaintiffs. The four claims at issue, therefore, should be dismissed.

In opposing Suncor's alternative request for a stay, Plaintiffs simply assert that the fact that WCS (but not WTO) has filed a price discrimination claim is enough to adjudicate the Second through Fifth Claims in this Court despite the pendency of the same claims in Colorado state court. But there is no connection between the price discrimination claim and the claims at issue on Suncor's Motion, as Plaintiffs' own actions demonstrate. Plaintiffs originally filed the claims at issue here in Colorado state court without once mentioning price discrimination. Neither the legal elements nor factual nucleus of WCS's price discrimination claim overlaps with the elements or factual nucleus of the state-law contract and tort claims at issue. Rather, the asserted connection is a *post hoc* justification to avoid litigating the Second through Fifth Claims in Colorado state court, where Plaintiffs initially filed them and where Suncor has (1) moved for summary judgment, which would resolve all of these claims, and (2) filed counterclaims to collect amounts due from WCS and its principals for unpaid fuel bills. Moreover, absent a dismissal of these claims, all of the factors to be considered by the 10th Circuit, and cited by Plaintiffs in their Response, favor a stay. Therefore, to the extent that the Second through Fifth Claims are not dismissed, Suncor respectfully requests that they be stayed.

## ARGUMENT

I. **PLAINTIFFS' OPPOSITION MEMORANDUM CONFIRMS THAT THE SECOND THROUGH FIFTH CLAIMS FOR RELIEF ARE LEGALLY INSUFFICIENT AND CANNOT BE SALVAGED BY AMENDMENT**

   A. **Breach of the Implied Covenant of Good Faith and Fair Dealing (Second and Third Claims for Relief)**

   1. <u>Burden of Proof</u>. Plaintiffs concede that they bear the burden of proof on the Second and Third Claims for Relief in their Complaint.

2.      Elements.  Plaintiffs concede that Suncor has accurately stated the elements for breach of the implied covenant of good faith and fair dealing, but state that the implied covenant "can limit a contractual right to terminate or discharge without cause when there is 'an express or implied promise, independent of the covenant of good faith itself, restricting that right.'"  Opp. Mem. at 7 (quoting *Soderlun v. Public Serv. Co. of Colo.*, 944 F.2d 616, 623 (Colo. App. 1997).  As explained below, no such express or implied promise independent of the implied covenant of good faith and fair dealing has been, or can be, pleaded here.

Plaintiffs also set forth the elements of a breach of contract.  While these elements are correctly identified, they are not relevant to the claims that Plaintiffs have actually asserted in the Complaint.

3.      Response to Plaintiffs' Contentions.

a.      Second Claim for Relief.  On the Second Claim for Relief, Plaintiffs' opposition memorandum makes four arguments that do not address the legal sufficiency of the claim for breach of the implied covenant of good faith and fair dealing of the Master Product Purchase and Sale Agreement ("Master PSA") that they have attempted to allege.

*First*, Plaintiffs deny that the terms of the Master PSA govern purchases of fuel made by WCS.  *See* Opp. Mem. at 7 (stating that the Complaint alleges only that the Master PSA "'purport[s] to govern' all transactions/agreements between WCS and Suncor for purchase [sic] of fuel and that such transactions or agreements have been subject to predecessor and oral agreements").  This is an odd argument, for Plaintiffs admitted in their state-court complaint alleging the same claims that the Master PSA "governs all transactions or agreements entered into or consummated between WCS and Suncor for the purchase and sale of petroleum products."  *See* Exhibit 3 attached to Memorandum in Support of Defendant Suncor Energy

(U.S.A.) Inc.'s Motion to Dismiss or Stay the Second through Fifth Claims for Relief of Plaintiffs' Complaint ("Mot. to Dismiss") (Dkt. No. 12) ¶ 6. Furthermore, the terms of the Master PSA expressly negate any such contention. In relevant part, the Master PSA states:

> Except as expressly provided in a written purchase and sale agreement executed by both of the Parties, this *Agreement shall govern any and all transactions or agreements entered into or consummated between the Parties on or after the Effective Date hereof for the purchase and sale of any petroleum products*, including without limitation, gasoline, distillate, resid, slurry oil, propane, or butane, and the General Terms and Conditions attached hereto as **Exhibit A** shall be incorporated into, form a part of, and apply to any such transaction or agreement . . .

