IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation, and
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,
        Plaintiffs,
v.

SUNCOR ENERGY (U.S.A.), INC., a Delaware corporation,
        Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the "Motion for Preliminary Injunction"
filed on July 6, 2011 by Plaintiffs Western Convenience Stores, Inc. ("WCS") and Western
Truck One, LLC ("WTO").  (*See* Doc. # 5).  Pursuant to the Order of Reference dated June
23, 2011 (Doc. # 3) and the memorandum dated July 7, 2011 (Doc. # 6), this matter was
referred to the Magistrate Judge for a recommendation or for a final determination of the
Motion on consent of the parties.   At the commencement of the hearing held on
Wednesday, September 28, 2011, Plaintiffs consented to a final determination of the
Motion by the Magistrate Judge.   Defendant Suncor Energy (U.S.A.), Inc. ("Suncor")
requested that the Magistrate Judge issue a recommendation to the District Judge.  The
court has reviewed the Motion, Suncor's Response (filed September 2, 2011) (Doc. # 13),
Plaintiffs' Reply (filed September 20, 2011) (Doc. # 16), the entire case file, the evidence
and arguments presented at the hearing held on September 28, 2011, and the applicable
law and is sufficiently advised in the premises.


I.      Statement of the Case[1]

        WCS is a Colorado corporation that operates 41 convenience stores in Colorado and

---

[1]      The following facts are supported by the exhibits and the testimony in the record.

Nebraska, selling as its principal products gasoline and diesel fuel.  WCS is an independent retailer known as a "discounter," that sells only unbranded fuel.  WCS is owned by Hossein Taraghi and his wife.  Suncor is a Delaware corporation with its principal place of business in Denver, Colorado.  Suncor is in the business of refining and selling petroleum products, including gasoline and diesel fuel, to retailers such as WCS.  Suncor also sells certain name brand fuels through its own retail business.  Suncor operates two refineries and terminals in Commerce City, Colorado and one terminal in Grand Junction, Colorado.  From 2004 to 2011, WCS purchased 70-80% of its fuel from Suncor.

WTO is a Colorado limited liability company owned by Hossein Taraghi that transports petroleum products by truck for WCS.  WTO loads fuel into its trucks at fuel terminals and transports it to WCS stores.  WTO delivers fuel to WCS stores 24 hours per day, 7 days per week to meet the demand of WCS's retail customers.  WCS was obligated to pay for the fuel loaded by WTO at Suncor's terminals.  At the Suncor terminals, WTO loaded not only fuel purchased directly from Suncor, but also fuel purchased from third parties, or middlemen, such as Sapp Brothers Petroleum, Inc. and Offen Petroleum, Inc., who purchase from Suncor and resell it to others via the Suncor terminals.  Access at Suncor's terminals to fuel purchased from middlemen is important to WCS's business, as WCS cannot always obtain directly from Suncor the quantity of fuel it needs.  The evidence indicated that on at least one Friday afternoon in May 2011, Suncor provided less fuel than WCS needed.

On January 17, 2007, Suncor and WCS entered into the "Master Product Purchase and Sale Agreement" ("Master Agreement") that governs the sale and delivery of fuel.  (*See* Doc. # 13-3).  Subject to the Master Agreement, WCS purchased fuel on a $3 million line of credit extended by Suncor, with payment by Electronic Funds Transfer ("EFT") due ten days after WTO loaded the fuel.  While portions of WCS's credit terms with Suncor were reduced to writing in Confirmation of Purchase/Sale Agreements, other elements of WCS's credit terms were the subject of verbal agreements only.  (*See, e.g.,* Hearing Exhibit 11).

On May 10, 2006, WTO and Suncor entered into the "Terminal Access Agreement"

("Access Agreement") by which Suncor permitted WTO to access Suncor's terminals to load fuel. (*See* Doc. # 13-2). The Access Agreement is the subject of Plaintiffs' request for preliminary injunctive relief.

