**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant.

---

**STIPULATED ELECTRONIC DISCOVERY PROTOCOL**

---

Pursuant to the Court's instruction of September 28, 2011, plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC and defendant Suncor Energy (U.S.A.), Inc. (each a "Party" and, collectively, the "Parties") have developed this stipulated electronic discovery protocol (the "Protocol"), which shall govern the production of documents and electronically stored information in the above-captioned action (the "Action").  This Protocol is intended to balance the requirements of document production under the Federal Rules of Civil Procedure with cost and burden of producing electronically stored information and to aid the Parties in achieving a production that satisfies the reasonable discovery needs of the requesting Party and whose cost to the Producing Party is proportional to the value and needs of the case. This Protocol is not intended to, and does not, create a further set of rules or additional requirements not contemplated by the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

**Exhibit A**

1.  <u>Definitions</u>.  In addition to the other terms defined in this Protocol, the following terms are defined as follows:

(a) "Bates Number" means a unique number permanently affixed to a document produced on each TIFF of the document branded on the bottom right hand corner or such other location as necessary not to unreasonably obliterate, conceal, or interfere with any information from the source document.

(b) "Database" means an integrated collection of logically related records or files consolidated into a common pool that provides data for one or more multiple uses. (e.g., Microsoft Access, SAP, Oracle, etc.) usually stored in one location and made available to several users, or stored in multiple pools or locations "distributed databases" which can be dispersed or replicated among different points in a network

> **Formatted:** Font: Not Bold

(c) "Database ESI" means documents and information residing in a Database.

> **Deleted:**
> **Deleted:** that do not constitute Non-Database ESI.

(d) "Electronically Stored Information" or "ESI" means information existing or stored in any electronic medium from which it can be obtained or translated into a usable form and shall have the same meaning as used in the Federal Rules of Civil Procedure.

> **Deleted:** reasonably

(e) "Extracted Text File" means a file containing the text extracted from a Native File, including all header, footer, and document body information.

(f) "Metadata" means ESI embedded in or generated about Native Files that is not ordinarily viewable or printable from the application that generated such Native Files.

(g) "Native Files" means the associated file structure defined by the original application in which the ESI is created.  For example, Microsoft Excel® produces its output as '.xls' files by default, which are the native files of that software.

(h) "Non-Database ESI" means ESI not contained within a database.

> **Deleted:** A database is defined as an integrated collection of logically related records or files consolidated into a common pool that provides data for one or more multiple uses. (e.g., Microsoft Access, SAP, Oracle, etc.).
> **Deleted:**  Notwithstanding the foregoing definition, e-mail created in Microsoft Exchange and other e-mail applications is Non-Database ESI.

- 2 -

(i) "OCR File" means the optical character recognition file created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

(j) "Producing Party" means any Party to the Action who produces documents or information under this Protocol.

(k) "Receiving Party" means any party to the Action who receives documents or information under this Protocol.

2. Production Format.

(a) Paper Documents. All documents that exist in a paper format ("Paper Documents") shall be produced as static, scanned black and white images at 300 x 300 d.p.i. or greater resolution, in a Group 4 compression single-page Tagged Image File Format ("TIFFs"). In scanning Paper Documents to create TIFFs, the Parties will make reasonable efforts to: (i) produce all separations, attachments, and affixed notes as they exist in the original Paper Documents; provided if scanning with the notes affixed cannot be done without obstructing other content on the Paper Document, the Paper Document and note shall be scanned separately, (ii) unitize the Paper Documents correctly (e.g., distinct Paper Documents shall not be merged into a single record, and single Paper Documents shall not be split into multiple records), and (iii) scan the pages or images at or near their original size and so that the print or image appears straight, and not skewed; provided that reducing image size may be necessary in order to display Bates Numbers without obscuring text and physically oversized originals may appear reduced. TIFFs for Paper Documents shall also be produced with a Load File and text file in accordance with Section 2(e) below. Paper Documents that also exist as ESI in a native format such as Microsoft

**Deleted:** originally

Word or Excel shall be produced in their native format as well as in the scanned format provided for in this paragraph.

(b)     Non-Database ESI.  Non-Database ESI shall be produced in both its native format as well as static, black and white images at 300 x 300 d.p.i. or greater resolution, in a Group 4 compression single-page TIFF with a 8 1/2 x 11 inch page size, except for documents requiring different resolution or page size.  Each TIFF of an electronic document will be created directly from the original electronic document.  Parent-child relationships (the association between an electronic document (the "parent") and its attachments (each a "child")) shall be preserved, and shall be produced contemporaneously and sequentially immediately after the parent document; provided that the Parties shall only be required to produce one level of the parent-child relationship. Zip container files or other compressed files need not be characterized or designated as a parent document for files contained or compressed therein.  Rows and columns in spreadsheets shall be "unhidden" when creating the TIFF.  Non-Database ESI shall also be produced with a Load File and text file in accordance with Section 2(e) below.

(c)     Database ESI.  With respect to Database ESI, the Parties agree to meet and confer to determine the appropriate means by which relevant Database ESI can be indentified from the applicable database and produced to Receiving Party.  If the Receiving Party requests to have ESI produced in its native format, the Producing Party produce in that format.   If the Receiving Party requests information from the database produced in an alternate electronic format, then the Producing Party may produce the information in Excel or similar electronic format that allows searching, organization, and analysis of such data.  Notwithstanding the above, Microsoft Exchange email shall be produced in a *.pst file, while email created in any

**Deleted:** in a reasonably usable format.

**Deleted:** would like

**Deleted:** form that can be easily analyzed

- 4 -

other email application shall be produced in a format which can be imported into a Microsoft Exchange *.pst file.

