# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant.

## MOTION TO QUASH OR MODIFY SUBPOENA

Dillon Companies, Inc. ("Dillon") moves the Court, pursuant to Fed. R. Civ. P. 45(c)(3), to quash or modify the subpoena served on it by Plaintiffs.

### Conferral Pursuant to D.C. Colo. L. Civ. R. 7.1(A)

Dillon certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel for Dillon made good faith efforts to confer with counsel for Plaintiffs by discussing Dillon's objections to the subpoena via telephone and e-mail. Counsel for Plaintiffs was unwilling to revoke or modify the subpoena.

### FACTS

Plaintiffs bring claims against Suncor Energy (U.S.A.) Inc. ("Suncor") for breach of contract, tortuous interference with contract, price discrimination, and unfair competition related to fuel sales between the parties. Plaintiffs allege that "Suncor has engaged in price discrimination by charging WCS more for fuel than it charges WCS's

competitors, including Dillon Companies, Inc. d/b/a King Soopers Fuel Center[.]" Complaint, ¶ 25 (Docket #1).

Dillon and Plaintiffs are competitors in the sale of fuel to consumers in the region for which the Subpoena seeks information – the "Pertinent Geographic Area." **Exhibit A**, p. 3; **Exhibit B** (Affidavit of Nathan Brown), ¶ 2; Complaint, ¶ 7 (Docket #1) ("Since 1990, Plaintiff WCS has been in the business of operating convenience stores in Colorado and Nebraska which sell as principal products gasoline and diesel fuel."). Dillon operates 155 retail fuel locations in the parts of Colorado and Nebraska defined as the "Pertinent Geographic Area," (**Exhibit B**, ¶ 2), while plaintiff Western Convenience Stores operates 42. Complaint, ¶ 9 (Docket #1).

On April 26, 2012, counsel for Plaintiffs served a Subpoena (**Exhibit A**) issued by this Court on Dillon that, among other things, demands:

- All reports and research, studies, examinations, investigations, surveys or analysis that Dillon has performed or commissioned, relating to 17 different characteristics of the retail fuel market, **Exhibit A**, p. 4;
- The zip code and last four digits of the credit or debit card number for every fuel sale that Dillon has made since January 1, 2007, in Colorado and parts of Nebraska, *id.* at 2-3;
- All inquiries, discussions, letters, correspondence, e-mails, notes and similar communications relating to fuel purchases between Dillon and Defendant from January 1, 2007, to present. *Id.* at 2-3.

Along with the Subpoena, counsel for Plaintiffs provided Dillon with a copy of the Court's Protective Order entered on March 12, 2012 (Docket #49).

## ARGUMENT

The Court must quash the Subpoena because compliance with Plaintiffs' extensive requests would require extraordinary time and expense from Dillon. Even if Dillon was practically able to comply with the Subpoena, Plaintiffs are competitors of Dillon who seek Dillon's confidential research and commercial information, as well as trade secrets. The court issuing a subpoena "must quash or modify the subpoena" upon a showing that "it requires disclosure of privileged or other protected matter," or "it subjects the subpoenaed person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). Similarly, the Court may quash or modify a subpoena that seeks to require "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). Because Plaintiffs' broad requests impose an undue burden while seeking Dillon's confidential information, the Court must protect Dillon from complying with the Subpoena.

1. **The Subpoena Should Be Quashed Because It Seeks Dillon's Confidential Research, Commercial Information And Trade Secrets, The Disclosure of Which Would Be Harmful to Dillon And Unnecessary to This Litigation.**

A "trade secret" is defined in the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101 to 7-74-110 as follows:

> "Trade secret" means the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a "trade secret" the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

C.R.S. § 7-74-102.

"What constitutes a `trade secret' is a question of fact for the trial court." *Haggard v. Spine,* 2009 WL 1655030, *7 (D. Colo. 2009). Factors considered by courts in determining whether a trade secret exists include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

Independent of trade secret protection, confidential information is afforded extra protection when it may be used against a company by a direct competitor. *Covelo Clothing, Inc. v. Atlandia Imports, Inc.,* 2007 WL 4287731, *1 (D. Colo. 2007); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F. Supp. 866 (E. D. Pa. 1981) ("Competitive disadvantage is a type of harm cognizable under Rule 26.").

### A. Categories 9 and 10 Are Dillon's Trade Secrets and Commercial Information Because They Have Been Developed and Protected At Significant Expense.

Nearly every factor by which trade secret protection is assessed weighs in favor of granting that protection to Categories 9 and 10 of the Subpoena. Those Categories call for "the results of all retail Fuel Price surveys done by [Dillon] or on [Dillon's] behalf, or on which [Dillon relies]," and "[a]ll reports and research, studies, examinations, investigations surveys or analysis," that Dillon has performed or commissioned "relating

to the characteristics of consumer demand for Fuel, or competition at the retail level[.]" **Exhibit A**, p. 4.

