**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

---

**PLAINTIFFS' MOTION CHALLENGING DEFENDANT'S
DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS
"HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

---

Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC, by and through their undersigned counsel, move as follows for an order: (i) re-designating certain discovery material produced by Defendant Suncor as "Confidential Information" rather than "Highly Confidential Information" under the Protective order entered March 12, 2012 (Doc. 49, "Protective Order").

### CERTIFICATION OF COMPLIANCE WITH D.C.COLO.L.CivR 7.1.A

Pursuant to Local Rule 7.1.A, the undersigned certifies that counsel for Plaintiffs has conferred at length with counsel for Defendant Suncor regarding the issue raised herein, but have been unable to resolve it without the Court's intervention. This issue was addressed at the discovery conference with Magistrate Judge Shaffer on April 20, 2012. Following that conference, Plaintiffs' counsel has continued to address the issue with Defendant's counsel but has been unable to obtain Defendant's stipulation to the relief sought.

## I.
## SUMMARY OF MOTION AND RELIEF SOUGHT

1. The Protective Order permits a party to designate produced documents or data as "Highly Confidential" such that they can be reviewed only by opposing counsel and outside experts approved by the disclosing party. Suncor has identified numerous documents as "Highly Confidential," precluding Plaintiffs' counsel from sharing any of the data in those documents with its principal, Hossein Taraghi, whose input is critical in assisting counsel to assess the existence and extent of Suncor's price discrimination and the resulting antitrust injury and damages to Plaintiff WCS. By this Motion, Plaintiffs do not challenge all of Suncor's "Highly Confidential" designations. Rather, they challenge only such designations as to pricing materials (i.e., pricing spreadsheets, contracts and related communications) during the period relevant to the parties' claims, January 2007 through May 2011, when Suncor terminated its relationship with Plaintiffs.

2. The information that is the subject of this Motion is key to the Robinson-Patman Act violations that are the subject of this case. All of the information is historical, and thus is not

the type of "highly sensitive" material contemplated by the Protective Order's provisions (or applicable law) for a "Highly Confidential" designation. As set forth herein and in the accompanying declaration, Plaintiffs are substantially prejudiced in prosecuting this action unless their counsel can share and discuss this information with Mr. Taraghi.

## II.
## SPECIFIC RELIEF SOUGHT

3. Pursuant to §§ 9.e. and 15.a. of the Protective Order, Plaintiffs seek an order that the following documents/data produced by Suncor are no longer designated as "Highly Confidential Information" pursuant to the Protective Order's terms:

   a. Pricing spreadsheets reflecting Suncor prices and discounts to Suncor customers for fuel sold prior to June 1, 2011. An excerpt from one of these spreadsheets is attached as Exhibit A (Restricted);

   b. Purchase and Sale Confirmations and other contract documents between Suncor and other customers which expired or otherwise terminated prior to June 1, 2011. An example of the purchase and sale confirmations is attached as Exhibit B (Restricted); and

   c. Email communications discussing pricing credits, rebates or discounts to other customers for fuel purchases prior to June 1, 2011. An example of such email communications is attached as Exhibit C (Restricted).

4. To further ensure the protection of Suncor's interests, Plaintiffs seek to permit review of the documents set forth above by only one person employed by Plaintiff Western

Convenience Stores: Hossein Taraghi, its President and founder. Mr. Taraghi has read the Protective Order and executed its attached Declaration of Compliance. Exhibit D, Bennington Declaration at ¶ 3.

### III.
### MOTION

5.      Pursuant to the Protective Order, a party or non-party may designate discovery material of any kind as "Confidential Information" or "Highly Confidential Information." Protective Order at ¶¶ 1, 2. To be designated as "Confidential Information," discovery materials must constitute "confidential or proprietary information of a party or third party, including information the disclosure of which would cause competitive or business injury to the Designating Party or which would give a competitor or a customer a competitive advantage over other competitors or customers of the Designating Party." *Id.* at ¶ 2. In contrast, a designation of "Highly Confidential Information" is permitted "only for *extremely sensitive information,* the disclosure of which may cause *substantial* competitive or business injury to the Designating Party or which would give a competitor or a customer a competitive advantage over other competitors or customers of the Designating Party." *Id.* at ¶ 3 (emphasis in original).

