## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

       Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

       Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

       Third-Party Defendants.

---

### PLAINTIFFS' RESPONSE TO MOTION TO QUASH OR MODIFY SUBPOENA FILED BY DILLON COMPANIES, INC.

---

       Plaintiffs Western Convenience Stores, Inc. ("WCS") and Western Truck One, LLC ("WTO"), by and through their undersigned counsel, respond as follows to the Motion to Quash or Modify Subpoena filed by Dillon Companies, Inc. (Doc. 57, "Motion").

### SUMMARY OF RESPONSE

       The Motion should be denied for several reasons, including that Dillon failed to confer as required by Local Rule 7.1(A) and failed to satisfy its burden under Fed. R. Civ. P. 45(c)(3)(A). Before filing the Motion, Dillon's counsel unequivocally informed Plaintiffs' counsel that the Motion would be filed and, despite Plaintiffs' repeated offers, refused to

engage in efforts to reach any compromise regarding the subpoena requests, or to produce documents responsive to requests that were not even arguably objectionable.

In an attempt to establish trade secret protection for the materials sought by Plaintiffs, Dillon relies on an affidavit from a company attorney that is replete with factually unsupported conclusions, statements indicating no personal knowledge, and self-serving assertions. Even if the Court determines that the materials deserve protection, the trade secrets may be designated "Highly Confidential" pursuant to the Protective Order such that they cannot be disclosed to Plaintiffs' representatives. Under the terms of the Protective Order – irrespective of whether the responsive documents are designated as "Confidential" or "Highly Confidential" -- Plaintiffs are bound not to use the materials for business or commercial purposes.

Dillon relies on the same affidavit in an attempt to establish an undue burden. The affidavit falls woefully short in providing sufficient details of undue burden to obviate the overwhelming preference for requiring that relevant discovery materials be produced. Moreover, Dillon has provided no details sufficient to allow the Court to evaluate the time and costs associated with searching and producing the requested discovery materials.

The discovery materials requested by Plaintiffs are relevant and necessary to the prosecution of this lawsuit. Specifically, exploration into the business of Dillon, an admitted direct competitor of WCS for the retail sale of fuel in Colorado and Nebraska, may well substantiate the validity of the allegations of price discrimination by Suncor against WCS in Dillon's favor. The net price Dillon paid for each delivery of fuel, the discounts it received from Suncor, the daily pump price at each of Dillon's locations, and other documents and ESI related to pricing strategy, directly pertain to the Robinson-Patman Act charges and to the defenses

asserted against those charges.

## FACTS RELEVANT TO DILLON'S MOTION

As far as they go, Plaintiffs do not dispute the facts set forth in Dillon's Motion. However, Dillon does not address the fact that one of the primary allegations of this lawsuit is that Suncor discriminated against WCS in favor of Dillon when it charged WCS more for fuel than it charged Dillon for like grade and quality of fuel. *Amended Complaint, Doc. 43, at ¶ 25.*

Suncor's sale of fuel to WCS and Dillon has occurred during reasonably contemporaneous time periods, and WCS and Dillon purchased thousands of gallons of fuel from Suncor when the price differences were in effect. *Id.* at ¶ 28. Before Suncor contracted with Dillon for the purchase of fuel, WCS was Suncor's single largest purchaser of unbranded gasoline in Colorado. *Exhibit 1, Dep. Ex. 30, Suncor Top-Ten Unbranded Fuel Purchasers by Volume (U.S. Gallons) 2008-2010.* After Suncor contracted with Dillon, the amount of fuel Suncor delivered to WCS decreased by more than 50%, and Dillon replaced WCS as Suncor's highest-volume purchaser. *Id.*

## LAW AND ANALYSIS

**A. Dillon did not make a reasonable, good-faith effort to confer**.

D.C.COLO.LCivR 7.1(A) provides the following:

> **Duty to Confer.** The court will not consider any motion, other than a motion under Fed. R. Civ. P. 12 or 56, unless counsel for the moving party or a pro se party, before filing the motion, has conferred or made reasonable, good-faith efforts to confer with opposing counsel or a pro se party to resolve the disputed matter. The moving party shall state in the motion, or in a certificate attached to the motion, the specific efforts to comply with this rule.

