**EXHIBIT 2**

| | |
|---|---|
| From: | Kenneth Bennington |
| Sent: | Wednesday, May 16, 2012 5:00 PM |
| To: | Scott L. Evans |
| Cc: | Kate Craigmile |
| Subject: | RE: Western Convenience Stores/Kroger subpoena |

Scott,

In effect, you are asking me to withdraw all but two of the WCS subpoena categories, leaving only No. 4 (identification of retail sites) and No. 7 (credit card data). As you are not giving me any idea what Kroger would be willing to produce beyond that, I am at a loss as to how we can realistically confer. An all or nothing choice gets us nowhere.

As to No. 1, I cannot imagine how pulling together the Suncor contract documents could be very difficult. The supposition that Suncor may also have them is no answer. What the exact deal was between Suncor and Kroger is hotly contested and requires me to compare Kroger's documents with Suncor's.

As to Nos. 2 and 3, I should hardly need to point out that that one party's records of communications are rarely parallel with the others', owing to differing document retention practices and a myriad of other factors. Certainly your own experience as a federal investigator tells you that looking at just one party's records would not constitute an adequate investigation.

As to Nos. 5 and 6, those facts go to the heart of any price discrimination case, including this one. Once again, with your experience as a federal investigator, would you recommend that we just take Suncor's word for it as to what discounts were given and whether there were some hidden? I doubt that you would.

As to No. 8, Kroger cannot seriously argue that daily pump prices are trade secret. Moreover, that data is precisely the sort of ESI that Kroger would need for its own operations and should thus be readily available. It is simply a database query.

As to Nos. 9 and 10, I recognize the possible trade secret nature of such documents. Without getting to Kroger's implicit distrust of the Protective Order, if you could first identify whether there are any responsive documents, based on a generic description we could perhaps determine whether there is anything worth fighting over.

I again emphasize that the nature of your response leaves virtually no room for meaningful negotiation. We will certainly be willing to negotiate if Kroger can offer some specific areas of compromise.

KRB



BENNINGTON JOHNSON BIERMANN & CRAIGMILE LLC
ATTORNEYS AT LAW

3500 Republic Plaza | 370 17th Street | Denver | Colorado | 80202 | 303.629.5200 | www.benningtonjohnson.com

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, may contain information that is confidential and/or legally privileged and is intended solely for the use of the named recipient.

**From:** Scott L. Evans [mailto:sevans@messner.com]
**Sent:** Tuesday, May 15, 2012 3:18 PM
**To:** Kenneth Bennington
**Cc:** Andrew Smith
**Subject:** RE: Western Convenience Stores/Kroger subpoena

Ken,

While we appreciate that the subpoena is well written and by some measures specific, it also requests a huge quantity of information that is problematic for a variety of reasons. For example, we believe that some categories, such as 5, 6, 8, 9 and 10, request privileged or confidential business information and trade secrets. Even under the protective order in place, we are not willing to provide this information, much of which has been obtained as a result of significant financial outlay. Other categories, such as 1, 2, 3, 5, 6 and 10, request information that, contrary to your assumption, is not readily available. Collecting that information would impose a tremendous burden and require an unascertainable amount of time and expense. It is not clear why you have chosen to request categories 1, 2, 3 and 5 from the Dillon Companies, rather than obtaining that information from Suncor through discovery.

In short, unless you are willing to consider wholesale modification of your subpoena, by, for example, withdrawing in whole or in part categories 1-3 and 5-10, we believe it is necessary to seek judicial relief.

-sle

**From:** Kenneth Bennington [mailto:KRB@benningtonjohnson.com]
**Sent:** Monday, May 14, 2012 3:11 PM
**To:** Scott L. Evans
**Cc:** Kate Craigmile
**Subject:** RE: Western Convenience Stores/Kroger subpoena

Scott,

Excuse me, but you did not convey an offer to confer. Your specific statement was that your client had directed you to file a motion to quash but that we could perhaps discuss the matters raised by the subpoena after the motion is filed. Thus, I did not regard your call as anything beyond informing me that a motion would be filed, and implicitly, that we could withdraw the subpoena as the only means to avoid the motion. That is not conferring as contemplated by the rules.

The subpoena to Kroger is quite specific. Virtually all of it could be answered with ESI which should be readily available to a sophisticated corporation such as Kroger. If your clients have something in mind that could lessen a perceived burden or provide additional protection for highly confidential information, we are certainly ready to confer. I am also happy to sit down with you at your or our offices and go through each topic of the subpoena to discuss and attempt to address Kroger's specific concerns. However, suggesting that we just withdraw the subpoena is neither realistic nor a genuine effort to confer.

KRB



**BENNINGTON JOHNSON BIERMANN & CRAIGMILE LLC**
ATTORNEYS AT LAW

3500 Republic Plaza | 370 17th Street | Denver | Colorado | 80202 | 303.629.5200 | www.benningtonjohnson.com

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, may contain information that is confidential and/or legally privileged and is intended solely for the use of the named recipient.

**From:** Scott L. Evans [mailto:sevans@messner.com]
**Sent:** Monday, May 14, 2012 12:35 PM
**To:** Kenneth Bennington
**Subject:** RE: Western Convenience Stores/Kroger subpoena
**Importance:** High

Ken,
I hope you enjoyed your weekend.
My call last week was to confer with you before filing the Motion to Quash. However, if you have a more specific request for discovery, I will gladly forward it to my client.
-sle

**From:** Kenneth Bennington [mailto:KRB@benningtonjohnson.com]
**Sent:** Monday, May 14, 2012 10:53 AM
**To:** Scott L. Evans
**Cc:** Kate Craigmile; Adam Aldrich
**Subject:** Western Convenience Stores/Kroger subpoena

Scott,

Thanks for the phone call last week. I understand from our conversation that your firm has been retained by the Kroger Companies to respond to the subpoena we served on behalf of Western Convenience Stores.

Before you file a motion to quash I suggest that we confer and see if we can reach some compromise. Doing so would seem to make sense and would comply with our obligation to meet and confer before taking a discovery dispute to the Court.

KRB



**BENNINGTON JOHNSON BIERMANN & CRAIGMILE LLC**
ATTORNEYS AT LAW

3500 Republic Plaza | 370 17th Street | Denver | Colorado | 80202 | 303.629.5200 | www.benningtonjohnson.com

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, may contain information that is confidential and/or legally privileged and is intended solely for the use of the named recipient.

The information contained in this email message and the attachment are attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at (303) 623-1800, destroy the original of this transmittal and delete this message from your computer's memory. Thank you.

Tax Advice Notice: IRS Circular 230 requires us to advise you that, if this communication or any attachment contains any tax advice, the advice is not intended to be used, and cannot be used, for the purpose of avoiding federal tax penalties. Please contact us if you have any questions about Circular 230.