IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs and Counterclaim Defendant,

vs.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant, Counterclaimant, Third-Party Plaintiff,

HOSSEIN and DEBRA LYNN TARAGHI,

    Third-Party Defendants.

## OPPOSITION TO PLAINTIFFS' MOTION CHALLENGING DESIGNATION OF CERTAIN DOCUMENTS

Suncor Energy (U.S.A.) Inc. ("Suncor") requests that Plaintiffs' Motion Challenging Defendant's Designation of Certain Documents and Data as "Highly Confidential" Pursuant to the Protective Order ("Motion") be denied. Plaintiffs have not met their burden of demonstrating that Mr. Taraghi's need to see the "Highly Confidential" information outweighs the substantial injury to competition that could occur if disclosure were permitted. *E.g., Netquote, Inc. v. Byrd,* 2007 WL 2438947 at *3 (D. Colo. Aug. 23, 2007); *American Heavy Moving & Rigging Co. v. Robb Technologies, L.L.C.,* 2006 WL 2085407 at *3 (D. Nev. July 25, 2006).

    **A.**    **Introduction.**

    1.    Contrary to the assertions in the Motion, Suncor's objection to disclosure is not based on "some inherent dislike or distrust of Mr. Taraghi." *See* Motion, ¶13; Dec. of Steven

Ewing, ¶12, attached as Exhibit 1.  Rather, it is based on the Declaration of Steven Ewing which describes in detail (i) the industry's treatment of pricing and volume information such as in Exhibits A and B to the Motion, (ii) Suncor's treatment of such information and (iii) the substantial competitive harm to Suncor and its customers if disclosure were permitted.

2.  By contrast, Plaintiffs have not presented a declaration from Mr. Taraghi explaining why he needs to see the information or what he can uniquely contribute to the prosecution of this case that his experts cannot.  To date, pursuant to the Protective Order [Dkt. No. 49], Plaintiffs have requested, and Suncor has agreed, that disclosure of "Highly Confidential" information may be made to *five* experts: Lynn Westfall, Sherry Betzer, Matt Lausten, Mark Glick and Ted Tatos.  Mr. Bennington asserts that is not adequate.  *See* Bennington Dec., Exh.D to Motion, ¶5.  But he offers no specifics and, as a result, his Declaration "offers little additional support for the motion."  *Netquote,* 2007 WL 2438947 at *3.

### B.  Duty to Confer and Exhibit C.

3.  Suncor agrees that, as they have done throughout this case, the parties conferred amicably and in good faith to try and resolve the issues with respect to Exhibits A and B, but were unable to do so.  The issue of the pricing spreadsheet (Exhibit A) was addressed at the April 20, 2012 conference with Magistrate Shaffer, where he "denied" Plaintiffs request that Mr. Taraghi be permitted to see the spreadsheets because, among other reasons, that would have a detrimental affect on Suncor's willingness to be "flexible."

4.  However, Plaintiffs did not confer with Suncor with respect to Exhibit C (the email) prior to filing of the Motion.  Paragraph 15 of the Protective Order requires that any party challenging a designation of "Confidential" or "Highly Confidential" must first meet and confer

and explain the basis for the challenge. After receipt of the Motion and a review of Exhibit C, the undersigned advised Mr. Bennington that Suncor will withdraw the "Highly Confidential" designation for Exhibit C, as long as the email remains "Confidential" under the Protective Order. He agreed. The undersigned also advised Mr. Bennington that Suncor would review any other emails on a case by case basis to determine whether they should be maintained as "Highly Confidential." Therefore, the only issue to be resolved now is whether Exhibits A and B and other such spreadsheets and Confirmations and transaction summaries should remain "Highly Confidential." *See* Motion, ¶3.a-.b.

