## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

      Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

      Third-Party Defendants.

---

## DECLARATION OF SHERI L. BETZER, CPA, CFE

---

Sheri L. Betzer, pursuant to 28 U.S.C. § 1746, states as follows:

1.      I have personal knowledge of all of the matters set forth in this declaration.

2.      I am over eighteen (18) years of age and competent to testify to the matters stated herein.  I make this declaration on personal knowledge.

3.      As set forth in my declaration dated May 2, 2012, I am a principal in the accounting firm of Betzer Call Group, LLP and am a Certified Public Accountant and Certified Fraud Examiner.   I have reviewed the Motion to Compel filed by Plaintiffs in this matter, as well as the Memorandum in Opposition to the same filed by Suncor Energy (U.S.A), Inc., including the attached affidavit of Mark Conner.

> **Reply in Support of**
> **Motion to Compel**
> **Exhibit 1**

1

4.      As noted in the Motion to Compel, Suncor USA has not produced any accounting records pursuant to Plaintiffs' Requests for Documents 3 through 10.  The only files containing accounting data that I have had the opportunity to review are pricing spreadsheets related to Suncor's customer, Dillon, Inc. (King Soopers).

**Requests for Production Nos. 3, 4, 6, 7 and 10.**

5.      Requests for Production Nos. 3, 4, 6, 7 and 10 generally seek Suncor USA financial statements, chart(s) of account, trial balances, general ledgers, and independent auditor reports referring to certain Suncor customers.   Mr. Connor states in Paragraph 13 of his affidavit that Suncor could produce these documents by retaining an accounting contractor to work for seven days at an approximate cost of $3,920.  Had I the opportunity to review these documents prior to the filing of the Motion to Compel (or even some subset of them), I would be in a substantially better position to assist Plaintiffs in determining whether additional accounting records, such as those in Document Request Nos. 5, 8 and 9, would contain information relevant to Plaintiffs claims.  I would also be in a better position to assist Plaintiffs in assessing the accuracy of Mr. Conner's estimates regarding the cost of producing the records in Document Request Nos. 5, 8 and 9.

6.      **Request No. 3.**  Request for Production No. 3 seeks Suncor Financial Statements, defined to include audited or unaudited financial statements, balance sheets, profit & loss statements and cash flow statements, for the period 2007 to the present.  These are basic accounting statements that exist for nearly all business entities, and Suncor does not appear to take the position that producing these documents would be burdensome.   As Mr. Conner indicates that Suncor's practice is to prepare unaudited financial statements on an annual basis

only, there would only be five such statements to produce.  He also indicates in Paragraph 9 of

his affidavit that Suncor can generate from its SAP database unaudited balance sheets and profit

and loss statements on a monthly, quarterly and annual basis.  Mr. Conner does not mention the

availability of cash flow statements but, like the other financial statements identified, cash flow

statements are basic accounting reports that typically are available electronically from business

accounting systems.

7.      Mr. Conner states in Paragraph 9 of his affidavit that the information contained in

the Financial Statements requested in Request for Production No. 3 "would reflect Suncor's

aggregated business, and would not be relevant to pricing or discounts relating to gasoline or fuel

sales."  Mr. Conner does not elaborate regarding what is meant by this other than the statement

that "Suncor reports on a consolidated basis with its affiliates and does not have separate audited

financial statements."  It appears from this statement (and I would expect) that Suncor has

*unaudited* financial statements, balance sheets, profit and loss statements, and cash flow reports

for Suncor Energy USA, the entity whose operations are the subject of this lawsuit and that sold

the subject fuel processed in its refineries in Colorado.   I have been provided access to only the

single Suncor accounting data file related to pricing for King Soopers, so I have no means to

conclusively assert what is or is not available from Suncor's accounting systems.  However, in

our firm's experience, advanced accounting systems such as SAP include many different

standard reports[1] that allow users to export information directly to electronic files.  I would

expect the majority of the Requests for Production to be included within this set of standard

reports.  In our firm's experience, running these reports typically takes only a small amount of

---

[1] I use the term "standard report" to indicate pro forma reports already formatted within the
accounting system software package.

time for the user to select the type of report, the filter criteria (such as a specific customer number and/or a time period), and the file format in which to create the report.

