IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

      Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

      Third-Party Defendants.

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC, by and through their undersigned counsel, submit this reply in support of their Motion Challenging Defendants' Designation of Certain Documents and Data as "Highly Confidential" Pursuant to the Protective Order (Doc. 59, "Motion") and in response to Defendant's Opposition thereto (Doc. 72, "Opposition").

## I. SUMMARY OF REPLY

The designation of material as Highly Confidential in litigation is designed to protect the most sensitive information which, if disclosed to a competitor, would put the disclosing party at

substantial risk of suffering serious harm.  WCS and Suncor are not competitors with respect to the material addressed by the Motion; Suncor's own contract provisions and actions illustrate that the material is not as sensitive as the Opposition asserts; and Suncor's assertions of harm are merely hypothetical.

Moreover, any potential harm to Suncor must be weighed against the prejudice to WCS if disclosure is prohibited.  This is a price discrimination case.  There is no means for WCS to prosecute this case if WCS's counsel cannot provide WCS with information regarding the price differentials that exist.  Plaintiffs seek an order permitting it to disclose these limited key materials to a single client representative that is in a position to make decisions about this case.  Under the circumstances that exist here, Plaintiffs' Motion should be granted.

## II.  REPLY

The reasoning of *Arvco Container Corp. v. Weyerhaeuser Corp.,* 2009 WL 311125 (W.D. Mich Feb. 9, 2009), cited in the Motion, is almost directly on point and is particularly instructive here.

Like this case, *Arvco* was a Robinson-Patman Act case alleging secondary-line price discrimination.  *Id.* at * 1.  Just as here, the defendant in *Arvco* sought to restrict disclosure of information regarding prices, volumes and like information to attorneys and experts only, and to prohibit access by any employee of the plaintiff.  *Id.* at *3, 5.  While the court in *Arvco* recognized that courts in various circumstances have found that a showing of competitive harm justified an attorneys' eyes only protective order for particular confidential or trade secret information, it also recognized "the harm that the indiscriminate use of 'attorney's eyes only'

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

Page 2

protective orders can cause, especially in the absence of a *strong showing* of probably competitive harm." *Id.* at * 5 (emphasis added), citing *Key Components, Inc. v. Edge Elec., Inc.,* No. 3:07-cv-224, 2008 WL 4937560, *3-5 (E.D. Tenn. Nov. 17, 2008). The *Arvco* court rejected the defendant's proposed attorneys/experts' eyes only restriction on disclosure of pricing, volume and specification data (as well as its assertion that the information was irrelevant), reasoning as follows:

> … Defendant asks the court to limit [disclosure of] the [price, quantity and specification] information to plaintiff's attorneys and expert witnesses, specifically excluding any employee of plaintiff. Defendant's ground for seeking this relief is the assertion that the information sought represents trade secret or other confidential information and would be subject to abuse by plaintiff, which competed with defendant in the past and may compete in the future.
>
> ***
>
> . . . Determination of [good cause to restrict disclosure] requires a balance of the difficulties imposed upon plaintiff against the need to protect information from abuse by competitors. . . . It is clear to this court that the indiscriminate use of "attorney's eyes only" protective orders does pose a significant handicap on the restricted litigant. **Discovery, trial preparation, and trial are made more difficult if an attorney cannot make complete disclosure of the facts to the litigant. Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement method. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to** . . . evaluate **its ongoing obligation to maintain only arguably meritorious actions at every stage of the case.** Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, **such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment.**

*Id.* at *3, *5-*6 (emphasis added, citation omitted). Specifically, the *Arvco* court determined that, although the plaintiff and defendant there were direct competitors, the defendant did not

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

Page 3

make substantial effort to keep its pricing structure confidential (particularly its historical pricing) and did not provide the court with a specific demonstration of fact, rather than stereotyped or conclusory statements, that production of the historical pricing data "would expose [the] defendant 'to a clearly defined and very serious injury'" which was not already addressed by the existing standard protective order entered in the case. *Id.* at *7.

Here, although Suncor attaches a lengthy declaration of Mr. Ewing, it does not establish that disclosure of now-dated pricing data and purchase and sale confirmations solely to Mr. Taraghi would work "a clearly defined and very serious injury" *to Suncor* that is not already addressed by the restrictions on "Confidential Information" imposed by the Protective Order. Nor does Suncor establish that the need for these extreme restrictions outweighs the need for Mr. Taraghi to understand the critical facts of Plaintiffs' Robinson-Patman claim so as to make informed decisions regarding this litigation.

