**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

## DILLON'S REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA

Dillon Companies, Inc. ("Dillon") submits the following reply in support of its Motion pursuant to Fed. R. Civ. P. 45(c)(3) to quash or modify the subpoena served on it by Plaintiffs.

### SUMMARY OF REPLY

Plaintiffs' Subpoena seeks an extraordinarily burdensome quantity of information, including Dillon's trade-secret information. Plaintiffs do not seriously dispute the trade-secret status of the requested information, instead choosing to offer the illusion of protection for that information under the Protective Order. In reality, the Protective Order would allow disclosure of any of Kroger's trade-secret information to Plaintiffs' principals, despite the fact that Plaintiffs are acknowledged direct competitors of Dillon in a highly-competitive industry. Defendants have already produced some pricing information relating to Dillon, and Plaintiffs' counsel has sought

to share that information with Plaintiffs' principals. Plaintiffs can offer no assurance of "attorney-eyes-only" protection for Dillon's trade secret information, and indeed, have already manifested an intention to deny such protection to Dillon.

Prior to filing Dillon's Motion to Quash, Dillon's counsel conferred with Plaintiffs' counsel, explaining that Dillon was unwilling to provide the requested information, as well as the reasons for Dillon's position. Plaintiffs' counsel was unwilling to withdraw any of the categories of information requested in the Subpoena. Plaintiffs now argue that Dillon's duty to confer is actually a duty to compromise, despite Plaintiffs' own unwillingness to compromise.

## **ARGUMENT**

The Court must quash or modify the Subpoena because "it requires disclosure of privileged or other protected matter," and "it subjects [Dillon] to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv). Similarly, the Court should quash or modify the Subpoena because it seeks to require "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i).

1. **The Protective Order Does Not Provide Adequate Protection For Dillon's Trade-Secret Information Because It Allows Disclosure to Plaintiffs' Principals.**

Dillon's trade-secret information is afforded heightened protection because Plaintiffs are competitors of Dillon. *Covelo Clothing, Inc. v. Atlandia Imports, Inc.,* 2007 WL 4287731, *1 (D. Colo. 2007). The party seeking trade-secret information "must prove that it has a 'substantial need' for the discovery which 'cannot be otherwise met without undue hardship . . . .'" *Premier Election Solutions, Inc. v. Systest Labs Incorporated*, 2009 WL 3075597, *8 (D. Colo. 2009) (citing former Fed. R. Civ. P. 45(c)(3)(B)(iii), now Fed R. Civ. P. 45(c)(3)(C)(i)). "Attorney-eyes-only" protection is appropriate if a court orders the disclosure of trade secrets to a competitor. (Doc. # 71, p. 5 [citations omitted]).

{00915946 / 1}                                             2

### a. Plaintiffs Concede That Categories 7, 8, 9 and 10 of The Subpoena Are Trade-Secret Information.

Plaintiffs "concede that ESI that will identify each customer of Dillon who purchased fuel at retail using a credit card or debit card, by sip code and the last 4 digits of the credit or debit card used to purchase fuel (Category 7), may constitute trade secrets." *Id.* With regard to Categories 8, 9 and 10, Plaintiffs undertake no analysis of the factors used to determine trade-secret status, instead citing authority that what constitutes a trade secret is a question of fact for the trial court. *Id.* at 6-7. Dillon does not dispute that assertion; rather Dillon suggests that, as set forth in its Motion, the Categories, by their own terms, presumptively seek trade-secret information, which is confirmed by Exhibit B to Dillon's Motion. (Doc. #57, pp. 4-6).

### b. Dillon's Trade-Secret Information Will Not Receive "Attorney-Eyes-Only" Protection Even If It Is Designated As Highly Confidential.

Plaintiffs contend that the protections provided by the Protective Order justify compelling Dillon's disclosure of its trade-secret information. (Response, pp. 4-5). In misrepresenting the terms of the Protective Order, Plaintiffs argue that "an *attorney-eyes only* designation, like the *Highly Confidential* designation here, is the appropriate measure when trade secrets are the subject of a discovery request or third-party subpoena." *Id.* at 4 (emphasis in original). The Highly Confidential designation provided by the Protective Order in no way confers "attorney-eyes-only protection."

The Protective Order allows Plaintiffs' counsel to share Dillon's trade-secret information with Plaintiffs' officers, directors, owners, shareholders, principals and employees. *See* Doc. # 49, ¶¶ 8.b, 9, 9.a & 15. Plaintiffs' counsel would simply need to challenge Dillon's designation of the information as Highly Confidential. *Id.* When Plaintiffs' counsel makes such a challenge, Dillon will have the burden of proof, according to the Protective Order, to establish that its trade

secrets deserve the Highly Confidential designation. *Id.* at ¶ 15.a. In other words, the presumption will be that Dillon's trade-secret information should be shared with its direct competitors' officers, directors, owners, shareholders, principals and employees.

