IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

---

**STATUS REPORT REGARDING DILLON COMPANIES'
MOTION TO QUASH SUBPOENA**

---

    Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC, by and through their undersigned counsel, submit this status report pursuant to the Court's Minute Order dated July 16, 2012 (Doc. 88) relating to the *Motion to Quash or Modify Subpoena* filed by Dillon Companies, Inc. ("Dillon[1]") (Doc. 57). Plaintiffs have provided a copy of this Status Report to counsel for Dillon prior to its filing.

    As directed by the Court, counsel for Plaintiffs and Dillon met on July 18, 2012 in an effort to reach agreements regarding a mutually acceptable scope of each subpoena request.

---

[1]     "Dillon" refers herein to Dillon Companies, Inc. and its affiliates to which the subpoena was directed.

During the discussions, Plaintiffs agreed to substantially narrow the subpoena requests as set forth below with respect to each request:

1. **For the Pertinent Time-frame[2] and Geographic Area[3], all Contract Documents[4] between [Dillon] and Suncor.**

    - Plaintiffs have agreed that Dillon may initially limit its response to Contract Documents effective before June 1, 2011 relating to its purchase of Suncor Fuel for sale by Dillon at retail. Plaintiffs have also provided to Dillon an identification by date, contract number and title all Contract Documents Plaintiffs have obtained via discovery from Suncor. Plaintiffs have agreed that, to the extent that they have obtained fully executed copies of Contract Documents from Suncor, Dillon need not produce such Contract Documents.

2. **For the Pertinent Timeframe and Geographic Area, all Communications[5] between [Dillon] and Suncor referring or relating to any Discount[6].**

    - Plaintiffs have agreed that Suncor may initially limit its response to email in the form of ESI between Dillon and Suncor created between January 1, 2008 and December 31, 2011 and which contains any of the following search terms: *rebate(s), discount(s), off-invoice, kickback(s), credit(s), allowance(s)*. Plaintiffs state that they have requested such documents from Suncor and have received only two responsive email strings; these have been identified to Dillon so that Dillon can avoid any duplication of production. It is Plaintiffs' understanding from discussions with Dillon's counsel that Dillon's email system is searchable by keyword.

---

[2]   Defined in the subpoena as "January 1, 2007 to the present."

[3]   Defined as "Colorado and the area of Nebraska within a 25 mile radius of the towns of Sidney, Ogallala and Hershey."

[4]   Defined as "all written agreements and understandings between [Dillon] and Suncor for the purchase of Fuel for sale at retail."

[5]   Defined as "inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, telephone conversations, letters, correspondence, e-mails, notes, telegrams, telexes, faxes, or other forms of communication including, but not limited to both oral and written communication."

[6]   Defined as "all rebates, discounts, off-invoice consideration, kickbacks, credits, allowances and other things of value granted to [Dillon] by Suncor regardless of whether reflected on an invoice and regardless of when received in relation to a purchase of Fuel."

3. **For the Pertinent Timeframe, all Communications between [Dillon] and Suncor relating to Western Convenience Stores.**

    - Plaintiffs have agreed that Dillon may initially limit its response to email in the form of ESI between Dillon and Suncor dated created after January 1, 2008 containing any of the following search terms: *Western Convenience Stores, Western Convenience, Western, WCS, Hossein, Taraghi, Wehrle*. Plaintiffs have further agreed that it will consider modification if the term "Western" returns a large volume of non-relevant hits.

4. **For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify all retail sites, locations and outlets (collectively, "Retail Sites") where [Dillon] sold Fuel[7] at retail.**

    - Plaintiffs have provided to Dillon a list of King Soopers, City Market and Loaf n' Jug stores of which Plaintiffs are aware and which Plaintiffs believe compete or may compete with Plaintiff WCS's retail sites. Plaintiffs have agreed that Dillon may initially limit its response to documents which identify Retail Sites open at any time between January 1, 2009 and June 1, 2011 which are either not identified or are incorrectly identified on the list.

5. **For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify the Net Price[8] for each delivery of Fuel purchased by [Dillon] from Suncor. In responding to this request, include such ESI or other Documents as will identify the:**

    a. **Contract Documents associated with the delivery;**
    b. **the bill of lading number;**
    c. **the date of the delivery;**
    d. **the net price paid per gallon;**
    e. **all Discounts received;**

---

[7]   Defined as "all formulations of gasoline and diesel fuel sold by Suncor, whether branded or unbranded."

[8]   Defined as "the price paid by [Dillon] to Suncor net of all Discounts."

    f.   the Fuel type (regular or premium gasoline, E85 or diesel);

    g.   the Retail Site(s) to which the Fuel was delivered; and

    h.   the net and gross quantity of Fuel delivered.

