*Western Convenience Stores, Inc. and Western Truck One, LLC v. Suncor Energy (U.S.A.) Inc.* 11-cv-01611-MSK-CBS

**Plaintiffs' Subpoena to the Dillon Companies**

Kroger's ESI:

Any documents provided by Kroger will be provided in either hard copy or PDF format regardless of their original format. Kroger maintains the belief that any meta data it maintains is not reasonably likely to lead to discoverable information and therefore will not be produced. The documents will be provided either hard copy or in PDF depending on how the requesting party would prefer to receive them.

All documents that are produced will be processed by a third party so that they may be bates stamped. The requesting party will be billed all applicable costs associated with this processing.

Kroger's E-mail retention policy:

In addition to the attached E-mail Retention Archiving and Quota Policy, the following information is relevant to certain Categories of Subpoena documents:

Each employee has a "Keep-It" folder. Placing an e-mail in the "Keep-It" folder allows an employee to avoid losing that e-mail through the automatic purging process. When Kroger issues a litigation hold, employees are instructed to review their electronic mailboxes for correspondence that may be implicated by the pending litigation. Employees preserve that correspondence by placing it in their "Keep-It" folders.

Kroger does not have advanced eDiscovery tools. This means that e-mails are searchable using only through the Microsoft Outlook tool and today can only be searched one PST file at a time, manually. In order to conduct more advanced searches a third party contractor would have to be engaged. In the past Kroger has received a quote of approximately $10,000 to search approximately 9 gigabytes of data. Kroger currently does not have a vendor lined up who can perform this type of search. Therefore, this dollar value is a pure estimate based on past experience. Before a search can be performed by a third party Kroger would need to find a vendor and would need to have the vendor vetted and approved by Kroger's Information Technology department.

Availability of specifically-requested information:

1. **All Contract Documents between Dillon and Suncor that relate to Dillon's purchase of fuel from Suncor for sale at retail and were effective before June 1, 2011.**

    Dillon reviewed the list of contract documents provided by Western and has located contracts that did not appear on Western's list. Dillon is producing these documents.

2. **For the Pertinent Timeframe (January 1, 2008, through December 31, 2011) and Geographic Area (Colorado), all e-mails between Dillon and Suncor referring or relating to any Discount.**

    If Western agrees to pay all expenses related to the search (either internal time to search each individual PST file manually or expenses related to bringing in a vendor), Dillon will agree to look for and produce relevant e-mail communications between the 4 Dillon Custodians for this case and Suncor, referring to or relating to any Discount. (Kroger will only search the e-mail of the four custodians in its fuel department whom may have information related to this case, not all e-mail for the entire company.)

3. **For the Pertinent Timeframe (January 1, 2008, and later), all Communications between You and Suncor relating to Western Convenience Stores.**

    If Western agrees to pay all expenses related to the search (either internal time to search each individual PST file manually or expenses related to bringing in a vendor), Dillon will agree to look for and produce relevant e-mail communications between the 4 Dillon Custodians for this case and Suncor referring to or relating to Western. (Kroger will only search the e-mail of the four custodians that are specifically designated for this case not all e-mail for the entire company.)

4. **Dillon's retail fuel sites in Colorado and parts of Nebraska that were open between January 1, 2009, and June 1, 2011, which are not identified or incorrectly identified on a list provided by Western.**

    Dillon is producing lists of its Colorado and Nebraska retail fuel locations. One list contains Loaf 'N Jug fuel locations and the other list contains Kroger or King Soopers fuel locations.

5. **The Bill of Lading or the Suncor Invoice for each truckload of fuel purchased by Dillon from Suncor before June 1, 2011, plus ESI to identify the net price paid, any discounts, and the retail site to which fuel was transported.**

    The requested documents that are maintained by Kroger are largely in hard copy and will be extremely difficult to locate.
    - Invoices - Kroger estimated that it will take 400 hours to locate what invoices can be found. At $50 per hour this would cost the requesting party $20,000. The search would take many months, possibly over a year to search the records within Kroger's possession. There is no guarantee as to what Kroger will be able to find.
    - Bills of Lading – Kroger estimates that it will take 800 hours to locate what Bills of Lading can be found. At $50 per hour this would cost the requesting party $40,000. The search would take many months, possibly over a year to search the records within Kroger's control. There is no guarantee as to what Kroger will be able to find. This search is more complicated than the search for invoices because of the different carriers who might deliver the product.

6. **ESI or other documents that will identify any discounts Dillon received from Suncor before June 1, 2011, which are not identified in response to Category 5.**

Dillon does not believe it has any such records regarding discounts from Suncor other than the documents requested by Category 5.

7. **ESI that will identify the zip code and last 4 digits of the credit or debit card number of the customer responsible for each credit or debit card purchase of fuel between January 1, 2007, and present at 135 of Dillon's retail fuel sites identified by Western.**

    Dillon is not willing to produce this information because it is a trade secret. Western has not demonstrated that this information is necessary and relevant, as required by applicable law. In any event, credit card information is only available for the preceding 18 months, after which the information is stored exclusively by a third-party vendor. In order to retrieve this information, archived databases would have to be restored and a parallel system would have to be built so that the data could be accessed. Retrieving similar historical information for a single customer has been a six-month process.

    Even if the data requested by this Category were not a trade secret, Dillon would not be willing to produce it because of the time and expense involved. While Dillon is unable to estimate the time and expense involved in retrieving data for millions of transactions for hundreds of thousands of consumers, it has requested that its third-party vendor provide such an estimate.

8. **ESI or documents that will identify the daily pump price between January 1, 2007 and present at 135 of Dillon's retail fuel sites identified by Western.**

Only daily average prices are available.

Dillon is willing to produce this information only if Western is willing to pay for retrieval. Dillon estimates that retrieving the data sought would require approximately 200 employee hours at a cost of $50, for a total cost of $10,000, along with the purchase of two servers, at an estimated cost of $70,000.

9. **Surveys of prices from January 1, 2007, to present around Dillon's 135 retail fuel sites identified by Western.**

Kroger is not willing to produce this information because it is a trade secret. Plaintiffs have not demonstrated that this information is relevant and necessary, as required by applicable law. Even if the data requested by this Category were not a trade secret, Dillon would not be willing to produce it because of the time and expense involved. Accordingly, Kroger would require Plaintiffs to pay all related expenses, which it expects would be similar to those incurred with regard to Category 8.

10. **Research performed between January 1, 2008, and December 31, 2011, regarding various market characteristics in Colorado and parts of Nebraska.**

Dillon has not conducted any such research.

{00937622 / 1}