IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

**PLAINTIFFS' RESPONSE TO DILLON COMPANIES' STATUS REPORT [DOC. 99]**

    Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC, by and through their undersigned counsel, submit the following response to the *Status Report by Interested Party Dillon Companies, Inc. in Compliance with August 17, 2012 Order of Magistrate Judge* filed August 27, 2012 [Doc. 99, "Dillon Status Report"].

    1.    The Dillon Status Report addresses and attempts to relitigate issues that the Court has already heard and determined.  It also raises issues which should have been raised, if at all, in the Motion to Quash.  If anything, it confirms that Dillon has not complied with the Court's orders.

    2.    As a preliminary matter, it must be pointed out that the asserted unavailability of responsive emails and data and the stated inability of Dillon/Kroger to gather and produce them

as described in the Dillon Status Report are farfetched. Kroger regularly touts its "state of the art" systems and technology capabilities.[1] A review of PACER discloses that Kroger has been a party in 557 federal district court lawsuits since 2000, including multiple antitrust cases and class actions. A review of Lexis-Nexis File & Serve indicates that it has been a party to more than 200 Colorado state court cases since the File & Serve system's inception in 2004. Presumably, it has been involved in hundreds of cases in the 31 other states in which it does business. In this case, it has taken four months for Dillon/Kroger to even articulate why it cannot gather the requested data in a timely manner, and many of its statements (such as those regarding alleged challenges in searching Outlook .pst files) are implausible for a sophisticated entity that, in the regular course of its business, has been involved in thousands of pieces of litigation. Dillon's implacable delay and obfuscation raises the inference that it has something to hide and that, rather than being an innocent bystander, it may have played an actionable role in anticompetitive conduct aimed at its competitor, Plaintiff Western Convenience Stores (which was Suncor's largest purchaser by volume before Kroger came on the scene in 2009).

3. As for the Dillon Status Report itself, it states that Dillon views "conferral as an ongoing undertaking." Dillon Status Report at 2. Other than leaving one after-hours telephone message as noted, Dillon has not conferred with Plaintiffs regarding any matter since the August 17, 2012 hearing. Following that hearing, Plaintiffs offered to make available their ESI expert, Mr. Horwith, to assist Dillon in enabling the efficient and cost-effective production of the ESI

---

[1] *See Kroger 2011 Fact Book*, http://www.thekrogerco.com/finance/documents/2011_KrogerFactBook.pdf , at 39 (.pdf page 41) ("Technology and Logistics are very important parts of our business. Kroger invests significant capital and expense dollars to ensure that our information systems and logistics network are operating as efficiently and cost-effectively as possible. We also know that such investments are critical in serving our customers better.")

that is responsive to the Subpoena.  Plaintiffs previously offered to speak to Dillon or its counsel about ESI (or to make Mr. Horwith available to do so) both before and after Kroger filed its Motion to Compel in May 2012.  Dillon has never responded to any of these offers or made any Dillon personnel available to speak with Mr. Horwith or discuss ESI or production of files.

4. Dillon states that it "has produced responsive documents, as noted in the Order." Report ¶ 4.  In response to Plaintiffs' subpoena served four full months ago, Dillon has produced to Plaintiffs a total of 25 hard-pages of documents comprised of three contracts between Dillon and Suncor and lists of King Soopers and Loaf 'N Jug stores in Colorado and Nebraska.  These were produced at the hearing on August 17, 2012.

5. Both of the declarations attached to the Dillon Status Report are from employees of Dillon's parent company, Kroger.  It appears from the Dillon Status Report and declarations that all accounting and document management and production functions for Dillon, Mini-Mart and all of Kroger's other subsidiaries are handled by Kroger.

6. With respect to email files responsive to the Subpoena Requests 2 and 3, Dillon states that "the Court's Order narrowed [these requests] with respect to 'four fuel custodians,' from January 1, 2009 through May 31, 2011."  Report ¶¶ 2, 3. Based on Dillon's representations that there were only four people in the Kroger fuel organization who would have had communications with Suncor, the Court agreed to *initially* narrow Dillon's search obligations to four custodians with the understanding (at least by Plaintiffs) that documents produced by those custodians may lead to the need by Dillon to expand its search to other custodians.  Dillon has never identified those "four fuel custodians"; however, Plaintiffs have discovered via additional

limited communications newly produced by Suncor that there were more than four persons within Dillon/Kroger that dealt with Suncor regarding the purchase of fuel.[2]

7. Dillon also states with respect to Requests 2 and 3 that, in order to provide responsive email communications, Kroger "requires a list of all potential authors or recipients at Suncor in order to identify Suncor employees to conduct this search" because it is limited in-house to using the search tool available in Microsoft Outlook to search email files. Dillon Status Report ¶ 2; Dillon Status Report Exhibit B, Doc. 99-2 (Pugh Declaration) at ¶¶ 6-10. The undersigned is a marginally proficient user of Outlook, but is aware that Kroger could perform the requested search in Outlook in a much more efficient fashion by simply typing ""@suncor.com"" in the Outlook search bar. See Exhibit 1. All email traffic between Dillon and Suncor during the Pertinent Time Period is easily within the scope of discovery. Accordingly, performing and producing the results of that search cannot possibly be as onerous as Dillon suggests.

