THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs/Counter Defendants,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

    Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

_____

**REPLY REGARDING STATUS REPORT
BY INTERESTED PARTY DILLON COMPANIES, INC.**
_____

Comes now interested party Dillon Companies, Inc. ("Dillon"), by and through its attorneys, Montgomery Little & Soran, P.C., and submits this reply regarding its status report dated August 27, 2012 (Doc. # 99).

**Conferral Pursuant to D.C. Colo. L. Civ. R. 7.1(A)**

On August 30, 2012, counsel for Dillon obtained a transcript of a hearing conducted by the Magistrate Judge with respect to the August 17, 2012 Order of the Magistrate Judge (Court Minutes/Minute Order, Doc. # 95) ("the Order") regarding that

1    **EXHIBIT E**

certain Western Convenience Stores, Inc. and Western Truck One, LLC Subpoena to Produce Documents, Information Or Objects or to Permit Inspection of Premises in this action ("the Subpoena") (Doc. # 57-1) (Exhibit A). Counsel is continuing to review the same to become familiar with the Court's Order and the Court's prior hearings regarding this matter.

Today the undersigned counsel discussed the requests in the Subpoena with Plaintiffs' counsel in detail for about 50 minutes. The conversation was very productive and helped to clarify many issues.

Counsel for Dillon is scheduled to meet with Plaintiffs' counsel in person at their office regarding these matters on Wednesday September 5, 2012 at 11:00 a.m. Counsel for Dillon wishes to narrow the scope of the dispute regarding Plaintiffs' subpoena as much as possible so as to narrow the issues requiring judicial resolution, if any.

## Introduction

Plaintiffs' Response with respect to Dillon's August 27, 2012 Status Report ("Response") (Doc. # 100) reveals what may be the true intent of the Subpoena: "Dillon's implacable delay and obfuscation raises the inference that it has something to hide and that, rather than being an innocent bystander, it may have played an actionable role in anticompetitive conduct aimed at its competitor, Plaintiff Western Convenience Stores (which was Suncor's largest purchaser by volume before Kroger came on the scene in 2009)." (Doc. # 100, Response, page 2). Plaintiffs should not be

permitted to use the Subpoena to conduct a fishing expedition for alleged antitrust violations against a competitor that is not a party to this lawsuit.

Indeed, the Magistrate Judge asked why the Plaintiffs, in an alleged price discrimination case, needed much of what they were asking.  The Magistrate Judge in a July 16, 2012 hearing on this matter seems prescient:

> "THE COURT: And then if you and I look at number 5, one of the subsections for section 5 is the net price paid per gallon, and I'm assuming that is the net price paid per gallon by Dillon to Suncor.  And then number 8 is the net price that Dillon charges to its customers.  Is that the way you mean that to read?  Why is that necessary?  In other words, your client's theory is that Dillon was getting a discount.  Why would it be relevant what Dillon was charging its customers?  Because, at the end of the day, the issue here is whether or not Dillon got a discount that your client didn't get.  The fact of the matter is, whether Dillon passes . . .  your client's argument is, it's an anti-competitive effect based upon the wholesale price."

> "MR. BENNINGTON: Your honor, may I respond.  We have to establish an injury to competition, one of the elements of doing that may be, will likely be, people switching from Western to Kroger/Dillon.  And one of the defenses is, well you may have been injured but it wasn't anything to do with price discrimination or the price.  We have to know what the

price was, what Dillon was charging, to know whether the switching of customers was caused by that, by the discriminatory price, or by something else. Both the Plaintiff and the Defendant are going to be interested in this kind of information."

Counsel's notes from FTR recording dated July 16, 2012. [1]

Counsel for Plaintiffs' vague and unintelligible answer is of little if any solace; if any, it buttresses the Magistrate Judge's suspicions that the Subpoena is designed to obtain information well beyond the scope of Plaintiffs' Robinson-Patman Act claims.

Dillon's responses were and have not been an attempt at delay or obfuscation as alleged by Plaintiffs; rather, it is apparent that there was some miscommunication regarding these matters. Counsel for Dillon is cognizant of the fact that the Court is a nationally recognized expert in the area of discovery regarding electronically stored information and may be frustrated concerning what appeared to be a lack of information provided regarding same. Dillon apologizes to the Court for any prior misunderstandings regarding the availability of information and requests the Court's patience as Dillon attempts to rectify same and provide the Court with the best available information from its Law Department, Information Technology Department, and Accounting.

