IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

---

**PLAINTIFFS' RESPONSE TO OBJECTION OF INTERESTED PARTY DILLON COMPANIES, INC. TO MAGISTRATE JUDGE'S ORDER DATED AUGUST 17, 2012 AND BRIEF IN SUPPORT OF OBJECTION**

---

Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC (collectively "Western"), by and through their undersigned counsel, respond as follows to the *Objection of Interested Party Dillon Companies, Inc. to Magistrate Judge's Order Dated August 17, 2012* filed August 31, 2012 (Doc. 107, "Objection") and, to the extent the Court determines that it should be considered, the untimely *Brief in Support of Objection* that Dillon Companies filed on September 12, 2012 (Doc. 115, "Brief").

## SUMMARY OF RESPONSE

After failing to produce documents and ignoring Magistrate Judge Shaffer's directions for four months, Dillon now objects to his order denying Dillon's motion to quash the subject Subpoena. Dillon's Objection should be denied as it simply rehashes arguments presented to Magistrate Judge Shaffer and properly rejected. In short, Dillon has not shown that Magistrate Judge Shaffer's order is clearly erroneous or is contrary to law.

Dillon has not provided any authority which shows that the discovery sought is not relevant or not subject to production under Fed. R. Civ. P. 26(b)(1) or 45(c)(3). Instead, Dillon argues that the discovery should be denied because Dillon is a direct competitor of Western and fears potential litigation against it. The former argument is irrelevant because the existing Protective Order (Doc. 49) protects producing parties and non-parties from misuse of trade secrets and Magistrate Judge Shaffer has made clear that the Protective Order may be amended to impose further protection if Dillon establishes further protection is required. The latter argument is made without any citation to relevant authority and is without merit.

Finally, Dillon claims that Western's Subpoena requests are too burdensome. Magistrate Judge Shaffer addressed this issue during a hearing on August 17, 2012 and the status conference on September 14, 2012. He ordered Dillon to respond to the Subpoena (as narrowed by Plaintiffs' agreements), but indicated that Dillon may file a cost-shifting motion once it fully responds. There is no reason to revisit this or any other aspect of Magistrate Judge Shaffer's order.

## BACKGROUND

1.  This is a price discrimination case under the Robinson-Patman Act, 15 U.S.C. § 13(a). *See* Amended Complaint (Doc. 43), at ¶¶ 5; 25-39. Western operates 42 convenience stores from which it has sold millions of gallons of gasoline and diesel fuel ("Fuel") to consumers in Colorado and Nebraska. *Id.* at ¶ 9. It alleges that Defendant Suncor engaged in sustained Robinson-Patman Act violations by selling Fuel to Favored Retailers at prices below the prices at which it sold fuel to Western. *Id.* at 25-33. The Amended Complaint specifically identifies Dillon Companies, Inc. as one of the Favored Retailers to which Suncor sold fuel at a discriminatory price. *Id.* at 25.

2.  To prevail on a Robinson-Patman Act claim, a plaintiff must show not only discriminatory sales to favored customers, but also an antitrust injury, i.e., a reasonable possibility that the discriminatory pricing may harm competition and an injury in fact to the plaintiff because of the discriminatory pricing such as lost sales to the favored customer. *See* Doc. 71-4, Declaration of Mark A. Glick, at ¶¶ 7-8. Initial discovery from Suncor disclosed not only that Suncor charged Dillon and its affiliate Mini-Mart (dba Loaf N Jug) lower prices for the same grades of Fuel products, but also that in 2009 and 2010, Dillon and Mini-Mart replaced Western as Suncor's highest volume customer. *See* Doc. 71-1.

