IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

      Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

      Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

      Third-Party Defendants.

---

**PLAINTIFFS' STATUS REPORT FOR OCTOBER 3, 2012 HEARING**

---

In connection with the hearing scheduled for October 3, 2012, Plaintiffs submit this status report regarding Dillon Companies' production under the Subpoena that was served April 26, 2012 and that was the subject of the Motion to Quash filed May 18, 2012 (Doc. 57) and denied August 17, 2012 (Doc. 95 at 2, hereinafter "Order").

At the hearing on September 14, 2012, Dillon represented that production under the Subpoena could not be completed by September 17, 2012 as directed by the Court and requested that it be permitted to produce responsive documents and data on a rolling basis concluding with final production on October 1, 2012.  See Doc. 119, 9/14/2012 Courtroom Minutes/Minute Order at 2.  The current status with respect to each of the ten subpoena requests (as narrowed by Plaintiffs' agreements described in the Status Report filed July 25, 2012, Doc. 89) is set forth

below in Section A.  A table summarizing the documents/data produced by Dillon to date is set forth in Section B, beginning at page 9.

The requests that require the most attention from the Court are: 5(h), 7, 8, 9, and 10. Despite the Court's orders and Dillon's admissions that the documents/data exist, Dillon has not produced any documents responsive to Requests 8, 9 or 10.   Regarding Request 7, Dillon represented up through the August 17 hearing that responsive data was available but, after the Order was entered, submitted declarations stating that the data cannot be obtained as requested. Accordingly, Plaintiffs and their expert proposed an alternative as described in the correspondence attached as Exhibit 5.  Dillon has not responded to Exhibit 5.

As set forth in Section A, with respect to a number of requests, Dillon continues to withhold responsive documents and data (or portions of responsive documents and data) on the assertion that they contain Dillon trade secrets.   Plaintiffs have stated on multiple occasions a willingness to agree to a form of Protective Order proposed by Dillon which permits disclosure of Dillon trade secrets solely to counsel of record, necessary outside experts, and Court or related personnel.   To date, Dillon has never provided a proposed form of protective order or identified specific provisions of the existing Protective Order (Doc. 49) that are problematic.  During a status call on October 1, 2012, Dillon's counsel indicated that he would prepare a proposed protective order that may or may not be circulated in advance of the October 3 hearing.

A.     **STATUS WITH RESPECT TO EACH REQUEST**

<u>**Request 1**</u>:  **For the Pertinent Time-frame[1] and Geographic Area[2], all Contract Documents[3] between [Dillon] and Suncor.**

- Dillon produced three contract documents at the hearing on August 17, 2012; two of these contracts were outside the timeframe requested by the Subpoena:

  - October 1, 2010 Product Purchase and Sale Agreement (DILLON 000001-DILLON 000007);

  - July 12, 2011 Product Purchase and Sale Agreement (DILLON 000008-DILLON 000014); and

  - April 2, 2012 Confirmation of Purchase and Sale Agreement (DILLON 000015-DILLON 000016).

- During the October 1, 2012 status call, Dillon's counsel stated that Dillon has found additional Contract Documents responsive to this request, but that such Contract Documents constitute trade secrets that Dillon is unwilling to produce until a Dillon-approved protective order is entered.

<u>**Requests 2 and 3**</u>: **For the Pertinent Timeframe and Geographic Area, all Communications[4] between [Dillon] and Suncor referring or relating to any Discount[5] (Request 2) or relating to Western Convenience Stores (Request 3).**

---

[1]     Defined in the subpoena as "January 1, 2007 to the present."

[2]     Defined as "Colorado and the area of Nebraska within a 25 mile radius of the towns of Sidney, Ogallala and Hershey."

[3]     Defined as "all written agreements and understandings between [Dillon] and Suncor for the purchase of Fuel for sale at retail."

[4]     Defined as "inquiries, discussions, conferences, conversations, negotiations, agreements, meetings, telephone conversations, letters, correspondence, e-mails, notes, telegrams, telexes, faxes, or other forms of communication including, but not limited to both oral and written communication."

[5]     Defined as "all rebates, discounts, off-invoice consideration, kickbacks, credits, allowances and other things of value granted to [Dillon] by Suncor regardless of whether reflected on an invoice and regardless of when received in relation to a purchase of Fuel."

- Plaintiffs agreed that Dillon may initially limit its response to email between Dillon and Suncor dated or created after January 1, 2008 containing the following search terms: *rebate(s), discount(s), off-invoice, kickback(s), credit(s), allowance(s)* (Request 2), *Western Convenience Stores, Western Convenience, Western, WCS, Hossein, Taraghi, Wehrle* (Request 3). See 7/25/2012 Status Report (Doc. 89).

