# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs/Counter Defendants,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

    Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

_____

## THIRD SUPPPLEMENT REGARDING STATUS REPORT
## BY INTERESTED PARTY DILLON COMPANIES, INC.
_____

Comes now interested party Dillon Companies, Inc. ("Dillon"), by and through its attorneys, Montgomery Little & Soran, P.C., and submits this third supplement regarding its Status Report in Compliance With The August 17, 2012 Order of Magistrate Judge (Doc. # 99) and its Reply regarding same (Doc. #108).

1

## Conferral Pursuant to D.C. Colo. L. Civ. R. 7.1(A)

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), on October 5, 2012, counsel for Dillon sent two letters to counsel for Plaintiffs (Exhibit A) regarding: (A) counsel's conferral via telephone on October 4, 2012 at approximately 11:15 a.m. ("Conferral") to comply with the Court's Order during the hearing on October 3, 2012 ("October 3 2012 Order"); and (B) Dillon's production of documents under the Court's October 3, 2012 Order and an impending amended Protective Order (see Protective Order dated March 12, 2012 (Doc. #49) ("Supplemental Protective Order")).

Counsel for Dillon also conferred with Plaintiffs' counsel yesterday October 10, 2012 via telephone regarding: (A) production of certain spreadsheets Bates Nos. DILLON 096000 and DILLON 097000 under Request No. 2; (B) production of a spreadsheet titled "LOAF AND JUG 2010.xls" Bates No. DILLON 025035 under Request No. 2; and (C) Plaintiffs' modified Request No. 7.

## Status of the Supplemental Protective Order

On October 2, 2012 Dillon received from Plaintiffs' counsel the Protective Order entered in this case. On October 5, 2012 Dillon's e-mailed a draft Amended and Restated Protective Order to Plaintiffs' and Defendant's counsel. On that same day counsel for Dillon, Plaintiffs, and Defendant conferred regarding the draft. Counsel for Plaintiffs and Defendant rejected the draft because, among other things, neither counsel

wanted the draft to affect the Protective Order. Counsel maintained that the draft should affect only third parties producing or disclosing Discovery Material.

On October 7, 2012 Dillon's counsel sent to Plaintiffs' and Defendant's counsel a draft Supplemental Protective Order.[1]  On October 10, 2012, at 9:09 a.m., counsel for Plaintiffs returned a redlined copy. On October 10, 2012 at 2:44 p.m., counsel for Dillon forwarded to Plaintiffs' and Defendant's counsel a redlined draft Supplemental Protective Order.

### Compliance with the Court's October 3, 2012 Order

As noted above, on October 4, 2012 at approximately 11:15 a.m. (MDT) Dillon complied with the Court's October 3, 2012 Order by supplying Plaintiffs' counsel with information required by the October 3, 2012 Order. Exhibit A, pp. 3-8.

On October 5, 2012 at approximately 4:00 p.m. (MDT) counsel for Dillon complied with the Court's October 3, 2012 Order by producing documents in response to Request Nos. 1, 2, 5(h), 8 and 9 of the Subpoena by delivering the documents to Plaintiffs' counsel on CDs via hand delivery and sending them to Plaintiffs' counsel via electronic mail. Exhibit A, pp. 9-12. On October 5, 2012 at 4:28 p.m. (MDT) Plaintiffs' counsel sent counsel for Dillon an e-mail stating that Plaintiffs' counsel received the

---

[1] The draft was renamed in order to honor Plaintiffs' and Defendant's counsel wishes that the draft is not intended to affect the Protective Order as it applies to the Parties.

CDs containing the documents via hand delivery and asking counsel for Dillon to stop sending the documents via e-mail. Exhibit B.

## Supplement Regarding Dillon's Compliance with the Subpoena

A summary of Dillon's compliance with the Subpoena is set forth by Request Number.

### Request No. 1

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs documents Bates Nos. DILLON 025000 – DILLON 025015. These documents are the contracts that Dillon previously produced as DILLON 000001-000016 on August 17, 2012 re-designated "Secret" subject to the anticipated Supplemental Protective Order.[2]

After Dillon initially produced the contracts to Plaintiffs Bates Nos. DILLON 000001 – 000016 on August 17, 2012, Plaintiffs' counsel requested that Dillon search for additional contracts. After conducting a second search, on October 5, 2012, Dillon produced documents Bates Nos. DILLON 025016 – DILLON 025024 to Plaintiffs. These documents are additional contracts or draft contracts designated "Secret" subject to the anticipated Supplemental Protective Order. Contract # DIL-1J045 (DILLON 025018 - DILLON 025024) does not have signatures and may be a draft.

