### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

---

### DECLARATION OF TED P. TATOS

---

I, Ted P. Tatos, pursuant to 28 U.S.C. § 1746, state as follows:

1.     I am over eighteen (18) years of age and competent to testify to the matters stated in this declaration. I make this declaration on personal knowledge.

2.     I am a Director in Empirical Analytics, specializing in economics and statistics. Dr. Mark Glick, a professor of economics at the University of Utah, and I have been retained by the Plaintiffs in this matter to provide expert testimony relevant to Plaintiffs' claims of price discrimination under the Robinson-Patman Act. Dr. Glick and I have prepared an initial report of opinions in this case dated January 22, 2013 ("Report"). A copy of our Report less its

**Exhibit 1**

voluminous appendices is attached as Exhibit A.[1] It is my understanding that, pursuant to protective orders which have been entered in this case, Exhibit A is being filed in such a way that it can be accessed only by counsel for Plaintiffs, counsel for Suncor, and the Court. It is my understanding that copies of the Appendices, which also contain data designated as "Highly Confidential" or "Secret" will be made available to the Court on its request.

3. The Report reflects that Suncor discriminated in price between WCS and Kroger entities Dillon (King Soopers) and Mini-Mart (Loaf 'N Jug) for the sale of the same types of gasoline products. Exhibit A at 7-11. It further concludes that 26 WCS stores compete with a nearby Kroger store and that the price discrimination associated with fuel deliveries to these stores resulted in WCS's earning lower margins on gasoline sold and/or selling lower volumes of gasoline. Exhibit A at pages 11-16.

4. Included in the data that Dr. Glick and I analyzed (and needed to analyze) to reach this conclusion was pricing data produced by Suncor which included, among other data fields, fields for date, fuel grade, terminal rack price, discount applied and gallons purchased by particular customers, including Western and Kroger. It is our understanding that Suncor has designated all of this information as "Highly Confidential." Therefore, under the provisions of the Stipulated Protective Order, Dr. Glick and I are prohibited from sharing or discussing any of this data, or any derivatives of this data, with any persons inside of Western Convenience Stores, including Mr. Hossein Taraghi, its president.

---

[1] Exhibit A contains our report and Appendices A-C thereto. It does not contain Appendices D-F, which are comprised of more than 600 pages of supporting pricing data and summaries or analyses thereof.

5. Also included in the data that Dr. Glick and I analyzed to reach our conclusions was Kroger-produced data relating to fuel purchases from Suncor and Kroger's retail sales, including: (a) volumes and prices for fuel purchased from Suncor and delivered to particular Kroger store locations; fuel sales information for each store (i.e., total gallons sold and receipts for fuel sales for each store and grade by day); limited price-checking information; and Kroger store address information.  It is our understanding that all of this data, with the exception of the store address information, has been designated by Kroger as "Secret" under the provisions of the Supplemental Stipulated Protective Order.  Therefore, as is the case with the Suncor pricing data, Dr. Glick and I are prohibited from sharing or discussing this data or any of its derivatives with Mr. Taraghi.

6. Because much of our Report includes references to data identified by Suncor or Kroger as either "Highly Confidential" or "Secret" (or derivatives of data identified by Suncor and Kroger as "Highly Confidential" or "Secret"), it is our understanding of the terms of the protective orders that we are essentially prohibited from having any discussions with Mr. Taraghi regarding the substance of the data or our findings.  This includes any discussion with Mr. Taraghi regarding the 26 WCS stores that we have determined compete with Kroger stores, the fact or magnitude of the price discrimination relating to each of those stores, or the dates on which the price discrimination occurred.  We were unable to discuss any of our findings with Mr. Taraghi prior to issuing our Report.

7. While Dr. Glick and I have been able to put together this initial Report based solely on the data identified therein, there are issues that we need to discuss with Mr. Taraghi to ensure that certain aspects of our conclusions are correct or to determine whether certain aspects

of our report should be qualified or amplified.  Specifically, we need to be able to discuss with Mr. Taraghi each of the 26 competing sets of WCS/Kroger stores to understand such things as: the effect on WCS' business during the periods in which the competing Kroger stores purchased Suncor fuel at a price lower than Suncor made available to Suncor; how Western responded in terms of its own pricing to particular changes in retail fuel prices by Kroger at the identified competing stores; and whether there were additional factors relating to business at each of the 26 stores that would explain or partially explain fuel pricing decisions for those stores.  Dr. Glick and I cannot effectively have these discussions with Mr. Taraghi without being able to share with him the dates on which Kroger received favorable pricing and the magnitude of the favored price on each date (i.e. the price charged to WCS for the particular products for each date less the price charged to Kroger for those same dates for the same products).

8.  To have these necessary discussions, we do not need to provide Mr. Taraghi with copies of the data sets actually produced by Suncor or Kroger and designated as "Highly Confidential" or "Secret."  However, we do need to be able to show Mr. Taraghi the figures, tables, and calendars in our Report and Appendices to effectively describe and discuss with him the price differences on particular dates (or blocks of dates) for particular stores.  We also would like to present other charts, graphs, or tables that would enable us to understand more clearly how WCS engaged in competition with Kroger and how the differential pricing from Suncor affected this competition.

9.  For example, some seasonal patterns appear to exist between the prices that Suncor offered WCS and Kroger.  We would like to show these patterns to Mr. Taraghi so that he can explain if and how WCS responded.  Further, we would like to show Mr. Taraghi

examples of retail price differences between competing WCS and Kroger stores in order to understand why certain price differences exist and if/how WCS responded.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 24, 2013

*s/ Ted P. Tatos*

_____
Ted P. Tatos