**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

   Plaintiffs/Counter Defendants,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

   Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

   Third-Party Defendants.

_____

**OBJECTION OF INTERESTED PARTY DILLON COMPANIES, INC. TO**
**MAGISTRATE JUDGE'S ORDER DATED JANUARY 28, 2013**
_____

   Comes now interested party Dillon Companies, Inc. ("Dillon"), by and through its

attorneys, Montgomery Little & Soran, P.C., and respectfully submits this objection

under F.R.C.P. 72(a) to the January 28, 2013 Order of the Magistrate Judge (Court

Minutes/Minute Order, Doc. # 179, "the January 28, 2013 Order").

1

## CERTIFICATE OF CONFERRAL

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel for Dillon certifies that he discussed the relief requested in this objection with counsel for Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC ("Plaintiffs") during a phone call on February 8, 2013.  Plaintiffs will oppose same.

## INTRODUCTION

1.      Dillon is filing this objection out of an abundance of caution and to preserve its rights to appeal this matter to the District Court Judge under F.R.C.P. 72(a). This objection seeks reversal of the Court's January 28, 2013 Order denying Dillon's motion to quash or modify a subpoena issued to Dillon and a subpoena issued to a former Dillon employee by Plaintiffs.  Dillon is not a party to this action and Plaintiffs are a direct competitor of Dillon's.  For the reasons stated herein, Dillon respectfully requests that the Court quash the subpoenas because, *inter alia*: (A) disclosure to Plaintiffs subject to a protective order is not sufficient to protect Dillon's trade secrets; (B) the subpoenas are not reasonably calculated to lead to the discovery of admissible evidence; and (C) the subpoenas are an improper attempt to build an anti-trust case against Dillon.

## BACKGROUND

2.      In this case, Plaintiffs Western Convenience Stores, Inc. and Western Truck One, LLC ("Plaintiffs") allege that Defendant Suncor Energy (U.S.A.), Inc. ("Suncor") violated the Robinson-Patman Act, 15 U.S.C. § 13(a).  Specifically, Plaintiffs

2

claim that Suncor sold petroleum products to a number of Plaintiffs' competitors, including Dillon, at prices lower than the prices Plaintiff paid Suncor for petroleum products of like grade and quality.  *See Generally*, Amended Complaint (Doc. #4).

3.      Dillon is not a party to this action.  Dillon became an interested party in this case on April 26, 2012, when Plaintiffs served Dillon with a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises ("April 26, 2012 Subpoena") (Doc. #57-1).  Plaintiffs are a direct competitor of Dillon's.

4.      On May 17, 2012, Dillon filed a motion to quash or modify the April 26, 2012 Subpoena.  ("First Motion to Quash").

5.      Also on August 17, 2012, the Court held a hearing concerning Dillon's First Motion to Quash.  (Court Minutes/Minute Order, Doc. # 95).  During the hearing, the Court found that Dillon's First Motion to Quash was partially moot because Plaintiffs had modified the requests in the April 26, 2012 Subpoena.  The Court therefore denied Dillon's First Motion to Quash and ordered Dillon to comply with Plaintiffs' modified requests.

6.      On August 27, 2012, Dillon filed a status report regarding the April 26, 2012 Subpoena (Doc. #99).  On August 31, 2012, Dillon filed a Reply in support of the status report (Doc. #108).  The reply included a declaration from Susan Giannola (Doc. # 108-6) ("Giannola Declaration") concerning why several of the requests in the April 26, 2012 Subpoena sought Dillon's trade secrets.

7.      On August 31, 2012, Dillon filed an Objection to the August 17, 2012 Order denying Dillon's First Motion to Quash (Doc. #107) ("First Objection").

8.      On December 18, 2012, Plaintiffs served The Kroger Co. ("Kroger") with the Subpoena to Testify at a Deposition in a Civil Action issued to Kroger dated December 17, 2012 ("Kroger Subpoena") (Doc. # 159-1).  Also on December 18, 2012, Plaintiffs served Kroger with Plaintiffs' Rule 30(b)(6) Notice of Deposition of the Kroger Company and Affiliates ("Kroger Notice of Deposition") (Doc. #159-1, page 3).  The Kroger Notice of Deposition directs Kroger to designate a person or persons to testify regarding a list of eighteen topics ("Topics").

