# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs/Counter Defendants,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

    Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

_____

**REPLY IN SUPPORT OF OBJECTION OF INTERESTED PARTY DILLON COMPANIES, INC. TO MAGISTRATE JUDGE'S ORDER DATED JANUARY 28, 2013**
_____

    Comes now interested party Dillon Companies, Inc. ("Dillon"), by and through its attorneys, Montgomery Little & Soran, P.C., and respectfully submits this reply in support of its objection under F.R.C.P. 72(a) (Doc. # 187) to the January 28, 2013 Order of the Magistrate Judge (Court Minutes/Minute Order, Doc. # 179, "the January 28, 2013 Order").

1

## ARGUMENT

*A. The Second Motion to Quash is Not Moot.*

1.     Western argues that the Second Motion to Quash and Objection are moot because the depositions of Dillon's witnesses are completed, the issues were resolved during the depositions, and the parties did not seek further relief regarding the identity of Dillon's suppliers from the Magistrate Judge.  However, the fact remains that Western breached the Joint Status Report (Doc. #167) by seeking the identity of Dillon's suppliers such that Dillon's objection is not moot.[1]

*B. The Supplemental Protective Order is Inadequate to Protect Dillon's Trade Secrets.*

2.     Western does not contest in its Response (Doc. #192) that the materials it seeks constitute Dillon's trade secrets and the Court should deem this admitted.

3.     Western argues that Dillon's concerns are fully addressed by production to Western under the Supplemental Protective Order (#140).  Plaintiffs argue that one of the cases Dillon relies on to state that protective orders are inadequate to protect trade secrets, *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998) is distinguished because: (a) Western has already taken extensive discovery from Suncor; (B) Dillon is allegedly a favored customer that allegedly received

---

[1] *See* Paragraph 17 of the Objection (Doc. #187) concerning Western asking Mr. Wilson, Dillon's former employee, to confirm the identity of Dillon's suppliers.  Western also asked Dillon's employees Mr. Thiessen and Mr. Sharpe about Dillon's suppliers during their deposition under F.R.C.P. 30(b)(6): "Q. . . . [W]ho were the other suppliers involved in responding to the grocery store RFP in 2009?"  Transcript of deposition of Chad Thiessen dated February 7, 2013, page 53, lines 13-15; "Q. Wasn't there a point in time when Loaf N' Jug was acquiring supply from [Redacted]?"  Transcript of deposition of Ed Sharpe dated February 19, 2013, page 81 lines 8-9.

lower prices than Western; (c) David Wilson, a former Dillon employee, was responsible for communications with Suncor in which Suncor allegedly acknowledged it was giving Dillon the best price in the market; and (d) discovery from Dillon is necessary to show the actual or potential effect of price discrimination as alleged by a declaration from Western's expert Mark Glick (Doc. #71-4).  Response, pp. 6-7.  We address these allegations in turn.

        *i.*      *Western Can Obtain Any Discovery It Needs from Suncor.*

4.      If Dillon was allegedly receiving lower prices from Suncor than Western, then Western can obtain this information from Suncor and has no need to obtain it from Dillon.  The fact that Western already received extensive documents from Suncor before obtaining additional discovery from Dillon demonstrates, if anything, that Western does not need the information from Dillon.  Western should be required to use the information it obtained from Suncor instead of being allowed to obtain duplicative information from a non-party.

        *ii.*      *Western Does Not Need to Obtain Information from David Wilson.*

5.      Western can obtain information from Suncor concerning what prices it was charging Dillon and Suncor's other customers.  Western has no need to obtain this information from Dillon's former employee David Wilson.

> iii.   *The Glick Declaration Does Not Demonstrate Western's Need for The Information Sought in the Kroger & Wilson Subpoenas.*

6.   The Glick Declaration (Doc. #71-4), which Western relies on in its Response, makes statements concerning why the April 26, 2012 Subpoena (Doc. #57-1) seeks information necessary for proving injury to competition under the Robinson-Patman Act. Mr. Glick states that Western needs to define a geographic competitive market and determine whether Western lost sales due to price discrimination. *See* Glick Declaration (Doc. #71-4), paragraphs 7-10. Mr. Glick attempts to explain why the requests in the April 26, 2012 Subpoena seek information necessary to Western's case but fails to do so:

> a. Mr. Glick states: "Question 8 seeks information concerning Dillon's prices to consumers which are impacted by Suncor's prices to Dillon." Glick Declaration (Doc. #71-4), paragraph 10. The price Dillon charges to its consumers has no relationship to Western's alleged need for the competitive geographic market and determining whether Western lost sales due to price discrimination. *See Texaco, Inc. v. Hasbrouck*, 496 U.S. 543, 559-560 (U.S. 1990) (reiterating the longstanding principal that suppliers are not liable for the independent pricing decisions of their buyers). Western cannot seek to hold Suncor liable for Dillon and Loaf N' Jug's retail pricing decisions.
>
> b. Mr. Glick states: "Because this case involves the sale of gasoline, an important issue will be the size of the geographic markets in which

4

     Plaintiffs' gas stations compete. The purpose of Question 9 is to obtain information on this topic. Question 9 seeks information concerning who competes with Plaintiffs' gas stations by inquiring what gas stations Dillon takes into consideration when it sets its prices." Glick Declaration (Doc. #71-4), paragraph 9. In contrast, Topic No. 9 in the April 26, 2012 Subpoena requests all retail Fuel Price Surveys in the entire Pertinent Geographical Area (as defined in the April 26, 2012 Subpoena) and is not limited to geographic markets in which Western's gas stations compete. April 26, 2012 Subpoena (Doc. 57-1), page 4.

