IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation; WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs and Counterclaim Defendant,

vs.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant, Counterclaimant, Third-Party Plaintiff,

vs.

HOSSEIN and DEBRA LYNN TARAGHI,

    Third-Party Defendants.

## SUNCOR'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO RESTRICT ACCESS

Suncor Energy (U.S.A.) Inc. ("Suncor") replies to Plaintiffs' Response to Suncor's Motion to Restrict Access [Dkt. #193] ("Response"). Plaintiffs acknowledge that when consulted by counsel for Suncor they did not object to Suncor's Unopposed Motion to Restrict Access to Motion for Summary Judgment on Plaintiff Western Convenience Stores' First and Sixth Claims for Relief and Suncor's Third Affirmative Defense[1] [Dkt. #188] ("Unopposed Motion"). *See* Response at 1-2. But now they have changed their mind, raising several arguments, most of which Plaintiffs have made at least three times before in one form or another and all of which are intended to allow Mr. Taraghi to see the Dillon Companies, Inc.'s "Secret"

---

[1]     On February 8, 2013, Suncor filed three motions for summary judgment. However, this is the only Motion that was filed under restricted access. The other two [Dkt. Nos. 181 & 182] are not restricted.

or "Highly Confidential" information and documents. *See* January 28, 2013 Hearing Transcript, attached as Exh. 1, at 36:2, 41:23-24 and 44:15-18. Suncor will briefly address those arguments.

    1.    <u>The Unopposed Motion Does Not Comply With The Rule</u>.

Plaintiffs argue that the Unopposed Motion does not meet the requirements of D.C.Colo.LCivR 7.2.B, particularly 7.2.B.3 and B.4 because Suncor has not identified a "clearly defined and serious injury that would result if access is not restricted" and has not explained why there is no alternative to restricted access. *See* Response at 7.

*First*, the Unopposed Motion is substantively a nearly *verbatim* copy of Plaintiffs' <u>Unopposed</u> Motion to Restrict Access to Exhibit A to the Declaration of Ted P. Tatos [Dkt. #170], which, like Suncor's Unopposed Motion, also sought Level 2 restricted access. Moreover, substantively, the Unopposed Motion is similar to the approximately eleven other *unopposed* motions to restrict access that have been filed, including the approximately **seven** that Plaintiffs filed. *Eg.,* Dkt. Nos. 055, 065, 079, 086, 130, 158 and 170 for those Plaintiffs filed; Dkt. Nos. 118, 175, 183 and 194 for those Dillon filed.

*Second*, Plaintiffs did their "about face" after seeing what they had been told would be in the summary judgment motion when they agreed to the Unopposed Motion—that is, documents designated "Secret," "Highly Confidential" (including some of Western Convenience's own documents) and "Confidential" and data and information derived from those documents, as well as testimony from depositions designated "Secret" or "Highly Confidential." All of this information is subject to the Supplemental Protective Order [Dkt.#140] and/or the original Protective Order [Dkt. #49]. All of these documents and information have been the subject of at least two motions Plaintiffs filed, which were denied, challenging the "Highly Confidential" designations [Dkt. Nos. 059 and 153]. In addition, there have been at least five hearings or status

conferences (as well as weekly conference calls) in connection with Dillon's Motion to Quash [Dkt. #57] and Dillon's assertion that many of its documents were "trade secrets." *E.g.,* June 25, 2012 [Dkt. #084], July 16, 2012 [Dkt. #088], November 16, 2012 [Dkt. #149], December 12, 2012 [Dkt. #157], and January 28, 2013 [Dkt. #180].

*Third*, Plaintiffs argue that Suncor made only "conclusory and inspecific statements" about trade secrets, and that Suncor has not established "harm" or that there are less restrictive alternatives. *See* Response at 7-8. That argument flies in the face of this Court's findings and rulings on January 28, 2013, when Plaintiffs most recently argued, and lost, the question of allowing Mr. Taraghi access. The Court said at least five different times that the information Plaintiffs now want made available to Mr. Taraghi and the public was a "trade secret" and that Dillon and Suncor had met their burden in that regard. *E.g.*, Transcript, Exh. 1, at 32:4-5 and 19-20, 33:18-20, 34:14, 38:18-39:1 and 46:3-4. Therefore, contrary to Plaintiffs arguments, Suncor and Dillon have already demonstrated a "compelling reason" for keeping trade secrets under seal to avoid competitive injury.

2. Plaintiffs' Legal Authorities Are Not Dispositive.

Plaintiffs' Response relies heavily on the legal authorities it cites at pages 3-7. But those authorities are factually distinguishable in material ways that render them inapposite.

*First*, Plaintiffs agreed to the Protective Order and to the Supplemental Protective Order, assuring the Court and Dillon that those Orders would protect Dillon's documents. For example, in June 2012, shortly after the issue of subpoenaing documents from Dillon arose, Plaintiffs represented in their Response to Motion to Quash or Modify Subpoena Filed by Dillon Companies, Inc. [Dkt. #71] that: "Even if the Court determines that the materials deserve protection, the trade secrets may be designated 'Highly Confidential' pursuant to the Protective

Order *such that they cannot be disclosed to Plaintiffs' representatives*." *See* Response to Motion to Quash at 2 (emphasis added). Later in their Response, Plaintiffs quoted from the Protective Order, chiding Dillon for ignoring it and unequivocally asserting: "A Highly Confidential designation prevents the Plaintiffs from disclosing any of Dillon's materials to Plaintiffs' corporate representatives." *Id.* at 4-5. Finally, Plaintiffs concluded by assuring the Court that "by the explicit language of the Protective Order, Dillon is protected." *Id.* at 6.

