IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation; WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

vs.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant-Third Party Plaintiff,

vs.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third Party Defendants.

## SUNCOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM AGAINST WESTERN CONVENIENCE STORES, INC. AND THIRD-PARTY CLAIM AGAINST HOSSEIN AND DEBRA LYNN TARAGHI

Suncor Energy (U.S.A.) Inc. ("Suncor") replies to Plaintiffs' Response to Defendant's Motion for Summary Judgment on Counterclaim against Western Convenience Stores, Inc. and Third-Party Claim against Hossein and Debra Lynn Taraghi [Dkt. # 201] ("Response").

### INTRODUCTION

Suncor's Motion [Dkt. #182] seeks summary judgment on its Counterclaim against Western Convenience Stores, Inc. ("WCS") and its Third-Party Claim against Hossein and Debra Lynn Taraghi (the "Taraghis") for money due and owing for gasoline and diesel fuel ("fuel") that WCS took but did not pay for in May 2011. Suncor's Counterclaim and Third-Party Claim are

entirely independent of the statutory, contract, and tort claims asserted by WCS and the co-plaintiff, Western Truck One, LLC, and this Motion can be decided by itself.

Incredibly, WCS contends that it is not required to pay for the nearly $3.76 million in fuel taken from Suncor because Suncor allegedly "provided secret, unearned discounts" to King Soopers and Loaf 'N Jug, rendering WCS's contract with Suncor, the Master Product Purchase and Sale Agreement ("Master PSA" or "Master Agreement"), illegal and unenforceable. Resp. at 2 and 4-6. There are no genuine issues of material fact that would preclude summary judgment in favor of Suncor. WCS's central argument is a purely legal one for which there is no legal support. As explained below, WCS's position is contrary to Colorado law and common sense, and Suncor's Motion should be granted.

## ARGUMENT ON SUNCOR's COUNTERCLAIM AGAINST WCS FOR BREACH OF CONTRACT

**Element 1:** **The Master PSA is a valid and enforceable contract.**

WCS does not dispute that it took 1.1 million gallons of fuel from Suncor in May 2011, or that it refuses to pay Suncor $3,755,141.95 (not including interest) for that fuel. Resp. at 5-6. Instead, WCS argues that it has no obligation to pay Suncor because the Master PSA "is illegal and 'no recovery thereon shall be had.'" *Id.* at 5 (quoting C.R.S. § 6-2-109). In particular, WCS claims the Master PSA is illegal because Suncor allegedly "provided secret, unearned discounts to Western's competitors, the Kroger subsidiaries." Resp. at 2 and 4-5. WCS's argument is meritless.

*First*, WCS's argument that its contract with Suncor is illegal and unenforceable depends on a gross misreading of C.R.S. § 6-2-109, which provides that certain contracts in violation of

2

the Colorado Unfair Trade Practices Act are "illegal."[1] The plain language of the statute defeats WCS's argument.

Specifically, the statute provides: "*Any contract… made… in violation* of any of the provisions of sections 6-2-103 to 6-2-108 is an illegal contract." C.R.S. § 6-2-109 (emphasis added). WCS does not claim that *its* contract with Suncor, the Master PSA, was "made… in violation" of C.R.S. § 6-2-108. It does not because it cannot. Suncor and WCS entered into the Master PSA on January 17, 2007 — two years and nine months *before* Suncor entered into its first contract with King Soopers or Loaf 'N Jug in October 2009 to sell fuel at a price which WCS claims violates the Robinson-Patman Act. *See* Moss Dep., attached hereto as Exhibit Q, at 278:3-279:5; 280:18-281:21. Therefore, the 2007 Master PSA could not have been "made" in violation of C.R.S. § 6-2-108 as a result of the alleged illegal conduct asserted by WCS—Suncor allegedly providing secret, unearned discounts to King Soopers and Loaf 'N Jug not given to WCS—commencing in 2009. Resp. at 4-5. Indeed, WCS does not claim there is anything illegal about any term or provision of the Master PSA. Since the Master PSA was not "made" in violation of C.R.S. § 6-2-108, it cannot be illegal under C.R.S. § 6-2-109. This is dispositive and defeats Plaintiffs' argument that the Master Agreement is an illegal and unenforceable contract.

