IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant.

## DECLARATION OF HOSSEIN TARAGHI

    Hossein Taraghi, pursuant to 28 U.S.C. Section 1746, states as follows:

    1.    I am the Chief Executive Officer and an owner of both of the above-named Plaintiffs, Western Convenience Stores, Inc. ("WCS") and Western Truck One, LLC ("WTO"). I am over the age of 18 and have personal knowledge of the matters set forth in this declaration. I make this declaration in support of WCS and WTO's Motion for Preliminary Injunction ("Motion").

    2.    I have reviewed and have knowledge of the facts asserted in the Complaint in this action and in the Motion. I verify that the allegations therein are true and correct to the best of my information and belief.

EXHIBIT R

3. As set forth in the Complaint, WCS is known in the fuel industry as a "discounter," meaning that it sells gasoline or diesel fuel (millions of gallons per month) to consumers at prices generally below prices offered by other retailers. Although WCS stores sell food and other convenience items, WCS's principal retail product is gasoline.

4. Suncor is the dominant supplier of gasoline in Colorado. According to Suncor's website, it provides 35% of the state's fuel demand. To the best of my knowledge, Suncor's oil refineries in Commerce City are the only refineries in Colorado.

5. As addressed in more detail in the Complaint and Motion, on May 18, 2011, I participated in a meeting between WCS and Suncor representatives, including Steve Ewing and Steve Moss.

6. During that meeting, based on my observation of gasoline prices posted by WCS's competitors, I complained that Suncor must be granting significant discounts or rebates to its larger retail customers and its branded retailers that it wasn't granting to WCS. Mr. Moss and Mr. Ewing specifically admitted that Suncor had been providing significant discounts to other retailers that had not been provided to WCS. They stated that they would see if the same discounts could be made available to WCS, but that never occurred.

7. In addition to the other matters described above and in the Complaint, we also briefly discussed at the May 18 meeting a recent consent decree between the EPA, Rocky Mountain Pipeline Systems ("Rocky Mountain"), Offen Petroleum, and WCS. The issues did not involve Suncor products or terminals and Mr. Ewing and Mr. Moss were only somewhat interested in the financial impact of the $2.5 million fine, which was an element of the settlement with the EPA. I explained that the EPA had focused primarily on Rocky Mountain's terminals

where the blending had occurred, that Rocky Mountain would be paying the entire fine to the EPA, that WCS eventually would be liable to reimburse some fraction of the fine to Rocky Mountain, and that the reimbursement would occur sometime in the future after the public comment period and after court approval of the consent decree.

8. As described in the Complaint and Motion, within one week after I had the meeting with Suncor representatives in which I complained, and they admitted, that Suncor was charging other retailers less than it was charging WCS for fuel, Suncor terminated both direct sales of fuel to WCS and access by WTO to Suncor's terminals to take delivery of fuel purchased either from Suncor or from third-party middlemen. Since Suncor terminated WTO's access to its terminals on May 25, 2011, WCS already has experienced new shortages of available fuel which it has had to satisfy by paying higher prices than otherwise would be the case. Prior to termination, Suncor had supplied approximately 60% of the fuel loaded onto WTO trucks and delivered to WCS stores, either via direct sales from Suncor to WCS or purchases by WCS from middlemen. WCS has had to make up the loss of that supply by going to other suppliers and paying higher prices.

9. WCS thus far has managed to meet consumer demand by paying more for fuel. However, there is a very significant risk that our ability to do so will change at any time, particularly given the timing of Suncor's termination of access to its terminals. During the summer months, there are requirements for a unique formulation of gas (known as 7.8 psi RVP) in Denver and other Colorado counties along the front range. That, coupled with increased gasoline demand during the summer, threatens the gas supply. In addition, natural disasters such as hurricanes in Texas and Louisiana and tornadoes in the Midwest, and other disasters such as

the July 2010 Frontier refinery fire in Cheyenne, have a substantial, sudden and unanticipated negative effect on the supply of the fuel that is the core of WCS's business. WCS's vulnerability to supply shortage and higher prices can be ameliorated somewhat by reinstatement of WTO's access to Suncor terminals for even the limited purpose of WCS purchases of fuel from third-party middlemen.

10. All of these factors, coupled with Suncor's control of the only Colorado fuel refineries and more than a third of the Colorado fuel supply, mean that the termination of all access to that supply, even from middlemen, leaves WCS with virtually no slack between enough supply and the disaster of empty fuel tanks at WCS stores. The lack of fuel at any of the 42 WCS stores in Colorado and Nebraska will not only harm competition but also effectively shut down each affected store.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 5, 2011

/s Hossein Taraghi

Hossein Taraghi