THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

    Plaintiffs/Counter Defendants,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

    Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

_____

**DECLARATION OF MICHAEL MCCORMICK PURSUANT TO 28 U.S.C. § 1746**
_____

    1.    I am Michael McCormick.  I am an attorney licensed to practice law in the State of Colorado, registration number 33682.  I am providing this declaration in support of interested party Dillon Companies, Inc.'s ("Dillon") motion for attorney fees and costs for, among other things, responding to certain discovery requests issued to Dillon by Plaintiffs Western Convenience Stores, Inc. and Western One. LLC (collectively "Western").

    2.    Dillon is seeking $122,202.50 for its attorney fees and $26,547.32 in costs in this matter from Western for, among other things, responding to Western's: (A)

1



Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises dated April 26, 2012 ("First Subpoena") (Doc. #57-1); (B) renewed motion challenging the designation of documents that Dillon produced under the First Subpoena (Doc. #153); (C) Subpoena to Testify at a Deposition in a Civil Action issued to Kroger dated December 17, 2012 and accompanying notice of deposition under F.R.C.P. 30(b)(6) ("Second Subpoena"); (D) Subpoena to David Wilson dated December 19, 2012 ("Third Subpoena") and (E) Subpoena to Produce Documents, Information or Objection or to Permit Inspection of Premises in a Civil Action dated February 15, 2013 (Exhibit BB) ("Fourth Subpoena") and related matters.

3. The attorney fees Dillon incurred in this matter were for services by Montgomery, Little & Soran P.C.'s (the "Firm" or "MLS") attorneys James J. Soran, Esq., Christopher A. Taravella, Esq., myself, and Adrienne Toon, Esq. Dillon also incurred fees for services by paralegals Deborah Harant and Connie Streich, and law clerk Chris Boeckx. A summary of each of their relevant qualifications, experience, and hourly rates is below.

*Qualifications, Experience & Hourly Rates – James J. Soran, Esq.*

4. James J. Soran's profile is attached hereto as Exhibit O.

5. Mr. Soran graduated with a Bachelor of Arts Degree in 1974 from Colorado College and received his Juris Doctor in 1977 from the University of Denver School of Law.

6. Mr. Soran heads the firm's commercial law department in which he concentrates his practice in the areas of real estate transactions, development, and

2

leasing. He is a member of the Corporation, Banking and Business Law Section and the Real Estate and Titles Section of the Colorado Bar Association. He served as a hearing officer for the City and County of Denver Board of Equalization for property assessment appeals in 1987 and 1988. He is also a member of the International Council of Shopping Centers (ICSC) and served on the Governmental Affairs Committee of that organization in Colorado in 1987 and 1988.

7. Mr. Soran's billing rate in this matter is $215 per hour. That is lower than his normal billing rate charged to other clients in similar matters, which is $295.00 per hour.

8. In my opinion, Mr. Soran's hourly rate of $215 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other lawyers with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Christopher A. Taravella, Esq.*

9. Christopher A. Taravella's profile is attached hereto as Exhibit P.

10. Mr. Taravella earned a Bachelor of Science degree at the United States Air Force Academy in 1973 and his Juris Doctor from the University of Colorado School of Law in 1976. He graduated in 1996 from the Harvard Business School Advanced Management Program and International Senior Management Program.

11. Mr. Taravella was a judge advocate (JAG) in the United States Air Force for twenty-one years. While on active duty he was an Air Force prosecutor, having more than one hundred trials. He was designated a Special Assistant United States Attorney for civil litigation as the Chief of the Constitutional Torts Branch of The Judge Advocate

General's Office in Washington, D.C. In the Air Force Reserves he was the Staff Judge Advocate of an airlift and refueling wing at Selfridge Air National Guard Base, Michigan. His tours of duty include Special Operations at Hurlburt Field, Florida, a tactical fighter training wing in Zaragoza, Spain, and the Pentagon in Virginia.

