```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3    Case No. 11-cv-01611-MSK-CBS

 4    _____

 5    WESTERN CONVENIENCE STORES, INC., et al.,

 6         Plaintiffs,

 7    vs.

 8    SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

 9         Defendant.

10    _____

11            Proceedings before CRAIG B. SHAFFER, United States

12    Magistrate Judge, United States District Court for the

13    District of Colorado, commencing at 2:47 p.m., November 17,

14    2011, in the United States Courthouse, Denver, Colorado.

15    _____

16            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

17    ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

18    _____

19                              APPEARANCES

20            KENNETH BENNINGTON and ADAM ALDRICH, Attorneys at

21    Law, appearing for the plaintiffs.

22            ANTHONY SHAHEEN and KEEYA JEFFREY, Attorneys at

23    Law, appearing for the defendant.

24    _____

25                   RULE 16(b) SCHEDULING CONFERENCE
```

```
 1                      P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3      proceedings are herein transcribed, pursuant to order of
 4      counsel.)
 5              THE CLERK:  All rise.
 6              THE COURT:  I guess for the official stuff you
 7      decide to go back to separate tables.  Okay.
 8              All right.  We're on the record in 11-cv-1611,
 9      Western Convenience Stores, Inc., et al, versus Suncor
10      Energy.  We're here for a scheduling conference.  And I'll
11      take appearances of counsel.
12              MR. BENNINGTON:  Kenneth Bennington and Adam
13      Aldrich for the plaintiffs.
14              THE COURT:  Okay.
15              MR. SHAHEEN:  Tony Shaheen and Keeya Jeffrey for
16      Suncor, Your Honor.
17              THE COURT:  All right.  And, again, guys, I mean,
18      I know that this just -- reflex kicks in, but nobody has to
19      stand up.  If you want to sit that's fine.
20              All right.  I mean, I feel like some of this we've
21      already gone through and so I'm just going to sort of tell
22      you one last time and you can tell me what you want to do.
23      I've gone through this.  I take it -- I mean, there's
24      somewhat of a disconnect.  Have you got a final e-discovery
25      protocol and a final protective order in place or are those
```

```
 1     still the subject of some discussion?
 2             MR. BENNINGTON:  We've been working on it the last
 3     two days and we think we have them done.  The e-discovery,
 4     the techie, so to speak, wanted one more day, not to workout
 5     disagreements, but to do research on their respective systems
 6     to see how they'd make them talk to each other.
 7             THE COURT:  Well, the only reason I'm asking, on
 8     Page 6 you tell me you've agreed on things and then at the
 9     end you've listed a number of disputes.  So I should
10     disregard the stuff --
11             MR. BENNINGTON:  Oh.
12             THE COURT:  -- at the end about disputes or --
13             MR. BENNINGTON:  Yeah.  That's -- that's our
14     drafting mistake.
15             THE COURT:  No.  No.  That's fine.  I -- I wasn't
16     sure which message you wanted me to pick up on.
17             MR. BENNINGTON:  The message is we've got it done.
18             THE COURT:  Okay.  That -- that I -- that's all I
19     need to talk about.
20             Now, this Section 7 dealing with consent I just
21     have to tell you, you know, pursuant to 72.1(c)(3), one or
22     more of the parties may request that certain motions be
23     referred to the Magistrate Judge for a recommendation.  I
24     just have to tell you you can probably request all you want.
25     I can't -- just because you request does not mean that Judge
```