Master PSA ¶ 1 (attached as Exhibit 1 to the Mot. to Dismiss) (emphasis added). Thus, by its own terms, the Master PSA applies to every purchase of fuel that WCS made from Suncor after January 17, 2007, the effective date of the agreement. The Complaint does not allege that there is any other written purchase and sale agreement executed by Suncor and WCS that provides to the contrary. Thus, any suggestion that the Master PSA does not supply the terms and conditions governing purchase and sale transactions between Suncor and WCS must be rejected.

*Second*, Plaintiffs contend that certain verbal and implied agreements and the parties' "custom and practice" precluded Suncor from either withdrawing credit, Opp. Mem. at 8 (citing Comp. ¶ 16), or suspending product sales to WCS. *Id*. (citing Comp. ¶¶ 14, 17). Again, this argument fails as a matter of law. The Master PSA directly addresses both issues. Paragraph 27 of Exhibit A of the Master PSA eliminates the possibility that a "custom or practice" may arise between the parties that would alter the terms of the agreement:

> No custom or practice which may arise between the parties in the course of operating under this Agreement will be construed to waive any Parties' [sic] rights to either ensure the other Party's strict performance with the terms and conditions of this Agreement, or to exercise any rights granted to it as a result of any breach or default under this Agreement.

Mot. to Dismiss, Ex. 1 at A-5, ¶ 27.  The same paragraph also prohibits oral waiver of any rights conferred by the Master PSA.  *Id*.  ("Neither Party shall be deemed to have waived any right conferred by this Agreement or under applicable law unless such waiver is set forth in a written document signed by the Party to be bound, and delivered to the other Party.").

Similarly, paragraph 29 of the Master PSA prohibits any oral or implied agreements from modifying the terms and conditions of that document:

> This Agreement reflects the entire agreement between the Parties with respect to its subject matter, and supersedes any previous agreement between the Parties relating to its subject matter.  There are no oral or written agreements, inducements, statements, representations, promises, or understandings between the Parties except as expressly set forth herein.  *No amendment or modification to this Agreement shall be of any force or effect unless it is: (1) is [sic] in writing, (2) expressly indicates that it modifies the Agreement, (3) reflects the effective date of the modification, and (4) is signed by both Parties*.

*Id*. at A-5, ¶ 29 (emphasis added).  To the extent that Plaintiffs contend that oral and implied agreements existed before January 17, 2007, the effective date of the Master PSA, paragraph 29 of that contract states that such oral and implied agreements are superseded by the written provisions of the document.  To the extent that Plaintiffs contend that such oral and implied agreements arose after the effective date of the Master PSA, then those understandings are ineffective because paragraph 29 bars any modification of the Master PSA except in writing.  Plaintiffs have not alleged that there is any such written modification.  Accordingly, this argument fails and cannot salvage the Second Claim for Relief.[1]

---

[1]  These provisions also undermine Plaintiffs' reliance on the statement in *Soderlun* that "an express or implied promise, independent of the covenant of good faith itself," *Soderlun*, 944 P.2d at 623, limits Suncor's rights to take the actions that it did.  Plaintiffs have alleged no such promise exists in the Master PSA itself, and have not alleged that there was any written modification of the Master PSA limiting Suncor's express contract rights.

As noted in Suncor's Motion to Dismiss, the express terms of the Master PSA permit Suncor to withdraw or modify credit terms at any time. Mot. to Dismiss at 10; *id*. Ex. 1 at A-3 ¶ 16. The Master PSA also permits Suncor to suspend deliveries of fuel upon WCS's failure to pay for that fuel. Mot. to Dismiss at 10; *id*. Ex. 1 at A-1 ¶ 5; *id*. at A-3 ¶ 17. Since WCS admits that it failed to pay for fuel, Comp. ¶ 22, Suncor was entitled to suspend deliveries of refined product under the Master PSA. Therefore, there can be no breach of the implied covenant of good faith and fair dealing.