On May 18, 2011, representatives of Suncor and WCS met to discuss several matters, including fuel supply, fuel pricing, WCS's credit status, and a recent $2.5 million civil penalty imposed by the U. S. Environmental Protection Agency ("EPA") on WCS and two other fuel distributors related to fuel blending. Suncor was represented in the meeting by Steve Ewing, Steve Moss, and Diane Kriskovich. WCS was represented by Hossein Taraghi and Chris Wehrle. Prior to the meeting, Suncor informed WCS that it did not have a current contract, as the most recent Confirmation expired on April 30, 2011. (*See* Hearing Exhibit 11). Suncor informed WCS that it did not wish to continue selling fuel to WCS without a contract and an opportunity to review WCS's credit status.

At the meeting, the parties discussed altering WCS's $3 million line of credit and/or ten day payment period. Mr. Taraghi offered real property as collateral to continue the line of credit. Suncor declined to pursue the offer of collateral as security. WCS sought a ten cent discount on the price that it was paying per gallon for fuel. Through its representatives at the meeting, Suncor declined to offer the ten-cent price discount WCS sought. Suncor inquired about the EPA's civil penalty. Suncor was concerned about the financial effect on WCS of the $2.5 million penalty. Unknown to Suncor, one of the other companies involved later paid the penalty and WCS negotiated to pay that company $775,000 over a 5-year period.

After the meeting, on May 20, 2011, Suncor terminated WCS's $3 million line of credit effective May 23, 2011. After May 23rd, WCS was required to pay cash on delivery. Suncor permitted WCS to take final deliveries of fuel between May 20 and May 23, 2011. WCS then refused payment to Suncor for the fuel delivered between May 20 and May 23, 2011 and for all outstanding bills for fuel previously delivered. WCS's unpaid bill for fuel delivered by Suncor is currently more than $3.7 million. Also effective May 23, 2011, Suncor suspended all fuel sales to WCS. Pursuant to the Access Agreement, Suncor also

revoked WTO's access to Suncor's three terminals.  (*See* Doc. # 13-2 at ¶ 4).  Since May 23, 2011, Suncor has not sold any fuel to WCS.  WCS continues to operate by purchasing fuel from other suppliers.

Plaintiffs initiated this civil action on June 20, 2011, asserting subject matter jurisdiction under the Robinson-Patman Act, 15 U.S.C. § 13(a), and Title 28 U.S.C. § 1367. Plaintiffs allege six claims: (1) price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13(a); (2) breach of the Master Agreement;  (3) breach of the Access Agreement;  (4) "Tortious Interference (with WCS Contracts and Relationships with Third Parties)";  (5) "Tortious Interference (with WCS Contract with WTO)";  and (6) violation of the Colorado Unfair Practices Act ("CUPA"), Colo. Rev. Stat. § 6-2-108.  (*See* Complaint (Doc. # 1)).  Plaintiffs seek preliminary injunctive relief "restraining and enjoining Defendant Suncor and any and all related affiliates under its control from denying Plaintiffs access to Suncor's terminals and to take delivery of fuel purchased by Plaintiff WCS from third parties."  (*See* Motion (Doc. # 5) at 17 of 17).  Suncor opposes the requested relief.

II.     Standard of Review

A preliminary injunction "is an extraordinary remedy, used to preserve the status quo pending a final determination of the parties' rights, and, therefore, the right to relief must be clear and unequivocal."  *Parker v. Zavaras*, 2011 WL 1211487, at * 15 (D. Colo. Mar, 31, 2011) (internal quotation marks and citations omitted).  *See also O Centro Espirita Beneficiente Unaio Do Vegetal v. Ashcroft*, 389 F.3d 973, 999 (10th Cir. 2004) (Seymour, Circuit Judge, concurring in part and dissenting in part) ("It is well established that [a] preliminary injunction is an extraordinary remedy; it is the exception rather than the rule.") (citation omitted).  To obtain a preliminary injunction, a plaintiff must show all four of the following elements: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public's interest." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011) (internal quotation

marks and citations omitted).   "The decision to grant injunctive relief is a matter of discretion."  *Parker v. Zavaras*, 2011 WL 1211487, at * 15 (citing *Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (noting that the Tenth Circuit reviews denials of preliminary injunctions for abuse of discretion)).