**Deleted:** Subject to Section 2(h) below, Database ESI shall not be produced in Native Files.

(d) <u>Bates Numbering, Confidentiality Designations, and Color Documents</u>. Each page of a Paper Document, Non-Database ESI document, and Database ESI document, regardless of format, shall be assigned a single Bates Number. Any confidentiality legend required by the protective order entered in this Action (the "Protective Order") shall be burned onto each document's image at a location that does not unreasonably obliterate or obscure any information from the source document. If an original document for which a TIFF is produced contains color, upon the written request from the Receiving Party identifying the Bates Number of the documents and a reasonable need for the document in color, the Producing Party shall provide the Receiving Party the document reproduced in color at Receiving Party's cost. Color photographs shall be produced in color as single page .jpeg files.

(e) <u>Load and Text Files</u>. For each TIFF, the Producing Party shall produce to the Receiving Party (i) a unitization file ("Load File") and (ii) an OCR File or Extracted Text File, as applicable. Such files shall be in a format compatible with Concordance Image where Plaintiffs are the Receiving Party, and in Ringtail where Defendants are the Receiving Party; or such other standard software as may be reasonably required by each Party. Each Load File shall contain: (i) the starting Bates Number for the parent document, (ii) the ending Bates Number for the last document or attachment, and (iii) beginning and ending Bates Numbers for each attachment. No Producing Party shall be required to ensure that the OCR File or Extracted Text File is an exact duplicate of the contents of the TIFF, and the Receiving Party shall accept the OCR File or Extracted Text File in its "as is" condition. If ESI exists in a format that is not electronically searchable (e.g., as a .pdf or TIFF), an associated OCR File will be provided. In

the event any Paper Document or ESI is redacted, the Producing Party shall withhold the redacted text for the same. The failure to withhold such text by a Producing Party shall not be deemed a waiver of any privilege or other immunity from discovery associated with that Paper Document or ESI.

(f) <u>Production Samples</u>. The Parties will exchange production samples, conforming to the specifications described in this Protocol, a reasonable time in advance of any large scale production, and the Parties shall have seven (7) days thereafter to convene a meet and confer to discuss any objections, refinements, or operational issues.

(g) <u>Metadata</u>. Subject to <u>Section 2(h)</u> below, neither Party shall be required to produce any Metadata <u>except to the extent that it occurs in the usual course with respect to documents produced in their native format</u>.

3. <u>Search Terms and Strategies</u>. If a Producing Party intends to use a search strategy to cull a set of its ESI in connection with any document production, then it shall provide the proposed search terms, custodians, and/or other strategies to the Receiving Party within a reasonable time prior to beginning the searches. If there is disagreement about the search terms, custodians, and/or strategies, the Parties will meet and confer and attempt to reach agreement.

4. <u>Duplicates</u>. If a Producing Party has more than one identical copy of an electronic document (*i.e.*, the documents are actual duplicates), the Producing Party need only produce a single copy of that document (as long as all family relationships are maintained).

5. <u>Production Media</u>. A Producing Party shall provide Paper Documents and ESI produced electronically on a CD-ROM, DVD, or external hard drive, USB <u>flash drive</u>, or <u>on</u> such other readily accessible computer or electronic media as the Producing Party and the Receiving Party may agree (the "Production Media"). Information that shall be identified on the

**Deleted:** up

face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the Protective Order, if the media contains "Confidential Information" or "Highly Confidential Information" as defined in the Protective Order. The face of the Production Media shall also contain the Bates Number range(s) of the documents on the Production Media. If listing the Bates Number range(s) of the documents on the Production Media is not feasible, the Producing Party may be provide such information in a letter accompanying the Production Media. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production an explanation of how to decrypt the files.

6. <u>Costs</u>. Except as expressly provided herein, each Producing Party shall pay for the processing and production costs of the Paper Documents and ESI it produces electronically pursuant to this Protocol.

7. <u>Preservation Not Required for Not Reasonably Accessible ESI</u>. The Parties agree that the Parties need not preserve, search for, or produce Back-Up Tapes and Data which are outside the scope of discovery time period set by the Court or by agreement of the parties. For purposes of this Protocol, "Back-Up Tapes and Data" means data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows.

8. <u>General Limitation on Preservation Obligation</u>. In addition to the other limitations set forth in this Protocol, the obligation to preserve ESI shall be limited to those custodians and business function areas within a Party's organization in which responsive information relevant to the subject matter of this Action is reasonably likely to be found.

**Deleted:** (a)

**Deleted:** , (b) voice mail messages, (c) instant messages, (d) electronic mail, messages, calendar data, contact data, call logs, notes, documents or other ESI on personal digital assistants and other hand-held devices and smartphones (*e.g.*, Blackberry devices, iPhones, and the like), (e) deleted computer files, whether fragmented or whole, (f) temporary or cache files, including internet history, web browser cache and cookie files, and (g) server, system, or network logs.

**Deleted:** , if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy

**Deleted:**

**Deleted:** .

9. <u>Discovery and Admissibility</u>.  Nothing herein shall be construed to affect the discoverability or admissibility of any Paper Document or ESI.  All objections to the discoverability or admissibility of any such document or information are preserved and may be asserted at any time.

10. <u>Inadvertent Production</u>.  Inadvertent production of privileged materials shall be governed by the Protective Order in this Action.

IT IS SO ORDERED.

November ___, 2011

_____
CRAIG B. SHAFFER