Dillon has invested substantial and immeasurable resources in creating this information. **Exhibit B**, ¶ 5. The information sought by Categories 9 and 10 is not something that Dillon would not disclose outside its business because doing so would represent a significant loss of the competitive advantage developed by expending resources to create that information. *Id.* at ¶ 6. Each of these characteristics weighs in favor of trade secret protection. *See Harvey*, 338 F.3d at 1129.

Further, since much of the research that Plaintiffs seek can only be performed contemporaneously with market conditions, duplication by others, if possible, would require significant time an expense, which is *Harvey's* sixth factor. Both Category 9 and 10 are the essence of trade secret material and commercial and confidential information.

> **B. Categories 7 and 8 Are Dillon's Trade Secrets and Commercial Information Because They Are Unique Compilations of Data That Provide Dillon a Competitive Advantage.**

"The fact that certain components of information are well-known or publicly available does not preclude trade secret protection." *Premier Election Solutions, Inc. v. Systest Labs Incorporated*, 2009 WL 3075597, *8 (D. Colo. 2009). If the combination or organization of the information is unique and offers the compiler of the information a competitive advantage, it is protectable. *Id.* (citing *Haggard,* 2009 WL 1655030 at *7 (protection sought for a compilation of customer data and product development information in a medical implant and device business)). "A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public

domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.,* 28 F.3d 1042, 1045 (10th Cir. 1994); *Hertz v. Luzenac Group,* 576 F.3d 1103, 1110 (10th Cir. 2009).

Category 8 of the Subpoena seeks a compilation of the daily pump price at each of Dillon's 155 retail fuel locations in Nebraska and Colorado between January 1, 2007m and present. This undoubtedly encompasses what was at one time publicly available information. It is equally beyond dispute that Dillon's "combination or organization" of the information by day, for more than five years, would be unique and unavailable elsewhere. *See Premier*, 2009 WL 3075597 at *8. This information meets the other trade secret criteria articulated in *Harvey*, such as providing value to Dillon by allowing it to analyze market trends, being unavailable outside of Dillon, and conferring a competitive advantage. *See* **Exhibit B**, ¶¶ 5-6.

Like Category 8, Category 7 seeks a compilation of information that is uniquely available to Dillon. Category 7 asks for the customer zip code and last four digits of credit or debit card for every fuel purchase at each of Dillon's 155 Nebraska and Colorado locations from January 1, 2007, to present. **Exhibit A**, p. 3. This data represents millions of transactions, and the value of having access to that compilation cannot be understated. *See* **Exhibit B**, ¶ 3. Having the compilation allows Dillon to analyze trends in its sales based on the geographic regions of consumers, time of year, travel habits, and other characteristics. Both Category 7 and 8 are Dillon's trade secrets and protectable commercial information because of the value conferred by having that information compiled in a usable form.

{00902053 / 2}   6

### C. Dillon Would Be Harmed By The Disclosure of Categories 7, 8, 9 and 10 Because It Would Lose The Competitive Advantage It Enjoys By Keeping That Information Inside The Company.

Plaintiffs' own allegations are that they are competitors with Dillon in the retail fuel market for which they seek Dillon's market and customer information. Complaint, ¶¶ 7 & 9 (Docket #1). The loss of competitive advantage that Dillon will suffer by being forced to release its confidential and commercial information and trade secrets is manifest. See **Exhibit B**, ¶¶ 5-6.

The Protective Order does not adequately protect Dillon. Even when information is designated as "Highly Confidential," it may still be disclosed to Western's representatives. Protective Order, ¶ 9 (Docket #49). While Dillon appreciates that the Protective Order is carefully written and does afford some protection, the release of substantial, comprehensive research and data that the Subpoena seeks is not acceptable to Dillon under any terms. Disclosure of any nature outside the company presents inherent risk of diminution in value.

### D. Categories 7, 8, 9 and 10 Are Not Necessary to Plaintiffs' Prosecution of This Litigation.

Once a subpoenaed party establishes that the information sought is trade secret information, or otherwise confidential, the burden shifts to the issuing party to establish "that disclosure of the trade secrets is relevant and necessary to the action." *Premier Election Solutions, Inc. v. Systest Labs Incorporated*, 2009 WL 3075597, *8 (D. Colo. 2009). The party seeking the information "must prove that it has a 'substantial need' for the discovery which 'cannot be otherwise met without undue hardship . . . .'" *Id.* (citing former Fed. R. Civ. P. 45(c)(3)(B)(iii), now Fed R. Civ. P. 45(c)(3)(C)(i)).