6.      Under the Protective Order, "Confidential Information" or "Highly Confidential Information" may be disclosed only as permitted by the Protective Order and may "be used solely for purposes of preparation for trial, trial of and/or appeal from this action and for no other purpose, including, without limitation, any business or commercial purpose or for any litigation or proceeding other than this action." *Id.* at ¶ 7. Persons other than counsel and their in-house

employees may not review or be provided "Confidential Information" (or "Highly Confidential Information"), nor any information derived therefrom, without first having executed a Declaration of Compliance stating, in pertinent part:

> I … declare under penalty of perjury that I have read in its entirety and understand the Protective Order … I agree to comply with and to be bound by all the terms of the Protective Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Protective Order to any person or entity except in strict compliance with the provisions of the Order.
>
> I further agree to submit to the jurisdiction of the United States District Court for the District of Colorado for the purpose of enforcing the terms of [the] Protective Order, even if such enforcement proceedings occur after termination of this action.

*Id.* at ¶¶ 8.a-e, Exhibit A.

7.       Of approximately 3,500 documents produced in this action, Suncor has identified more than 800 as "Highly Confidential Information," meaning that Plaintiffs' counsel may not disclose them, nor "any information derived from" them to the officers, directors, owners, shareholders, principals or employees of Plaintiffs, with the exception of in-house counsel (of which there are none). Exhibit D at ¶ 3; Protective Order, Doc. 49, at ¶ 9. Many of the documents identified as *Highly Confidential* are the most critical documents in this Robinson-Patman Act case, because they bear directly on whether Suncor engaged in price discrimination by charging Plaintiff WCS more for fuel than it charged WCS's competitors for like grade and quality of fuel up until May 2011, when Plaintiffs confronted Suncor about the practice and Suncor terminated the parties' relationship. Exhibit D, at ¶¶ 4-7; *see also* Amended Complaint,

Doc. 40-1, at ¶¶ 25, 31, 20-24. Plaintiffs cannot adequately prosecute this case without being able to share the documents identified in Paragraphs 3.a-c above (or at least a summary of the information derived from them) with Mr. Taraghi. Exhibit D ¶¶ 4-7.

8. While a court has discretion to enter a protective order restricting disclosure of certain materials only to a party's counsel and outside experts, courts in this jurisdiction and others have recognized that "highly confidential" or "attorneys' eyes only" designations are appropriate only in very limited situations for the simple reason, among others, that such restrictions can prevent a party from preparing its case. *See, e.g.*, *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2008 WL 4889867, *2 (D. Colo. Aug. 23, 2008) (rejecting proposed attorneys' eyes only protective order as both unfair and impractical); *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170 (N.D. Ill. June 1, 2010) (rejecting attorneys' eyes only designations where parties did not currently compete and defendants failed to show that disclosure of the materials at issue to a small number of plaintiff's personnel presented a risk of disclosure); *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-cv-548, 2009 WL 311125, *6 (W.D. Mich. Feb. 9, 2009) (rejecting attorneys and experts' eyes only designation and recognizing that indiscriminate use of such designations "pose[s] a significant handicap on the restricted litigant").

9. As Magistrate Judge Mix explained in *Innovatier*, the Court must apply a test in which the need to protect trade secrets is balanced against the need to elicit facts required for full and fair presentation of a case. Under the facts of that case, Magistrate Judge Mix found that:

11-cv-01611-MSK-CBS:  PLAINTIFFS' MOTION CHALLENGING DEFENDANT'S          Page 6
DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL"
PURSUANT TO THE PROTECTIVE ORDER

> building an impermeable wall around this information by means of a Protective Order is not only impractical, but would be crippling to Defendant's efforts to adequately present its case. In order to absolutely prevent Defendant's representatives from having access to the information at issue, they would necessarily be excluded from every discussion of the information essential for presentation of Defendant's legal arguments and evidence to the Court or trier of fact. The implications of Plaintiff's proposal are far reaching and would serve to prohibit Defendant's representative from participating in preparation for key depositions, strategizing about important motions, and attending the trial. The wall around the information would also operate as a wall between Defendant and its counsel. Moreover, the task of policing the wall would, of course, fall eventually to the Court, which would increase the cost of the litigation for both parties and unduly burden the Court.