As Magistrate Judge Boland explained in *Hoelzel v. First Select Corp.*, 214 F.R.D. 634, 635-36

(D. Colo. 2003), the meet and confer requirement means:

> "to hold a conference; compare views; consult together." The American Heritage Dictionary of the English Language 278-79 (Ninth Printing 1971). The rule is not satisfied by one party sending a single e-mail to another party, and particularly not where, as here, the e-mail merely indicates an intention to file a motion to compel and does not suggest any negotiation or compromise. Nor, in my view, would a single letter or a single voice message satisfy the requirements of Rule 7.1A. (internal citation omitted). Rather, to satisfy the requirements of Rule 7.1A, the parties must hold a conference, possibly through the exchange of correspondence but preferably through person-to-person telephone calls or face-to-face meetings, and must compare views and attempt to reach an agreement, including by compromise if appropriate.

Contrary to the requirements of Local Rule 7.1(A), Dillon's Motion does not identify at all the effort to confer before filing the Motion.  In fact, no efforts were made by Dillon's counsel.  Instead, he simply informed Plaintiffs' counsel that the Motion would be filed if Plaintiffs did not revoke the subpoena.  *See Exhibit 2, email exchange between Kenneth R. Bennington and Scott Evans*.  Dillon's counsel did not attempt to reach an agreement or compromise regarding any of the requests set forth in Plaintiffs' Subpoena, despite the explicit requests and offers to meet from Plaintiffs' counsel.  *See id*.  Thus, Dillon did not attempt to compromise, negotiate or confer about the discovery dispute as contemplated by *Hoelzel* and required by Local Rule 7.1(A).  On that basis alone, Dillon's Motion should be denied.

**B.  The requested discovery materials are subject to the Protective Order.**

Dillon has flat out refused to produce any of the requested discovery materials notwithstanding the provisions of the Protective Order.  *Motion at p. 7.*  Dillon's position ignores the plain language of the Protective Order and the law from this district and others.

The Protective Order states that "[a]ny Party to this action or any non-party may designate any Discovery Material produced by it as Confidential Information or Highly

Confidential Information." *Protective Order, Doc. 49, at ¶ 2.*  A Highly Confidential

designation prevents the Plaintiffs from disclosing any of Dillon's materials to Plaintiffs'

corporate representatives.  *Id.* at ¶¶ 8, 9. The Protective Order also prevents the disclosure or use

of any Confidential or Highly Confidential information outside of this lawsuit.  *Id.*

      Courts have routinely found that an *attorney-eyes-only* designation, like the *Highly*

*Confidential* designation here, is the appropriate measure when trade secrets are the subject of a

discovery request or third-party subpoena.  *See Covey Oil v. Continental Oil Co.*, 340 F.2d 993,

997-99 (10th Cir. 1965), *cert. denied* 380 U.S. 1110 (1965) and *overruled on other grounds by*

*United States v. Ryan*, 402 U.S. 530 (1971) (requiring a nonparty, in an action to recover

damages for alleged violations of the Robinson-Patman Act, to comply with a subpoena

requesting trade secrets relating to the price, cost, and volume of sales of gasoline on conditions

designed to protect nonparties by making the documents available only to counsel and

independent certified public accountants, and by forbidding the use of the material for business

or competitive purposes); *Covelo Clothing, Inc. v. Atlandia Imports, Inc.*, No. 07-cv-02403-

MSK-MEH, 2007 WL 4287731, *2 (D. Colo. Dec. 5, 2007) (finding that an attorney-eyes-only

provision in a protective order was sufficient to protect a non-party when disclosing trade secrets

to a competitor who was a party to the lawsuit); *In re The City of New York*, 607 F.3d 923, 935

(2d. Cir. 2010) (holding that the disclosure of confidential information on an attorney-eyes-only

basis is routine in civil litigation involving trade secrets); *Medical Tech. Inc. v. Breg, Inc.*, No.

10–00100, 2010 WL 3734719, *5 (E.D. Pa. Sept. 21, 2010) (declining to quash third-party

subpoenas on the basis that they sought production of highly confidential information where the

requested documents would be subject to a protective order containing an attorney-eyes-only

provision).  Thus, by the explicit language of the Protective Order, Dillon is protected.