> **C.    Exhibits A and B Contain "Highly Confidential" Information of the Kind that Mr. Taraghi Had Previously Agreed Could Not Be Disclosed to Third Parties.**

5.      Exhibit A to the Motion is the first five pages of a pricing spreadsheet for the Dillon Companies Inc., d/b/a King Soopers and City Market ("Dillon"), which, among other matters, contains prices and volumes for January 2009. Exhibit B is a "Confirmation of Purchase/Sale Agreement" for February 1, 2010 through January 31, 2011 for MiniMart Inc., d/b/a Loaf N Jug ("Mini Mart"), and a transaction summary for Mini Mart from February 1, 2010 through January 31, 2011 (collectively, "Confirmations") which also contain prices and volumes for unbranded sales. Suncor also produced spreadsheets for *nineteen* of its branded customers for the year 2011 and Confirmations for 2011 (to the extent they exist) for all its customers that sold unbranded gasoline. Mr. Taraghi seeks access to those spreadsheets and Confirmations as well. *See* Motion, ¶3.a-.b.

6.      As discussed in Mr. Ewing's Declaration, the industry regards the pricing and volume information in Exhibits A and B as highly confidential and severely limits their

disclosure.  *See* Ewing's Dec., ¶¶6 and 10.  In part, that is because gasoline and diesel sales is an extremely competitive business.  *Id.,* ¶¶4, 10 and 21.

7. The January 17, 2007 Master Product Purchase and Sale, *which Mr. Taraghi executed* on behalf of WCS, provides in Section 23 ("Confidentiality") that "Suncor and [WCS] each agrees to hold in the **strictest confidence** the terms of this Agreement or any information containing any of the terms of this Agreement, **including pricing and volume information**."  *See* Ewing's Dec., ¶ 7; Master Product Purchase and Sale Agreement, Dep. Exh. 2 attached to Ewing's Dec., at p. A-4 (emphasis added) and also at p. 2, ¶6.

8. Section 23 provides for what is in effect "Highly Confidential" treatment for pricing and volume information, precluding disclosure to third parties except for each party's "attorneys, tax advisors, and its [own] employees."  *See* Ewing's Dec., ¶ 8; Master Product Purchase and Sale Agreement, at p. A-4.

9. All of Suncor's Master Product Purchase and Sale Agreements with its customers have the same confidentiality provisions as in WCS's Agreement.  *See* Ewing's Dec., ¶10.

10. Thus, through discovery, Mr. Taraghi is attempting to gain access to the kind of information that the industry regards and maintains as extremely confidential and which he had agreed would be held "in the strictest confidence," with virtually no disclosure to third parties.  *Id.,* ¶¶6-9.

D. **Disclosure Would Cause Substantial Competitive Harm to Suncor and Its Customers.**

11. The sale of gasoline and diesel is an extremely competitive business, both at the supply level where Suncor operates and at the retail level where WCS operates.  *See* Ewing Dec., ¶¶4 and 10.  Disclosure of the pricing and volume information in Exhibits A and B would give

WCS an unfair competitive advantage in the marketplace. *Id.,* ¶11. It would be impossible for Mr. Taraghi to "unlearn" or "undo" that pricing and volume information, which he could then use to his advantage. *See American Heavy Moving,* 2006 WL 2085407 at *4.

12. Suncor's major competitors for gasoline and diesel sales are Holly Frontier, Sinclair, ConocoPhillips (now Phillips 66), and Valero. If Mr. Taraghi knows the price at which Suncor is selling gas to a large customer such as Dillon (King Soopers) or Mini Mart (Loaf N Jug), he could use that information, however unintentionally, as leverage in negotiating with the Holly Frontier, for example. *Id.*, ¶¶14-15. From what is said or implied in those negotiations, Holly Frontier could figure out the prices at which Suncor is selling gasoline to Dillon (King Soopers) or Mini Mart (Loaf N Jug). *Id.,* ¶¶15-16. That information would give Holly Frontier a decided competitive advantage over Suncor. Suncor's sales to Dillon (King Soopers) and Mini Mart (Loaf N Jug) are the result of a bid process. *Id.,* ¶¶16-17. Knowing Suncor's prices, Holly Frontier, in our example, could under-bid Suncor in future bids. *Id.*, ¶¶17-18.