8.     **Request for Production No. 4.**  Request for Production No. 4 seeks the chart of accounts (or chart*s* of accounts if Suncor added or removed accounts during the pertinent timeframe).  "Chart of Account" is a term widely used in the accounting profession and refers to a list of ledger account names and numbers arranged in the order in which they customarily appear in the financial statements.   The chart serves as a useful source for locating a given account within the ledger.[2]  It is used to organize the finances of the entity, segregating expenses, revenues, assets, equity, and liability accounts to facilitate standard double-entry accounting entries.

9.     A chart of accounts is typically a standard report.   Because a chart of accounts is the basic framework of any accounting system, having the chart of accounts is important (if not critical) to assist any internal or external accountant reviewing an entity's accounting records to understand the structure and organization of transactions posted to the system.

10.     Mr. Conner indicates that the chart of accounts would reflect accounts that do not relate to customers to whom Suncor sells gasoline and diesel fuel.   This statement is true; however, Plaintiffs are not requesting every transaction posted to every account.  Plaintiffs merely seek the account identifier (number, etc.), type of account (asset, liability, equity, revenue, expense, etc.), and account description/name for each account to understand how Suncor's accounting system is structured and how transactions may be posted.  In particular,

---

[2] Barron's "Dictionary of Accounting Terms", Fifth Edition, 2010.

Plaintiffs seek to understand how discounts and/or rebate transactions are posted within Suncor's accounting system.

11.     The complete chart of accounts is necessary to provide me with information regarding how Suncor accounts for its customer transactions.  Business entities that manufacture and sell goods or services typically account for price concessions such as discounts, rebates, credits, and other things of value paid or otherwise provided to a customer.  Previously produced documents reflect the use of the terms "discount" and "rebate" by Suncor for customer concessions.  The chart of accounts would likely give me information reflecting how Suncor accounts for both sides (*i.e.*, credit and debit) of sales and concession transactions.

12.     **Request for Production No. 6.**  Request for Production No. 6 sought trial balances during the relevant time period which related to WCS or other customers identified in response to Plaintiffs' Interrogatory No. 1.   Suncor does not appear to claim that producing responsive trial balances would be burdensome or time-consuming.  Rather, Mr. Conner states in Paragraph 10 of his affidavit that, in addition to containing information relating to gasoline and diesel fuel sales (*i.e.*, the subject of this lawsuit), the requested trial balances would also contain information about other aspects of Suncor's operations that are not relevant to this case, such as its refinery options, depreciation of assets, and sales of other products such as jet fuel, asphalt and other petroleum products.    Without any explanation, Mr. Conner then states in Paragraph 10 that "the information contained on Suncor's trail (sic) balance would not be relevant to pricing or discounts of gasoline and fuel sales."

13.     Having not had any opportunity to review Suncor's trial balances or other accounting records, I cannot conclusively state whether the trial balance would contain

information about discounts.  However, based on my experience as a certified public accountant and forensic accountant, I would expect a trial balance to provide information regarding discounts, rebates or other concessions on the sale of its products.    The trial balance is a listing of each account in the accounting system with the summarized total debits, total credits, and total net amount posted to that account for the specified period.  This information may indicate discounts and/or rebates posted as reductions in assets or revenues or as increased expenses or liabilities.  Without a complete trial balance listing each account and the total debit and credit amounts, Plaintiffs may be unable to determine how discounts and/or rebates are handled by Suncor's accounting system.  In our experience, accounting systems typically include a trial balance as a standard report.

      14.      **Request for Production No. 7.**   Request for Production No. 7 sought general ledgers during the Pertinent Time Frame which refer to WCS or other identified customers. Again, Suncor does not take the position that producing these records would be unduly burdensome as they could be produced along with the other records identified above in approximately a week.   In fact, in Paragraph 12 of his affidavit, Mr. Conner states that general ledgers are the same as the trial balances in Suncor's SAP system.  This statement is not true, though the general ledger and trial balance are related.  The general ledger (which may include subsidiary ledgers and systems) includes every detailed transaction posted to the accounting system.  A trial balance is a summary of the transactions posted to the general ledger during the specified time period.  Plaintiffs' Request No. 7 refers to the detailed transactions posted in the general (or subsidiary) ledgers related to the customers in question.