A.   **SUNCOR'S ARGUMENTS REGARDING THE CONFIDENTIAL AND TRADE SECRET NATURE OF THE DOCUMENTS AND DATA DO NOT OUTWEIGH PLAINTIFFS' NEED TO UNDERSTAND AND MAKE INFORMED DECISIONS REGARDING THEIR CLAIMS.**

Plaintiffs acknowledge that Suncor included the cited confidentiality provisions in its Master Purchase and Sale Agreement, and do not contend that contract documents and pricing and volume data related to purchasers deserve no confidentiality protections. Rather, they assert that: (a) Plaintiffs' interests cannot adequately (and perhaps ethically) be represented unless its counsel can share with a single representative of Plaintiffs, Mr. Taraghi, information which is the very foundation for a Robinson-Patman case; and (b) the provisions of the Protective Order

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

Page 4

prohibiting any use of confidential information for any purpose other than this litigation is sufficient to protect Suncor's interests.

For example, Suncor argues that it is not critical for Plaintiffs' counsel to disclose to Mr. Taraghi pricing and volume data or contract terms (or any derivatives of that information) because Plaintiffs have retained five experts and disclosure to Mr. Taraghi of "just the fact that there were price differences," would adequately permit him to participate in the strategy and planning of the case. Opposition, p. 7 ¶ 16. But it is not the case that the Defendant gets to control the Plaintiff's litigation strategy. Taken to an extreme, Suncor is suggesting that whether the price differential is 1 cent per gallon or 25 cents per gallon is not important for Mr. Taraghi to know as the Plaintiffs' decisionmaker in this case. WCS bought 71 million gallons of fuel from Suncor in 2009 before it was replaced by Kroger (Dillon Companies, Inc. and Mini Mart, Inc.). The idea that it is unimportant (in this hypothetical) that Mr. Taraghi know whether the aggregate differential injuring his business in 2009 was $710,000 or $17,750,000 is plainly wrong.

Contrary to Suncor's assertions, the declaration of Plaintiffs' counsel provides several reasons why Mr. Taraghi's access to the information and input is required. Doc. 59-4, ¶¶ 4-6. Most importantly, neither the five experts nor Plaintiffs' counsel can make the types of critical decisions that are required of a client, such as those described in *Arvco*. Plaintiffs ask that the Court consider this possible exchange between Mr. Taraghi and his counsel:

> Counsel: Suncor has made an offer to settle your price discrimination claim.
>
> Mr. Taraghi: Why should I accept their offer?

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

      Counsel:      I can't tell you.

It is offensive to suggest that Mr. Taraghi could make decisions regarding the pursuit or resolution of his claims based on the mere fact "there were price differences."

      Suncor's argument that Plaintiffs have not established the existence of potential ethical violations also falls short. As set forth in Mr. Bennington's declaration he could be put in the position of becoming the client instead of the attorney, making critical decisions without his client's full and informed consent. Doc. 59-4 ¶ 6. As required by Colorado Rule of Professional Conduct 1.4, an attorney must "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." C.R.P.C. 1.4(b). This contemplates that the client "have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so." *Id.,* Comment ¶ 5. The concerns of Plaintiffs' counsel regarding the need to meaningfully communicate with his clients are real. There is no question that Mr. Taraghi cannot participate intelligently in decisions regarding this case if he is told only that there were price differentials, but kept entirely in the dark as to the unit and aggregate amounts of the price differentials and whether they favor his competitors.[1]

---

[1] Suncor complains that Plaintiffs have not provided a declaration from Mr. Taraghi explaining why he needs to see the subject information. Opposition ¶ 2. This argument is circular. Because of Suncor's highly confidential designation, Mr. Taraghi cannot see the information (or any derivative of the information), and Plaintiffs' counsel cannot explain it to him. He is not in a position to testify how he has been disadvantaged.