At best, Dillon will be forced to undertake additional expense to preserve the imperfect protection conferred by the Highly Confidential designation. Even if Dillon is able to preserve Highly Confidential protection for its trade secrets, Plaintiffs will be able to disclose that information to any retained "experts and consultants" as well as an assortment of non-lawyer personnel. *Id.* at ¶¶ 8.a, 8.e & 9.a. Under some circumstances, Plaintiffs' counsel could even seek to share Dillon's trade secret information with Plaintiffs' principals despite allowing the information to remain designated as Highly Confidential. *See id.* at ¶¶ 9.d & 9.e.

### c. Plaintiffs Have Already Argued That Disclosure of Dillon's Pricing Information To Taraghi Is Necessary To Their Prosecution of This Case.

Rather than recite the substance of Plaintiffs' attempts to share Dillon's Highly Confidential Pricing information with its principal, Taraghi, Dillon simply reminds the Court that Plaintiffs have already manifested this intention. (Doc. # 59). Dillon adopts the reasoning of Suncor's Response (Doc. # 72) in pointing out that Plaintiffs are likely to seek such disclosure of any information produced by Dillon, however unnecessary such disclosure might be. *See id.* at ¶¶ 11-16.

### d. If Dillon Is Ordered To Produce Categories 7, 8, 9 and 10 of The Subpoena, That Information Should Be Entitled To A "Highly Confidential" Designation.

Plaintiffs nearly concede that Categories 7, 8, 9 and 10 qualify as Highly Confidential information. (Doc. # 71, pp. 4-6 [arguing that "Dillon's position ignores the plain language of the Protective Order," and that "by the explicit language of the Protective Order, Dillon is protected."]). As explained above, even Highly Confidential protection under the Protective

Order is not sufficient, nor is it aligned with case law affording attorney-eyes-only protection to trade secret information. If the Court is inclined to order any production of Dillon's trade-secret information, Dillon believes that, at a minimum, it must be under a Highly Confidential designation that is not subject to attack by Plaintiffs.

### 2. Dillon Satisfied Its Duty To Confer, Which Does Not Include A Duty To Compromise.

Plaintiffs' counsel made no offer to compromise or reconsider his position, but suggests that Dillon's counsel did not meet and confer because it did the same. Plaintiffs point to the fact that Dillon's counsel's initial e-mail to Plaintiffs' counsel indicated that Dillon's counsel would file a motion to quash. The obvious import of this statement is that Dillon's counsel would file such a motion if counsel could not reach an acceptable resolution through the meet-and-confer process. Dillon's counsel went on to explain his position with regard to each Category sought in the Subpoena. Plaintiffs' counsel indicated that he was not willing to withdraw any of the Categories, at which point Dillon sought protection from the Court. Plaintiffs' counsel now asserts that Dillon's counsel did not satisfy his meet-and-confer obligation because he did not offer a compromise – something that Plaintiffs' counsel was unwilling to do. The meet-and-confer process requires that counsel "compare views and attempt to reach an agreement, including by compromise if appropriate." *Hoelzel v. First Select Corp.,* 214 F.R.D. 634, 635-36 (D. Colo. 2003). The meet-and-confer process does not, as Plaintiffs' counsel suggests, require that a compromise be reached.

### CONCLUSION

Plaintiffs offer the false promise of protection for Dillon's trade-secret information by glossing over the terms of the Protective Order, which allows Plaintiffs to seek disclosure of Dillon's information to their principals, something that Plaintiffs have already attempted to do.

Unless the Court quashes the Subpoena, Dillon will be subjected to the extraordinary burden of producing voluminous documents, many of which contain trade secrets that Plaintiffs will seek to disclose to their principals.

Dated this 25th Day of June, 2012

Respectfully submitted,

**MESSNER & REEVES, LLC**

*s/ Scott L. Evans*

Scott L. Evans (#25475)
Andrew A. Smith (#43249)
1430 Wynkoop St., Suite 300
Denver, CO  80202
(303) 623-1800

Attorneys for Dillon Companies, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and copy of the foregoing **REPLY IN SUPPORT OF MOTION TO QUASH OR MODIFY SUBPOENA** was served electronically upon the following:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam Aldrich
Benington Johnson Biermann & Craigmile, LLC
370 17th Street, Suite 3500
Denver CO  80202

Philip Wayne Bledsoe
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO 80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver CO  80202

William Monts, III
John Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-Denver
555 17th Street, Suite 3200
Denver CO  80201

                                                  s/ *Jeanine A Montoya*
                                                  Jeanine A. Montoya