- Plaintiffs have agreed that, to the extent the information requested above is not readily available within Dillon's ESI, Dillon may initially limit its response to the production of the Bill of Lading or the Suncor Invoice for each truckload of Fuel purchased by Dillon from Suncor before June 1, 2011, together with such ESI as will identify:

    a. the Net Price paid by [Dillon] for each truckload,
    b. the Discount(s) related to that truckload, and
    c. the Retail Site(s) to which that Fuel was transported.

6. **For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify all Discounts received by [Dillon] from Suncor relating in any way to Fuel purchased by [Dillon] for sale at retail.**

    - Plaintiffs have agreed that Dillon may initially limit its response to Discounts received by Dillon before June 1, 2011 which are not otherwise identified in documents/ESI provided in response to Request No. 5 above.

7. **For the Pertinent Timeframe and Geographic Area, such ESI as will identify by zip code and the last 4 digits of the credit or debit card number, each customer on each credit or debit card purchase of Fuel from [Dillon] at retail.**

    - Plaintiffs have agreed that Dillon may initially limit its response to transactions at the Retail Sites identified in the list provided by Plaintiffs, as modified or supplemented by Dillon's response to Request No. 4.

8. **For the Pertinent Timeframe and Geographic Area, such ESI and other Documents as will disclose the daily pump price at each of Your Retail Sites for each Fuel type (regular or premium gasoline, E85 or diesel).**

    - Plaintiffs have agreed that Dillon may initially limit its response to pump prices at the Retail Sites identified in the list provided by Plaintiffs, as modified or supplemented by Dillon's response to Request No. 4.

9. For the Pertinent Timeframe and Geographic Area, such ESI and other Documents as will disclose the results of all retail Fuel Price surveys done by [Dillon] or on [Dillon's] behalf, or on which [Dillon] rel[ies].

- Plaintiffs have agreed that Dillon may initially limit its response to surveys of prices relating to the Retail Sites identified on the list provided, as modified or supplemented by Dillon's response to Request No. 4.

10. All reports and research, studies, examinations, investigations, surveys or analysis ("Research") done by [Dillon] or on [Dillon's] behalf relating to the characteristics of consumer demand for Fuel, or competition at the retail level, such as:

   a. price elasticity;
   b. demand elasticity;
   c. factors affecting demand elasticity for Fuel;
   d. the impact of Fuel prices on sales;
   e. consumer response to price differences between Retail Sites;
   f. effects of brand loyalty and brand recognition on consumer demand and substitution;
   g. definition of the competitive market for retail Fuel outlets
   h. definition of the relevant market around Retail Sites for Fuel sales;
   i. optimal location of retail Fuel outlets in relation to competitors' outlets;
   j. relationship of ancillary merchandise sales to Fuel purchases;
   k. effect of price on consumers' selection of Fuel grade;
   l. determination of local market saturation for retail Fuel outlets;
   m. supply/demand curves for Suncor's gasoline sales by grade;
   n. retail sales lost to competitors;
   o. competitive evaluations;
   p. price checking procedures; and
   q. geographic markets for retail Fuel sales.

- Plaintiffs have agreed that Dillon may initially limit its response to Research relating specifically to any of the Retail Sites identified on the list provided, as modified or supplemented by Dillon's response to Request No. 4, or Research that refers specifically to the either of the Plaintiffs.

The undersigned has had additional discussions with counsel for Dillon regarding Dillon's position with respect to each of the requests, as narrowed. As of the date of this status report, Dillon's counsel has stated that he has raised the issues related to the subpoena to Dillon's upper corporate levels and has been unable to confer with person with final decision-making authority with respect to the subpoena as that person has been traveling in connection with other matters. Dillon's counsel advises that he will have Dillon's position with respect to these matters at or near the beginning of the week of July 30, 2012. Unless the Court directs otherwise, Plaintiffs (or Plaintiffs and Dillon jointly) will file a further status report on or before August 1, 2012 advising the Court as to the parties' agreements and any subpoena requests to which the parties cannot reach an agreement and therefore require the Court's further attention.

Dated: July 25, 2012
    
*s/ Kathleen E. Craigmile*

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON
BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1225 Seventeenth Street, 29th Floor
Denver, CO 80202-5529
Telephone: (303) 572-9300

*Attorneys for Plaintiffs and Third-Party Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on July 25, 2012, copies of the foregoing **STATUS REPORT REGARDING MOTION TO QUASH SUBPOENA** was served on the following parties via the CM/ECF filing system:

Anthony J. Shaheen
Keeya M. Jeffrey
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80201-8749
AJShaheen@hollandhart.com
KMJeffrey@hollandhart.com

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1225 Seventeenth Street, 29th Floor
Denver, CO 80202-5529
pbledsoe@polsinelli.com
jvanlandingham@polsinelli.com

J. Robert Robertson
William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
robby.robertson@hoganlovells.com
william.monts@hoganlovells.com

Scott Evans
Andrew A. Smith
Messner & Reeves, LLC
1430 Wynkoop St., Suite 300
Denver, CO 80202
sevans@messner.com

                           *s/ Marie Newberger*