8. Dillon states that it cannot respond to Subpoena Requests 5 and 6 by September 17, 2012 because: (a) some of the responsive information is archived by Kroger and is not readily available in Kroger's PDI/RMS System,[3] (b) retrieval of the archived data would require Kroger to purchase and implement costly servers and equipment, (c) Kroger does not "have adequate staff to conduct this process," (d) the responsive data, once pulled, would result in

---

[2] The documents produced by Suncor disclose that at least the following persons within Dillon/Kroger were involved with communications with Suncor regarding fuel sales: David M. Wilson, Andrew Spain, Chad Thiessen, Ed Sharpe, Nora Cooper, Leana Redden, Laura Green, and Jessica Stuckey.

[3] Dillon states that, within two weeks, it could pull responsive data from the PDI/RMS System for May 2011 to the present. Report Exhibit C, Doc. 99-5 (McClenahan Declaration) ¶¶ 7, 9. Therefore, that data should be produced on or before the September 17 deadline.

several reports, each of which "may be several thousand pages in length," and (e) after the reports are created, they would need to be sent to Kroger's legal department to review and redact for privilege and trade-secret information. Dillon Status Report Exhibit C, Doc. 99-5, at ¶¶ 7-9 (McClenahan Declaration); Dillon Status Report Exhibit B, Doc. 99-2 (Pugh Declaration) at 11.

9. This is the first time Dillon has disclosed the existence of the PDI/RMS System or stated these reasons for its inability to respond (or timely respond) to Subpoena Requests 5 and 6. Notably, Dillon did not even mention any burden associated with responding to Subpoena Requests 5 and 6 in its Motion to Quash (Doc. 57). In a letter delivered to Plaintiffs' counsel at the August 17 hearing, Dillon stated that it would take months for Dillon to provide the information responsive to these requests, not because of challenges of retrieving the data from Kroger's PDI/RMS System, but because "most of the responsive documents are available only in paper form." Exhibit 2, p. 2. The Dillon Status Report and declarations do not make any reference to the availability of the paper documents referenced in Exhibit 2 or what effort has been made to gather those documents since the Motion to Quash was denied.

10. The issues raised in Dillon's Report regarding the PDI/RMS System should have been raised when Dillon filed its Motion to Quash more than three months ago. At the very latest, they should have been addressed in the discussions that the Court ordered to occur following the July 16, 2012 hearing on the Motion to Quash. Had that occurred, Mr. Horwith could have become involved and assisted in resolving ESI production issues or, at the least, become aware of the issues so as to assist in assessing Kroger's statements regarding the alleged burdensomeness of production.

11. Dillon's suggestions regarding the burdensomeness associated with a review by Kroger's legal department of material responsive to Subpoena Requests 5 and 6 do not make sense. These requests sought delivery and pricing data, such as bill of lading numbers and type, quantity and price of fuel deliveries from Suncor to Dillon. None of this data would be subject to any privilege. To the extent the data conceivably could be considered trade secrets, the Court has made clear that an appropriate protective order could be fashioned to the extent the existing Stipulated Protective Order (Doc. 49) is deemed inadequate. Thus, Kroger/Dillon simply could designate all of the responsive reports as "Confidential" (or "Highly Confidential" if it met the requirements for that designation). There is no burdensomeness associated with a legal department review of data responsive to these Requests.

12. With respect to Subpoena Requests 7-9, the Kroger representative states that, "upon information and belief," Dillon does not have responsive information, such as zip-code and last four digits of card numbers, daily pump prices for convenience stores, or fuel price survey information other than for Kroger operated supermarket fuel centers. *E.g.,* Doc. 99-2 (Pugh Declaration) ¶¶ 12-14. Plaintiffs suggest that the equivocation latent in the phrase "information and belief" renders the Pugh declaration a nullity in terms of complying with the Court's admonition to Dillon to support with sworn facts its claimed inability to comply with the subpoena. At this point, four months after service of the subpoena, Dillon cannot credibly or properly claim that it just does not know for sure. Mr. Pugh does not provide any factual context for the "information" or "belief" that Dillon does not have this information. Nor does he state whether, while not in Dillon's immediate possession, responsive information is within Dillon's

reasonable control.  Dillon should be compelled to provide further information regarding these statements.

Dated: August 29, 2012

                                                  *s/ Kathleen E. Craigmile*

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON
BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1225 Seventeenth Street, 29th Floor
Denver, CO  80202-5529
Telephone:  (303) 572-9300

*Attorneys for Plaintiffs and Third-Party Defendants*

## CERTIFICATE OF SERVICE

  I hereby certify that, on August 29, 2012, copies of the foregoing **PLAINTIFFS' RESPONSE TO DILLON COMPANIES' STATUS REPORT [DOC. 99]** was served on the following parties via the CM/ECF filing system:

| | |
|---|---|
| Anthony J. Shaheen<br>Keeya M. Jeffrey<br>Holland & Hart LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80201-8749<br>AJShaheen@hollandhart.com<br>KMJeffrey@hollandhart.com | J. Robert Robertson<br>William L. Monts III<br>Hogan Lovells US LLP<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004-1109<br>robby.robertson@hoganlovells.com<br>william.monts@hoganlovells.com |
| Philip W. Bledsoe<br>Joseph T. VanLandingham<br>Polsinelli Shughart PC<br>1225 Seventeenth Street, 29th Floor<br>Denver, CO 80202-5529<br>pbledsoe@polsinelli.com<br>jvanlandingham@polsinelli.com | Scott Evans<br>Andrew A. Smith<br>Messner & Reeves, LLC<br>1430 Wynkoop St., Suite 300<br>Denver, CO 80202<br>sevans@messner.com |

               *s/ Marie Newberger*