---

[1] The above quotations are from the undersigned Counsel's notes of the FTR recording from the July 16, 2012 hearing. Counsel recently ordered a transcript of the hearing on an expedited basis and will supplement this Reply regarding same if necessary.

In an effort to narrow the scope of the issues and encourage ongoing collaboration between Plaintiffs and Dillon, Dillon respectfully submits this revised summary of its understanding of the Plaintiffs' Subpoena requests as modified by the Court's Order and the Plaintiffs' own modifications:

**Dillon's Compliance with the Subpoena and the Order**

The numbered paragraphs below correspond with the numbered paragraphs in the Subpoena (Exhibit A).

1. (Contracts With Suncor):  Dillon has produced responsive documents, as noted in the Order.

    a. During the undersigned counsel's recent consultation with Plaintiffs' counsel, Plaintiffs' counsel stated that this request also encompasses documents related to the contracts, such as requests for proposals, contractual negotiations, and communications regarding same.  Plaintiffs' counsel asserted that Request No. 5(a) seeks such documents as well. The undersigned counsel is consulting with Dillon regarding this issue, but anticipates that Dillon will object to producing any documents in addition to what have already been produced.

2. (E-mails Related to Discounts): The Order requires Dillon to conduct a search using the Microsoft Outlook search tool of the PST files of Dillon's custodians of documents (see below) for e-mails between Dillon and Suncor between 1/1/2009

and 5/31/2011 which contain any of the following search terms: "rebate(s), discount(s), off-invoice, kickback(s), credit(s) or allowance(s)."

   a. Plaintiffs identify the eight custodians as follows: "David M. Wilson, Andrew Spain, Chad Thiessen, Ed Sharpe, Nora Cooper, Leana Redden, Laura Green, and Jessica Stuckey."  Doc # 100, p. 4, footnote 2.

   b. Dillon identifies the following additional custodians who may have information responsive to the request for which Dillon has already obtained their PST files: Gerald DeHague, Rick Krafelf, Susan Giannola, and Arthur Stawski.

   c. Andrew Spain, Nora Cooper, and Jessica Stuckey are no longer Kroger employees and their PST files are unavailable.

   d. Despite the allegations in Plaintiffs' Response, Dillon does not have in-house discovery ESI technology.  Further, Dillon's Law Department was unable to successfully use the "@Suncor" search method endorsed in Plaintiffs' Response, highlighted at Exhibit 1 thereto – alas, all is not as simple as the Plaintiffs would have us believe.

   e. Accordingly, Dillon may require additional time to comply with the Court's Order regarding this request.

3. (E-mails Related to WCS): The Order requires Dillon to conduct a search using the Microsoft Outlook search tool of the PST files of Dillon custodians of documents for e-mails between Dillon and Suncor between 1/1/2009 and

5/31/2011 which contain any of following search terms: "Western Convenience Stores, Western Convenience, Western, WCS, Hossein, Taraghi, Wehrle."

    a. See Paragraph2 above, which also applies to Request No. 3.

4. (List of Dillon Retail Sites): Dillon has produced responsive documents, as noted in the Order.

5. (Invoices Showing Net Price): The Order requires Dillon to produce ESI or other Documents as will identify the Net Price for each delivery of Fuel purchased by Dillon from Suncor from January 1, 2009, through May 31, 2011. If the information is readily available from Dillon's ESI, then the information must include items (a) through (h) in the original request. If the information is not readily available from Dillon's ESI then it must identify: (1) net price for each truckload; (2) discount related to truckload; and (3) retail site to which fuel was transported.

    a. Plaintiffs have not demonstrated that they cannot adequately obtain this information from Suncor.

    b. Dillon's ESI records are divided between two different systems: (1) the Professional Datasolutions Inc./Resource Management Series ("PDI/RMS") which is used to manage fuel operations at Kroger owned convenience stores, including without limitation, Loaf N' Jug; and (2) the FuelSmart Accounting System ("FuelSmart") for operations at grocery fuel centers Dillon-owned supermarkets.