3.  On April 27, 2012, after taking initial discovery from Suncor, Plaintiffs served the subject Subpoena on Dillon. *See* Subpoena at Objection Exhibit A (Doc. 108-1).[1] The Subpoena

---

[1]  The Subpoena defined "Dillon" to include its affiliates, including Kroger, King Soopers, City Market and Loaf N Jug (a/k/a Mini Mart, Inc.).

sought documents relating to Dillon's relationship with Suncor; data regarding Dillon's Fuel purchases from Suncor, the prices it paid to Suncor for such Fuel, and the prices it charged to consumers for such Fuel in a defined pertinent timeframe and geographic area; and documents reflecting research regarding the characteristics of consumer demand for Fuel or competition at the retail level. *Id.* at 3-4. With their correspondence accompanying the Subpoena, Plaintiffs provided Dillon with a copy of the Protective Order entered in this action. *See* Exhibit 1 attached hereto; *see also* Doc. 49. That Protective Order permits both parties and nonparties to produce any proprietary or trade secret information as "Confidential Information" or as "Highly Confidential Information," the disclosure of which is limited solely to counsel of record and experts. *Id.* at ¶¶ 2, 25.

4. Dillon moved to quash the Subpoena on the production return date of May 18, 2012 (Doc. 57); thereafter, Magistrate Judge Shaffer set a hearing for June 25, 2012 (Doc. 60); Western filed a response (Doc. 71); and Dillon filed its reply (Doc. 85). After Dillon moved to continue the originally scheduled date, the Motion to Quash hearing occurred on July 16, 2012, almost three months after Western served the Subpoena. *See* Doc. 88. Although there were requests in the Subpoena that Dillon always conceded were not objectionable and Western communicated on multiple occasions their willingness to meet personally and confer regarding each request deemed objectionable (*e.g.*, Doc. 71-2), Dillon did not produce any responsive documents or data on the production return date or any time in advance of the July 16 hearing.

5. At the July 16 hearing, Magistrate Judge Shaffer addressed each Subpoena request and chastised both parties with respect to their positions. He noted that the declaration

submitted by Dillon in support of its Motion to Quash was "inadequate," in part because it failed to address at all either the availability or burdensomeness associated with production of the ESI specifically requested in the Subpoena. *See* Doc. 121, July 16, 2012 Hearing Transcript, at 9:1-14:18. He also advised Dillon that any legitimate concerns it had regarding protection of its confidential or trade secret information could be addressed either by the existing Protective Order or a specific protective order that he could fashion. *Id.* at 26:3-27:4. At the close of the hearing, he ordered counsel to meet in person to discuss each request and attempt to reach compromises on the positions presented in their motion to quash filings. *Id.* at 77:9-79:1.

6.  On July 18, 2012, Plaintiffs' counsel and Dillon's counsel met as directed. Plaintiffs agreed to substantially narrow their requests as reflected in the Status Report filed on July 25, 2012 (Doc. 89). As set forth in that status report, Dillon had not responded to any of Plaintiffs' agreement to narrow, but had raised the Subpoena matters to Dillon's upper corporate management and advised that Dillon would provide its position regarding the narrowed requests within a week. *Id.* at p. 6. Despite its commitment and follow up requests from Plaintiffs, Dillon produced no documents responsive to any of the 10 Subpoena requests (as narrowed by Plaintiffs' agreements), no commitment to produce any responsive documents, nor any substantive information as to Dillon's position regarding any of the 10 requests (again, as narrowed by Plaintiffs' agreements). Doc. 92 at p. 2. Accordingly, Plaintiffs requested a further hearing or an order compelling production under the Subpoena as narrowed. *Id.*

7.  The Court set a second hearing for August 17, 2012. At that hearing, Dillon for

the first time produced documents responsive to Plaintiffs' Subpoena.  *See* Exhibit 2.[2]  The production was 25 pages and consisted of three contract documents between Dillon and Suncor (only one of which was responsive to Subpoena request 1, as narrowed) and lists of Dillon and Mini-Mart stores with address information (responsive to Subpoena request 4).  *Id.*  At that hearing, Magistrate Judge Shaffer denied the Motion to Quash and ordered production of the documents responsive to the Subpoena, as narrowed by Plaintiffs' agreements, within 30 days (September 17, 2012) or, if Dillon was unable to produce particular categories of responsive documents by that date, the filing of a status report within 10 calendar days (by August 27, 2012) describing exactly why it could not comply with the order by October 1.  *See* Doc. 120, August 17, 2012 Hearing Transcript, at 31:1-35:12.  He also indicated that the Court would consider a cost-shifting motion after the materials were produced.  *Id.*

8. On August 27, 2012, Dillon filed a Status Report claiming it would be unable to produce within 30 days many categories of the documents/ESI requested in the Subpoena, as narrowed, and stating that it considered multiple categories of the requested documents/ESI to constitute Dillon Trade Secrets.  *See* Doc. 99.  On August 31, 2012, Dillon filed its Objection, as well as motions for partial stay and reconsideration of Magistrate Judge Shaffer's August 17, 2012 Order (Docs. 109, 110).