- In connection with the September 14, 2012 Status Conference, Dillon stated that it had run the requested keyword search on email files for 11 fuel custodians, that Dillon was conducting an "ongoing" privilege review of the responsive emails and that initial review of the emails responsive to the search indicated that the "documents may be several thousand pages in length." Doc. 116, 9/13/2012 Dillon Status Report at 3. Given the stated volume of materials to be produced, Dillon requested, and the Court directed, a rolling review and production of the responsive emails with the final production due on October 1. Doc. 119 at 2.

- On September 17, 2012, Dillon produced 8 emails with attachments responsive to Request 2 (DILLON 023780-DILLON 023810, 30 total pages). As reflected by the attached Exhibit 1, Dillon produced certain attachments in redacted form, claiming the redacted data (e.g. the quantities of Fuel purchased by Dillon at a discount) contain Dillon trade secrets.

- On September 28, 2012, Dillon produced 23 emails with attachments (DILLON 023811-DILLON 023907, 96 pages total) responsive to Request 2. As reflected by Exhibits 2 and 3 hereto, Dillon again produced attachments in redacted form, claiming the redacted data (e.g. the quantities of Fuel purchased and purchase prices) contain Dillon trade secrets.

- On October 1, 2012, Dillon produced 6 emails with attachments (DILLON 023908-DILLON 023931, 23 total pages). As reflected by Exhibit 4, Dillon again produced redacted attachments (Suncor invoices) with all of the data regarding quantities of Fuel purchased and payment amounts redacted.

- During the October 1, 2012 call, Dillon's counsel stated that Dillon has found approximately 40-50 pages of email documents relating to Suncor's proposals to Dillon for Fuel sales which have not yet been produced. According to its counsel, Dillon contends that these additional responsive emails will not be produced until the Court enters a protective order satisfactory to Dillon.

- Dillon has not produced emails responsive to Request 3 (emails containing variants of the names "Western Convenience Stores" or "Taraghi"). As of the date of this filing, Dillon has not confirmed whether any emails responsive to Request 3 exist.

**Request 4**:  For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify all retail sites, locations and outlets (collectively, "Retail Sites") where [Dillon] sold Fuel[6] at retail.

- On July 18, 2012, Plaintiffs provided to Dillon a list of King Soopers, City Market and Loaf n' Jug stores of which Plaintiffs are aware and which Plaintiffs believe compete or may compete with Plaintiff WCS's retail sites and agreed that  Dillon may limit its response to documents which identify Retail Sites open at any time between January 1, 2009 and June 1, 2011 which are either not identified or are incorrectly identified on the list.

- At the hearing on August 17, 2012, Dillon produced a list of retail sites it indicated were responsive to the request (DILLON 000017-DILLON 000025).

- On October 1, 2012, Dillon produced a revised list of retail sites it indicated were responsive to the request (DILLON 023932- 023937).

**Request 5**:  For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify the Net Price[7] for each delivery of Fuel purchased by [Dillon] from Suncor.  In responding to this request, include such ESI or other Documents as will identify the:

    a.  **Contract Documents associated with the delivery;**

    b.  **the bill of lading number;**

    c.  **the date of the delivery;**

    d.  **the net price paid per gallon;**

    e.  **all Discounts received;**

    f.  **the Fuel type (regular or premium gasoline, E85 or diesel);**

    g.  **the Retail Site(s) to which the Fuel was delivered; and**

    h.  **the net and gross quantity of Fuel delivered.**

---

[6]    Defined as "all formulations of gasoline and diesel fuel sold by Suncor, whether branded or unbranded."

[7]    Defined as "the price paid by [Dillon] to Suncor net of all Discounts."

- Dillon has never produced any responsive data that includes information responsive to subsection **(h)**, claiming that information constitutes Dillon trade secrets (See Doc. 208-6, Giannola Declaration, at ¶¶ 6-8).

- On September 12 and 13, 2012, Dillon produced data responsive to subsections **(b), (c), (d), (f)** and **(g)** as follows:

    - Loaf N Jug Stores:
        - A report from Dillon's PDI/RMS system for stores on the initially produced list for March 24, 2011 to May 31, 2011 (DILLON 000026–DILLON 000156). This data (and all other data produced to date) has been produced in .PDF format.

        - Dillon stated that for January 2009 to March 23, 2011, information is archived and would require purchasing 3 servers (Doc. 108-5, McClenahan Declaration, at ¶ 8).

        - Plaintiffs have advised Dillon that, without the net and gross quantity data, the archived and produced data is not useful to Plaintiffs.

    - Supermarkets:
        - A report from Dillon's FuelSmart system for January 1, 2009 to May 31, 2011 (DILLON 000157 – DILLON 001468)

        - Plaintiffs have advised Dillon that, without the net and gross quantity data, the produced data is neither responsive nor useful to Plaintiffs.