---

[2] In addition to protecting documents submitted by Dillon after it takes effect, the anticipated Supplemental Protective Order protects documents submitted by Dillon on October 5, 2012 subject to the "Amended and Restated Protective Order."

Dillon has now produced all documents in its possession, custody and control responsive to Request No. 1.

Request No. 2

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs documents Bates Nos. DILLON 025025 – DILLON 025059. These documents are e-mail correspondence including without limitation proposals and draft contracts. Some of these documents are designated "Secret" subject to the anticipated Supplemental Protective Order.

On September 17, 2012, Dillon produced a first set of e-mail correspondence to Plaintiffs ("First Set of E-mails") (DILLON 23780 – 23810). On October 5, 2012, Dillon produced documents bates nos. DILLON 025138 to DILLON 025160 to Plaintiffs. These documents are some of the documents from the First Set of E-mails that are re-designated as "Secret" under the anticipated Supplemental Protective Order.

On September 28, 2012, Dillon produced a second set of e-mail correspondence ("Second Set of E-mails") (DILLON 23811-DILLON 23907) to Plaintiffs. On October 1, 2012, Dillon produced a third set of e-mail correspondence ("Third Set of E-mails") (DILLON 23907 to 23931) to Plaintiffs. On October 5, 2012, Dillon produced to Plaintiffs documents Bates Nos. DILLON 025060-025100. These documents are documents from the Second and Third Sets of E-mails that were originally produced to the Plaintiffs with redactions. Dillon produced these documents (DILLON 025060-025100) to

5

Plaintiffs without redactions, designated "Secret" subject to the anticipated Supplemental Protective Order.

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs documents bates nos. DILLON 025101 to DILLON 025137. These documents are various e-mails to and from David Wilson, a former Kroger employee. Some of these documents are designated "Secret" subject to the anticipated Supplemental Protective Order.

On September 28, 2012, Plaintiffs' counsel sent an e-mail to Dillon's counsel requesting production of a spreadsheet titled "LOAF AND JUG 2010.xls." On October 5, 2012, Dillon produced this document to Plaintiffs, bates numbered DILLON 025035. The document is designated "Secret" under the anticipated Supplemental Protective Order.

On September 28, 2012, Plaintiffs' counsel sent an e-mail to Dillon's counsel requesting production of two spreadsheets bates numbered DILLON 023845-023857 in Microsoft Excel format. On October 11, 2012, Dillon produced these two spreadsheets to Plaintiffs in Microsoft Excel format, bates nos. DILLON 096000 and DILLON 097000.

Certain documents produced by Dillon in response to Request No. 2 were redacted to remove employer identification numbers and attorney client privileged forwarding information from Dillon's counsel. On October 10, 2012 Dillon submitted a privilege log to Plaintiffs regarding these redactions.

Dillon has now produced all documents in its possession, custody and control responsive to Request No. 2.

Request No. 3

Dillon has no documents in its possession, custody and control responsive to this request.

Request No. 4

On October 1, 2012, Dillon produced revised and updated lists to Plaintiffs responsive to this request (DILLON 23932 - DILLON 23937).

Request No. 5

Request No. 5(a)

Dillon does not have information linked to Suncor contract numbers.

Request Nos. 5(b), 5(c), 5(d), 5(f), 5(g) and 5(h)

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs an active data spreadsheet in Microsoft Excel format generated from Dillon's FuelSmart system, the native format. This spreadsheet contains data for

Dillon operated supermarket fuel centers (identified in response to Request No. 4, DILLON 023932 – 023933) from January 1, 2009 until May 31, 2011.  DILLON 030000.  This spreadsheet is designated "Secret" under the anticipated Supplemental Protective Order.

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs an active data spreadsheet in Microsoft Excel format generated from Dillon's PDI/RMS system, the native format, for Kroger owned convenience stores (identified in response to Request No. 4, DILLON 023934 - 023937) from March 24, 2011 until May 31, 2011.  DILLON 035000.  This spreadsheet is designated "Secret" under the anticipated Supplemental Protective Order.

Information from January 1, 2009 through March 23, 2011 for the PDI/RMS System (Kroger owned convenience stores), is stored as archived data and would require purchasing three computer servers to store and prepare the archived data in searchable format.  *See* Declaration of Jennifer McClenahan Pursuant to 28 U.S.C. § 1746 dated August 27, 2012 ("McClenahan Declaration") (Doc. #108-5), Paragraph 8.  In a hearing on October 3, 2012, the Court ordered Plaintiffs to evaluate the information provided by Dillon and inform Dillon whether Plaintiffs wish Dillon to purchase the three computer servers at Plaintiffs' expense.