9.      On December 18, 2012, Plaintiffs filed their Renewed Motion Challenging Designation of Certain Documents and Data (Doc. #153) (the "Renewed Motion to Re-Designate").  Exhibits A and B to the Renewed Motion included pricing spreadsheets (Paragraph 3(a) of Renewed Motion to Re-Designate), contracts and purchase and sale confirmations (Paragraph 3(b) of Renewed Motion to Re-Designate), and e-mail communications regarding bidding, pricing, and contracts between Suncor and Dillon (Paragraph 3(c) of Renewed Motion to Re-Designate) (collectively ("Pricing Materials").  Accordingly, the Pricing Materials have been classified by Suncor and/or Dillon as "Highly Confidential" or "Secret" pursuant to the Protective Order (Doc. #49) ("Original Protective Order") and Supplemental Protective Order (Doc. #140) ("Supplemental Protective Order").

10.     Plaintiffs' objective in their Renewed Motion was to remove the restriction prohibiting disclosure of the Pricing Materials to Mr. Hossein Taraghi ("Mr. Taraghi"). *See* Doc. #153.   Plaintiffs claimed that the data contained in the Pricing Materials is "stale" and therefore of little proprietary value and no longer a trade secret.

11.     On Wednesday December 19, 2012, Plaintiffs served David Wilson with a subpoena (Doc. #159-2) ("Wilson Subpoena").  On Friday December 27, 2012, Plaintiffs served Kroger with a Notice of Deposition of David Wilson.  (Doc. #159-2, page 3).

12.     On January 2, 2013, Dillon served Plaintiffs with an objection (Doc. # 159-5) to the Kroger and Wilson Subpoenas out of an abundance of caution to comply with F.R.C.P. 45(c)(2)(B), to the extent that it may apply to subpoenas ad testificandum.

13.     On January 3, 2013, Dillon filed a motion to quash the Kroger and Wilson Subpoenas ("Second Motion to Quash") (Doc. #159).

14.     On January 11, 2013, Dillon filed a response (Doc. #165) to Plaintiffs' Renewed Motion to Re-Designate (Doc. #153).  The response included a supplemental declaration of Susan Giannola (Doc. #165-1) ("Giannola Supplemental Declaration") and a declaration of Chad Thiessen, Dillon's Assistant Manager of Petroleum Procurement for the Kroger Co. (Doc. #165-2) ("Thiessen Declaration").  On January 25, 2013, Dillon filed a declaration of Ed Sharpe (Doc. #174) ("Sharpe Declaration"), the Director of Petroleum for Loaf N' Jug, Inc., as a supplement to Dillon's Response to the Renewed Motion to Re-Designate.  (Loaf 'N Jug, Inc is a dba of Mini Mart Inc. which is a subsidiary of Dillon).  The Giannola Declaration (Doc. # 108-6), Giannola Supplemental

Declaration ("Doc #165-1), Thiessen Declaration (Doc. #165-2) and Sharpe Declaration (Doc. #174) are collectively referred to herein as the "Dillon Declarations".

15.     On January 24, 2013, Dillon and the Plaintiffs filed a Joint Status Report (Doc. #167) concerning the Second Motion to Quash.  Page 2 of the Joint Status Report provided, *inter alia*, that: "Plaintiffs and Dillon have agreed that Plaintiffs will not seek the identity of Dillon's suppliers besides Suncor but instead that Dillon will provide spreadsheets with certain information regarding purchases and deliveries for a limited number of stores without identifying the suppliers."   Doc. #167, page 2.

16.     On January 28, 2013, the Court issued the January 28, 2013 Order (Doc. #179) denying the Second Motion to Quash as moot.  *See Also*, transcript of hearing on January 28, 2013 (Doc. #180), pp. 3-6.  Counsel for Dillon requested that the Court hold the Second Motion to Quash in abeyance depending on what happened during the F.R.C.P. 30(b)(6) depositions and the Court denied this request.  *Id.*

17.     On February 5, 2013, Plaintiffs took the deposition of Dillon's former employee David Wilson.  Plaintiffs' counsel twice asked Mr. Wilson to confirm that Dillon purchased fuel from two specifically named alleged suppliers, after objection by Dillon's counsel.  For example and without limitation: "Q. We know from other evidence in this case that Kroger was buying supply from [Alleged Supplier X (name withheld)] . . . .  Do you recall having any dealings with [Alleged Supplier X (name withheld)]?" (Excerpt

from transcript of Deposition of David Wilson ("Wilson Transcript") pp. 13-14) [1]; and "Q.