c. Mr. Glick states: "Similar information is sought in questions 10 e, f, g, h, i, n, o, p and q." Glick Declaration (Doc. #71-4), paragraph 9. These topics requested such items as: "e. consumer response to price differences between Retail Sites", "f. effects of brand loyalty and brand recognition on consumer demand", and "i. optimal location of retail Fuel outlets in relation to competitor's outlets." April 26, 2012 Subpoena (Doc. 57-1), page 4. These requests are, again, not limited to the information Mr. Glick states Western is seeking.

d. Mr. Glick states: "questions 10 a, b, c, d, i, k, and m seek information about the relationship of sales to price differentials caused by the alleged price discrimination." Glick Declaration (Doc. #71-4), paragraph 10. These topics requested marketing studies for such items as: "a. price

5

         elasticity; b. demand elasticity; (c) factors affecting demand elasticity for Fuel;" etc.  April 26, 2012 Subpoena (Doc. 57-1), page 4.  These requests are not limited to the information Mr. Glick states Western is seeking.

    e. As the Court stated during the hearing on October 3, 2012: "number 10 beats the band in terms of overbroad . . . number 10 doesn't honestly even pass the straight face test." Transcript of October 3, 2012 hearing (Doc. #136), p. 94, lines 5-11.

    7. Further, the Glick declaration only refers to the April 26, 2012 Subpoena and does not even mention the Subpoena to Testify at a Deposition in a Civil Action issued to Kroger dated December 17, 2012 ("Kroger Subpoena") (Doc. # 159-1) which is at issue here.  The Glick declaration does not directly address any need for:

    a. Topics 1, 2, 3, 7, and 15 in the Kroger Subpoena (Doc. # 159-1) (Prices Charged by Dillon to Its Customers);

    b. Topics 3, 8, 9, 10, 11 and 16 of the Kroger Subpoena and the subpoena to David Wilson dated Wednesday December 19, 2012 (Doc. #159-2) ("Wilson Subpoena") (seeking information regarding pricing materials such as contracts and purchase and sale confirmations);

    c. Topics 4, 6, and 12 of the Kroger Subpoena (requesting information related to other alleged competitors besides Western);

  d. Topics 8, 9, 10, 11, 13 and 14 in the Kroger Subpoena and the Wilson Subpoena (requesting information related to other suppliers to Dillon besides Suncor);

  e. Topic No. 17 in the Kroger Subpoena (Efforts by Dillon to Acquire Plaintiffs)[2]; and

  f. Topic No. 18 in Kroger Subpoena (marketing studies requested by Topic No. 10 in April 26, 2012 Subpoena).

8. In sum, Western provides the Court with no basis for why it needs the information requested in the Kroger and Wilson Subpoenas from Dillon. Western cannot evade the "healthy suspicion" that Western is attempting to use discovery to build an antitrust lawsuit against a competitor which was present in *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998). *See* Western's Response to Dillon Status Report, Doc. #100, stating: "Dillon's implacable delay and obfuscation raises the inference that it has something to hide and that, rather than being an innocent bystander, it may have played an actionable role in anticompetitive conduct aimed at its competitor, Plaintiff Western Convenience Stores (which was Suncor's largest purchaser by volume before Kroger came on the scene in 2009)." *See Also Premier Election Solutions, Inc. v. SysTest Labs, Inc.*, 2009 U.S. Dist. LEXIS 94193, 16 (D. Colo. 2009) (finding that when a party requests discovery of trade

---

[2] This topic is notably vague, overbroad, unduly expensive, and not reasonably calculated to lead to discovery of admissible evidence regarding Western's alleged claims against Suncor.

7

secrets from a direct competitor and the balance between need and harm weighs in favor of the party or person from which discovery is sought, production of the data pursuant to a protective order will not adequately protect the trade secret information).

9. Finally, Western continues to request that the Court disregard the Supplemental Protective Order with respect to documents including Dillon's trade secrets. See Western's response to Suncor's motion to restrict access (Doc. #193). This re-emphasizes that a protective order is inadequate to protect Dillon's trade secrets.

WHEREFORE, Dillon respectfully requests that the Court quash the Kroger and Wilson Subpoenas because compliance with these requests would impose a burden on Dillon that outweighs Plaintiffs' stated need for this information for the following reasons: (1) Dillon's need to protect its trade secrets; (2) Dillon should not be required to disclose confidential trade secret information to a direct competitor; (3) the Original and Supplemental Protective Orders are inadequate to protect Dillon's trade secrets; (4) the information requested is at best only marginally relevant to Plaintiffs' action against Suncor; (5) Plaintiffs have not demonstrated a "substantial need" for this information; (6) Dillon is not a party to this action; (7) production of the information would be unduly burdensome and costly for Dillon[3]; and (8) Plaintiffs should not be permitted to use the Kroger and Wilson Subpoenas to search for alleged antitrust violations against a

---

[3] Dillon has incurred substantial (over $200,000.00) fees and costs, including without limitation attorneys' fees, in responding to Western's discovery requests in this matter including without limitation the Kroger and Wilson Subpoenas.

competitor.  Dillon further respectfully requests that the Court award Dillon any such further relief as deemed appropriate by the Court.

Dated:  March 11, 2013.

                                                                                s/*Michael R. McCormick*
Christopher A. Taravella, #7790
Michael R. McCormick, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
        mmccormick@montgomerylittle.com
*Attorney for Dillon Companies, Inc.*
*Interested Party*

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann & Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO 80202

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-Denver
555 17th Street, Suite 3200
Denver, CO 80201

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO 80202

William LeitzseyMonts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

s/ *Michael R. McCormick*
Montgomery Little & Soran, P.C.