Subsequently in October 2012, Plaintiffs and Dillon agreed on a supplemental protective order, which Plaintiffs said "will take care of everybody's concerns." *See* Transcript, Exh. 1, at 30:17-22 and 31:2-7. As the Court noted, Plaintiffs "were perfectly willing to operate on the attorneys'-eyes-only basis." *Id.* at 31:4-7.

Having argued that Dillon should produce its trade secrets and other confidential documents pursuant to the Protective Order and, then, having subsequently agreed to an even more stringent Supplemental Protective Order, Plaintiffs "cannot later make a public access claim which it bargained away in order to expeditiously receive the documents in the first place." *Pittston Co. v. USA*, 2002 WL 32158052, at *2 (E.D. Va. Oct. 2, 2002) (citing cases). In *Pittston,* the court distinguished *Rushford v. New Yorker Magazine, Inc.*, discussed at pages 5-6 of the Response, because the plaintiff agreed to the protective order and the producing party relied on it. *Id.* at *2. The facts here are even more compelling. Dillon's counsel warned the Court that this was a "slippery slope": "As soon as I agree to a designation attorneys' eyes only they're going to come back in here and say now you've got to give up more." *See* Transcript, Exh. 1, at 29:20-30:7. The Court told him "no, that would never happen." *Id.* at 30:7-13.

*Second*, Dillon is not a party to this lawsuit. The cases Plaintiffs rely on all involve a party's documents. As a third party, Dillon's trade secrets deserve continued protection. *See*

4

*Light Sources, Inc. v. Cosmedico Light, Inc.,* 360 F.Supp.2d 432, 441 (D.Conn. 2005) (allowing third parties' documents to remain under seal at least until trial); *Network Appliance, Inc.v . Sun Microsystems, Inc.* , No. C-07-06053, 2010 WL 841274 at *2 (N.D.Cal. March 10, 2010). Moreover, Plaintiffs took the position that certain of the Dillon documents were trade secrets, but now, having obtained those documents, they want them disclosed to the public. *See* Transcript, Exh. 1, at 33:21-34:4.

*Third*, consistent with the cases Plaintiffs cite, in denying Plaintiffs' prior attempts to defeat the Protective Orders, the Court repeatedly told Plaintiffs their arguments were "weak" and that they had to demonstrate "need" or "necessity." *See* Transcript, Exh. 1 at 28:12-13 and 24-25, 33:3-11 and 15-17, 34:10-14 and 17-19, 38:24-39:6, 41:23-42:5, 44:15-18, 45:24-46:5, 47:21-22, and 52:14-53:1. To the extent they believed the Magistrate "g[o]t it wrong," Plaintiffs had fourteen days from January 28, 2012 to appeal to Judge Krieger. *Id.* at 55:9-13. They did not.

*Fourth,* in their Response, Plaintiffs still have not demonstrated "need" or" necessity," contrary to even the cases they cite. *See* Response at 7 (discussing *Moore v. Weinstein*, where the court reclassified documents because the plaintiffs had established a "clear need to examine" them). In fact, they do not even try. They argue in conclusory fashion "fairness and due process" and assert that in looking at a redacted version of WCS's experts' report, Mr. Taraghi realized that the damages calculations "were incomplete," which "will be remedied in a supplemental damages expert disclosures." *See* Response at 2-3. There is no new "need." *See* Transcript, Exh. 1, at 36:2-4. Indeed, despite the admonitions and directions of the Court, Plaintiffs have not submitted an affidavit, let alone a specific and detail affidavit, from their

experts "demonstrating necessity" or the specific "questions they would like to ask Mr. Taraghi." *Id.* at 33:7-17, 42:3-5, 47:21-22, and 52:14-53:1.

*Finally,* Plaintiffs request that the Court not rule on Suncor's Summary Judgment motion until they "have been allowed to fully examine and evaluate Defendant's Motion and exhibits to avoid prejudice." *See* Response at 9. Plaintiffs do not explain the purported "prejudice," nor have they presented a factual basis for that request. However, the Court had previously expressly considered and rejected Plaintiffs' arguments that Mr. Taraghi needed to see Kroger's pricing and volumes data because he was not qualified as an expert to calculate damages. *See* Transcript, Exh. 1, at 27:8-28:25.

**Wherefore**, Suncor requests that Plaintiffs' objection be denied and that Suncor's Motion for Summary Judgment on Plaintiff Western Convenience Stores' First and Sixth Claims for Relief and Suncor's Third Affirmative Defense [Dkt. #188] be afforded Level 2 Restricted Access protection.

Dated: March 25, 2013.

                                    Respectfully submitted,
*s/ Anthony J. Shaheen*
HOLLAND & HART LLP
P. O. Box 8749
Denver, CO 80201-8749
Telephone: 303-295-8054
Fax: 303-291-9126
E-Mail: ajshaheen@hollandhart.com

*s/ William L. Monts III*
J. Robert Robertson
William L. Monts III
HOGAN LOVELLS LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: 202-637-5600
Fax: 202-637-5910
E-Mail: robby.robertson@hoganlovells.com
        william.monts@hoganlovells.com
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

      I hereby certify that on March 25, 2013, I served the foregoing **SUNCOR's REPLY IN FURTHER SUPPORT OF ITS MOTION TO RESTRICT ACCESS,** by causing the foregoing to be presented to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following email addresses:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
krb@benningtonjohnson.com
kec@benningtonjohnson.com
afa@benningtonjohnson.com

Philip W. Bledsoe
POLSINELLI SHUGHART, P.C.
1515 Wynkoop Street, Suite 600
Denver, CO 80202
pbledsoe@polsinelli.com

                                              s/ Susanne Johnson

6087665_1