---

[1] As explained in Suncor's Motion, C.R.S. § 6-2-108 is not subject to C.R.S. § 6-2-109, because the latter is limited to contracts in violation of "sections 6-2-103 *to* 6-2-108," which excludes claims for violation of C.R.S. § 6-2-108. *See Q-T Markets, Inc. v. Fleming Cos.*, 394 F. Supp. 1102, 1107 (D. Colo. 1975). WCS contends that *Q-T Markets* has been "statutorily overruled" because, subsequent to its adoption, the Colorado General Assembly enacted a canon of construction expressing a different view of the use of the word "to" in statutes. Resp. at 5. *Q-T Markets*, however, interpreted a statute enacted *before* the legislature adopted its canon. "Each General Assembly is a distinct entity… and therefore what a later General Assembly thinks a statute does or should mean says little, if anything, about what the General Assembly that enacted it intended it to mean." *Francen v. Colo. Dept. of Revenue*, --- P.3d ----, 2012 WL 2581029, at *7 (Colo. App. July 5, 2012). Section 6-2-109 has never been amended to contradict or overrule *Q-T Markets*.

3

Further, even assuming *arguendo* and for purposes of this Reply only that Suncor provided, as alleged by WCS, "secret, unearned discounts" (which it did not) that does not convert Suncor's perfectly legal contract with WCS into an illegal and unenforceable contract. The statute does not say that. No case says that. WCS has not cited any case in its Response or elsewhere[2] that would permit it to avoid paying for the fuel it took because it asserted a claim under C.R.S. § 6-2-108.

WCS's contrived misapplication of the statute demonstrates what is really going on here. WCS took and sold at its retail stations $3.76 million worth of fuel and, quite simply, does not want to pay for it. Its "excuse" is that the Master PSA, pursuant to which it took that fuel, and pursuant to which it had been taking fuel since 2007, has become illegal and unenforceable because Suncor allegedly engaged in unlawful price discrimination. Therefore, it does not have to pay. That is not the law. In *Kelly v. Kosuga*, 358 U.S. 516, 520-21 (1959), the Supreme Court refused to allow a buyer of onions to escape payment based on the defense that the seller had violated the Sherman Act, stating "the courts are to be guided by the overriding general policy,…, 'of preventing people from getting other people's property for nothing when they purport to be buying it'." (citation omitted). *See also Bruce's Juices v. American Can Co.*, 330 U.S. 743, 754-56 (1947) ("The defendant's claim to be freed of the obligation to pay his promissory note because the payee [violated the Robinson-Patman Act]… cannot be supported as resting on any congressional word or policy."). Lawful sales, such as here, are to be enforced.

---

[2] WCS refers generally in its Response to facts and arguments in other briefs. Resp. at 3, ¶A and at 4. Such an approach violates the Court's Standards and puts Suncor in the impossible position of having to craft arguments WCS has not made in this Response. *Brown v. Conagra Food Ingredients Co.*, 2008 WL 5101731, at *5 n. 5 (D. Colo. Dec. 1, 2008) (Krieger, J.) (court will not consider unsupported assertions); *Kenfield v. Colo. Dept. of Public Health & Env't*, 837 F. Supp. 2d 1232, 1246 (D. Colo. 2011) (Krieger, J.) (court will not construct arguments for party).

*Kelly,* 358 U.S. at 521; C.R.S. § 4-2-607(1) ("The buyer must pay at the contract rate for any goods accepted."). Accordingly, WCS is required to pay for the fuel it took.

*Second*, WCS should be judicially estopped from suddenly changing its position and asserting the Master PSA is an illegal contract. WCS has consistently relied upon the validity and enforceability of the Master PSA. *See* Amended Compl. [Dkt. #43] at ¶6 (acknowledging binding provisions of Master PSA); *id.* at ¶8 (stating Master PSA "purport[s] to govern all transactions or agreements" between the parties); *id.* at ¶¶40-46 (asserting breach of Master PSA). Indeed, WCS has not asserted as an affirmative defense that the Master PSA is illegal, nor has it ever alleged illegality (until now). *Contra Sky Harbor Air Serv., Inc. v. Reams*, 491 Fed. App'x 875, 884-85 (10th Cir. 2012) (unpublished) (noting that illegality can be raised constructively at the summary judgment stage, but is properly rejected where inconsistent with party's legal position).

Having previously stated its clear position that the Master PSA is enforceable, WCS should be judicially estopped from now arguing the agreement is illegal. *See Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment") (citation omitted).