12. Mr. Taravella left active duty with the Air Force to join Chrysler Corporation in 1985, where he was the Litigation Department head under Lee Iacocca. He has extensive experience with commercial and employment litigation, including class actions. He was Chrysler's Chief Patent Counsel for seven years and was responsible for all intellectual property transactional and litigation matters, including patent, trademark, copyright, and trade secrets. As such, he was responsible for the defense of the intermittent windshield wiper patent infringement litigation filed by Robert Kearns against the auto industry and the bar code/synthetic voice/machine vision patent infringement litigation filed by Jerome Lemelson against the auto and other industries. He was also responsible for all of Chrysler's commercial contracts.

13. Mr. Taravella became the General Counsel of Chrysler Financial Corporation in 1997 and then of the merged Chrysler Financial/Mercedes-Benz Credit unit, a position he held for nine years. He was responsible for the legal, audit, and process management activities of the $95 billion in receivables captive finance unit. This responsibility included sales finance licensing, corporate matters, the defense of class action, lender liability, contract, and employment litigation, the formation of a Utah Industrial Loan Corporation, securities and funding matters, securitization of receivables, and retail and wholesale auto financing.

14.     Since joining the firm Mr. Taravella has been lead counsel in seven preliminary injunction hearings in both state and federal court and has tried several bench and jury matters to conclusion.

15.     Mr. Taravella's billing rate in this matter is $215 per hour.  That is lower than his normal billing rate charged to other clients in similar matters, which is $295.00 per hour.

16.     In my opinion, Mr. Taravella's hourly rate of $215 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other lawyers with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Michael R. McCormick, Esq.*

17.     My firm profile is attached hereto as Exhibit Q.

18.     I earned a Bachelor of Arts degree at the University of Colorado in 1994 and my Juris Doctor from the University of Denver College of Law in December of 2001. While in law school I graduated Order of Saint Ives and received three academic excellence awards.

19.     I was admitted to the bar on May 14, 2002.  From 2002 until 2003 I served as a law clerk under the Honorable Larry J. Naves and the Honorable Shelley I. Gilman in Denver District Court.  From 2003 until 2007, I worked as an Assistant Attorney General in the Colorado Attorney General's office representing the Colorado Department of Transportation.  During that time I assisted with litigating several tort and condemnation matters on behalf of the State of Colorado.

20. From 2007 until the present, I have been an attorney in private practice with Montgomery, Little & Soran, P.C. My practice is in real estate, eminent domain, and commercial litigation. I have handled cases relating to contracts, torts, real estate leases and licenses, real estate boundaries and access, forcible entry and detainer, legal malpractice, professional malpractice, employment disputes, and arbitrations. I have represented Dillon Companies, Inc. (Dillon") in several other matters besides this matter. I have assisted with litigating matters before the United States District Court for the District of Colorado, Colorado State District Courts, the Colorado Court of Appeals, and the Colorado Supreme Court.

21. My billing rate in this matter is $185 per hour. That is lower than my normal billing rate charged to other clients in similar matters, which is $225.00 per hour.

22. In my opinion, my hourly rate of $185 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other lawyers with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Adrienne Toon, Esq.*

23. Adrienne Toon's profile is attached hereto as Exhibit R.

24. Ms. Toon graduated in 2007 with a Bachelor of Arts Degree from Ohio University. She graduated in 2010 with her Juris Doctor from the Case Western Reserve University School of Law.

25. As an associate with the Firm, Ms. Toon's practice focuses primarily on civil and commercial litigation and business law. Ms. Toon has worked as a law clerk for

6

Shumaker Loop & Kendrick, Ward Anderson Porritt & Bryant and for the legal department of the University Hospitals in Cleveland, Ohio.

26. While in law school, Ms. Toon served as lead oralist on Case Western's nationally competitive Civil Rights Moot Court Team. She also helped organize and facilitate Case Western's intramural moot court competition as a member of the Moot Court Board. Ms. Toon is a member of the Colorado and Denver Bar Associations and is a board member of the Colorado Chapter of Case Western's Alumni Association.