1    Krieger is going to honor that request.  And I also need to
2    tell you that the simple act of referring a dispositive
3    motion to me just necessarily means the process moves slower.
4    But with that observation I don't really have anything more
5    to say.
6              The discovery limits you've got in here are fine.
7    They work for me.  I'm -- I'm still struggling
8    philosophically with your case plan and schedule.  Help me
9    because -- because there's some things in here that are
10   somewhat unusual.  You're saying that the deadline for
11   joinder of parties, amendment of pleadings, 30 days after a
12   ruling on Suncor's Motion to Dismiss or January 31, 2012,
13   which occur -- whichever occurs later.  Truthfully I have no
14   sense of when Judge Krieger is going to rule on that motion,
15   but if I were a betting man I would tell you there's at least
16   a 50/50 chance that motion will not be decided by January 31.
17   That's as good as my crystal ball is.  But what's interesting
18   is your deadline for joinder of parties and amendment of
19   pleadings has a built-in contingency, yet you have not
20   proposed a comparable contingency for the fact discovery of
21   June 1.  And I guess my sense is I interpret that to mean
22   even if you don't have a decision on the Motion to Dismiss
23   you're going to start discovery.  And if you're going to
24   start discovery are you going -- are you going to wait until
25   you get a ruling on the Motion to Dismiss to start or are you

```
 1      going to start now because if you're going to start now I
 2      don't know necessarily why you need till June 1.  So I'm --
 3      I'm asking --
 4                MR. BENNINGTON:  We're going to --
 5                THE COURT:  -- questions.  I'm not trying to fight
 6      with anybody.  I'm just trying to ask questions because if
 7      you -- if you wait until you get a ruling or sometime after
 8      January 31 you're effectively giving yourself -- February,
 9      March, April, May.  You're giving yourselves four months if
10      you don't start discovery until after a ruling on the Motion
11      to Dismiss.
12                MR. BENNINGTON:  I don't care about the Motion to
13      Dismiss.  I wish it would be withdrawn.
14                THE COURT:  No.  I know you don't.  No.  That's --
15      I realize that's -- that's their --
16                MR. BENNINGTON:  So the discovery cutoff is what
17      matters to me.  We backed it out 60 days from what we
18      originally proposed to you and you made it clear what you
19      thought of that.
20                THE COURT:  Yeah.  And, again, at the end of the
21      days, guys, it's your case.  It's not mine.
22                MR. BENNINGTON:  And we understand that from
23      previous appearances in front of you that six months is
24      something that you like to see for a discovery cutoff and we
25      -- we feel we came close, but with the holidays coming up and
```

1     an initial disclosure of documents in terms of e-discovery
2     which our technical guys have worked out we think we're on a
3     pretty ambitious schedule.
4              THE COURT:  I'll defer to you.  All I'm saying is
5     is that, again, I personally think it would -- it would be a
6     mistake for either side to wait until after a ruling on the
7     Motion to Dismiss.
8              MR. BENNINGTON:  We are not waiting.
9              MR. SHAHEEN:  We are not, Your Honor.
10             MR. BENNINGTON:  And that is for sure.
11             MR. SHAHEEN:  Okay.  Just so you know, we've
12    talked about this.  We're going to start discovery as though
13    the motion's been denied and so we're not going to do this
14    stuff twice, Your Honor.
15             THE COURT:  Okay.  That's fine.  Now, I -- you've
16    got a deadline -- if I skip ahead to the experts you're
17    proposing a structure for designating experts that I just --
18    I can't endorse because it's not consistent with the rule.
19    If you read the Advisory Committee Notes to Rule 26(a)(2)
20    they don't distinguish between plaintiff's experts and
21    defendant's experts.  If you read the Advisory Committee
22    Notes they basically distinguish between those experts who
23    are affirmative experts, i.e., experts that you are calling
24    because you bear the burden of proof on a particular issue
25    and rebuttal experts.  And the Advisory Committee Notes say

1      that there's no reason to distinguish between plaintiff's

2      affirmative experts and defendant's ex -- an affirmative

3      expert is an affirmative expert.  So, for instance, if -- if

4      defendants ultimately decide to assert a counterclaim against

5      Western Convenience for unpaid bills and you intend to use an

6      expert on that claim there's no reason why you shouldn't be

7      designating affirmative experts on September 1, too.

8                MR. SHAHEEN:  I would agree with that, Your Honor.

9      I can't imagine seriously why we would have an expert on the

10     -- the unpaid bills.

11               THE COURT:  No.  But what I'm saying is what I

12     would propose to do -- my first observation is you are

13     apparently contemplating that all fact discovery will end on

14     June 1 and then you're going to designate affirmative experts

15     three months later.  Do you really need three months to do

16     that?  Can I save a little bit of time there?  You guys

17     you've got to throw me a bone here.  I'm dying.  I mean, I

18     feel like I'm running some sort of auction.

19               MR. BENNINGTON:  We gave you 60 days, a long time.

20               THE COURT:  I know, but, you know, it's like my

21     teenage sons.  I want more.