***Third***, Plaintiffs note that paragraph 22 of the Complaint alleges that Suncor suspended fuels to WCS without knowledge that WCS had dishonored any payment for fuel. That allegation, even if assumed true *arguendo*,[2] has no bearing on Suncor's motion to dismiss. Under the Master PSA,

> [i]f Suncor, in its sole discretion, believes that it has grounds for insecurity regarding performance of any obligation under this Agreement by [WCS] (whether or not then due) for any reason (including, without limitation, *the occurrence of a Material Change in the creditworthiness of [WCS], [WCS's] failure to timely pay any invoice*, or [WCS's] breach of any credit terms extended by Suncor), Suncor shall have the right to . . . (a) *without notice*, *suspend indefinitely any and all sales of Product to [WCS]* . . .

Mot. To Dismiss, Ex. 1 at A-3 ¶ 17 (emphasis added). The Complaint acknowledges that Suncor believed it had grounds for insecurity. *See* Comp. ¶¶ 21-22 (noting Suncor's request for prepayment for purchases and Suncor's withdrawal of credit on May 20, 2011). That belief, in Suncor's "sole discretion," alone justified its suspension of fuel product sales to WCS.

In addition, nothing in the Master PSA requires that Suncor have actual knowledge that WCS had dishonored payments for fuel. Rather, the agreement expressly permits Suncor to

---

[2] That allegation, however, is not true. Should this claim survive, Suncor will show that it had actual knowledge that WCS had ceased payment for fuel *before* it suspended fuel sales to WCS.

- 6 -

suspend fuel sales "[i]n the event that [WCS] fails or ceases to make payment to Suncor." *Id*. at A-1 ¶ 5. There is no dispute that WCS ceased to make payments for fuel before Suncor suspended fuel sales. Indeed, paragraph 22 of the Complaint sets forth the exact time line. It affirmatively alleges that on May 20, 2011, Suncor notified WCS that it was withdrawing credit to WCS – a right that Suncor had under the Master PSA, *id*. Ex. 1 at A-3 ¶ 16. The Complaint then notes that "[i]n response" to that withdrawal of credit, WCS "caused its banks not to honor any further draw requests from Suncor. Comp. ¶ 22. Thus, according to the Complaint, WCS ceased to pay for fuel as of May 20, 2011. WCS further admits that Suncor did not suspend fuel sales until May 23, 2011, which was after WCS had stopped payment for fuel. *Id*. Section 17 of the Master PSA permitted Suncor to suspend fuel sales, for among other reasons (as discussed above), once payments ceased. Actual knowledge of the cessation of payments was not a condition precedent to the exercise of that contract right. This argument also fails, and does not save the Second Claim for Relief.

*Fourth*, Plaintiffs contend that the Master PSA "did not permit cessation of fuel delivery . . . in connection with the multiple occasions in which Suncor cut off sales to WCS on Friday afternoons causing substantial interruption to WCS's business and inability to meet known heavy demand . . ." Opp. Mem. at 8. Again, however, paragraph 17 of the Master PSA clearly demonstrates that argument is wrong. Once Suncor believed in "its sole discretion" and "for any reason" that it had grounds for insecurity, it was entitled under the contract to suspend product sales. Mot. To Dismiss, Ex. 1 at A-3 ¶ 17; *see supra* at 6. Having acknowledged Suncor's insecurity in their own allegations, Comp. ¶¶ 21-22, Plaintiffs' assertion that the

alleged suspensions of sales breach the implied covenant of good faith and fair dealing necessarily fails.[3] The Second Claim for Relief should be dismissed.

    b. <u>Third Claim for Relief</u>.  Plaintiffs' argument on the Third Claim for Relief recycles one of their contentions on the Second Claim for Relief but attempts to apply it to the Terminal Access Agreement ("TAA").  Specifically, WTO claims that there was a "verbal and implied promise, confirmed by the parties' custom and practice, that WCS could meet its supply requirements, if necessary, by purchasing fuel from middlemen for delivery at Suncor terminals."  Mot. to Dismiss at 9 (citing Comp. ¶ 14).  This argument is logically incoherent on its face.  WTO is the only plaintiff on the Third Claim for Relief and the only one that is a party to the TAA.  Thus, a "verbal and implied promise" to WCS plainly cannot result in a breach of an agreement to which WCS is not a party.