"Certain types of preliminary injunctions are disfavored and, therefore, require that the movant satisfy a heightened burden of showing that the factors support the issuance of an injunction."  *Magnum v. Zavaras*, 2010 WL 3529547, at * 5 (D. Colo. 2010) (citation omitted).  *See also Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) ("For some requested preliminary injunctions, a movant has an even heavier burden of showing that the four factors listed above weigh heavily and compellingly in movant's favor before such an injunction may be issued.").  "The disfavored injunctions are those that disturb the status quo, are mandatory as opposed to prohibitory, or that afford[ ] the movant substantially all of the relief that they may recover after a determination of the merits."  *Magnum v. Zavaras*, 2010 WL 3529547, at * 5.  *See also Kikumura*, 242 F.3d at 955 ("The heightened burden applies to preliminary injunctions that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, or (3) provide the movant substantially all the relief he may recover after a full trial on the merits.").

III.   Analysis

A.   Irreparable Harm

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  *Parker v. Ritter*, 2009 WL 367767, at ** 2-3 (D. Colo. Feb. 13, 2009) (internal quotation marks and citation omitted).   "A plaintiff satisfies the irreparable harm requirement by showing a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages."  *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d at 1157 (internal quotation marks and citation omitted).

"While economic loss is usually insufficient to constitute irreparable harm, the [i]mposition of money damages that cannot later be recovered . . . constitutes irreparable injury." *Crowe & Dunlevy,* 640 F.3d at 1157 (internal quotation marks and citations omitted). "A purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement for preliminary injunction, but an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Minard Run Oil Co. v. U.S. Forest Service*, __ F.3d __, 2011 WL 4389220, * 13 (3d Cir. Sept. 20, 2011). *See also Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (recognizing that although economic losses generally will not sustain a preliminary injunction, there are exceptions where a remedy may come "too late to save plaintiff's business") (internal quotation marks omitted); *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1247-48 (D. Colo. 2007) (finding "ample evidence in the record regarding the likelihood that the immediate terminations ordered by [franchisor] would effectively close Plaintiffs' stores completely pending trial, resulting in a loss of customer base and community goodwill going beyond "simple economic loss.") (quoting *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) ("the right to continue a business in which [plaintiff] had engaged for twenty years and into which his son had recently entered is not measurable entirely in monetary terms"). Nevertheless, even when an action will result in the destruction of a business, a court may be justified in refusing to grant a preliminary injunction when the loss was "capable of ascertainment and award at final judgment if [petitioner] prevails." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

The court, having carefully considered the evidence, concludes that Plaintiffs have not sufficiently demonstrated probable irreparable harm for the issuance of injunctive relief. The parties to the Access Agreement are Suncor and WTO. WCS is not a party to the Access Agreement and does not have the right to access Suncor's terminals. The claims in the Complaint that relate to WTO are the Third Claim for breach of the Access Agreement and the Fifth Claim for tortious interference "with performance of the transport

agreements among middlemen, WTO, and WCS." (*See* Complaint (Doc. # 1) at ¶ 54).  The evidence before the court does not show irreparable harm to WTO with respect to the Access Agreement.  The evidence does not demonstrate WTO's financial condition, that WTO is unable to operate, or that WTO is at risk of going out of business.

Nor have Plaintiffs demonstrated a specific loss of income due to Suncor's suspension of sales to WCS and revocation of terminal access by WTO.  Specific evidence was not presented as to WCS's income, losses, or profit prior to or since the termination of WTO's access to Suncor's terminals in May 2011.  Mr. Taraghi believed that other retailers were receiving a discount of ten cents per gallon compared to the price WCS was paying.  Based on his observations of other retailers' prices, Mr. Taraghi concluded that other retailers must be receiving a discount from Suncor.  WCS was temporarily losing money at the cost it was paying Suncor for fuel.  The record of a rumored price discount that was not offered to WCS, that may have been limited to branded fuel that WCS does not buy, is not convincing with respect to irreparable harm.  There is insufficient evidence in the record of WCS's projected loss of income to meet the high standard required for the granting of a preliminary injunction.  Plaintiffs have not adequately demonstrated that their businesses will be unable to survive for the duration of the litigation or a loss of goodwill that a later damage award could not readily compensate.  *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797 (3d Cir.1989) (district court abused its discretion in granting a preliminary injunction when there was no hard evidence that could have led the court to believe that a broken contract would force one party to go out of business).