Through Categories 9 and 10, Plaintiffs seek market research that Dillon performed. Plaintiffs' claims essentially turn on allegations that Suncor gave favorable pricing to Dillon. *See* Complaint, ¶¶ 20, 25, 30 (Docket #1). The nature and results of market research that Dillon chose to perform have no bearing either on Dillon's relationship with Suncor or Suncor's alleged price discrimination. Given that these Categories of information are afforded heightened protection because Plaintiffs are competitors of Dillon, *see Covelo*, 2007 WL 4287731 at *1, they simply aren't "relevant or necessary" to the action. *Premier*, 2009 WL 3075597 at *8.

Likewise, Category 7 is a request for identifying information for every consumer who has purchased fuel from Dillon in Nebraska and Colorado since the beginning of 2007. To the extent that Plaintiffs' claims implicate Dillon at all, identifying information for Dillon's customers has no bearing on those claims. Similarly, Category 8 is a request for Dillon's data regarding its price charged to consumers, which may have some relationship to the price Dillon pays for fuel, but is significantly influenced by many other factors, including Dillon's pricing strategy and its evaluation of market research.

Not only are Categories 7, 8, 9 and 10 protected as trade secrets and confidential and commercial information, but they are afforded extra protection because they are sought by a competitor. The Court should quash the Subpoena with regard to those Categories because Dillon does not have a substantial need for the information sought by those Categories and that information is not necessary or relevant to this action.

### 2. The Subpoena Must Be Quashed Because It Seeks An Extraordinary Quantity Of Documents, Subjecting Dillon To Undue Burden.

"Courts are required to balance the need for discovery against the burden imposed when parties are ordered to produce information or materials," but "the status of…an entity as a non-party…weighs against disclosure." *Echostar Communications Corp. v.*

*News Corp. Ltd.,* 180 F.R.D. 391, 394 (D.Colo. 1998) (citing *American Standard Inc. v. Pfizer, Inc.,* 828 F.2d 734, 738 (Fed. Cir. 1987)). When the subpoena seeks documents from non-parties, a party issuing a subpoena must satisfy a burden of proof heavier than the ordinary burden imposed by Fed. R. Civ. P. 26. *Id.* at 394.

While Dillon recognizes that Plaintiffs have made an effort to limit the scope of the Subpoena to the geographic area and time period that are at issue in this case, it seeks extensive information within those parameters. Dillon operates approximately 155 retail fuel locations in the region that the Subpoena defines as the "Pertinent Geographic Area" and maintains records and employees in thousands of other locations. **Exhibit B** ¶, 2. Dillon cannot even calculate the amount of time that compliance would require. *Id.* at ¶ 3.

To comply with the Subpoena, Dillon would have to undertake a search of millions of documents in thousands of different locations. *Id.* at ¶ 2. By way of example, Category 2 seeks "all Communications between [Dillon] and Suncor referring or relating to any Discount" between January 1, 2007, and present. **Exhibit A**, p. 3. This would require a meaningful review of every e-mail, memo, letter, or correspondence that Dillon has sent to or received from Suncor for more than 5 years. Even a minimal keyword search of e-mail records would produce countless results, all of which would have to be reviewed for responsiveness. The other Categories, and the totality of the information requested by the Subpoena present the same hardships.

Dillon's burden is in the gathering of these documents, not the production; collecting them would require an extraordinary amount of time from Dillon's employees and cause an extreme disruption to Dillon's operations. **Exhibit B**, ¶ 3.

## **CONCLUSION**

The Court must quash the Subpoena because compliance with Plaintiffs' extensive requests would require extraordinary time and expense from Dillon. Fed. R. Civ. P. 45 mandates this result. Even if Dillon was practicably able to comply with the Subpoena, Plaintiffs are competitors of Dillon who seek Dillon's confidential research and commercial information, as well as trade secrets. Dillon needs the Court's protection in order to preserve the commercial advantage it enjoys from developing and protecting its trade secrets and confidential information. For all of these reasons, Dillon respectfully requests that the Court quash the Subpoena.

Dated this 17th Day of May, 2012

Respectfully submitted,

**MESSNER & REEVES, LLC**

*s/ Scott L. Evans*
Scott L. Evans (#25475)
Andrew A. Smith (#43249)
1430 Wynkoop St., Suite 300
Denver, CO  80202
(303) 623-1800

Attorneys Dillon Companies, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and copy of the foregoing **MOTION TO QUASH OR MODIFY SUBPOENA** was served electronically upon the following:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam Aldrich
Benington Johnson Biermann & Craigmile, LLC
370 17th Street, Suite 3500
Denver CO  80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver CO  80202

William Monts, III
John Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

Anthony Shaheen
Holland & Hart LLP-Denver
555 17th Street, Suite 3200
Denver CO  80201

                                                       s/ *Jeanine A Montoya*
                                                       Jeanine A. Montoya