*Innovatier,* 2008 WL 4889867 at *2.

10. In this case, the discounts provided to WCS competitors such as Kroger cannot even be discussed by counsel with Mr. Taraghi. As it stands now, counsel cannot even tell Mr. Taraghi if he was correct in his belief that WCS was materially handicapped in its competition with retailers favored by Suncor. Exhibit D ¶ 4. Therefore, it is impossible for Mr. Taraghi, as WCS's owner, to plan strategy, evaluate this case and, ultimately, discuss settlement, as he is entirely in the dark as to the scope of the price discrimination practiced by Defendant Suncor. *Id.* ¶¶ 4-5.

11. WCS is also at a distinct disadvantage in having no in-house counsel, i.e., someone experienced with the company, its business and the industry, to whom the pricing information designated *Highly Confidential* information can be disclosed. In effect, counsel for WCS does not have a client with whom to consult in understanding and evaluating the actual pricing that is the subject of this price discrimination case. *Id.* ¶ 6. Counsel is thus in the

potentially unethical position of becoming the client instead of the attorney, making critical decisions without the client's full and informed input.

12. This crippling of WCS's ability to prosecute its case must be balanced against the fact that WCS seeks disclosure of pricing information which is historical, going back to January of 2007. Current pricing information, which at least has some legitimacy as a trade secret, is not even at issue. *Id.* ¶ 7. In addition, documents produced by Suncor show that its contract with Kroger was renegotiated and a new contract signed in July of 2011 (which is after Suncor terminated WCS's ability to purchase fuel from Suncor), and that the Kroger pricing changed. *Id.* Therefore, Suncor is deprived of any argument that knowledge of past pricing amounts to knowledge of current pricing.

13. Thus far, Suncor has offered nothing to justify its designation of past pricing as "Highly Confidential" beyond some inherent dislike or distrust of Mr. Taraghi and his company. In order to justify that designation, Suncor must supply more, which will be particularly difficult in light of the fact that Plaintiff WCS does not compete with Suncor. The only disadvantage to Suncor, if WCS were still a buyer and knew the pricing given to its competitors, would be that it would be more difficult for Suncor to engage in price discrimination. In any event, WCS is no longer a customer, and Suncor cannot show how its past pricing will cause it substantial harm, particularly in light of the protections contained in the Protective Order for all confidential information.

14. Accordingly, Plaintiff WCS challenges the *Highly Confidential* designation of pricing materials (i.e., pricing spreadsheets, contracts and related

communications) during the period relevant to the parties' claims, January 2007 through May 2011, when Suncor terminated its relationship with Plaintiffs.  Plaintiff requests an Order re-designating such materials as *Confidential* under the terms of the Protective Order entered in this action.

Dated:  May 21, 2012

*s/ Kenneth R. Bennington*

_____
Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN
& CRAIGMILE, LLC 370 17th Street,
Suite 3500 Denver, CO 80202
Telephone: (303) 629-5200
Facsimile: (303) 629-5718
*krb@benningtonjonson.com*
*kec@benningtonjohnson.com*
*afa@benningtonjohnson.com*
*Attorneys for Plaintiffs and Third-
Party Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that, on May 21, 2012, copies of the foregoing **PLAINTIFFS' MOTION CHALLENGING DEFENDANT'S DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER** were served on the following parties via the CM/ECF e-filing system:

| | |
|---|---|
| Anthony J. Shaheen | J. Robert Robertson |
| Keeya M. Jeffrey | William L. Monts III |
| Holland & Hart LLP | Hogan Lovells US LLP |
| 555 17th Street, Suite 3200 | 555 Thirteenth Street, N.W. |
| Denver, CO 80201-8749 | Washington, D.C. 20004-1109 |
| AJShaheen@hollandhart.com | robby.robertson@hoganlovells.com |
| KMJeffrey@hollandhart.com | william.monts@hoganlovells.com |

                                           *s/ Marie Newberger*