**C. Dillon has failed to satisfy its burden under Fed. R. Civ. P. 45(c)(3)(A).**

Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena.  Rule 45 requires

that the recipient of a subpoena timely file a motion to quash or modify the subpoena if it (1)

fails to allow a reasonable time to comply, (2) requires a person who is neither a party nor a

party's officer to travel more than 100 miles from where that person resides, (3) requires

disclosure of privileged or other protected matter, or (3) subjects a person to undue burden.  *See*

Fed. R. Civ. P. 45(c)(3)(A).  The objecting party has the burden of showing that the discovery

requested is objectionable.  *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D. Colo.

2003).

**1. Dillon has failed to establish trade secret protection for the requested
discovery materials.**

Dillon has resisted production of Categories 7, 8, 9, and 10 of the Subpoena on the basis

that the materials constitute confidential, competitive trade secrets.  *Motion at pp. 4-7.*  Plaintiffs

concede that ESI that will identify each customer of Dillon who purchased fuel at retail using a

credit card or debit card, by zip code and the last 4 digits of the credit or debit card used to

purchase fuel (Category 7), may constitute trade secrets.  However, Category 7 is covered by the

Protective Order.

For Categories 8, 9, and 10, which would also be covered by the Protective Order, Dillon

relies on the affidavit of Nathan H. Brown, a company attorney, to establish trade secret

protection.  *See Exhibit B, Affidavit of Nathan H. Brown, Doc. 57-2, at pp. 1-2.*  Mr. Brown's

affidavit contains numerous factually unsupported conclusions, statements indicating no personal

knowledge, and self-serving assertions. *See Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, *7 (D. Colo. June 12, 2009) ("What constitutes a 'trade secret' is a question of fact for the trial court."). Nor does the affidavit contain a reasonably detailed description of the actual documents Dillon claims to be trade secrets.

Other statements in the affidavit are legal conclusions requiring inferences from meager factual information. For example, Mr. Brown testifies that fuel pricing calculations, agreements and negotiations with suppliers, and market research, among other things…encompass Dillon's confidential business information and trade secrets." *Exhibit B, at ¶ 4*. Mr. Brown goes on to state, without factual support, that "Dillon has invested substantial and immeasurable resources in developing its confidential information and trade secrets," and that disclosure of the information "would represent an incalculable loss of outlay to Dillon." *Id.* at ¶ 5.

As it relates to Categories 9 and 10 of the Subpoena, Mr. Brown states with no supporting facts that Dillon has "invested substantial and immeasurable resources" and that it will lose "a competitive advantage" if the information is disclosed. *Id.* at ¶¶ 5, 6. For Category 8, Dillon argues that "[i]t is equally beyond dispute that Dillon's 'combination or organization' of the [daily pump price at each of Dillon's 155 retail fuel locations in Nebraska and Colorado between January 1, 2007 and the present], would be unique and unavailable elsewhere." *Motion, Doc. 57, at p. 6*. Dillon provides no factual support for its conclusions. Accordingly, Dillon has failed to establish its burden under Rule 45(c)(3)(A)(iii).

### 2.   Dillon has failed to establish undue burden.

The Court may quash or modify a subpoena that imposes an undue burden on the recipient. *See* Fed. R .Civ. P. 45(c)(3)(A)(iv). Dillon must provide sufficient details or "a

compelling showing of undue burden" to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721, *15 (D. Colo. Feb. 8, 2010) (citing cases). The Court must balance Plaintiffs' need for the discovery at issue against the burden imposed on Dillon. *See Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09–cv–02080–REB–KLM, 2010 WL 3927783, *3 (D. Colo. Oct. 1, 2010) (citation omitted).