13. WCS prides itself on being a "discounter'. *See* Amended Complaint, ¶7. The pricing, volume and other information contained in Exhibits A and B (and similar spreadsheets and Confirmations) would enable WCS to approximate very closely King Soopers' and Loaf N Jug's costs, as well as the costs for the nineteen branded customers for whom Suncor produced similar documents. *See* Ewing Dec., ¶ 21. That would give WCS a substantial competitive advantage in pricing its gasoline *vis a vis* its competitors. Knowing its competitors costs would allow WCS to determine the "tipping point" for a competitor—that is, the lowest price at which that competitor would be willing to sell its gasoline or below which it could not sell its gasoline.

*Id.* As Mr. Taraghi explained at the Preliminary Injunction hearing, estimating his competitors' costs is important for his pricing. *See* Hearing Transcript, Exhibit 2, pp. 32:9-33:7.

14.  Pricing and volume information would also enable Mr. Taraghi to estimate better a competitor's convenience store "inside sales," giving WCS a significant advantage in its own "inside sales" pricing. *See* Ewing Dec., ¶22.

15.  The fact that some of the pricing and volume information is a few years old is irrelevant. *Contra* Motion, ¶12. The pricing does not change significantly from year to year, so knowing the prices in 2009 or even 2007 would enable Mr. Taraghi to approximate very closely today's prices. *See* Ewing Dec., ¶18. The Master Product Purchase and Sale Agreement recognizes that pricing and volume information does not become "stale," one or two or even five years after a given sale. The Agreement requires that pricing, volumes and other information be kept in the "strictest confidence" for two years after the *end* of the buyer-seller relationship. *Id.,* ¶¶19-20.

### E. WCS's Alleged Prejudice Is Conclusory, Without Specifics.

16.  At various places in their Motion, Plaintiffs claim, for example, that (i) they are "substantially prejudiced in prosecuting this action," (ii) they "cannot adequately prosecute this case," (iii) "it is impossible for Mr. Taraghi, as WCS's owner, to plan strategy, evaluate this case and, ultimately, discuss settlement," (iv) their counsel is in a "potentially unethical position," and (iv) there is a "crippling of WCS's ability to prosecute its case." *See* Motion, ¶¶2, 7, 10-12. However, Plaintiffs have not provided any specifics to support those claims. They have not established why it is critical for Mr. Taraghi, as opposed to the five experts they retained, to know the pricing and volumes for Dillon (King Soopers), Mini Mart (Loaf N Jug), and the

nineteen branded marketers.  *Netquote*, 2007 WL 2438947 at *3.  They have not established why it is that Mr. Taraghi needs to know the exact prices and volumes, as opposed to just the fact that there were prices differences, in order to participate in the strategy and planning for this case. And they have not established that their counsel is in "a potentially unethical position," when "Attorney's Eyes Only" protective orders are "commonly entered in [the District of Colorado] in cases involving proprietary information or direct competitors."  *Netquote*, 2007 WL 2438947 at *2.

Conclusory assertions such as Plaintiffs' are not sufficient.  Plaintiffs "have not established a need for this information to outweigh the harm of disclosure to a competitor."  *Id.* at *4.  That failure distinguishes this case from *Innovatier, Inc. v. CardXX Inc*., 2008 WL 4889867 (D.Colo. Nov. 13, 2008), on which Plaintiffs rely.  *See* Motion, ¶¶8-9.  There the defendant demonstrated, and the court agreed, that "outside counsel and outside consultants are not equipped to decipher the subtleties between the parties' technologies" and that "in-house designees are the only people who can adequately evaluate and determine whether the parties' technologies are in fact different."  *Id.* at *2.

### F.     Conclusion

For the reasons discussed above and in Mr. Ewing's Declaration, Suncor requests that the Motion be denied.

Dated June 14, 2012

Respectfully submitted,

*s/Anthony J. Shaheen*
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO  80201-8749
Phone: 303-295-8054
Fax: 303-291-9126
AJShaheen@hollandhart.com

J. Robert Robertson
William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
robby.robertson@hoganlovells.com
william.monts@hoganlovells.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      I hereby certify that on June 14, 2012, I served the foregoing by causing it to be presented to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following email addresses:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
krb@benningtonjohnson.com
kec@benningtonjohnson.com
afa@benningtonjohnson.com

                                                                _s/Anthony J. Shaheen_

5640223_1.DOCX