15.     **Request for Production No. 10.**   Mr. Conner does not indicate anywhere in his affidavit that it would be burdensome to respond to this request, which sought independent auditor reports referring to or containing data regarding identified Suncor customers.  He states only that auditor reports "are not likely to refer to any specific transactions, pricing, or discounts involving" the identified customers.

16.     Although Mr. Conner indicates (without any explanation) that auditor reports would be unlikely to contain references to transactions, pricing or discounts involving the identified customers, *any* mention of such matters in the context of an independent auditor report could provide highly relevant information in the context of this case involving assertions of price discrimination in favor of particular customers.  Again, as Suncor has not provided any documents responsive to Requests for Production 3-10, I am unable to speak further as to what relevant information may be present in the independent auditor's reports.

**Request for Production Nos. 5, 8 and 9.**

17.     **Request for Production No. 5.**  Request No. 5 sought production of adjusting, reversing, and closing journal entries for Suncor customers.  It is my understanding that Plaintiffs, through agreement with Defendant's counsel, have narrowed their list of customers down to eight for which they initially will seek discrete, transaction-level discovery, including journal entries.  The requested adjusting, closing, and reversing journal entries (along with the detailed transactions requested as part of Request No. 7) should show the accounting transactions between Suncor and the specified customers (including pricing transactions, rebates or discounts).   In my experience, sophisticated accounting systems such as SAP allow for automated identification and retrieval of journal entries by customer or account.  With the chart

7

of accounts described above, it should be relatively straightforward to determine the method of accounting and organization of journal entries.

18.     Mr. Conner's estimate that it would take two contractors 240 hours each to pull the requested information seems high to me because, in our firm's experience, this information is typically available through standard reports. Additionally, as the Plaintiffs at this time are seeking the information for eight rather than 65 customers, the time required for this task should be significantly less than Mr. Conner's estimate.

19.     **Request for Production No. 8.**   Plaintiffs' Request No. 8 sought cash receipt, disbursement, or other journal entries in the Pertinent Timeframe for the identified customers. As Plaintiffs have agreed at this time to narrow their requests to eight customers, the burden associated with this request should be substantially less than stated in Mr. Conner's affidavit. Information related to receipts and, particularly, disbursements to Suncor's customers is extremely relevant to whether such customers ultimately paid less for fuel than did Plaintiff WCS.  To the extent that Suncor identifies any of its fuel purchasers in its Accounts Payable entries as a "vendor" in its SAP system, or otherwise as a recipient of any disbursement in its journal entries, that fact could signify discounts, rebates or other concessions in the price of fuel charged by Suncor to particular customers.  While I believe all of the requested entries are relevant, an initial review of all detailed transactions posted to the Accounts Receivable and Accounts Payable journals for the selected customers (as opposed to all journals) would likely provide me with much of the information I need to assess the existence of discounts, rebates or

other concessions.[3]  Assuming Suncor's procedures include a standardized customer numbering system that identifies each customer by a discrete number (or numbers) in its SAP system, the retrieval of this data should be a straightforward task and may be available in a standard report.

20.     **Request for Production No. 9.**   Plaintiffs' Request No. 9 sought monthly aged accounts receivable and payable data in the Pertinent timeframe for the identified customers. Again, as Plaintiffs have agreed to narrow their list of customers to eight, the burden associated with this request would be substantially less that stated in Mr. Conner's affidavit.  It is our experience that aged accounts receivable could identify those sales amounts which are discounted or written off at a later time, perhaps in the next accounting cycle. Aged accounts payable could also reflect the intention of paying rebates to customers, but holding out until a later accounting period to do so.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2012.

Sheri L. Betzer

---

[3]     This information should include the identification of the offsetting account(s) wherein all debits equal all credits within a given transaction.  For example, if a customer's balance is reduced through payment by check, the Accounts Receivable would be reduced and the offsetting account, which would be a cash/bank account, would be increased.  I would need to see the entries for each involved account.