**11-cv-01611-MSK-CBS: PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

Finally, while Suncor asserts that its contract documents and volume or pricing information are so extremely sensitive that they must be afforded "highly confidential" status and "attorneys/experts' eyes only" protection, its own treatment of such materials contradicts that position.  For example, despite the provision of the Master Purchase Agreement that it is "strictly confidential" (Opposition Ex. A-1, Doc. 72-1, p. 7 of 13 ¶ 6, p. 12 of 13, ¶ 3), Suncor has filed that document in the public record in this case on multiple occasions, *i.e.,* Doc. 12-1, Doc. 13-3, Doc. 72-1, pp. 7-13.  Suncor similarly asserts that *all* of its Confirmation of Purchase/Sale Agreements  (such as the Confirmation of Purchase/Sale Agreement attached to the Motion as Exhibit B) are also "strictly confidential" under the Master Purchase and Sale Agreement and are "regarded in the industry as highly confidential" because they contain pricing and volume information.  *See* Doc. 72-1, Ewing Declaration ¶ 6.  However, Suncor has not bothered to adhere to its claimed strict confidentiality in producing the Confirmation of Purchase/Sale Agreements between Suncor and WCS.  Suncor has not even designated those documents (or the pricing and volume information contained in them) as "Confidential Information," meaning that they are not subject to any restriction, that they can be filed in the public record, and, that, consequently, they are accessible to any competitor of Suncor or its customers.  See examples at Exhibit 1 hereto.  Suncor has not explained why its 2011 pricing to WCS is fit for the public record, while pricing to King Soopers and others that is even older, is not (much less, why it cannot be seen by Mr. Taraghi). [2]

---

[2]   Suncor also argues that the inclusion in the Master Product Purchase and Sale Agreement of language that the confidentiality obligations survive for two years after the "termination" of the Agreement means the parties acknowledge that pricing and volume information does not

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

Page 7

B.  **SUNCOR FAILS TO ESTABLISH THAT DISCLOSURE TO MR. TARAGHI WOULD CAUSE A CLEARLY DEFINED OR SERIOUS INJURY TO SUNCOR OR ITS CLIENTS.**

Suncor's arguments regarding the harm of disclosure at best are speculative and at worst make no sense. In any event, they do not satisfy the stringent requirements for an attorney/expert eyes only designation, particularly where the information addressed by the Motion is so central to the case.

Suncor's first argument is that if Mr. Taraghi knows the price at which Suncor is selling gas to a particular customer, *e.g.*, King Soopers: (i) he could (even unintentionally) use that information "as leverage" in negotiating for WCS's purchase of fuel from another supplier, *e.g.*, Holly Frontier; (ii) the supplier, Holly Frontier, could somehow figure out from Mr. Taraghi's statements or implications the prices at which Suncor is selling to King Soopers; and (iii) Holly Frontier would then get a competitive advantage and might be able to under-bid Suncor in some future bidding process involving customer King Soopers. This hypothetical fails a reality test for several reasons. First, even if Mr. Taraghi were to participate in negotiations with other suppliers[3], he would be bound by the Protective Order from mentioning, discussing or intimating anything about Suncor's pricing or volumes to its customers and would have *no* reason to

---

become "stale" "one or two or even five years after a given sale." Opposition ¶ 15. Plaintiffs read this provision slightly differently, i.e., Suncor understands that, in the event any client terminates its relationship with Suncor, all of the contracts, volume and pricing data become completely free of confidentiality obligations at the expiration of two years.

[3]  Mr. Taraghi is not WCS's fuel purchaser; that position is held by Chris Wehrle (who testified at the Preliminary Injunction hearing) and for whom Plaintiffs do not seek any access to "highly confidential" information. Doc. 24 at 41:13-18, 118:24-119:3.

**11-cv-01611-MSK-CBS: PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

mention Suncor at all.[4]  Second, as set forth in the Motion, Plaintiffs are not seeking access by Mr. Taraghi to pricing or volume information for any period after May 31, 2011 and, thus, any information he would have and be prohibited from disclosing would be at least a year old. Fourth, even in the absence of all of the above facts, it is impossible to fathom how, in a discussion between Mr. Taraghi and a supplier in which Mr. Taraghi is bound from not mentioning Suncor pricing or volume, the supplier could "figure out" the prices at which Suncor is selling gasoline to a particular customers.

Suncor's second argument is that: (i) WCS is a discounter; (ii) the information subject to the Motion would enable WCS to approximate the gasoline costs of the customers for which Suncor has provided information; and (iii) WCS would gain a competitive advantage as it would understand the "tipping point" for its competitors, *i.e.*, the lowest price at which each particular competitor would sell gas to consumers.  Opposition ¶ 13.  That argument is based on the assumption that the unit cost of fuel is the only element of the retail price and ignores that many other costs go into what the retailer sets as the pump price for fuel.

The only pricing information contained in the pricing spreadsheets is the per gallon price Suncor charged to its customer on a particular day.  That may or may not be the contract price owing to the temporary discounts that Suncor passes out from time to time.  None of the documents subject to the Motion reveal any of the other costs associated with a retailer's

---

[4] If negotiating with Holly Frontier or another supplier for a contract to purchase that supplier's gasoline, it would make little sense for Mr. Taraghi to even refer to, much less discuss, another supplier (Suncor) that he is suing for price discrimination.