   c. ESI - Convenience Stores - PDI/RMS

      i. For the PDI/RMS System (Convenience Stores), Kroger's system has information electronically available from March 24, 2011 until May 31, 2011.

      ii. For the PDI/RMS System, information from January 1, 2009 through March 23, 2011, such information is stored as archived data, and would require purchasing three computer servers to store and prepare the archived data in searchable format.

      iii. Ms. McClenehan states at Paragraph 8 of her Declaration, "For the PDI/RMS System, information from January 1, 2009 through May 2011, such information is stored as archived data." Dillon has since learned that it may readily retrieve some of the requested information in the PDI/RMS system dating back to March 24, 2011. If necessary, Ms. McClenehan will supplement her Declaration. Dillon also anticipates supplementing the Pugh Declaration to comport with the updated information in this Reply.

      iv. Producing archived PDI/RMS ESI system information from January 1, 2009 until March 23, 2011 would be enormously expensive.

   d. ESI - Supermarkets - FuelSmart

      i. For FuelSmart, Dillon estimates that it would take two weeks to compile the requested information and forward it to Dillon's legal

   department for screening. Dillon estimates that this report will be voluminous.

 e. Depending on the format and the volume of these documents, review and redaction of the documents by the Law Department would take an extended period of time.

 f. Dillon by September 17, 2012 intends to provide information from March 24, 2011 through May 31, 2011 (for PDI/RMS) and from January 1, 2009, through May 31, 2011 (for Fuelsmart) responsive to Request Nos. 5(b), 5(c), 5(f), and 5(g). Dillon requests clarification of what is requested under Request No. 5a (see note regarding request no. 1 above). And notwithstanding any caption "Discount" on Suncor invoices, there is not an applicable discount responsive to Request No. 5(e). See Paragraphs 5-12 of the Declaration of Jennifer McClenahan ("McClenahan Declaration") (Doc. # 99-5) and Paragraph 11 of the Declaration of John Phillips Pugh ("Pugh Declaration") (Doc. # 99-2).

6. (Invoices Showing Discounts): Per the Order this request is subsumed in Item No. 5 above.

7. (Credit Card Numbers and Zip Codes): The Order requires Dillon to produce such ESI as will identify by zip code and the last 4 digits of the credit or debit card number, each customer on each credit or debit card purchase of Fuel from Dillon from November 18, 2010 until May 18, 2012 (i.e. a period of 18 months

before May 18, 2012) for all Dillon stores in the list of retail locations provided in response to Request Number 4.

    a. The Court's Order is based upon a prior representation to the Court by Dillon's counsel that ESI regarding credit cards is available only for the preceding 18 months, after which the information is stored exclusively by a third party vendor. The Court's Order limited the production to 18 months before May 18, 2012, i.e. the credit card information on Dillon's active system as of May 18, 2012.

    b. Dillon again apologizes to the Court for any prior misunderstandings regarding the availability of information. Dillon's investigation indicates presently that it does not have any ESI or Documents with zip code information linked to credit card numbers. Accordingly, Dillon's status report dated August 27, 2012 stated that it did not, upon information and belief, have any information responsive to this request. Dillon requires clarification from Plaintiffs and the Court regarding whether the requested credit card information must be linked to zip codes or whether these items must be independently produced. To be clear, are Plaintiffs requesting that the last four digits of a credit card be paired with a zip code?

    c. During the undersigned counsel's recent consultation with Plaintiffs' counsel, Plaintiffs' counsel stated that this request does require that the

last four digits of the credit card numbers be paired with zip codes. Otherwise, this information is of no use to the Plaintiffs.

    d. This information is not available and zip codes are not stored. Nevertheless, out of an abundance of caution, Dillon intends to produce the last four digits of credit card numbers when available.

    e. Dillon does not have credit card numbers for Kroger owned convenience stores, including without limitation, Loaf N' Jug.

    f. Dillon's has the last four digits of credit card numbers reflecting purchases (Fuel and other than Fuel) at grocery store fuel centers from April 1, 2012 through May 18, 2012. Dillon's records do not distinguish fuel vs. non-fuel purchases at grocery store fuel centers.