9. Dillon attached to its Objection, Motion to Stay and Motion for Reconsideration three declarations: of Mr. Pugh, a legal department investigator who describes the availability of

---

[2] Exhibit 2 indicates that it was emailed to Western's counsel.  It was hand-delivered at the hearing and thereafter emailed.

certain responsive documents (Doc. 107-2); of Ms. McClennahan, an accounting manager who describes the availability of other responsive documents (Doc. 107-5); and of Ms. Giannola, a director of petroleum operations who describes the market strategy of Dillon's parent, Kroger, and states that certain of the responsive documents are Kroger trade secrets (Doc. 107-6).

10. Notably, the declarations submitted are inconsistent with each other and with Dillon's other representations to the Court. For example, Mr. Pugh states that Kroger/Dillon have no information or documents that identify fuel customers by zip code and last four digits of the customer's credit or debit card number (Subpoena Request 7), while Dillon represented in advance of the August 17 hearing that it has the data for the past 18 months and was working to obtain earlier data from its vendor. Doc. 107-6, at ¶ 12. Similarly, Mr. Pugh states without any explanation that Kroger/Dillon has only "limited" daily pump prices (Subpoena Request 8) and "very limited" and "unreliable" fuel price surveys (Subpoena Request 9) (Doc. 107-1, at ¶¶ 13-14), while Ms. Giannola says that this data constitutes valuable trade secrets, that that the data is an integral part of Kroger's marketing strategy, and that Kroger has developed an elaborate system to store and retrieve it (Doc 107-6, at ¶¶ 9-17).

## RESPONSE TO OBJECTION

### A. Standard of Review.

Rule 72(a), Fed. R. Civ. P., provides in part that "[t]he district court judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the

magistrate judge's order is clearly erroneous or contrary to law"); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461-62 (10th Cir. 1988).

"The clearly erroneous standard . . . requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp.*, 847 F.2d at 1464 (citation omitted); *HealthOne of Denver, Ind. v. UnitedHealth Group Inc.*, No. 10–cv–01633–WYD–BNB, 2011 WL 6440526, *1 (D. Colo. Dec. 21, 2011) (holding that a Magistrate judge's ruling will not be overturned merely because the district court judge would have decided the issue differently); *HEI Res. E. OMG Joint Venture v. Evans*, No. 09–cv–00028–MSK–BNB, 2009 WL 2601368, *2 (D. Colo. Aug. 20, 2009).

### B. The requested discovery materials are subject to the Protective Order.

Dillon argues that information sought by Western is trade secrets and, thus, is not subject to discovery. Dillon's position ignores the plain language of the Protective Order and the law from this district and others.

The Protective Order states that "[a]ny Party to this action or any non-party may designate any Discovery Material produced by it as Confidential Information or Highly Confidential Information." *See* Protective Order, Doc. 49, at ¶ 2. A Highly Confidential designation prevents the Plaintiffs from disclosing any of Dillon's materials to Western's corporate representatives. *Id*. at ¶¶ 8, 9. The Protective Order also prevents the disclosure or use of any Confidential or Highly Confidential information outside of this lawsuit. *Id*.

Courts have routinely found that *attorneys' eyes only* or *attorneys and experts' eyes only*