- Dillon states that it does not have information responsive to subsections **(a)** and **(e)**.

**Request 6**:  **For the Pertinent Timeframe and Geographic Area, such ESI or other Documents as will identify all Discounts received by [Dillon] from Suncor relating in any way to Fuel purchased by [Dillon] for sale at retail.**

- Plaintiffs agreed that Dillon may initially limit its response to Discounts received by Dillon before June 1, 2011 which are not otherwise identified in documents/ESI provided in response to Request No. 5 above. The purpose of this request was to identify any discounts that did not appear in the data previously requested, such as end of month or end of year rebates or credits.

- Dillon has not produced documents responsive to this request and states that it is not aware of any documents responsive to this request.

**Request 7:**  **For the Pertinent Timeframe and Geographic Area, such ESI as will identify by zip code and the last 4 digits of the credit or debit card number, each customer on each credit or debit card purchase of Fuel from [Dillon] at retail.**

- On September 12, 2012, Dillon produced a 20,000 page report (DILLON 001469-DILLON 023779) reflecting the last four digits of credit or debit card numbers but no zip codes for purchases at Dillon supermarket fuel centers between April 1, 2012 through May 18, 2012 only.  Dillon stated it was investigating whether responsive data was available for Loaf N Jug stores.

- On September 19, 2012, counsel, together with Plaintiffs' expert, Mr. Tatos, and in-house legal and IT representatives for Dillon, conferred by conference call and discussed that the credit and debit card number data is of no use to Plaintiffs without zip codes because it does not permit Plaintiffs to identify particular consumers for Western lost sales.  During that call, Mr. Tatos identified alternative data that would satisfy his needs as described below.

- The current status of this request is reflected in the September 25 correspondence of Plaintiff's counsel attached as Exhibit 5.  As noted in that correspondence: (a) Dillon represented in its original Motion to Quash that this information constituted Dillon trade secrets (Doc. 57 at 5-6); (b) Dillon represented in connection with the August 17, 2012 hearing that Dillon has responsive information for the past 18 months and was obtaining the earlier requested data from a vendor (Doc. 94-1 at 3, Doc. 120 at 18:24-20:19); (c) on August 27, 2012, Dillon disclosed for the first time that Dillon does not actually have any responsive data that ties the last four digits of the consumer's card number to his/her zip code as specified in the request and that the card number data is available only for very limited time periods (Doc. 108 at 10-11); and (d) in light of the discovery that the data is unavailable, Plaintiffs have asked their experts to identify alternative data that would satisfy their needs in establishing antitrust injury and related elements.  Specifically, Plaintiffs have requested as an alternative:

  - An identification of the receipts for fuel sales by station, by day, by fuel grade, by volume, and by number of customers purchasing gas that day from January 1, 2009 to May 31, 2011.

- Dillon has not responded to this correspondence.

- On October 1, 2012, Dillon produced on a CD a 26,000 page report containing the last four digits of card numbers without zip codes for fuel and non-fuel purchases for Loaf N Jug stores between January 1, 2009 to June 30, 2012 (DILLON0100000-

DILLON126146). See Exhibit 6 at 3-4. It indicates that it could produce a 680,000 page report with additional credit card data (again without zip codes) by December 31, 2012.

**Request 8:** **For the Pertinent Timeframe and Geographic Area, such ESI and other Documents as will disclose the daily pump price at each of Your Retail Sites for each Fuel type (regular or premium gasoline, E85 or diesel).**

- According to Dillon's filings (*e.g.,* Doc. 108-6, Giannola Declaration ¶¶ 9-12), Dillon has this data which it considers to constitute trade secrets.

- As of the date of this Status Report, Dillon has produced no documents or data responsive to this request.

**Request 9:** **For the Pertinent Timeframe and Geographic Area, such ESI and other Documents as will disclose the results of all retail Fuel Price surveys done by [Dillon] or on [Dillon's] behalf, or on which [Dillon] rel[ies].**

- According to Dillon's filings (*e.g.,* Doc. 108-6, Giannola Declaration ¶¶ 13-17), Dillon has this data which it considers to constitute valuable trade secrets.

- As of the date of this Status Report, Dillon has produced no documents or data responsive to this request.