Request No. 5(e)

Notwithstanding any "discount" caption on Suncor invoices, Dillon has no information responsive to Request No. 5(e).[3]

Request No. 6.

This Request is subsumed in Paragraph 5(e) above.

By letter dated September 18, 2012, Plaintiffs' counsel requested Dillon to investigate whether electronic ACH transfers occurred from Suncor to Dillon that reflected "discounts" that were not reflected in the ESI responsive to request no. 5. As requested, Dillon performed the above referenced investigation and found that there were no such electronic ACH transfers from Suncor to Dillon reflecting discounts.

Request No. 7

On October 1, 2012, Dillon produced 26,147 pages of documents, including 27,053,465 records, with the last four digits of credit card information responsive to this Request. DILLON 0100,000 – DILLON 0126146. Dillon does not have any ESI or other Documentation with zip code information linked to credit card numbers. Although a customer may at times be asked to enter their zip code this information is not stored after a credit card transaction is authorized and completed.

---

[3] Any "discount" caption on Suncor invoices merely reflects the contract price, i.e. the difference in the OPIS quoted price and the amount that Suncor charged Dillon.

By letter dated September 25, 2012, counsel for Plaintiffs submitted a modified Request No. 7:

"An identification of the receipts for fuel sales by station, by day, by fuel grade, by volume, and by number of customers purchasing gas that day from January 1, 2009 to May 31, 2011."

On October 4, 2012, Dillon's counsel offered to produce a spreadsheet for grocery, from 1/1/09 to 5/31/11 ("Grocery Store Spread Sheet") and a spread sheet for convenience stores, 1/30/09 until 5/31/11 ("Convenience Store Spread Sheet"), in Microsoft Excel format with columns for Fuel sales dollars, store number, date, Fuel grade, and Fuel gallons. [4]  Plaintiffs had requested number of customers, but counsel for Dillon explained that the requested information is not available. Plaintiffs again modified their request to ask for the number of transactions for Fuel sales.  Counsel for Dillon responded that, based upon prior consultation with his client, this information was probably not available, but promised to consult with his client and thereafter respond.

---

[4] When Dillon began to pull the data for Convenience Store Spread Sheet and Grocery Store Spread Sheet Dillon encountered a problem: the data was too large to put into a single spreadsheet as requested. In order to provide the requested information Dillon will have to break the data into separate spreadsheets, which may require separate spreadsheets for Fuel sales dollars and Fuel gallons.  Further, the spreadsheets do not distinguish between Fuel sales of Fuel bought from Suncor versus fuel bought from another supplier(s).

10

On October 10, 2012, during a conferral with Plaintiffs' counsel, Dillon offered to produce to Plaintiffs: (A) a Standalone Grocery Store Spread Sheet derived from a unique database with transactional level data (i.e. by transaction and not by customer) that is not linked to the other data in the Grocery Store Spread Sheet including: transaction count, by week, and by store number (but NOT by Fuel grade) (this information is available only from 1/31/10 to 6/4/11); and (B) a Standalone Convenience Store Spread Sheet with transactional level data (i.e. by transaction and not by customer) that is not linked to the data in the Convenience Store Spread Sheet including: transaction count, by day, and by store number (but NOT by Fuel grade) (this information is available from 1/30/09 to 5/31/11)[5].

During yesterday's conferral, Plaintiffs' counsel asked whether each week would be labeled on the Standalone Grocery Store Spreadsheet. After the conferral, counsel for Dillon consulted with his client and learned that the Standalone Grocery Store Spreadsheet will include columns for period number and week number. Counsel for Dillon anticipates providing Plaintiffs' counsel with a short explanation of how to interpret the period number and week number to determine the actual calendar date for each entry.

Also during yesterday's conferral, Plaintiffs' counsel asked whether the above spreadsheets will include non-Fuel sales. After the conferral, counsel for Dillon

---

[5] The spreadsheets do not distinguish between Fuel sales of Fuel bought from Suncor versus fuel bought from another supplier(s).

consulted with his client and learned the following information: The Grocery Store and Convenience Store Spreadsheets will include the dollar amount for Fuel sales only and not merchandise sales. However, the transaction counts in the Standalone Grocery Store and Convenience Store Spreadsheets will include: (A) transactions in which only Fuel was purchased; and (B) transactions in which both Fuel and other merchandise was purchased. The transaction counts will exclude transactions in which only merchandise was purchased.