Do you recall, Mr. Wilson . . . whether or not Kroger was acquiring supply from [Alleged

Supplier Y (name withheld)]?" (Wilson Transcript p. 60).  This was in breach of the Joint

Status Report.  *See* Paragraph 15 above and Doc. #167, page 2.[2]

## LEGAL AUTHORITIES

*A.  Fed. R. Civ. P. 26*

18.     F.R.C.P. 26(b)(1): "Discovery Scope and Limits. (1) Scope in General.

Unless otherwise limited by court order, the scope of discovery is as follows: Parties

may obtain discovery regarding any non-privileged matter that is relevant to any party's

claim or defense-including the existence, description, nature, custody, condition, and

location of any documents or other tangible things and the identity and location of

persons who know of any discoverable matter. For good cause, the court may order

discovery of any matter relevant to the subject matter involved in the action. Relevant

information need not be admissible at the trial if the discovery appears reasonably

calculated to lead to the discovery of admissible evidence.  All discovery is subject to

the limitations imposed by Rule 26(b) (2) (C)."

---

[1]Dillon designated the Wilson Transcript as "Secret" under the Supplemental Protective Order (Doc. # 140).  Wilson Transcript, pp. 1, 5.

[2] Plaintiffs are scheduled to take the depositions of two more Dillon employees pursuant to the Kroger Subpoena and F.R.C.P. (30)(b)(6) on February 19, 2013.  Dillon respectfully reserves its right to supplement this objection depending on what happens during those depositions.

19.     F.R.C.P. 26(b)(2)(C): "When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

20.     Federal Rule of Civil Procedure 26(b)(1) allows broad discovery of any matter, not privileged, which is relevant to the claim or defense of any party. *Premier Election Solutions, Inc. v. SysTest Labs Inc.*, 2009 U.S. Dist. LEXIS 94193 (D. Colo. Sept. 22, 2009). However, Rule 26(c) limits discovery by allowing the court, for good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c). Further, a court may enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  Fed. R. Civ. P. 26(c)(1)(G). Courts also consider the burden imposed on the producing party, the relevance of the request, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the

request.  *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998).

B.  *Fed. R. Civ. P. 45*

21.     Pursuant to Fed. R. Civ. P. 45(c)(3)(B), a court may quash or modify a subpoena that requires the disclosure of a trade secret or other confidential research, development, or commercial information. In discovery matters, the party or person seeking to protect trade secret information must demonstrate: 1) that the subject material is trade secret information or otherwise confidential; and 2) that the disclosure of such information *might* be harmful (emphasis added). *Id.* (citing *R & D Business Systems v. Xerox Corp.,* 152 F.R.D. 195, 196 (D. Colo. 1993); *Centurion Ind., Inc. v. Warren Steurer*, 665 F.2d 323, 325 (10th Cir. 1981)).

22.     If the party or person presents evidence that the information sought is in fact "trade secret information, or otherwise confidential," then the burden shifts to the requesting party to demonstrate that "disclosure of the trade secrets is both relevant and necessary." *R & D Business Systems v. Xerox Corp.,* 152 F.R.D. 195, 197 (D. Colo. 1993). To meet this burden, the requesting party must prove that "it has a substantial need for the discovery which cannot otherwise be met without undue hardship." *See* Fed. R. Civ. P. 45(c)(3)(C).  Based upon the evidence provided by the respective parties and/or persons, the court must then "balance the need for the disclosure of trade secret information against the injury that would result from that disclosure. *Echostar Communs. Corp, Ltd., 180 F.R.D. at 394* (citing *R & D Business Systems*, 152 F.R.D. at

9

197). Finally, under Fed. R. Civ. P. 45(c)(1), a court must enforce a party's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

C.  *Elements of Claim Under Robinson-Patman Act*

23.      "To make out a claim under Robinson-Patman, the plaintiff must allege: (1) two or more contemporaneous sales by the same seller; (2) at different prices; (3) of commodities of like grade and quality; (4) the discrimination had the requisite anticompetitive effect; and (5) the discrimination caused injury to the plaintiff." Recommendation of United States Magistrate Judge Craig B. Shaffer dated October 21, 2011 (Doc. # 22), p. 11 (citing *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. June 21, 2011).