**Element 2:   Suncor fully performed under the Master PSA.**

In its Response, WCS makes no effort to explain how Suncor failed to perform under the Master PSA. Contrary to the Court's Practice Standards, WCS instead refers in passing to a different response brief and claims that brief demonstrates "material" breaches by Suncor. Resp. at 6. The Practice Standards are expressly designed to avoid "hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Brown*, 2008 WL 5101731 at

*5, n.5 ("[T]he Court considers only those assertions of fact that are supported by… specific citation to the factual record.").

In any event, the "material" breaches alleged by WCS are irrelevant to Suncor's counterclaim. WCS claims that Suncor breached the Master PSA "by improperly allocating supply and by discriminating in price" against WCS. Resp. at 6. The "prior material breach" doctrine "only excuses a non-breaching party's performance when such obligations were dependent upon the promises that the breaching party failed to perform." *Monster Daddy, LLC v. Monster Cable Prods., Inc.*, 483 Fed. App'x 831, 835 (4th Cir. 2012) (unpublished) (citing RESTATEMENT (SECOND) OF CONTRACTS § 237 cmt. e (1981)). WCS has not, and cannot, come forward with any evidence in the Response, or anywhere else, that its obligation to pay was dependent upon Suncor not "improperly allocating supply." Instead, WCS, by asserting it was improperly allocated, is simply claiming that is was entitled to more fuel than it received. This claim that it was entitled to more fuel has absolutely no bearing on its obligation to pay for the fuel that it did, in fact, take. Indeed, such a position is contradicted by the express terms of the Master PSA, which requires WCS to "make payment to Suncor immediately in accordance with the terms of payment provisions of this Agreement without any deduction of set-off." Exh. B to Suncor's Mot. at A-1, ¶5. That is, there is no relationship between WCS's obligation to pay for fuel it received and Suncor's allocation obligations under the Master PSA.

Moreover, assuming *arguendo* and for purposes of this Reply only that Suncor did "improperly allocate supply," WCS continued to take fuel from Suncor, including the $3.76 million worth of fuel for which it refuses to pay, thereby waiving Suncor's alleged breach. "[W]hen a contract not fully performed on either side is continued in spite of a known excuse, the right to rely upon the known excuse is waived." *Extreme Constr. Co. v. RCG Glenwood,*

6

*LLC*, --- P.3d ----, 2012 WL 6700552, at *6 (Colo. App. Dec. 27, 2012) (internal quotation and citation omitted).

WCS's price discrimination allegations likewise do not excuse its failure to pay. Price discrimination is not a defense to a claim for breach of contract, and it does not allow a purchaser to avoid payment. *See Bruce's Juices*, 330 U.S. at 755; *Kosuga v. Kelly*, 257 F.2d 48, 54-55 (7th Cir. 1958), *aff'd* 358 U.S. 516 (1959) (holding violation of federal antitrust statute does not bar recovery of contract price); *Capital City Distrib., Inc. v. Classics Int'l Entm't., Inc.*, 1996 WL 535314, at *4 (N.D. Ill. Sept. 18, 1996) ("[A] seller's violation of the Robinson-Patman Act will not preclude recovery from a buyer in default."); *Admiral Corp. v. Cerullo Elec. Supply Co.*, 32 F.R.D. 379, 383 (M.D. Pa. 1961) ("Statutory price discrimination… may not be used as defense to a claim for breach of contract."). Consequently, WCS's allegations that "Suncor breached the Master [PSA] by… discriminating in price" cannot create an issue of fact as a matter of settled law. *See* Resp. at 6.

**Element 3:** **WCS failed to perform under the Master PSA.**

In its Response, WCS claims it is excused from paying for the fuel it took from Suncor because of Suncor's own alleged breach of the Master PSA. Resp. at 6-7. As explained above, with respect to "Element 2," WCS has no justification for its refusal to pay Suncor as a matter of law.

In addition, as explained above and in Suncor's Motion, WCS's defense is inconsistent with the express terms of the Master PSA, which require WCS to "make payment to Suncor immediately in accordance with the terms of payment provisions of this Agreement without any deduction or set-off." *See* Exh. B to Suncor's Mot. at A-1, ¶5.