27. Ms. Toon's billing rate in this matter is $185 per hour. That is lower than her normal billing rate charged to other clients in similar matters which is $200 per hour.

28. In my opinion, Ms. Toon's hourly rate of $185 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other lawyers with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Deborah Harant*

29. Deborah Harant worked for several different law firms since 1991 and has been a paralegal for MLS since 2005. She works in a variety of practice areas including civil litigation, intellectual property, personal injury, worker's compensation, estate planning, adoptions, family law, construction, medical malpractice and employment law.

30. Ms. Harant's billing rate in this matter is $90 per hour. That is lower than her normal billing rate charged to other clients in similar matters which is $100 per hour.

31. In my opinion, Ms. Harant's hourly rate of $90 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other paralegals with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Connie Striech*

32. Connie Striech has been a paralegal at the Firm since June of 2012. She also previously worked for the Firm from 1985 until 1994. From 1984 until 1985, she worked as a paralegal for Richmond & Canning.

33. Ms. Striech's billing rate in this matter is $90 per hour. That is lower than her normal billing rate charged to other clients in similar matters which is $100 per hour.

34. In my opinion, Ms. Striech's hourly rate of $90 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other paralegals with comparable experience and skill in the Denver legal community.

*Qualifications, Experience & Hourly Rates – Chris Boeckx*

35. Chris Boeckx has been a law clerk at the Firm since January of this year. Mr. Boeckx earned a bachelor's degree in English from the Metropolitan State College of Denver. Mr. Boeckx is currently enrolled at the University of Denver Sturm College of Law, and anticipates graduating in May, 2013. While at the University of Denver, Mr. Boeckx has served as President of the Land Use Law Society and as a member of the National Trial Team.

36. Mr. Boeckx's billing rate in this matter is $85 per hour. That is lower than his normal billing rate charged to other clients in similar matters which is $95 per hour.

37. In my opinion, Mr. Boeckx's hourly rate of $85 per hour is reasonable and commensurate with, or below, reasonable hourly rates of other law clerks with comparable experience and skill in the Denver legal community.

*Description of Services Rendered and Reasonableness of Fees*

38.     The Firm and its attorneys, law clerks and paralegals have kept time records in the course of regularly conducted business activities, and it was the regular practice of the Firm to keep such records.  Those records are used to prepare monthly billing statements reflecting hours worked.  Time entries are typically made daily and billing statements are prepared on a monthly basis.

39.     Exhibits C-I are the invoices billed by the Firm to Dillon for services rendered from August 22, 2012 until February 28, 2013.  The Firm redacted attorney-client privileged communications and work product from the invoices.  These documents include a detailed description of the services rendered, the amount of time spent, and the Firm's hourly rates.  These documents accurately reflect the time spent and billed to Dillon in connection with this matter.

40.     The Firm did not charge for several time entries and discounted the time spent for several time entries.  *See* Exhibits C-I, MLS Invoices.

41.     MLS billed its fees at preferred client rates below the hourly rates quoted for other commercial clients.

42.     The specific amount of time spent per timekeeper is shown on a chart on Exhibit T.  The number of hours and amount invoiced per timekeeper is as follows:

    a. James J. Soran, Esq.: 1.4 hours, $301 in fees;

    b. Christopher A. Taravella, Esq: 235.3 hours, $50,589.50 in fees;

    c. Michael R. McCormick, Esq.: 536.7 hours, $99,289.50 in fees;

    d. Adrienne Toon, Esq.: 104.4 hours, $19,314 in fees;

9

  e. Deborah Harant: 105.5 hours, $9,495 in fees;

  f. Connie Striech: 39.5 hours, $3,555 in fees; and

  g. Chris Boeckx: 2.7 hours, $229.50 in fees.

  h. Total: 1025 hours, $182,728.50 in fees.

*See* Exhibit T, page 1, chart of fees per individual MLS timekeeper for fees incurred by Dillon.