22               MR. SHAHEEN:  What are -- what are 30 days, Ken?

23               THE COURT:  What -- what if I just do this?  What

24     if I say I'll strike this and say the parties shall designate

25     all affirmative experts on or before August 1, and then I'll

```
 1    say -- I'll strike this defendant designee stuff and I'll say
 2    that the parties shall designate all rebuttal experts on or
 3    before November 1.  So I'm still basically giving you --
 4    well, God, even that's too much time.  What am I thinking?
 5    I'll say rebuttal experts November -- October 1, 2012 and
 6    then I can say discovery closes for all purposes on -- I'm
 7    going to strike this fact discovery stuff.  I'm simply going
 8    to say the discovery -- the cutoff for discovery would be
 9    December 15, 2012 and I'll say that the parties should file
10    dis -- I'll -- I'll keep your dispositive motion deadline --
11    well, you were originally contemplating two months.  I doubt
12    it two months -- no.  I'm going to catch so much heat for
13    this one.
14              Here's what I'm proposing.  I'll keep your
15    deadline for joinder of parties, amendment of pleadings
16    30 days or January 31, whichever comes first.  I'm going to
17    say the cutoff of all discovery will be November 15, 2012.
18    The dispositive motion deadline will be January 15, 2013.  I
19    will say that the parties should designate affirmative
20    experts on or before August 1.  The parties will designate
21    rebuttal experts on or before October 1.  But -- well --
22    well, let me -- let me pose this actually now that I think
23    about it.  You're telling me that you want to take all the
24    expert depositions within 60 days of a ruling on Summary
25    Judgment.  If that's the case why do I need to build in these
```