  To the extent that WTO contends that there was a "verbal and implied promise" that it would be allowed to pick up fuel purchased from third parties at Suncor's terminals, the express terms of the TAA again bar the argument.  Indeed, the relevant covenants in the TAA are virtually identical to similar provisions in the Master PSA.  With respect to an alleged custom and practice, the TAA reads in pertinent part:

> No custom or practice which may arise between the Parties in the course of operating under this Agreement will construed [sic] to waive any Party's rights to either ensure the other Party's strict performance with the terms and conditions of this Agreement, or to exercise any rights granted to it as a result of any breach or default under this Agreement.

---

[3] Plaintiffs' contention also fails because the Complaint affirmatively alleges that the alleged Friday afternoon suspension of sales never, in fact, occurred.  Plaintiffs concede that Suncor "reinstated fuel delivery each time."  Comp. ¶ 17.  Thus, there was, by Plaintiffs' own admission, no "cessation" of fuel sales.

Mot. to Dismiss, Ex. 2 ¶ 25. Thus, no custom and practice can alter the express provisions of the TAA.

Likewise, no "verbal and implied" understanding can alter the terms of the TAA. Paragraph 22 of the contract states:

> This Agreement, together with each Access Device Agreement and Driver Agreement entered into pursuant to this Agreement, contain all of the agreements between Suncor and [WTO] with respect to the subject matter hereof. Except as otherwise expressly provided herein, this Agreement may only be modified or amended by a written agreement executed by both Parties.

*Id.* Ex. 2 ¶ 22. WTO has not identified any provision of the TAA that authorizes any "verbal or implied" modification of the express terms of the contract. Nor has WTO alleged that any written agreement executed by both parties modifying the TAA exists. Therefore, the express provisions of the TAA govern WTO's access to Suncor's terminals. Those terms provide that such access "may be revoked immediately by Suncor, without cause, as a matter of right." *Id*. Ex. 2 ¶ 4. The exercise of that express contract right does not breach the implied covenant of good faith and fair dealing in the TAA. *Lufti v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 59 (Colo. App. 2001); *Grossman v. Columbine Medical Group*, 12 P.3d 269, 271 (Colo. App. 1999). The Third Claim for Relief, therefore, should be dismissed as well.[4]

---

[4] As an afterthought, Plaintiffs suggest that their Second and Third Claims might be "more artfully pled" to make clear that they are also asserting claims for breach of express contract. Opp. Mem. at 9 n.2. The Complaint's allegations, however, are specific and assert only claims for breach of the implied covenant of good faith and fair dealing. Comp. ¶¶ 39-42, 44-46. Plaintiffs do not allege a claim of breach of express contract, and nothing in their opposition memorandum suggests that they can do so. During the conference of counsel, Plaintiffs did not suggest that they believed that they could allege such a claim.

A statement requesting amendment but stating no grounds therefor is not a valid motion for leave to amend. *Calderon v. Kansas Dep't of Soc. & Rehabilitation Servs*., 181 F.3d 1180, 1185-87 (10th Cir. 1999); *see also Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107 (7th Cir. 1984) (complaint may not be amended by arguments in memorandum opposing motion to dismiss). Moreover, the Court need not permit an amendment that is futile. *Grossman v. Novell,*

### B. Tortious Interference with Contract (Fourth and Fifth Claims for Relief)

1. <u>Burden of Proof</u>. Plaintiffs concede that they bear the burden of proof on the Fourth and Fifth Claims for Relief.

2. <u>Elements</u>. Plaintiffs concede that Suncor has accurately stated the elements of a claim of tortious interference with contract.

3. <u>Response to Plaintiffs' Contentions</u>. Plaintiffs' arguments on their Fourth and Fifth Claims for Relief turn entirely on their assertion that the revocation of WTO's access to Suncor's terminals was motivated by WCS's complaints about alleged price discrimination. According to Plaintiffs, whether the interference results in an unlawful restraint of trade or competition "is a key consideration in determining whether interference is improper." Opp. Mem. at 10 (citing *Amoco Oil Co. v. Ervin*, 908 P.2d at 501-02). Nothing in *Amoco* supports that assertion. In any event, the argument is nonsensical under the facts alleged in the Complaint.