WCS argues that it will suffer irreparable harm if it cannot take delivery of fuel from Suncor's terminals, in that any natural "disaster or other circumstance causing a fuel shortage will mean empty tanks at WCS stores, WCS's inability to deliver fuel to consumers, and the necessary shutting down of stores."  (*See* Motion (Doc. # 5) at 14 of 17).  WCS argues that without the preliminary injunctive relief sought, it "stand[s] to suffer a loss of stores -- and the concomitant loss of business goodwill and competitive positions . . ." and may ultimately go out of business.  (*See id.*).  However, the evidence shows that

even in an environment of tight fuel supplies, WCS has adjusted for the loss of its fuel supply from Suncor by going to other suppliers, transporting fuel longer distances, and paying higher prices.  Since April 1, 2011, WCS has met consumers' demand and been profitable.  No WCS stores have closed and WCS continues to sell as much fuel as customers demand.  The evidence of possible disruption of WCS's fuel supply is too speculative to support the requested injunctive relief.  A significant loss of fuel supply could cause substantial harm to WCS's business, should any natural or manmade disasters affect the regional or national supply of fuel.  A lack of fuel at any of WCS's stores could cause a store to close temporarily or longer.  However, WCS did not experience any disruptions due to natural or other disasters since April 2011 and there is no basis in the record for predicting such disasters.  "Purely speculative harm will not suffice, . . ." *Crowe & Dunlevy,* 640 F.3d at 1157 (internal quotation marks and citations omitted).  *See also Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) ("[W]e have also insisted that the risk of irreparable harm must not be speculative.") (citation omitted).

The evidence also indicated that WCS currently may hire middlemen's trucks to load fuel at Suncor terminals.  For various business reasons, WCS chooses not to hire middlemen's trucks.  The evidence does not demonstrate that using middlemen to load fuel is any more costly to WCS than its current practice of using WTO to transport fuel longer distances.  WCS could also pay cash upon delivery of fuel to WTO from Suncor's terminals.  For its own business reasons, WCS declines to pay cash on delivery.  WCS could also obtain a line of credit from an entity other than Suncor, such as a bank.  WCS decided that it is too costly to obtain a letter of credit from a bank.  These voluntary business decisions by WCS do not support its allegation of irreparable injury.

There is also insufficient evidence that the harm that WCS anticipates is imminent.  "The movant must show that the injury complained of is so imminent that there is a clear and present need to prevent it."  *Parker v. Ritter*, 2009 WL 367767 at * 2-3 (citation omitted).  "Injunctive relief is only appropriate to avoid an existing threat of injury and cannot be employed to protect against an injury that is merely feared to be suffered at

some indefinite future date." *Id.* The evidence shows that WCS is currently continuing to operate at full capacity by purchasing fuel from other suppliers.

In sum, Plaintiffs fail to adequately show they will suffer irreparable injury in the absence of the requested injunction.

B.    Likelihood of Success on the Merits

"[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita*, 389 F.3d at 975. "[A] party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on our modified likelihood-of-success-on-the-merits standard." *Id.* at 976.

Plaintiffs argue that the preliminary injunctive relief they seek will maintain the status quo, as they ask the court only to require Suncor to continue the longstanding business relationship between the parties and permit WTO access to Suncor terminals to take delivery of fuel purchased by WCS from middlemen.  Plaintiffs further argue that the injunction sought is prohibitory, not mandatory, by preventing Suncor from denying WTO access to Suncor's terminal to pick up fuel purchased from middlemen.  Plaintiffs also argue that the injunction sought does not begin to award substantially all the relief that could be recovered after a trial on the merits, as it does not provide for damages or other relief related to alleged unlawful price discrimination, breach of the Master Agreement, or interference with contractual relationships with third parties.  The court concludes that the injunctive relief Plaintiffs seek would disturb the status quo and is mandatory as opposed to prohibitory.