To support its position of undue burden, Dillon again relies on the unsubstantiated statements of its corporate counsel, Nathan H. Brown. *See Exhibit B, Affidavit of Nathan H. Brown, Doc. 57-2*; *see also In re Zurn Pex Plumbing Prods Liab. Litig.*, Case No. 08-1958, 2009 WL 1606653, *2 (D . Minn. June 5, 2009) (holding that defendants had not made a compelling showing of undue burden for purposes of Rule 26(b)(2)(B) by relying on the affidavit of an attorney who was not an expert on document search and retrieval); *Cf. Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 261 n. 10 (D. Md. 2008) (stating that "*ipse dixit* pronouncements from lawyers" in determining proper ESI discovery methodology "are of little value to a trial judge who must decide a discovery motion…"). As is the case with his arguments about trade secrets, Mr. Brown makes sweeping conclusions about burdensomeness without any factual support. *See Cartel Asset Mgmt.*, 2010 WL 502721, at *15 (citation omitted) ("the responding party should present details sufficient to allow the requesting party to evaluate the costs and benefits of searching and producing the identified sources.").

By way of example, Mr. Brown has not provided any specific information indicating how Dillon stores electronic information on a store-by-store, regional, or company wide basis; he has not identified the number of back-up or archival systems that would have to be searched in the

course of responding to Plaintiffs' Subpoena, or Dillon's capability to retrieve information stored in those back-up or archival systems; and he has not provided information on Dillon's email system or how or where it maintains physical documents.  In essence, Dillon has provided no information from which the Court can evaluate its claim of undue burden.

Notwithstanding the lack of any detail of the undue burden, Mr. Brown speculates that Dillon "cannot even calculate the amount of time that compliance would require," "Dillon would have to undertake a search of millions of documents in thousands of different locations," and that collecting documents "would require an extraordinary amount of time from Dillon's employees and cause an extreme disruption to Dillon's operations." *Exhibit B, at ¶¶ 2-3*.  The benefits of Rule 26(b)(2)(B) cannot be invoked on mere speculation or unsubstantiated assumptions.

Dillon is a large and sophisticated company.  According to its own website, Dillon requires its vendors to process business information electronically, including purchase orders and invoices.  *See Exhibit 3, EDI Compliance Requirements, available at* http://edi.kroger.com/comp_001.htm.  Without question, Dillon maintains an electronic repository which presumably contains: (1) contracts with vendors and suppliers (*i.e.,* Suncor); (2) a listing of stores it operates in Colorado and Nebraska; (3) bills of lading; (4) the price it paid for fuel from Suncor by type, quantity, and delivery date (invoices maintained through EDI); (5) the documents or ESI showing the price paid and/or discounts received for fuel it purchased for sale at its retail locations; (6) email; and (7) customer purchasing information, including customer loyalty card numbers and credit card numbers.  As the Court is aware, ESI can be searched with carefully selected keywords in a SQL or other appropriate ESI query.  Dillon has refused even a limited query.  *Motion, at p. 9.*

Dillon has alleged that Plaintiffs are seeking all communications between it and Suncor. *Id.* at p. 2. That allegation is incorrect. It is likely that the large majority of communications between Dillon and Suncor would be irrelevant to this case. That is why Plaintiffs seek and requested only those communications relating specifically to any discount offered by Suncor to Dillon and communications regarding WCS. *See Subpoena, Doc. 57-1, at p. 3.*

While Plaintiffs are aware that the Subpoena may burden Dillon, the question is whether the discovery causes *undue* burden. *See Cartel Asset Mgmt.*, 2010 WL 502721, at *15 (citation omitted). Dillon has presented no evidence to show an undue burden in producing the materials requested by the Subpoena. Accordingly, Dillon has failed to meet the requirements of Rule 45(c)(3)(A)(iv).

### 3. The materials sought from Dillon are relevant and necessary to this case.

If the Court determines that the discovery materials are trade secrets, the burden then shifts to WCS to show the relevancy and need for the information. *See R & D Business Systems v. Xerox Corp.*, 152 F.R.D. 195, 197 (D. Colo. 1993). Pursuant to Fed. R. Civ. P. 26(b), parties are entitled to discovery on any matter "relevant to the subject matter involved in the pending action." Relevance under Rule 26 is extremely broad. *Echostar Commc'ns Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted).