**11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

gasoline sales, such as the cost of transportation[5] or the cost of overhead such as employees, utilities, equipment and marketing.  In addition, there is nothing in the subject documents or otherwise available to Mr. Taraghi that would enable WCS to know whether (and if so, when) a particular competitor might be willing to sell gasoline below cost.  The assertion that Mr. Taraghi and WCS could use the information to determine a particular competitor's costs for gasoline sales, and thus its price "tipping point" argument is not just speculation, it is illogical.

Suncor's final "harm" argument is that pricing and volume information would enable Mr. Taraghi to estimate his competitors' "inside sales" (i.e., convenience store sales) which would assertedly give WCS a competitive advantage in its own "inside sales" pricing.  Opposition at ¶ 14.  The stated basis for this argument is that: (i) the volume of business for a retail gasoline station does not change much from year to year; (ii) the volume information addressed by the Motion "would enable WCS to back into and estimate the business that a given retail stores (sic) does with greater precision"; and (iii) as a result, WCS would better be able to determine the volume of "inside sales" that "a given gas station" does.  Ewing Declaration ¶ 22.  To the extent this argument makes any sense, it fails as a matter of fact.  Each of Suncor's customers is responsible for transportation of the gasoline from Suncor's terminals (see footnote 5 above), and none of the spreadsheets or Confirmation of Purchase/Sale Agreements that are the subject of the Motion disclose the volume of gasoline ultimately transported to a particular gas station or other

---

[5] As Mr. Taraghi testified at the Preliminary Injunction hearing, Plaintiffs have their own fleet of trucks owned by Plaintiff WTO, which pick up and deliver Suncor gas. Doc. 24 at 7:25-12:2-6.  Each other customer is responsible for its own transportation and transportation costs associated with taking delivery of fuel at Suncor's terminals.  *See* Exhibit 3 to Reply in Support of Motion to Compel, Doc. 81-3 at 31:7-22.

retail outlet.  There is no means for Mr. Taraghi to derive from these materials anything related to the convenience store sales of WCS competitors.

## C. SUNCOR'S OPPOSITION IGNORES THE PRACTICAL ISSUES RAISED BY THE MOTION AND ADDRESSED IN *INNOVATIER*.

Suncor's Opposition does not address any of the practical problems that will occur in this litigation if the Motion is not granted:  Mr. Taraghi would be excluded from "every discussion of the information essential for presentation" of Plaintiffs' claims; he would be precluded from participating in the preparation for key depositions; he would be precluded from participating in the strategy for dispositive or other key motions; and he would be precluded from attending significant portions of trial.  *See* Motion at 7, quoting and citing *Innovatier v. CardXX, Inc.,* 08-cv-00273-PAB-KLM, 2008 WL 4889867 *2 (D. Colo. Aug. 23, 2008).  These practical issues, coupled with the extreme prejudice associated with Plaintiffs having insufficient "information to participate intelligently in decisions concerning the objectives of the representation" weigh heavily in favor of the relief sought by the Motion.

June 20, 2012              *s/ Kenneth R. Bennington*

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN
& CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
Telephone: (303) 629-5200
Facsimile: (303) 629-5718
kec@benningtonjohnson.com

11-cv-01611-MSK-CBS:  PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER

Page 11

*krb@benningtonjonson.com*
*afa@benningtonjohnson.com*

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1515 Wynkoop St., Suite 600
Denver, CO 80202
Telephone: (303) 572-9300

*Attorneys for Plaintiffs and Third-Party Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 20, 2012, copies of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER** was served on the following parties via the CM/ECF filing system:

Anthony J. Shaheen
Keeya M. Jeffrey
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80201-8749
AJShaheen@hollandhart.com
KMJeffrey@hollandhart.com

J. Robert Robertson
William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
robby.robertson@hoganlovells.com
william.monts@hoganlovells.com

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1515 Wynkoop St., Suite 600
Denver, CO 80202
pbledsoe@polsinelli.com
jvanlandingham@polsinelli.com

*s/ Marie Newberger*

**11-cv-01611-MSK-CBS: PLAINTIFFS' REPLY IN SUPPORT OF MOTION CHALLENGING DEFENDANTS' DESIGNATION OF CERTAIN DOCUMENTS AND DATA AS "HIGHLY CONFIDENTIAL" PURSUANT TO THE PROTECTIVE ORDER**

Page 12