8. (Daily Pump Price for Each Site): The Order requires Dillon to produce such ESI and other Documents as will disclose the daily pump price for all Dillon stores in the list of retail locations provided in response to request number 4 from January 1, 2009 through May 31, 2011.

    a. Upon information and belief, Dillon does not have daily pump price information for convenience stores owned by Dillon, including without limitation, Loaf N' Jug.

    b. Dillon has information regarding the daily pump price for Dillon operated supermarket fuel centers.

11

c. This information is a trade secret for the reasons stated in the Declaration of Susan Giannola Pursuant to 28 U.S.C. § 1746 ("Giannola Declaration") (Exhibit D).

d. The elements of Plaintiffs' claims under the Robinson-Patman requires Plaintiffs to demonstrate that Defendant discriminated in price as between Dillon and WCS. See Court's Order dated October 21, 2011 (Doc. # 22). The price paid by Dillon's customers is completely irrelevant to Plaintiff's claim and any such production would be unnecessarily burdensome, expensive, and punitive to Dillon. The same applies to request nos. 9 and 10 below.

9. (Fuel Price Surveys): The Order requires Dillon to produce such ESI and other Documents as will disclose the results of all retail Fuel Price surveys done by Dillon or on Dillon's behalf, or on which Dillon relies for all Dillon stores in the list of retail locations provided in response to Request Number 4 from January 1, 2009 through May 31, 2011.

a. Dillon does not have fuel price survey information for convenience stores owned by Dillon, including without limitation Loaf N' Jug. Any available information would be very limited and unreliable.

b. Dillon has fuel price survey information for Dillon owned supermarket fuel centers. This information is a trade secret for the reasons stated in the Giannola Declaration.

10. (Consumer Demand Studies): The Order requires Dillon to produce, from January 1, 2009 through May 31, 2011, all reports and research, studies, examinations, investigations, surveys or analysis ("Research") done by [Dillon] or on [Dillon's] behalf relating to the characteristics of consumer demand for Fuel, or competition at the retail level, such as:

   a. price elasticity;
   b. demand elasticity;
   c. factors affecting demand elasticity for Fuel;
   d. the impact of Fuel prices on sales;
   e. consumer response to price differences between Retail Sites;
   f. effects of brand loyalty and brand recognition on consumer demand and substitution;
   g. definition of the competitive market for retail Fuel outlets
   h. definition of the relevant market around Retail Sites for Fuel sales;
   i. optimal location of retail Fuel outlets in relation to competitors' outlets;
   j. relationship of ancillary merchandise sales to Fuel purchases;
   k. effect of price on consumers' selection of Fuel grade;
   l. determination of local market saturation for retail Fuel outlets;
   m. supply/demand curves for Suncor's gasoline sales by grade;
   n. retail sales lost to competitors;
   o. competitive evaluations;

    p.  price checking procedures; and

    q.  geographic markets for retail Fuel sales.

Per the Giannola Declaration, the requested information is a trade secret and moreover is irrelevant to Plaintiffs' claims.

Dillon is prepared to provide testimony from Dillon's witnesses regarding these issues as may be required by the Court.

Dillon diligently continues to attempt to comply with the Court's Order.   Counsel for Dillon will continue to update the Court regarding these issues as this matter progresses.

Dated:  August 31, 2012.

        s/ Michael R. McCormick
        *Christopher A. Taravella*, #7790
        *Michael R. McCormick*, #33682
        Montgomery Little & Soran, P.C.
        5445 DTC Parkway, Suite 800
        Greenwood Village, Colorado 80111
        Phone Number: (303) 773-8100
        Fax Number: (303) 220-0412
        E-mail:  ctaravella@montgomerylittle.com
            mmccormick@montgomerylittle.com
        Attorneys for Dillon Companies, Inc.
        Interested Party

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann & Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO  80202

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-D enver
555 17th Street, Suite 3200
Denver, CO  80201

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO  80202

William LeitzseyMonts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

s/ Michael R. McCormick
*Christopher A. Taravella*, #7790
*Michael R. McCormick*, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
          mmccormick@montgomerylittle.com
Attorneys for Dillon Companies, Inc.
Interested Party