designation, like the *Highly Confidential* designation here, is the appropriate measure when trade secrets are the subject of a discovery request or third-party subpoena. *See Covey Oil v. Continental Oil Co.*, 340 F.2d 993, 997-99 (10th Cir. 1965), *cert. denied* 380 U.S. 1110 (1965) and *overruled on other grounds by United States v. Ryan*, 402 U.S. 530 (1971) (requiring a nonparty, in an action to recover damages for alleged violations of the Robinson-Patman Act, to comply with a subpoena requesting trade secrets relating to the price, cost, and volume of sales of gasoline on conditions designed to protect nonparties by making the documents available only to counsel and independent certified public accountants, and by forbidding the use of the material for business or competitive purposes); *Covelo Clothing, Inc. v. Atlandia Imports, Inc.*, No. 07-cv-02403-MSK-MEH, 2007 WL 4287731, *2 (D. Colo. Dec. 5, 2007) (finding attorney-eyes-only provision sufficient to protect a non-party when disclosing trade secrets to a competitor); *In re The City of New York*, 607 F.3d 923, 935 (2d. Cir. 2010) (disclosure of confidential information on an attorney-eyes-only basis is routine in civil litigation involving trade secrets); *Medical Tech. Inc. v. Breg, Inc.*, No. 10–00100, 2010 WL 3734719, *5 (E.D. Pa. Sept. 21, 2010) (protective order containing attorney-eyes-only provision sufficient when disclosing sensitive information).

      Dillon resists production of Categories 5(h), 8, 9, and 10(e), (d), (f), (g), (h), (o), and (p) on the basis that the materials constitute confidential, competitive trade secrets. As Magistrate Judge Shaffer has made abundantly clear, documents sought by Western are discoverable even if they are trade secrets. Doc. 121, at 48:24-50:4. By the explicit language of the Protective Order, Dillon's alleged trade secrets are protected from disclosure to Western's company

representatives and cannot be used outside of this litigation. Thus, it is unclear how Dillon will suffer a substantial competitive disadvantage when Western will never see the information.

Western needs to disclose the discovery provided by Dillon to Western's experts as the experts will analyze the data for use in this case. Disclosure to the experts must be approved by the disclosing party and the experts are held to the same obligations as the attorneys in terms of non-disclosure outside of this lawsuit or to Western.[3] Courts throughout the country, including in Colorado, agree that it is proper to allow production of certain confidential business information of a competitor subject to a protective order restricting disclosure to attorneys and independent experts involved in the litigation. *A Major Difference, Inc. v. Wellspring Prods., LLC*, 243 F.R.D. 415, 417-419 (D. Colo. 2006) (citing *Centurion Indus., Inc. v. Warren Steurer and Assocs.*, 665 F.2d 323, 325-26 (10th Cir. 1981)); *see also Taiyo Int'l, Inc. v. Phyto Tech Corp.*, 275 F.R.D. 497, 500-02 (D. Minn. 2011) (ordering disclosure of competitor's trade secrets subject to a protective order to outside counsel and independent experts involved in the litigation); *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (citing cases).

To the extent the Court finds Dillon's complaints about confidentiality to be meritorious and not already covered by the Protective Order, Fed. R. Civ. P. 45(c)(3)(C) allows the Court to, instead of quashing a subpoena, modify the Protective Order or impose additional conditions on

---

[3] The principal review will be done by Mark Glick, who submitted the Declaration in support of Plaintiffs' motion to quash response, and Mr. Glick's colleague, Ted Tatos, an econometrician. As set forth in his declaration, in addition to being a professor at the University of Utah Law School, Mr. Glick is an attorney licensed to practice in Utah and New York. Doc. 71-4, at ¶ 6.

the production to protect the affected party.  *See HEI*, 2009 WL 2601368 at *3 (footnote omitted).  Accordingly, there is no basis for Dillon to resist discovery on the basis that the discovery seeks trade secrets.

### C. Dillon has failed to show undue burden under Fed. R. Civ. P. 45(c)(3)(A) and 26(b)(2)(B).

Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena.  Rule 45 requires that the recipient of a subpoena file a motion to quash or modify the subpoena if it subjects a person to undue burden.  *See* Fed. R. Civ. P. 45(c)(3)(A).  Likewise, Fed. R. Civ. P. 26(b)(2)(B) states that "[a] party need not provide discovery or electronically stored information from sources that the party identifies are not reasonably accessible because of undue burden or cost."

Dillon must provide sufficient details or "a compelling showing of undue burden" to obviate the overwhelming preference for requiring that relevant discovery materials be exchanged.  *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01–cv–01644–REB–CBS, 2010 WL 502721, *15 (D. Colo. Feb. 8, 2010) (citing cases).  The Court must balance Plaintiffs' need for the discovery at issue against the burden imposed on Dillon.  *See Spacecon Specialty Contractors, LLC v. Bensinger*, No. 09–cv–02080–REB–KLM, 2010 WL 3927783, *3 (D. Colo. Oct. 1, 2010) (citation omitted).