**Request 10:** **All reports and research, studies, examinations, investigations, surveys or analysis ("Research") done by [Dillon] or on [Dillon's] behalf relating to the characteristics of consumer demand for Fuel, or competition at the retail level, such as:**

    a. **price elasticity;**

    b. **demand elasticity;**

    c. **factors affecting demand elasticity for Fuel;**

    d. **the impact of Fuel prices on sales;**

    e. **consumer response to price differences between Retail Sites;**

    f. **effects of brand loyalty and brand recognition on consumer demand and substitution;**

    g.  definition of the competitive market for retail Fuel outlets

    h.  definition of the relevant market around Retail Sites for Fuel sales;

    i.  optimal location of retail Fuel outlets in relation to competitors' outlets;

    j.  relationship of ancillary merchandise sales to Fuel purchases;

    k.  effect of price on consumers' selection of Fuel grade;

    l.  determination of local market saturation for retail Fuel outlets;

    m.  supply/demand curves for Suncor's gasoline sales by grade;

    n.  retail sales lost to competitors;

    o.  competitive evaluations;

    p.  price checking procedures; and

    q.  geographic markets for retail Fuel sales.

- Plaintiffs agreed on July 18, 2012 that Dillon may limit its response to Research which relates to any of the competitive supermarket or Loaf N Jug retail sites on the exchanged lists or which specifically refers to either of the Plaintiffs.

- According to Dillon's filings (*e.g.,* Doc. 108-6, Giannola Declaration ¶¶ 18-23), Dillon has conducted Research responsive to this request which it considers to constitute trade secrets.

- As of the date of this Status Report, Dillon has produced no documents or data responsive to this request.

**B.**    **SUMMARY OF DILLON'S DOCUMENT AND DATA PRODUCTION TO DATE**

Set forth below is a table identifying all of the documents/data Dillon has produced to date:

| Date Produced | Document Numbers | No. pages | Req. No. | Documents or Data Produced |
|---|---|---|---|---|
| **Prior to Order:** | | | | |
| August 17, 2012 | DILLON 000001- DILLON 000016 | 15 | 1 | Three Contract Documents between Dillon and Suncor |
| August 17, 2012 | DILLON 000017- DILLON 000025 | 8 | 4 | Address lists for competitive supermarket and Loaf N Jug stores |

| Date Produced | Document Numbers | No. pages | Req. No. | Documents or Data Produced |
|---|---|---|---|---|
| **After Order:** | | | | |
| September 12, 2012 | DILLON 000026-DILLON 000156 | 130 | 5 | Data responsive to 5(b), 5(c), 5(d), 5(f) and 5(g) for Loaf N Jugs for period 3/24/2011 to 5/31/2011.  Data responsive to 5(h) (quantities purchased) withheld. |
| September 13, 2012 | DILLON 000157-DILLON 001468 | 1311 | 5 | Data responsive to 5(b), 5(c), 5(d), 5(f) and 5(g) for supermarket fuel centers for period 1/13/09 to 5/31/2011. Data responsive to 5(h) (quantities purchased) withheld. |
| September 13, 2012 | DILLON 001469-DILLON 023779 | 22310 | 7 | Data regarding last four digits of both fuel and other sales at supermarket fuel centers for period 4/1/2012 to 5/18/2012 (no zip code data produced) |
| September 17, 2012 | DILLON 023780-DILLON 023810 | 30 | 2 | 8 email strings with attachments (including redacted attachments) |
| September 28, 2012 | DILLON 023811-DILLON 023907 | 94 | 2 | 23 email strings with attachments (including redacted attachments) |
| October 1, 2012 | DILLON 023908-DILLON 023931 | 23 | 2 | 6 email strings with attachments (including redacted attachments) |
| October 1, 2012 | DILLON 023932-DILLON 023937 | 5 | 4 | Revised address lists for competitive supermarket and Loaf N Jug stores |
| October 1, 2012 | DILLON 0100000-DILLON 126146 | 26,146 | 7 | Data regarding last four digits of both fuel and other sales at Loaf N Jugs for period 1/1/2009 to 6/30/2010 (no zip code data produced) |

Dated: October 2, 2012

s/ Kathleen E. Craigmile

_____

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON
BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1225 Seventeenth Street, 29th Floor
Denver, CO  80202-5529
Telephone:  (303) 572-9300

*Attorneys for Plaintiffs and Third-Party Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 2, 2012, copies of the foregoing **PLAINTIFFS' STATUS REPORT FOR OCTOBER 3, 2012 HEARING** was served on the following parties via the CM/ECF filing system:

Anthony J. Shaheen
Keeya M. Jeffrey
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, CO 80201-8749
AJShaheen@hollandhart.com
KMJeffrey@hollandhart.com

Philip W. Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart PC
1225 Seventeenth Street, 29th Floor
Denver, CO  80202-5529
pbledsoe@polsinelli.com
jvanlandingham@polsinelli.com

J. Robert Robertson
William L. Monts III
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
robby.robertson@hoganlovells.com
william.monts@hoganlovells.com

Christopher A. Taravella
Michael R. McCormick
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, CO 80111
ctaravella@montgomerylittle.com
mmccormick@montgomerylittle.com

*s/ Marie Newberger*

_____