### Request No. 8

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs an active data spreadsheet in Microsoft Excel format generated from Dillon's Quick Sales system, the native format, for Dillon operated supermarket fuel centers (identified in response to Request No. 4, DILLON 023932 – 023933) from January 1, 2009 until May 31, 2011 responsive to request no. 8. DILLON 040000. This spreadsheet is designated "Secret" under the anticipated Supplemental Protective Order.

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs two active data spreadsheets in Microsoft Excel format from Dillon's Microsoft Access Database, the native format, for Kroger owned convenience stores (identified in response to Request No. 4, DILLON 023934 - 023937) from January 20, 2011 until May 31, 2011 (DILLON 045000) (Colorado locations) and from January 21, 2011 until May 31, 2011 (DILLON 050000) (Nebraska locations) responsive

to request no. 8. These spreadsheets are designated "Secret" under the anticipated Supplemental Protective Order.

For the PDI/RMS System (Kroger owned convenience stores), archived data from January 1, 2009 through March 23, 2011 may be available, although it may be limited and unreliable. Such information is stored as archived data and would require purchasing three computer servers to store and prepare the archived data in searchable format (see above regarding Request No. 5). On October 3, 2012, the Court ordered Plaintiffs to evaluate the information provided by Dillon and inform Dillon whether Plaintiffs wish Dillon to purchase the servers at Plaintiffs' expense.

<u>Request No. 9</u>

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs an active data spreadsheet in Microsoft Excel format generated from Dillon's Quick Sales system, the native format, for Dillon operated supermarket fuel centers (identified in response to Request No. 4, DILLON 023932 – 023933) from January 1, 2009 until May 31, 2011 responsive to Request No. 9. DILLON 055000. This spreadsheet is designated "Secret" under the anticipated Supplemental Protective Order.

On October 5, 2012, in compliance with the Court's October 3, 2012 Order, Dillon produced to Plaintiffs two active data spreadsheets in Microsoft Excel format generated from Dillon's Microsoft Access database, the native format, for Kroger owned

convenience stores (identified in response to Request No. 4, DILLON 023934 - 023937) from February 1, 2011 until May 31, 2011 (DILLON 085000) (Colorado locations) and from February 1, 2011 until May 31, 2011 (DILLON 095000) (Nebraska locations) responsive to Request No. 9.  These spreadsheets are designated "Secret" under the anticipated Supplemental Protective Order.

For the PDI/RMS System (Kroger owned convenience stores), archived data from January 1, 2009 through March 23, 2011 may also be available, although it may be limited and unreliable.  Such information is stored as archived data and would require purchasing three computer servers to store and prepare the archived data in searchable format (see above regarding request no. 5).  On October 3, 2012, the Court ordered Plaintiffs to evaluate the information provided by Dillon and inform Dillon whether Plaintiffs wish Dillon to purchase the servers at Plaintiffs' expense.

### Request No. 10

On October 4, 2012, Dillon complied with the Court's October 3, 2012 Order by informing Plaintiffs' counsel of the availability of information under Request No. 10. Exhibit A, p. 8.  However, Dillon respectfully requests that the Court reconsider whether to quash Request No. 10 because, as the Court noted during the October 3, 2012

hearing, this request is "overbroad", "almost limitless," and "should probably be sanctioned."[6]

Capitalized terms not defined herein have the same meaning as set forth in the Subpoena.

## Summary

As of the date of this filing, Dillon is in compliance with the Court's October 3, 2012 Order. Dillon has produced 70,446 pages of documents responsive to the Subpoena.

Dillon's has incurred substantial (over $100,000.00) fees and costs, including without limitation attorneys' fees, in producing these documents to Plaintiffs.

---

[6] For purposes of the record, Dillon respectfully preserves its objection to Request No. 10 insofar as disclosure under a protective order does not adequately protect Dillon's trade secrets, including without limitation under the Uniform Trade Secret Act, C.R.S. § 7-74-101 *et seq.* and the Federal Economic Espionage Act, 18 U.S.C. § 1831 *et seq.*.

Dated: October 11, 2012.

                                                      <u>s/ Michael R. McCormick</u>
*Christopher A. Taravella*, #7790
*Michael R. McCormick*, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
         mmccormick@montgomerylittle.com
Attorneys for Dillon Companies, Inc.
Interested Party

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann & Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO  80202

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-D enver
555 17th Street, Suite 3200
Denver, CO  80201

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO  80202

William LeitzseyMonts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

s/ *Deborah Harant*
Montgomery Little & Soran, P.C.