24.      Colorado Courts have also held that "it is axiomatic that a party cannot engage in discovery for purposes unrelated to the lawsuit at hand." *See Echostar Communs. Corp, Ltd.,* 180 F.R.D. at 395-96 (holding that a court may deny discovery sought pursuant to a party's subpoena where that party has publicly announced that it is contemplating a wide-ranging anti-trust lawsuit against the subpoenaed non-party entities, because such an announcement raises a healthy suspicion that the party is seeking discovery for purposes unrelated to the instant lawsuit).

D.  *Trade Secrets*

25.      The Colorado Uniform Trade Secrets Act defines a trade secret as: "the whole or any portion or phase of any scientific or technical information, design, process,

10

procedure, formula, improvement, confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." Colo. Rev. Stat. § 7-74-102.  Factors considered in determining whether certain information constitutes a trade secret include: (1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

>    *E.  Inadequacy of Protective Orders to Protect Trade Secrets*

26.    A protective order is not sufficient to protect the information requested pursuant to the Trade Secret Requests once that information has been disclosed.  *See Echostar Communs. Corp. v. News Corp. Ltd.*, 180 F.R.D. 391 (D. Colo. 1988) (holding that where a party seeks the discovery of trade secret information from a non-party and the requesting party is a direct competitor of the non-party, even a fairly restrictive protective order provides insufficient protection for the non-party's trade secret

information); *See also Premier Election Solutions, Inc. v. SysTest Labs, Inc.*, 2009 U.S. Dist. LEXIS 94193, 16 (D. Colo. 2009) (finding that when a party requests discovery of trade secrets from a direct competitor and the balance between need and harm weighs in favor of the party or person from which discovery is sought, production of the data pursuant to a protective order will not adequately protect the trade secret information).

## ARGUMENT

   A.  *The Second Motion to Quash is Not Moot.*

   27.    The Court denied the Second Motion to Quash as moot.  *See* January 28, 2013 Order (Doc. #179).  The constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies.  *Unified School District No. 259 v. Disability Rights Center of Kansas, et al.*, 491 F.3d 1143, 1147 (10th Cir. 2007).  Here, although Dillon agreed to produce certain information in response to the Kroger and Wilson Subpoenas as described in the Joint Status Report (Doc. #167) in compliance with the Court's Orders and subject to Dillon's ongoing objections, the Second Motion to Quash is not moot because: (A) Plaintiffs breached the Joint Status Report by requesting Mr. Wilson, a former Dillon employee, to confirm the identity of Dillon's alleged suppliers besides Suncor during Mr. Wilson's deposition (please see Paragraph 17 above); (B) Dillon is subject to ongoing prejudice for having to produce its trade secret information to a direct competitor; and (C) Dillon has continued to preserve its First Objection (Doc. #107).

*B. The Court Should Quash Topics 1, 2, 3, 7, and 15 in the Kroger Subpoena (Prices Charged by Dillon).*

28.     Topics 1, 2, 3, 7, and 15 of the Kroger Subpoena request information that is related to the prices that Dillon and Loaf N' Jug charged to its customers for gasoline (Loaf 'N Jug, Inc is a dba of Mini Mart Inc. which is a subsidiary of Dillon).

29.     The prices that Dillon and Loaf N' Jug charged to its customers are not relevant to Plaintiffs' allegations that Suncor sold fuel to Plaintiffs' competitors at lower prices than the prices Suncor charged Plaintiffs for the same fuel. *See Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 559-560 (U.S. 1990) (reiterating the longstanding principal that suppliers are not liable for the independent pricing decisions of their buyers). Thus, Plaintiffs cannot seek to hold Suncor liable for Dillon and Loaf N' Jug's retail pricing decisions.  Accordingly, this request is not reasonably calculated to lead to the discovery of admissible evidence. The information requested is also overbroad, unduly burdensome, and expensive to Dillon.

30.     An aggregate of Dillon's pump prices over time and throughout different locations constitutes a trade secret for the reasons stated in Dillon's Objection (Doc. #107) and the Giannola Declaration (Doc. #107-6), p. 4 (addressing request No. 8 of the April 26, 2012 Subpoena).