**Element 4:** **Suncor suffered damages as a result of WCS's failure to perform.**

WCS's Response offers two challenges to Suncor's proof of damages. *First*, WCS claims "there is a genuine issue of material fact as to whether the Master [PSA] is an illegal contract." Resp. at 7. As explained above, WCS's contention that the Master PSA is "illegal" is wrong as a matter of law. *Second*, WCS states in conclusory fashion that "there is also a genuine issue of material fact as to whether Suncor could have been 'damaged' by Western's failure to pay amounts due under this contract." *Id.* WCS never specifies what this "issue of material fact" might be. In its Motion, Suncor offered indisputable evidence that WCS owed $4,506,170.35 to Suncor as of January 2013, which consists of $3,755,141.95 in unpaid principal and $751,028.40 in interest, which continues to accrue at the rate of $37,551.42 each month. *See* Suncor's Mot. at 11, Exh. N to Suncor's Mot. at ¶¶3-6. WCS offers nothing to challenge these facts, and its empty claim of a "genuine issue of material fact" is insufficient to withstand summary judgment. *See, e.g., Kenfield*, 837 F. Supp. 2d at 1239 ("A party opposing summary judgment may not rest on assertions of fact made in a brief; the party must support each assertion with citation to evidentiary material that establishes that fact.").

### ARGUMENT ON SUNCOR'S THIRD PARTY CLAIM AGAINST THE TARAGHIS FOR BREACH OF CONTRACT

In the Response, the Taraghis do not contest three of the four elements demonstrated by Suncor: (1) that Suncor has fully performed under their Personal Guaranty, (2) that the Taraghis have failed to perform under their Guaranty, and (3) that Suncor has been damaged in the amount of $3,000,000, plus interest and attorneys' fees, by the Taraghis' failure to perform. Suncor's Mot. at 11-15 (setting forth the undisputed facts to establish these elements); Resp. at 7-8. Instead, the Taraghis rely on the arguments WCS made, which Suncor has already

addressed in this Reply, and simply assert there is a "genuine issue of fact as to whether… [the Master PSA] is void" under C.R.S. § 6-2-108. Resp. at 8.

As explained above, the Master PSA is neither void nor illegal. It is a valid, enforceable contract pursuant to which WCS failed to pay $3,755,141.95 for fuel obtained from Suncor. The Taraghis personally guaranteed payment up to and including $3,000,000, plus attorneys' fees. The Taraghis have no legal justification for their failure to comply with their Personal Guaranty. Therefore, Suncor is entitled to summary judgment against them as a matter of law.

## CONCLUSION

For the reasons discussed in Suncor's Motion and set forth above, Suncor is entitled to summary judgment in its favor on its Counterclaim against Plaintiff WCS, as well as its Third-Party Claim against Hossein and Debra Lynn Taraghi.

Suncor requests that the Court enter judgment in its favor and against WCS in the amount of $4,506,170.35, reflecting unpaid principal and interest accruing on the debt as of January 31, 2013, as well as to enter judgment in Suncor's favor on interest accruing after January 31, 2013 at the rate of $37,551.42 per month.

Suncor further requests that the Court enter judgment in its favor and against the Taraghis in the amount of $3,000,000.

Suncor further requests that the Court enter judgment in its favor and against WCS and the Taraghis, jointly and severally, for attorneys' fees, costs and all other legal expenses incurred by Suncor.

Dated: March 29, 2013.

Respectfully submitted,

s/ *Anthony J. Shaheen*
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO 80201-8749
Telephone: 303-295-8054
Fax: 303-291-9126
E-Mail: ajshaheen@hollandhart.com

*s/ William L. Monts III*
J. Robert Robertson
William L. Monts III
HOGAN LOVELLS LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: 202-637-5600
Fax: 202-637-5910
E-Mail: robby.robertson@hoganlovells.com
         william.monts@hoganlovells.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2013, I served the foregoing **SUNCOR'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM AGAINST WESTERN CONVENIENCE STORES, INC. AND THIRD-PARTY CLAIM AGAINST HOSSEIN AND DEBRA LYNN TARAGHI,** by causing the foregoing to be presented to the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following email addresses:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
krb@benningtonjohnson.com
kec@benningtonjohnson.com
afa@benningtonjohnson.com

Philip W. Bledsoe
POLSINELLI SHUGHART, P.C.
1515 Wynkoop Street, Suite 600
Denver, CO 80202
pbledsoe@polsinelli.com


                                             s/ Susanne Johnson

6091868_3