  43. However, Dillon at this time and without waiver seeks only $122,202.50 of the attorney fees Dillon incurred. The amount of hours and fees for each individual timekeeper for the fees that Dillon seeks is as follows:

  a. James J. Soran, Esq.: 0 hours, $0 in fees;

  b. Christopher A. Taravella, Esq: 136.8 hours, $29,364.00 in fees;

  c. Michael R. McCormick, Esq.: 401.9 hours, $74,351.50 in fees;

  d. Adrienne Toon, Esq.: 46.1 hours, $8,528.50 in fees;

  e. Deborah Harant: 68.6 hours, $6,174.00 in fees;

  f. Connie Striech: 39.5 hours, $3,555.00 in fees; and

  g. Chris Boeckx: 2.7 hours, $229.50 in fees.

  h. Total: 695.6 hours, $122,202.50 in fees.

*See* Exhibit T, page 2, chart of fees per individual MLS timekeeper for attorney fees sought by Dillon.

*Attorney Fees Sought by Dillon - $122,202.50*

44.     Dillon incurred $182,728.50 for its attorney fees in this matter.  *See* Exhibit U, chart of attorney fees.  Dillon at this time and without waiver seeks only $122,202.50 of this amount for the following services rendered by the Firm, without limitation:

   a. *First Subpoena*

       i. Negotiating and drafting the Supplemental Protective Order (Doc. #140);

       ii. Assisting Dillon in ascertaining what documents were responsive to the First Subpoena;

       iii. Consulting with Western's counsel regarding the scope and meaning of the First Subpoena and what documents Dillon had available in response to the First Subpoena;

       iv. Preparing, bates numbering, and producing documents and compact discs in response to the First Subpoena;

       v. Redacting information outside of the Pertinent Time Frame and Pertinent Geographic Area (as defined in the First Subpoena) from documents to be produced in response to the First Subpoena;

       vi. Assisting Dillon with designating documents as "Confidential", "Highly Confidential" or "Secret" under the Original Protective Order (Doc. #49) and the Supplemental Protective Order (Doc. #140);

       vii. Composing letters to Western's counsel regarding documents and CDs being produced to Western in response to the First Subpoena;

11

      viii. Preparing and filing status reports and related documents, including without limitation declarations from Dillon employees, with the Court concerning: (A) what documents were available in response to the First Subpoena; and (B) what documents Dillon had produced or would produce in response to the First Subpoena; (C) why several of the requests in the First Subpoena sought Dillon's trade secrets; and (D) Dillon's objections to the First Subpoena;

b. *Western's Motion to Re-Designate and Restricting Public Access*

      i. Responding to Western's motion to re-designate documents Dillon produced in response to the First Subpoena to a lower designation under the Supplemental Protective Order (Doc. #140);

      ii. Preparing and submitting declarations from Dillon's employees concerning why the documents Dillon produced should not be changed to a lower designation;

      iii. Preparing witnesses to testify at the hearing on January 28, 2013 concerning Western's motion to re-designate documents. *See* Transcript of January 28, 2013 Hearing (Doc. #180) and Minute Entry dated January 28, 2013 (Doc. #179);

      iv. Negotiating with Western's counsel concerning redactions to Western's expert report to permit Mr. Taraghi to view the redacted expert report;

  v. Preventing public access to documents filed with the Court by Western and upholding the Supplemental Protective Order;

  vi. Filing motions to restrict public access to documents filed with the Court by Western;

c. *Second and Third Subpoenas*

  i. Assisting Dillon with designating witnesses to testify regarding the list of eighteen topics in Western's Second Subpoena under F.R.C.P. 30(b)(6). *See* Exhibit Z, letter of designation dated January 14, 2013 (exhibits thereto omitted);

  ii. Negotiating, preparing and filing the Joint Status Report (Doc. #167) concerning Dillon's motion to quash or modify the Second and Third Subpoenas. (Doc. #167);