1    huge gaps for discovery of experts?  You're not taking any
2    depositions.  If I simply say -- I mean, we're building in
3    time that's unnecessary.  If I say affirmative experts must
4    be designated on August 1 why can't I say that rebuttal
5    experts will be designated on, say, September 15 because
6    you're not taking any depositions.  And then I'll say
7    affirmative ex -- rebuttal experts on September 15, and so
8    I'll say the discovery cutoff will be October 30 which means
9    that I would give you a dispositive motion deadline of
10   December 1.  And the beauty of that is that basically if you
11   file dispositive motions on December 1 you'll file the
12   response briefs no later than 20 days after that and I'm sure
13   nobody wants to file a reply brief.
14            MR. BENNINGTON:  I want to make sure I understand.
15   August 1 for --
16            THE COURT:  Basically what I'm envisioning --
17   yeah, 'cause I'm -- I'm changing this.  What I'm envisioning
18   is affirmative experts by August 1.
19            MR. BENNINGTON:  Yeah.
20            THE COURT:  I would then say rebuttal experts by
21   September 15, recognizing that nobody's going to depose
22   experts until Summary Judgment.  So rebuttal experts are
23   September 15.  I would then give you a discovery cutoff for
24   all purposes of October 30 and then I would basically give
25   you December 1 for dispositive motions.

```
 1              MR. BENNINGTON:  Leaving the -- the first
 2    discovery cutoff at June 1, 212 (sic)?
 3              THE COURT:  No, meaning there's no first
 4    discovery.  I don't -- I mean --
 5              MR. BENNINGTON:  Oh, I see.
 6              THE COURT:  -- I don't distinguish between fact
 7    and -- I mean, as long as the discovery is done by X date I
 8    don't care what you --
 9              MR. BENNINGTON:  I --
10              THE COURT:  -- because I -- I just sort of
11    automatically assume nobody's going to launch into expert
12    discovery until they develop the facts they need, so to some
13    extent the expert discovery dates are a constraint on how
14    much fact discovery you're doing.
15              MR. BENNINGTON:  All right.
16              THE COURT:  But that means technically you could
17    do -- you know, you could continue to do fact discovery not
18    related to experts even into July or August if circumstances
19    warrant it.
20              MR. BENNINGTON:  All right.  Well, we're going to
21    be in -- we'll have experts who are going to whine and
22    complain, but they get paid a lot so they should.
23              THE COURT:  Well, or -- or they'll just want to be
24    paid more.
25              MR. BENNINGTON:  Yeah, or they'll make me find
```

```
 1      somebody else.  That's okay.
 2              THE COURT:  Yeah.  I mean, I think that's the --
 3              MR. BENNINGTON:  I -- you know, these dates, we --
 4      who -- who am I to blow against the wind here?
 5              THE COURT:  That's okay.  It's okay.
 6              MR. BENNINGTON:  They're -- they're rationale.
 7      Let's do it.
 8              THE COURT:  Yeah.  And I guess the only thing that
 9      I would tell you is the way the process normally works is
10      that Judge Krieger will usually set the final pretrial
11      conference a couple months after the Summary Judgment.  And
12      so at a minimum what I would tell you is -- I would say you
13      should probably on a rolling basis need to start identifying
14      some deadlines of your experts just so that you can get all
15      those depositions done because there may be some fights about
16      702 and, you know, she's going to probably want to address
17      that at the final pretrial conference and so I would -- I
18      would take full advantage of that two-month period after
19      Summary Judgment and get all those expert depositions done
20      just so that you don't have that loose end hanging out there.
21              And then clearly -- clearly it's -- even any
22      remote discussion of settlement is premature and she's going
23      to have the final pretrial conference so I don't need to
24      worry about that.  You've resolved all of this other stuff
25      apparently so I'll just line through all of those disputes.
```

```
 1                 So then the only other thing I can tell you is
 2        that I will follow my usual procedure with respect to
 3        discovery disputes.  You may not file an opposed discovery
 4        motion in this case unless you first complete the following
 5        two steps:  1, before you file an opposed discovery motion
 6        you have to fully comply with the meet and confer obligation.
 7        2, before you file an opposed discovery motion you have to
 8        put -- put together a telephone conference call with me.  We
 9        will go on the record so there will be a transcript if
10        somebody wants to buy one and we'll essentially have a 7.1, a
11        meet and confer that I supervise.  At the end of that
12        discussion if there is still a dispute I will tell someone to
13        file a motion and I'll give you an expedited briefing
14        schedule so the motion gets decided as quickly as possible.
15        But don't -- don't file an opposed motion until you cover
16        both of those steps because, frankly, I suspect given the
17        caliber of the lawyers in this case I think if we just sit
18        down and talk through the problem more times than not we're
19        going to come up with a solution and then nobody has to spend
20        money writing briefs.
21                 Okay.  I think that's as much as we can do, but
22        questions, comments, concerns?
23                 MR. SHAHEEN:  Would you like us, Your Honor, to
24        clean this up, case dates?
25                 THE COURT:  No.  No.  It's on our system.  We'll
```

```
 1     make -- I'll make all those changes.  You guys don't have to
 2     do that.
 3               MR. BENNINGTON:  How do you want -- then do you
 4     want us to submit -- e-file the -- the protocol and the --
 5               THE COURT:  Yeah.  When you have the protocols --
 6     I mean, I think it's probably worth your while to have me
 7     sign them, certainly the protective order, and I would think
 8     probably even the e -- e-protocol --
 9               MR. BENNINGTON:  So would --
10               THE COURT:  -- the sentiment.
11               MR. BENNINGTON:  All right.
12               THE COURT:  Yeah.  Don't -- don't -- and nobody
13     needs to come back.  I'll read them.  If I've got a question
14     I'll put together a conference call.  I don't want anybody to
15     have to come all the way back here for that.
16               MR. BENNINGTON:  Okay.
17               THE COURT:  And I can't imagine this is going to
18     be a problem so I'm not going to worry about it.  Anything
19     else?
20               MR. BENNINGTON:  Thank you for --
21               THE COURT:  I think that's it.
22               MR. BENNINGTON:  -- inviting us over.
23               THE COURT:  Well, no.  Thank you.  I'm glad we
24     were able to get this done and -- and everybody can move
25     forward with the same degree of uncertainty that we had
```

```
 1    before.
 2             MR. BENNINGTON:  Thank you.
 3             THE COURT:  Thank you all.
 4             MR. BENNINGTON:  One of your fellow Sedona people
 5    would like to meet you.
 6             THE COURT:  Sure.
 7             MR. BENNINGTON:  The name is Trent Wall.  Go
 8    ahead.
 9             THE COURT:  Are you one of these tech guys that
10    he's describes in such disparaging terms?
11             MR. WALL:  Yes.
12             THE COURT:  Yeah.  I've never heard the phrase
13    tech guy spoken with such -- so --
14             (Whereupon, the within hearing was then in
15    conclusion at 3:05 p.m., on November 17, 2011.)
16
17             I certify that the foregoing is a correct
18    transcript, to the best of my knowledge and believe (pursuant
19    to the quality of the recording) from the record of
20    proceedings in the above-entitled matter.
21
22
23
24      /s/ Laurel Tubbs                         May 16, 2013
25           Signature of Transcriber                Date
```