The alleged act of interference is Suncor's revocation of WTO's terminal access. Yet WTO is not alleged to have purchased gasoline from Suncor. Only those entities purchasing gasoline from the allegedly discriminating seller have standing to assert price discrimination claims. *See Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 556 (1990) (price discrimination plaintiff must show that it purchased product in question from seller); *George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 141 (2d Cir. 1998) (same). Since WTO does not allege that it ever purchased gasoline from Suncor, *see* Comp. ¶ 7 (identifying WTO only as a trucking company), it lacks standing to assert any price discrimination claim. Therefore, the alleged price discrimination rationale on which Plaintiffs' Fourth and Fifth Claims for Relief rests collapses.

---

*Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997). The legal theories that Plaintiffs suggest in their opposition memorandum do not state a claim for relief for the reasons stated above. The Court need not permit an amendment of the Second and Third Claims for Relief under these circumstances.

Plaintiffs' erroneous price discrimination theory aside, it is well-established that the exercise of a legitimate contract right cannot be an improper interference. *Lufti*, 40 P.3d at 58; *Radiology Prof. Corp. v. Trinidad Area Health Assoc., Inc*., 565 P.2d 952, 954 (Colo. App. 1977), *aff'd,* 577 P.2d 748 (Colo. 1978). A legal contract right "may be exercised without liability regardless of motivation." *See id*. The Complaint alleges no act of interference other than Suncor's revocation of WTO's access to its terminals. Since that conduct is expressly permitted by the TAA, it cannot provide the predicate for a claim of tortious interference. The Fourth and Fifth Claims for Relief should be dismissed.

## II. IF THE SECOND THROUGH FIFTH CLAIMS ARE NOT DISMISSED, THEY SHOULD BE STAYED PENDING ADJUDICATION IN STATE COURT

Plaintiffs' argument against Suncor's alternative request for a stay turns on their contention that the Second through Fifth Claims for Relief are intertwined with WCS's price discrimination claims, *see* Opp. Mem. at 2 (describing price discrimination claims as "intrinsically related" to the contract and tortious interference claims), and thus should be adjudicated together. That argument fails for three reasons. **First**, as noted above, Plaintiff WTO lacks standing to pursue any price discrimination claims. *See supra* at 9. Thus, the Third Claim for Relief, on which WTO alone is a claimant, and the Fourth and Fifth Claims, which turn solely on Suncor's revocation of WTO's terminal access, are necessarily remote from the price discrimination claims.

**Second**, Plaintiffs ignore that they alleged the same claims in a Colorado state court without ever once mentioning the alleged price discrimination. Nothing in their first-filed state court complaint draws any connection between WCS's alleged complaints about price discrimination and the claims asserted there and repeated in the Second through Fifth Claims that are now before this Court. *See* Mot. to Dismiss Ex. 3. That is not surprising. None of the

- 11 -

elements of the Second through Fifth Claims for Relief turns on the existence or absence of price discrimination. Indeed, Plaintiffs do nothing more in this Court than belatedly allege that WCS's complaints about price discrimination were the *motivation* for the alleged conduct. But motivation is irrelevant to the claims at issue on this motion and provides no reason for this Court to exercise supplemental jurisdiction over identical claims arising under state law and pending in a state court.

*Third*, while Plaintiffs contend that this Court is the only place in which all of their claims against Suncor may be resolved in a single proceeding, that assertion is false. There is no jurisdictional basis for WTO's claims in this Court. Therefore, those claims cannot be resolved here. Moreover, Plaintiffs' own actions again undermine the argument because they have never dismissed the state-court case that they filed. In short, Plaintiffs originally opted for the state-court forum and have elected to remain there. There is nothing illogical or unfair about remitting them to the initial court that they choose.[5]

Beyond the inaccurate assertions that the Second through Fifth Claims are connected to WCS's price discrimination allegations, Plaintiffs' opposition memorandum never addresses the cases and arguments raised by Suncor. Instead, Plaintiffs make two additional points. Initially, they cite the Supreme Court's decision in *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 662 (1978), for the proposition that "[i]t is well established that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Mot. to Dismiss at 12. But that quotation is selective, for in the very next sentence the *Will* Court noted that "[i]t is equally well settled that a district court is 'under no