"[T]he status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing." *Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotation marks and citations omitted). Under the analysis in *Schrier*, "the last peacable uncontested status existing between the

parties before the dispute developed" was before May 2011, when the parties were conducting business pursuant to the Access Agreement. However, "a court's examination of the status quo should occur during the process of balancing the various interests and harms among the parties and the public." *O Centro Espirita*, 389 F.3d at 1002. "[T]he judge should grant or deny preliminary relief with the possibility in mind that an error might cause irreparable loss to either party." *O Centro Espirita*, 389 F.3d at 999. "Consequently the judge should attempt to estimate the magnitude of that loss on each side and also the risk of error." *Id.*

The requested injunction seeks to undo Suncor's termination decision pending a trial on the merits of Plaintiffs' claim that the termination is unlawful. The requested injunctive relief would compel Suncor to provide access to WTO to load fuel. The injunction sought by Plaintiffs would afford WTO greater relief than it had under the terms of the Access Agreement. The Access Agreement provides that "any permission of access granted by Suncor . . . may be revoked immediately by Suncor, without cause, as a matter of right." (*See* Doc. # 13-2 at ¶ 4). The injunction sought does not provide Suncor with any right of revocation. An injunction is characterized "as mandatory if the requested relief affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Schrier*, 427 F.3d at 1261 (internal quotation marks and citations omitted). Plaintiffs' requested injunctive relief affirmatively requires Suncor to act in a particular way beyond the terms of the Access Agreement by providing unfettered access to WTO to load fuel. The relief sought here may properly be characterized as mandatory and would disturb the status quo.

For these reasons, the requested injunction constitutes a specifically disfavored injunction. Thus, the motion for a preliminary injunction must be more closely scrutinized and Plaintiffs must make a strong showing of likelihood of success on the merits. *See O Centro Espirita*, 389 F.3d at 975.

1.      Plaintiffs' Arguments Regarding Price Discrimination

Plaintiffs argue that immediately after WCS complained of price discrimination with regard to a ten cent discount, Suncor retaliated by suspending all sales to WCS and revoking any access to Suncor terminals by WTO.  Plaintiffs argue that Suncor facilitated a scheme to perpetuate illegal price discrimination and remove WCS from competition in the marketplace for fuel, in violation of the Robinson-Patman Act.

Section 2(a) of the Robinson-Patman Act provides in relevant part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided*, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered.

15 U.S.C. § 13(a).  "It is a violation of Robinson–Patman for a seller to provide the same product to two customers at different prices in a manner that gives one buyer a competitive advantage over the other." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. June 21, 2011).  "To make out a claim under Robinson–Patman, the plaintiff must allege: (1) two or more contemporaneous sales by the same seller; (2) at different prices; (3) of commodities of like grade and quality; (4) the discrimination had the requisite anticompetitive effect; and (5) the discrimination caused injury to the plaintiff." *Id.* 9citation omitted).  *See also Feesers, Inc. v. Michael Foods, Inc.*, 498 F.3d 206, 212 (3d Cir. 2007) ("in order to prove a violation of section 2(a) of the Robinson-Patman Act, a plaintiff must show (1) that sales were made to two different purchasers in interstate commerce; (2) that the product sold was of the same grade and quality; (3) that defendant discriminated in price as between the two purchasers; and (4) that the discrimination had

a prohibited effect on competition.") (citation omitted).

As the Access Agreement is the subject of the request for preliminary injunctive relief and WCS is not a party to the Access Agreement, Plaintiffs' evidence of price discrimination against WCS does not appear probative of the likelihood of success on the merits for purposes of the Motion for Preliminary Injunction. Further, the evidence in the record thus far is not specific as to the alleged price discrimination in the form of the denied ten cent discount. The evidence is not specific as to what buyers were receiving a discount, what discount they were receiving, the length of time such discounts were offered, whether discounts were offered on unbranded versus branded fuel, the volume of fuel WCS purchased, or the volume of fuel other buyers purchased. The record indicates no more than a rumored price discount that was not offered to WCS. At this time, Plaintiffs have not made a sufficiently strong showing of likelihood of success on the merits of the Robinson-Patman claim.[2]