Dillon claims that "(t)he nature and results of market research that Dillon chose to perform have no bearing either on Dillon's relationship with Suncor or Suncor's alleged price discrimination." *Motion, at p. 8.*  However, Dillon fails to address (and perhaps hides) the possibility that its own research has revealed, for example, how many customers its pricing has induced to move from WCS to Dillon retailers King Soopers and Loaf N Jug.  Similarly, it claims that credit card information on its customers (where it competes with WCS) "has no bearing on those (price discrimination claims)." *Id.*  Again, it sweeps under the rug the possibility that statistical analysis of that data, along with WCS data, could also show how many customers switched from WCS to Dillon retailers based on the latter's pricing.

Section 2(a) of the Robinson-Patman Act makes it "unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... *where the effect of such discrimination may be substantially to lessen competition....*" 15 U.S.C. § 13(a); *see also Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 434 (1983) (Robinson–Patman Act requires only that there be "a reasonable possibility" of substantial injury to competition before its protections are triggered).

Because competitive injury is an element to the Robinson-Patman claim, both WCS and Suncor are interested in determining whether any lost sales by WCS were caused by the alleged price discrimination in favor of Dillon.  Specifically, whether WCS can establish lost sales or profits caused by Suncor's alleged price discrimination or show a substantial difference in price between sales by Suncor to WCS and sales by Suncor to favored retailers, such as Dillon, over a significant period of time. *See Exhibit 4, Affidavit of Mark Glick, at ¶ 9.*  In short, WCS may be

unable to prove the elements of a Robinson-Patman claim without discovery from the favored retailer, in this case Dillon.

In addition, as this case involves the sale of fuel, a key issue will be the size of the geographic markets in which WCS's gas stations compete. *Id*. The purpose of Category 9 is to obtain information on that topic. *Id*. Category 9 seeks information concerning who competes with WCS's gas stations by inquiring what gas stations Dillon takes into consideration when it sets its prices. Similar information is sought in Categories 10. e, f, g, h, i, n, o, p and q. *Id*.

Once the geographic market is defined, it is necessary to determine whether plaintiff lost sales due to the price discrimination. *Id*. at ¶ 10. Category 8 seeks information concerning Dillon's prices to consumers which are impacted by Suncor's prices to Dillon. *Id*. The information requested in Category 7 is relevant to determine whether customer switching can be traced to the price discrimination. *Id*. Categories 10. a, b, c, d, i, k, and m seek information about the relationship of sales to price differentials caused by the alleged price discrimination. Accordingly, the discovery materials sought by Categories 7, 8, 9, and 10 are relevant and necessary to this litigation.

## **CONCLUSION**

Dillon's Motion should be denied as Dillon's counsel did not meet and confer before filing the Motion, and did not attempt to compromise regarding the subpoena requests. Dillon has refused to produce any documents responsive to the subpoena notwithstanding the relevance and necessity of the documents to the Robinson-Patman claims. In refusing to produce documents, Dillon erroneously relied upon the affidavit of a company attorney. The affidavit fails to show that responsive documents are trade secrets or that production subjects Dillon to an

undue burden.  Even if the responsive documents were trade secrets, they are covered by the

Protective Order.  Accordingly, Dillon's Motion should be denied as it has failed to meet the

requirements of Local Rule 7.1(A) and Fed. R. Civ. P. 45(c)(3)(A).

June 11, 2012

*s/ Kenneth R. Bennington*

_____

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN
& CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
Telephone: (303) 629-5200
Facsimile: (303) 629-5718
*kec@benningtonjohnson.com*
*krb@benningtonjonson.com*
*afa@benningtonjohnson.com*
*Attorneys for Plaintiffs and Third-
Party Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 11, 2012, the foregoing **PLAINTIFFS' RESPONSE TO MOTION TO QUASH OR MODIFY SUBPOENA FILED BY DILLON COMPANIES, INC.** was served on the following parties via CM/ECF:

Anthony J. Shaheen
Keeya M. Jeffrey
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80201-8749
AJShaheen@hollandhart.com
KMJeffrey@hollandhart.com

J. Robert Robertson
William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
robby.robertson@hoganlovells.com
william.monts@hoganlovells.com

Scott L. Evans
Andrew A. Smith
Messner & Reeves, LLC
1430 Wynkoop St., Suite 300
Denver, CO 80202
sevans@messner.com

*s/ Traci Pink*

_____