In filing its motion to quash, Dillon relied on a declaration (Doc. 57-2) that Judge Shaffer described as "wholly deficient."  Doc. 121 at 77:17-77:21.  Dillon has presented no new evidence in its Objection or untimely Brief to show an undue burden in producing materials requested by the Subpoena.  In fact, the unpersuasive arguments relied upon by Dillon during the

hearing of August 17, 2012 are used again by Dillon in its Objection and Reply Status Report filed August 31, 2012.  In its Objection, Dillon's only statement of undue burden is that it will cause it to "incur a substantial expenditure or time, effort and financial resources."  That vague statement does not show undue burden.

Dillon submitted the Declaration of Jennifer McClenahan (Doc. 107-5) to show the expense incurred in responding to Requests 5 and 6, but her statement of expense has not been verified for accuracy as Dillon has, up to this point in time, not made its IT personnel available to Western's ESI expert to discuss the most efficient method for producing the information.  No undue burden has been shown for Requests 8, 9, and 10.  And, even if the argument has been made, Magistrate Judge Shaffer has already ordered that Dillon may file a motion for cost shifting at the conclusion of its production.  Accordingly, Dillon has failed to meet the requirements of Rule 26(b)(2)(B) and Rule 45(c)(3)(A)(iv) to show undue burden.

### D. The materials sought from Dillon are relevant and necessary to this case.

If the Court determines that the discovery materials are trade secrets, the burden then shifts to Western to show the relevancy and need for the information.  *See R & D Business Systems v. Xerox Corp.,* 152 F.R.D. 195, 197 (D. Colo. 1993).  Fed. R. Civ. P. 26(b)(1) relating to discovery "has been construed broadly to encompass any matter that bears on, or could reasonably lead to another matter that could bear on, any issue that is or may be in the case." *HealthOne*, 2011 WL 6440526 at *2 (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1)

does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted). Here, in responding to Dillon's original motion to quash, Western established through the Glick declaration (Doc. 71-4) both the relevance and need for the data sought.

Dillon relies on *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998), to support its arguments. The similarities between *Echostar* and this case are few. *First*, in terms of the burden on the responding party, the court found that Echostar did not show a need for the discovery because the parties had just started discovery and Echostar had not exhausted its efforts to seek the discovery from the defendant instead of the non-party. *Echostar Commc'n*, 180 F.R.D. at 395. Here, Western has submitted written discovery to Suncor and conducted several depositions. It has issued subpoenas to several non-parties, all of which are in the process of fully responding to the subpoenas, except for Dillon. That discovery has not produced the information sought by Western from Dillon.

*Second*, the court in *Echostar* found the discovery relating to competition in the cable/satellite industry was not relevant to Echostar's only claim of breach of contract. *Id*. Here, the discovery sought by Western from Dillon relates directly to its Robinson-Patman claims against Suncor. Dillon claims that "(t)he nature and results of market research that Dillon chose to perform have no bearing either on Dillon's relationship with Suncor or Suncor's alleged price discrimination." However, Dillon fails to address (and perhaps hides) the possibility that its own

research has revealed, for example, how many customers its pricing has induced to move from Western to Dillon retailers King Soopers and Loaf N Jug.

Section 2(a) of the Robinson-Patman Act makes it "unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality ... *where the effect of such discrimination may be substantially to lessen competition*...." 15 U.S.C. § 13(a); *see also Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 434 (1983) (Robinson–Patman Act requires only that there be "a reasonable possibility" of substantial injury to competition before its protections are triggered).

Because competitive injury is an element to the Robinson-Patman claim, both Western and Suncor are interested in determining whether any lost sales by Western were caused by the alleged price discrimination in favor of Dillon. Specifically, whether Western can establish lost sales or profits caused by Suncor's alleged price discrimination or show a substantial difference in price between sales by Suncor to Western and sales by Suncor to favored retailers, such as Dillon, over a significant period of time. *See* Doc. 71-4, Glick Declaration*,* ¶ 9. In short, Western may be unable to prove the elements of a Robinson-Patman claim without discovery from the favored retailer, in this case Dillon.