31.     Accordingly, the Court should quash Topic Nos. 1, 2, 3, 7 and 15 in the Kroger Subpoena.

*C. The Court Should Quash Topics 3, 8, 9, 10, 11, and 16 in the Kroger
Subpoena and the Wilson Subpoena (Pricing Materials).*

32.     Topics 3, 8, 9, 10, 11 and 16 of the Kroger Subpoena and the Wilson

Subpoena seek information regarding the Pricing Materials. The Dillon Declarations set

forth specific ways in which a competitor might use the Pricing Materials to Dillon's

competitive disadvantage and addresses the Pricing Materials in detail.  *See* Giannola

Supplemental Declaration  (Doc. #165-1) Paragraphs 8-13; Thiessen Declaration (Doc.

#165-2) paragraphs 8-19 and Sharpe Declaration (Doc. #174) Paragraphs 8-17. The

Pricing Materials set forth a record of Dillon's fuel purchase history, including the dates

on which Dillon purchased fuel from Suncor, the volumes of fuel Dillon purchased from

Suncor for specific geographic locations, and the prices Dillon paid Suncor for fuel

purchases.  *See Id.*  The Pricing Materials also contain fuel purchasing contracts

entered into between Dillon and Suncor, purchase and sale confirmations, and

communications relating to bidding, pricing and the contracts between Dillon and

Suncor.  *See Id.*

33.     Details regarding Dillon's fuel purchases from suppliers constitute

sensitive proprietary information because Dillon's purchase history is a direct reflection

of Dillon's internal business strategies.  *See Id.*  If this information is disclosed to the

public, then it will allow any and all of Dillon's competitors to access this private

information.  *See Id.*  Dillon's competitors could and may use this information to

aggressively compete against Dillon which would result in substantial harm to Dillon's

ability to remain competitive in the fuel market.  *See Id.*  Details regarding Dillon's fuel

14

purchase history are not generally known to the public and Dillon takes great precaution to assure the privacy of such information.  *See Id.*  Accordingly, the information sought by these topics include Dillon's trade secrets.  *See Id.*

34.     Accordingly, the Court should quash Topic Nos. 3, 8, 9, 10, 11 and 16 in the Kroger Subpoena and the Wilson Subpoena.

### D. The Court Should Quash Topic Nos. 4, 6, and 12 in the Kroger Subpoena (Kroger Subpoena - Other Competitors)

35.     Topics 4, 6, and 12 of the Kroger Subpoena request information related to other alleged competitors besides Plaintiffs.  Plaintiffs' claims against Suncor in this matter are made under the Robinson-Patman Act.  Accordingly, the information requested by these Topics is not reasonably calculated to lead to the discovery of admissible evidence. The information requested regarding other suppliers is also overbroad, unduly burdensome, and expensive to Dillon.

36.     Kroger's fuel price surveys and analysis of market data constitute trade secrets. See Giannola Declaration (Doc. #107-6) pp.5-6 (addressing request No. 9 of the April 26, 2012 Subpoena).

37.     Accordingly, the Court should quash Topic Nos. 4, 6, and 12 in the Kroger Subpoena.

*E. The Court Should Quash Topic Nos. 8, 9, 10, 11, 13, 14 in the Kroger Subpoena and the Wilson Subpoena (Other Suppliers)*

38.     Topics 8, 9, 10, 11, 13 and 14 in the Kroger Subpoena and the information sought by the Wilson Subpoena request, or may request, information related to other suppliers to Dillon and Loaf N' Jug besides Suncor.

39.     Plaintiffs claims against Suncor in this matter are made under the Robinson-Patman Act.   Accordingly, the information requested by these Topics is not reasonably calculated to lead to the discovery of admissible evidence. These requests are also overbroad, unduly burdensome, and expensive to Dillon.

40.     As set forth in the Dillon Declarations, Dillon's and Loaf N' Jug's agreements with their supplier(s) besides Suncor state that Dillon and Loaf N' Jug cannot disclose their other supplier(s) to any other persons. *See* Thiessen Declaration (Doc. #165-2), Paragraph 16; *See Also* Giannola Supplemental Declaration (Doc. #165-1) Paragraphs 8-13; Thiessen Declaration (Doc. #165-2) paragraphs 8-19 and Sharpe Declaration (Doc. #174) Paragraphs 8-17.

41.     For these reasons, Topics 8, 9, 10, 11, 13 and 14 in the Kroger Subponea and the information sought by the Wilson Subpoena include Dillon's seek trade secret information.  The Supplemental Protective Order is not adequate to protect Dillon's Trade Secrets and these Topics should be quashed or modified to exclude Dillon's trade secret information.