  iii. Preparing for, traveling to and appearing during the depositions of Susan Giannola, David Wilson, Chad Thiessen, David Parker and Edward Sharpe taken pursuant to the Second and Third Subpoenas;

  iv. Obtaining and designating deposition transcripts and exhibits for Susan Giannola, David Wilson, Chad Thiessen, David Parker and Edward Sharpe as "Confidential", "Highly Confidential" or "Secret" under the Supplemental Protective Order (Doc. #140);

      d. *Fourth Subpoena (Pricing Strategies)*

          i. Responding to, and negotiations concerning, counsel for Western's e-mail dated February 5, 2013 (Exhibit AA) stating that Dillon needed to produce more documents under the First Subpoena regarding pricing strategies;

          ii. Assisting Dillon in ascertaining what documents were available in response to the Fourth Subpoena;

          iii. Preparing, bates numbering, and producing documents in response to the Fourth Subpoena;

          iv. Redacting information outside of the Pertinent Geographic Area from documents to be produced in response to the Fourth Subpoena; and

          v. Assisting Dillon with designating documents responsive to the Fourth Subpoena as "Confidential", "Highly Confidential" or "Secret" under the Supplemental Protective Order (Doc. #140).

45. The entries for the above services are highlighted on the invoices attached as Exhibits C-I.

*Attorney Fees Not Sought by Dillon - $60,526.00*

46.     Of the $182,728.50 in attorney fees that Dillon incurred, Dillon at this time and without waiver does not ask the Court to award $60,526.00 in attorney fees for the following services rendered by MLS:

- a. *First Subpoena*
    - i. Advising Dillon concerning the First Subpoena and related legal issues;
    - ii. Preparing and filing motions and objections regarding the First Subpoena;
    - iii. Appearing at status conferences and other hearings regarding the First Subpoena;
- b. *Western's Motion to Re-Designate and Restricting Public Access*
    - i. Appearing at status conferences and other hearings regarding Western's motion to re-designate documents Dillon produced in response to the First Subpoena to a lower designation under the Supplemental Protective Order (Doc. #140);
    - ii. Preparing and filing motions to restrict access to confidential documents that Dillon filed with the Court;
- c. *Second and Third Subpoenas*
    - i. Preparing an objection under F.R.C.P. 45(c)(2)(b) to the Second and Third Subpoenas (Doc. #159-5);

15

      ii. Preparing and filing a motion to quash or modify the Second and Third Subpoenas (Doc. #159);

      iii. Filing an objection to the Court's Order denying Dillon's motion to quash or modify the Second and Third Subpoenas (Doc. #187);

   d. *Other Services*

      i. Initial file investigation and studying hearing transcripts;

      ii. Organizing and maintaining files;

      iii. Scheduling and logistical issues; and

      iv. Preparing and filing this motion for fees and costs.

47. Entries for these services are not highlighted on Exhibits C-I.

*Consideration of the* Johnson *Factors*

48. In determining reasonableness of a fee award, federal Courts may consider factors set forth in Rule of Professional Conduct 1.5(a). *See, e.g., Spensieri v. Farmers Alliance Mut. Ins. Co.*, 804 P.2d 268, 270-271 (Colo. App. 1990) (citing the predecessor to the Colorado Rules of Professional Conduct, the Code of Professional Responsibility). These factors are substantially similar, if not exactly the same, as the factors set forth in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714,717-19 (5th Cir. 1974).

49. The factors to be considered in determining the reasonableness of fees under Rule 1.5(a) are as follows:

   a. the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

  b. the likelihood, if apparent to the client, that the acceptance of particular employment will preclude other employment by the lawyer;

  c. the fee customarily charged in the locality for similar legal services;

  d. the amount involved and the results obtained;

  e. the time limitations imposed by the client or by the circumstances;

  f. the nature and length of the professional relationship with the client;

  g. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

  h. whether the fee is fixed or contingent.

Colorado Rule of Professional Conduct 1.5(a).