---

[5] Plaintiffs note that they never served their state-court complaint on Suncor, Opp. Mem. at 1, 5, but that fact is irrelevant. Suncor chose to appear in state court to respond to the allegations. That it did so before Plaintiffs served the complaint has no bearing on the issues on this motion.

compulsion to exercise that jurisdiction' where the controversy may be settled more expeditiously in the state court." *Will*, 437 U.S. at 662 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). The issue, as Suncor noted in its motion, is whether this Court should exercise any supplemental jurisdiction over the Second through Fifth Claims given that the claims are already pending in state court and Suncor has already answered the complaint and filed counterclaims and a motion for summary judgment. Nothing in *Will* suggests, much less requires, this Court to exercise supplemental jurisdiction over the claims at issue. Indeed, as *Will* notes, the decision of whether to exercise such jurisdiction "is largely committed to the 'carefully considered judgment' of the District Court." *Id.* at 662 (quoting *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)).

Plaintiffs also rely heavily on the Tenth Circuit's decision in *State Farm Mutual Insurance Co. v. Scholes*, 601 F.2d 1151 (10th Cir. 1979), for a handful of factors that they say are relevant on a motion for stay. Yet *Scholes* affirmed the grant of a stay in circumstances similar to those alleged here. It is difficult to see how that case supports Plaintiffs. In any event, contrary to their assertions, all of the *Scholes* factors favor a stay if the Second through Fifth Claims are not dismissed. Comity, the adequacy of relief in state court, the avoidance of maneuvers designed to throw sand into judicial machinery, and the order in which the courts obtained jurisdiction all counsel for allowing the state court to move forward with these claims. Indeed, given the pendency of Suncor's summary judgment motion on both Plaintiffs' claims and Suncor's counterclaims, a decision to proceed in this Court creates the possibility of additional litigation when none is necessary.

The remaining factors – the extent of disputed factual (as opposed to legal) issues involved, the need for comprehensive disposition of litigation, and the desirability of avoiding

piecemeal litigation – also counsel in favor of letting the state court action proceed. Suncor believes that there are no factual issues on any of the pending claims or counterclaims in state court. These claims (and the related counterclaims) arise under and will be decided by application of Colorado state law. Accordingly, the state court is the forum in which they would ordinarily be resolved. Moreover, despite Plaintiffs' protestations to the contrary, Plaintiff WTO lacks standing on the price discrimination claims that are the sole basis for federal jurisdiction. Its claims, therefore, must be adjudicated in the state court. It makes no sense to have some contract claims proceed in this Court while others must proceed in the state forum. Therefore, if the Second through Fifth Claims are not dismissed, they should be stayed.

## CONCLUSION

For the foregoing reasons, Defendant Suncor respectfully requests that the Second through Fifth Claims for Relief in Plaintiffs' Complaint be dismissed with prejudice. Alternatively, Suncor requests that the Court stay those claims pending their adjudication in Colorado state court.

Respectfully submitted,

s/Anthony J. Shaheen
Anthony J. Shaheen
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado  80202-3979
Tel.:  (303) 295-8000
Fax:  (303) 295-9126
E-Mail:  ajshaheen@hollandhart.com

s/William L. Monts III
J. Robert Robertson
William L. Monts III
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Tel.:  (202) 637-5600
Fax:  (202) 637-5910
E-Mail:  robby.robertson@hoganlovells.com
              william.monts@hoganlovells.com

*Attorneys for Defendant
Suncor Energy (U.S.A.) Inc.*

## CERTIFICATE OF SERVICE

        I hereby certify that on October 14, 2011, I have caused to be presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

        Kenneth R. Bennington
        Kathleen E. Craigmile
        BENNINGTON, JOHNSON BIERMANN & CRAIGMILE LLC
        370 Seventeenth Street, Suite 3500
        Denver, Colorado  80202
        (303) 629-5200
        krb@benningtonjohnson.com
        kec@benningtonjohnson.com



        s/William L. Monts III