2.      Plaintiffs' State Law Claims

Plaintiffs' request for injunctive relief is based on WTO's Access Agreement. Thus, Plaintiffs' request for preliminary injunctive relief rests on WTO's Third and Fifth Claims for Relief, alleging state law violations for breach of contract based on the covenant of good faith and fair dealing and tortious interference with contract. (*See* Doc. # 1 at 10-12 of 13). "Under Colorado law, every contract contains an implied covenant of good faith and fair dealing." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (citations omitted). "A violation of the duty of good faith and fair dealing gives rise to a claim for breach of contract." *Id.* "The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price,

---

[2]      Federal antitrust law "although not controlling, [is] entitled to careful scrutiny in resolving issues arising under Colorado's antitrust statute." *Amos v. Aspen Alps 123, LLC*, __ P.3d __, 2010 WL 27401 (Colo. App. Jan. 7, 2010) (internal quotation marks and citation omitted), *cert. granted in part*, 2011 WL 1106757 (Colo. Mar. 28, 2011). The court's analysis of Plaintiffs' Robinson-Patman claim is thus probative of the likelihood of success on the merits of Plaintiffs' CUPA claim.

or time." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). "The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* The implied "covenant of good faith and fair dealing, whether express or implied, does not inject new substantive terms into a contract or change its existing terms." *Soderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 623 (Colo. App. 1997).

In their Third Claim, Plaintiffs allege that "Suncor's actions in suspending WTO from loading fuel at Suncor terminals, including the loading of fuel sold to WCS by middlemen, were without just cause or excuse, contravened the reasonable expectations of the parties, and were a breach of the implied covenant of good faith and fair dealing." (*See* Doc. # 1 at ¶ 45). Plaintiffs do not allege that Suncor breached any specific contract term that allowed for discretion. The Access Agreement expressly sets forth Suncor's right to terminate access to its terminals for any reason. "[T]he implied covenant of good faith and fair dealing may not be used to invalidate contractual terms that the parties negotiated and agreed on, including a right to terminate the contract." *Rocky Mountain Chocolate Factory, Inc. v. SDMS*, 2007 WL 4268962, * 6 (D. Colo. Nov. 30, 2007) (citing *Grossman v. Columbine Medical Group, Inc.*, 12 P.3d 269, 271 (Colo. App. 1999) ("the termination clause expressly sets forth the right of both parties to terminate the contract for any reason. Hence the physician cannot rely on the implied duty of good faith and fair dealing to circumvent terms for which he expressly bargained") (citation omitted); *See also Soderlun*, 944 P.2d at 623 ("the covenant of good faith and fair dealing . . . does not inject new substantive terms into a contract or change its existing terms. . . . Such a covenant, therefore, cannot limit an employer's right to discharge without cause . . . ."); *Salt Lake Tribune Publishing Co., LLC v. AT & T Corp.*, 320 F.3d 1081, 1103-04 (10th Cir. 2003) ("Where the subject in dispute is expressly covered by the contract . . . the implied duty to perform in good faith does not come into play.") (internal quotation marks and citation omitted). Plaintiffs' allegations of breach of the covenant of good faith and fair dealing do not provide a substantial likelihood of success on the merits of their claim for breach of the

express terms of the Access Agreement.

In their Fifth Claim, Plaintiffs allege tortious interference with contract, in that "Suncor, by its words and conduct, intentionally interfered with performance of the transport agreements among middlemen, WTO and WCS, thereby causing a substantial adverse impact on their businesses." (*See* Doc. # 1 at 11 of 12). To prove a claim for intentional interference with a contractual obligation, a plaintiff "must show that: (1) plaintiff had a contract with a third person; (2) defendant knew of the contract or had knowledge of other facts which reasonably should have caused him to know of it; (3) with such knowledge, the defendant by words or conduct, or both, intentionally induced the third party to terminate or not to perform his contract with the plaintiff, or interfered with the third party's performance of the contract, thereby causing the third party not to perform or to terminate the contract with the plaintiff; (4) defendant's words or conduct, or both, caused the plaintiff to incur damages." *Powell Products, Inc. v. Marks*, 948 F. Supp. 1469, 1477 (D. Colo. 1996) (quoting C.J.I. Civ. 3d. 24:1). *See also Campfield v. State Farm Mut. Auto. Inc. Co.*, 532 F.3d 1111, 1122 (10th Cir. 2008) (claim of tortious interference with current business relations requires plaintiff "to show: (1) he had a contract with a third party; (2) defendants knew of the contract's existence; (3) defendants intentionally induced the third party to breach the existing contract; (4) defendants acted improperly; and (5) defendants' actions caused plaintiff to incur damages.") (citation omitted).