In addition, as this case involves the sale of fuel, a key issue will be the size of the geographic markets in which Western's gas stations compete. *Id*. The purpose of Category 9 is to obtain information on that topic. *Id*. Category 9 seeks information concerning who competes with Western's gas stations by inquiring what gas stations Dillon takes into consideration when it

sets its prices. Similar information is sought in Categories 10. e, f, g, h, i, n, o, p and q. *Id*.

Once the geographic market is defined, it is necessary to determine whether plaintiff lost sales due to the price discrimination. *Id*. at ¶ 10. Category 8 seeks information concerning Dillon's prices to consumers which are impacted by Suncor's prices to Dillon. *Id*. *Id*. Categories 10. a, b, c, d, i, k, and m seek information about the relationship of sales to price differentials caused by the alleged price discrimination.

*Third*, relying on *Echostar*, Dillon argues that one statement by Western raises a "healthy suspicion" that Western may be using discovery obtained from Dillon in this action to build a separate antitrust case against it. *Objection, at p. 14*. The "healthy suspicion" that weighed into the court's decision in *Echostar* to deny the motion to compel is not similar to the statement made in this case. In *Echostar*, the company publicly announced on multiple occasions that it was contemplating a wide-ranging anti-trust lawsuit against the entities which had been subpoenaed. *Echostar Commc'n*, 180 F.R.D. at 395-96. Here, Western argued in one pleading that Dillon's failure and refusal to respond to the Subpoena raises the inference that it has something to hide. That statement is vastly different than the statements made in *Echostar*, where the company actively sought information to support an anti-trust lawsuit against its competitors.

Accordingly, the discovery materials sought by Categories 5, 8, 9, and 10 are relevant and necessary to this litigation.

## CONCLUSION

Dillon's Objection should be denied as Dillon has not shown that Magistrate Judge Shaffer's Order is clearly erroneous or is contrary to law.  Instead, Dillon makes the same unpersuasive and poorly supported arguments it made the first go around.  Western has shown that the information sought from Dillon is relevant to this lawsuit, protected from disclosure outside of this lawsuit and to Western, and is not unduly burdensome on Dillon. Accordingly, Dillon's Objection should be denied.

Dated: September 17, 2012

*s/ Kathleen E. Craigmile*

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN
& CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
Telephone: (303) 629-5200
Facsimile: (303) 629-5718
*kec@benningtonjohnson.com*
*krb@benningtonjonson.com*
*afa@benningtonjohnson.com*
*Attorneys for Plaintiffs and Third-Party Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that, on September 17, 2012, the foregoing **PLAINTIFFS' RESPONSE TO OBJECTION OF INTERESTED PARTY DILLON COMPANIES, INC. TO MAGISTRATE JUDGE'S ORDER DATED AUGUST 17, 2012 AND BRIEF IN SUPPORT OF OBJECTION** was served on the following parties via CM/ECF:

| | |
|---|---|
| Anthony J. Shaheen<br>Keeya M. Jeffrey<br>Holland & Hart LLP<br>555 17th Street, Suite 3200<br>Denver, CO 80201-8749<br>AJShaheen@hollandhart.com<br>KMJeffrey@hollandhart.com | J. Robert Robertson<br>William L. Monts III<br>Hogan Lovells US LLP<br>555 Thirteenth Street, N.W.<br>Washington, D.C. 20004-1109<br>robby.robertson@hoganlovells.com<br>william.monts@hoganlovells.com |
| Philip W. Bledsoe<br>Joseph T. VanLandingham<br>Polsinelli Shughart PC<br>1225 Seventeenth Street, 29th Floor<br>Denver, CO 80202-5529<br>pbledsoe@polsinelli.com<br>jvanlandingham@polsinelli.com | Christopher A. Taravella<br>Michael R. McCormick<br>Montgomery Little & Soran, P.C.<br>5445 DTC Parkway, Suite 800<br>Greenwood Village, CO 80111<br>ctaravella@montgomerylittle.com<br>mmccormick@montgomerylittle.com |

      *s/ Marie Newberger*