42.     Accordingly, the Court should quash Topic Nos. 8, 9, 10, 11, 13 and 14 in the Kroger Subpoena and the Wilson Subpoena.

16

*F.  The Court Should Quash Topic No. 17 in the Kroger Subpoena (Efforts by
Dillon to Acquire Plaintiffs)*

43.     Topic No. 17 in the Kroger Notice of Deposition states: "Description of

consideration, efforts and negotiations by Kroger to acquire WCS or any WCS stores,

including the steps taken and persons involved therein." Plaintiffs' claims against Suncor

in the matter are made under the Robinson-Patman Act.  Accordingly, Topic No. 17 is

not reasonably calculated to lead to the discovery of admissible evidence. Topic No. 17

is also vague, overbroad, unduly burdensome, and unduly expensive to Kroger.

44.     Plaintiffs' Response to Dillon Companies' Status Report, Doc. # 100, may

reveal the true intent of this request:  "Dillon's implacable delay and obfuscation raises

the inference that it has something to hide and that, rather than being an innocent

bystander, it may have played an actionable role in anticompetitive conduct aimed at its

competitor, Plaintiff Western Convenience Stores." "It is axiomatic that a party cannot

engage in discovery for purposes unrelated to the lawsuit at hand." *See Echostar*

*Communs. Corp, Ltd.*, 180 F.R.D. at 395-96 (holding that a court may deny discovery

sought pursuant to a party's subpoena where that party has publicly announced that it is

contemplating a wide-ranging anti-trust lawsuit against the subpoenaed non-party

entities, because such an announcement raises a "healthy suspicion" that the party is

seeking discovery for purposes unrelated to the instant lawsuit).  Plaintiffs statement in

their status report at least raises a "healthy suspicion" that Plaintiffs may be using

discovery obtained from Dillon in this action to build a separate antitrust case against

Dillon.

17

45.     Accordingly, the Court should quash Topic No. 17 in the Kroger

Subpoena.

### G. The Court Should Quash Topic No. 18 in the Kroger Subpoena (Marketing Studies Produced Under Request No. 10 in the April 26, 2012 Subpoena).

46.     Topic No. 18 requests information regarding the studies produced or to be

produced by Kroger pursuant to request No. 10 of the April 26, 2012 Subpoena. During

the hearing on October 3, 2012, the Court stated: "number 10 beats the band in terms

of overbroad . . . number 10 doesn't honestly even pass the straight face test."

Transcript of October 3, 2012 hearing (Doc. #136), p. 94, lines 5-11.

47.     Topic No. 18 is not reasonably calculated to lead to the discovery of

admissible evidence, vague, overbroad, unduly burdensome, and unduly expensive to

Kroger

48.     Information requested by Topic No. 18 also constitutes trade secrets. *See*

Giannola Declaration (Doc. #107-6) pp.6-8 (addressing request No. 10 of the April 26,

2012 Subpoena).

49.     For these reasons, the Court should quash Topic No. 18 of the Kroger

Subpoena.

WHEREFORE, Dillon respectfully requests that the Court quash the Kroger and

Wilson Subpoenas because compliance with these requests would impose a burden on

Dillon that outweighs Plaintiffs' stated need for this information for the following reasons:

(1) Dillon's need to protect its trade secrets; (2) Dillon should not be required to disclose

confidential trade secret information to a direct competitor; (3) the Original and

18

Supplemental Protective Orders are inadequate to protect Dillon's trade secrets; (4) the information requested is at best only marginally relevant to Plaintiffs' action against Suncor; (5) Plaintiffs have not demonstrated a "substantial need" for this information; (6) Dillon is not a party to this action; (7) production of the information would be unduly burdensome and costly for Dillon; and (8) Plaintiffs should not be permitted to use the subpoenas to search for alleged antitrust violations against a competitor.  Dillon further respectfully requests that the Court award Dillon any such further relief as deemed appropriate by the Court.

Dated:  February 11, 2013.

s/*Michael R. McCormick*
Christopher A. Taravella, #7790
Michael R. McCormick, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
        mmccormick@montgomerylittle.com
*Attorney for Dillon Companies, Inc.*
*Interested Party*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann &
Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO 80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO 80202

William LeitzseyMonts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-Denver
555 17th Street, Suite 3200
Denver, CO 80201

s/ *Michael R. McCormick*
Montgomery Little & Soran, P.C.