  50. <u>Time and Labor, Novelty and Difficulty, and Requisite Skill.</u>  MLS employees spent over 1025 hours of time on this case.  *See* Exhibit T.  This does not include numerous hours of work that the Firm did not charge to Dillon.  *See* Exhibits C-I, MLS Invoices.  This case involved complex and difficult questions of price discrimination under the Robinson-Patman Act and trade secrets and required skill in litigation and discovery matters.

  51. <u>Preclusion of Other Employment.</u>  The Firm's lawyers, paralegals and law clerks spent eight months and over a thousand hours working on this case which precluded them from taking other employment opportunities.

  52. <u>Customary Fee.</u>  As described above, the hourly rates charged by the Firm to Dillon are lower than the rates charged by the Firm to the Firm's other clients.

53. <u>Amount Involved and Results Obtained.</u>  The Firm assisted Dillon with producing 98,437 pages of documents to Western (Exhibit S), preparing and producing four Dillon employees to testify at depositions and hearings, and negotiating a Supplemental Protective Order to protect Dillon's trade secrets.  The labor and time involved in this case were necessary in order to achieve the results obtained.  Further, even though Dillon incurred $182,728.50 in attorney fees, Dillon at this time and without waiver seeks only $122,202.50 of these attorney fees from the Court.

54. <u>Time Limitations Imposed by Client or Circumstances.</u>  There were numerous deadlines to respond to Western's discovery requests and various motions and hearings throughout this matter which added to the stress of the litigation.

55. <u>Nature and Length of Professional Relationship with Client.</u>  Dillon has been a client of the Firm since 1979.

56. <u>Experience, Reputation and Ability of Lawyers Performing the Services.</u>  Please see above for a description of the legal experience, reputation and ability of lawyers performing the services for MLS.

57. <u>Whether Fee is Fixed or Contingent.</u>  Dillon was charged by MLS at hourly rates and the invoices are due and payable regardless of outcome.

58. After considering all of the above, in my opinion, the attorney fees of $122,202.50 incurred by Dillon for the above services rendered in this matter are reasonable and necessary.

*MLS Costs Sought by Dillon - $2,076.76*

59. Dillon incurred $8,148.42 in costs from August 22, 2012 until February 28, 2013. *See* Exhibits C-I, MLS Invoices; Exhibit U, Summary of MLS Costs (Per Invoice). Dillon at this time and without waiver seeks only $2,076.76 of this amount for costs for the following:

   a. Preparing and producing documents and compact discs in response to the First Subpoena:
      i. Couriers to BJBC (Counsel for Western) $271.63;
      ii. Couriers from Kroger, Denver Office $62.68;
      iii. Federal Express Charges to Cincinnati Ohio $344.54;
   b. Consulting with Western's counsel regarding the scope and meaning of the First Subpoena and what documents Dillon had available in response to the First Subpoena:
      i. Parking - Meeting with Plaintiff's Counsel $10;
   c. Preparing for, traveling to and appearing during the depositions of Susan Giannola, David Wilson, Chad Thiessen, David Parker and Edward Sharpe taken pursuant to the Second and Third Subpoenas;
      i. Federal Express Charges to Loaf N' Jug, Pueblo $51.48;
      ii. Meals for/with client $39.99;
      iii. Mileage for travel to & from depositions (Pueblo, CO) $155.94;
      iv. Parking - Depositions $72.50;

    d. Obtaining and designating deposition transcripts and exhibits for Susan Giannola, David Wilson, Chad Thiessen, David Parker and Edward Sharpe as "Confidential", "Highly Confidential" or "Secret" under the Supplemental Protective Order (Doc. #140).

        i. Transcript Costs (depositions) $1,068.

    e. Total: $2,076.76.

See Exhibit W – Chart of MLS Costs Per Item and Exhibits C-I, MLS Invoices & receipts.

60. In my opinion, the above costs of $2,076.76 incurred by Dillon are reasonable and necessary.

61. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 26th day of April, 2013.

        s/ Michael R. McCormick
        _____
        MICHAEL R. McCORMICK