First, there is no evidence in the record of a contract between WCS and WTO or between WCS or WTO and a third party. A "claim of tortious interference with current business relations requires [the plaintiff] to show: (1) he had a contract with a third party . . . ." *Campfield*, 532 F.3d at 1122. Second, "[t]o prevail on a claim for tortious interference with contract or with prospective business relations, [Plaintiffs] must establish, among other things, that the claimed interference was unlawful or improper." *Energy Acquisition Crop. v. Millennium Energy*, 611 F.Supp. 2d 1147, 1162 (D. Colo. 2009) (internal quotation marks omitted) (citing *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 858 (10th Cir. 1999) (applying Colorado law)). "If the act alleged to have caused

the interference is conduct in which the actor has the legal right to engage, then this element cannot be proved." *Id.* (citing *Caven v. Amer. Fed. Sav. & Loan Ass'n of Colorado*, 837 F.2d 427, 431 (10th Cir. 1988) (applying Colorado law) and Restatement (Second) of Torts § 773 (1979) (one who in good faith asserts a legally protected interest does not improperly interfere with another's contract or prospective business advantage even if the actor knows his conduct will cause a third party to break a contract or refuse to do business with the other)).  "A failure of proof on this essential element renders all other facts immaterial." *Id.* at 1163 (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1213 (10th Cir. 2000). *See also Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 565 P.2d 952, 954 (Colo. App. 1977) ("No liability attaches, however, where the act claimed to have caused the breach is undertaken in the exercise of an absolute right, that being conduct which the actor has a definite legal right to engage in without qualification.").  The Access Agreement provides that "any permission of access granted by Suncor . . . may be revoked immediately by Suncor, without cause, as a matter of right." (*See* Doc. # 13-2 at ¶ 4).  For these two reasons, the court does not perceive at this time a substantial likelihood of success on the merits of Plaintiff's Third and Fifth claims.

C.    Conclusion

Because Plaintiffs have not established irreparable injury or a substantial likelihood of success on the merits, they cannot prevail on their Motion for Preliminary Injunction.  In light of the court's determination on these two elements of proof for preliminary injunctive relief, the court need not specifically address the third and fourth elements, the balance of equities and the public interest.  *See Wilson v. Bezona*, 2010 WL 4740296, * 3 (D. Colo. 2010) ("Given that I find no support for Plaintiff's contentions that an irreparable injury is imminent, injunctive relief is subject to denial on this basis alone.") (citing *Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (noting that the failure to show irreparable injury is sufficient ground, by itself, to deny injunctive relief)); *Big O Tires, LLC v. Felix Bros., Inc.*, 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) ("The Court declines to address the remaining

preliminary injunction elements, as the resolution of them will have no bearing on the outcome.") (citing *In re Qwest Communications International, Inc. Securities Litig.*, 241 F. Supp. 2d 1119, 1123 (D. Colo. 2002) (declining to enter temporary restraining order, even "assum[ing], without deciding, that the plaintiffs have a substantial likelihood of success on the merits," because plaintiffs failed to establish irreparable harm and that the balance of equities was in their favor); *Russell v. Department of Air Force*, 915 F. Supp. 1108, 1122 (D. Colo. 1996) ("Having decided that [plaintiff] has not shown clearly that he has a substantial likelihood of success on the merits, I need not address the remaining factors . . . ."); *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999) (noting that if a plaintiff fails to meet the "threshold requirements" of showing "likelihood of success and irreparable injury," "the court's inquiry is at an end and the injunction must be denied")).

Accordingly, IT IS RECOMMENDED that the "Motion for Preliminary Injunction" filed on July 6, 2011 by Plaintiffs Western Convenience Stores, Inc. ("WCS") and Western Truck One, LLC ("WTO") (filed July 6, 2011) (Doc. # 5) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and

recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 21st day of October, 2011.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge