DON SMITH - JANUARY 3, 2013

```
                                                        Page 1
       IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLORADO
  Case No. 11-cv-01611-MSK-CBS
  WESTERN CONVENIENCE STORES, INC., a Colorado
  corporation, WESTERN TRUCK ONE, LLC, a Colorado
  limited liability company,
       Plaintiffs,
  vs.
  SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,
       Defendant.
  vs.
  HOSSEIN AND DEBRA LYNN TARAGHI,
       Third-Party Defendants.
  ----------------------------------------------------

  DEPOSITION OF DON SMITH (VIA VIDEO CONFERENCE)
  January 3, 2013
  ----------------------------------------------------
              Deposition location:
              555-17th Street, Suite 3200
              Denver, Colorado
  APPEARANCES:

       KENNETH R. BENNINGTON, ESQ.
       BENNINGTON JOHNSON BIERMANN &
       CRAIGMILE, LLC
       370-17th Street, Suite 3500
       Denver, Colorado 80202
         and
       PHILIP W. BLEDSOE, ESQ.
       POLSINELLI SHUGHART, P.C.
       1515 Wynkoop Street, Suite 600
       Denver, Colorado 80202
            For the Plaintiffs.
```

```
                                                        Page 2
 1     ANTHONY J. SHAHEEN, ESQ.
       HOLLAND & HART, LLP
 2     555-17th Street
       Suite 3200
 3     Denver, Colorado 80202
 4          For the Defendant.
 5     The deposition of DON SMITH, called for
 6  examination by the Plaintiffs, was taken, via video
 7  conference, in the offices of HOLLAND & HART, LLP,
 8  555-17th Street, Suite 3200, Denver, Colorado,
 9  commencing at 8:30 a.m. on January 3, 2013, before
10  Patricia M. Wrede of Avery/Woods Reporting Service,
11  Inc., 455 Sherman Street, Suite 250, Denver, Colorado
12  80203, a Registered Professional Reporter and a
13  Notary Public in and for the State of Colorado,
14  pursuant to the Federal Rules of Civil Procedure.
15               ***************
```

```
                                                        Page 3
 1               INDEX OF EXAMINATION
 2                                            PAGE
 3  EXAMINATION BY MR. BENNINGTON                 4
 4
 5             INDEX OF EXHIBITS REFERRED TO
 6  EXHIBIT NO.                               PAGE NO.
 7  Deposition Exhibit No. 30                    28
       (Top 10 Purchasers)
 8  Deposition Exhibit No. 33                    39
       (Dillon Contracts)
 9  Deposition Exhibit No. 71                    17
       (February 2008 E-Mail String)
10  Deposition Exhibit No. 72                    19
       (March 2008 E-Mail String)
11  Deposition Exhibit No. 73                    20
       (March 2008 E-Mail String)
12  Deposition Exhibit No. 74                    21
       (May 2008 E-Mail String)
13  Deposition Exhibit No. 77                    34
       (September 2009 E-Mail String)
14  Deposition Exhibit No. 79                    36
       (November 2009 E-Mail String)
15  Deposition Exhibit No. 111                   26
       (June 2008 E-Mail String)
16  Deposition Exhibit No. 112                   33
       (September 2009 E-Mail String)
17  Deposition Exhibit No. 136                   17
       (2-21-08 Meeting Schedule)
```

```
                                                        Page 4
 1                  DON SMITH,
 2  being first duly sworn to state the truth, the whole
 3  truth and nothing but the truth, testified on oath as
 4  follows, Mr. Bledsoe not being present:
 5                  EXAMINATION
 6     Q.   (BY MR. BENNINGTON) Good morning,
 7  Mr. Smith.  As you know, my name is Ken Bennington.
 8  I'm an attorney for Western Convenience Stores.
 9  You're here to testify in a lawsuit brought in
10  Denver, Colorado against Suncor Energy U.S.A.  Do you
11  understand that?
12     A.   I do.
13     Q.   Okay.  There's a bit of a delay between
14  our speaking and when we hear you and vice versa.  If
15  at any point you're not sure what's going on or what
16  I'm asking, please stop us, because it doesn't do any
17  of us any good if we're confused as to the question
18  or answer or anything like that, and so if you'll
19  just let me know, we can straighten it out.  Is that
20  okay?
21     A.   Sounds good to me.
22     Q.   Okay.  You were at some point in your
23  career working for Suncor in Colorado.  Is that
24  right?
25     A.   That's right.
```

Exhibit 20       1 (Pages 1 to 4)

DON SMITH - JANUARY 3, 2013

Page 13

1  question.  On what company?
2       Q.   Well, on Suncor Energy U.S.A.
3            In other words, if he was proposing or
4  considering entering a particular contract, were
5  there accountants or economists who would look at
6  that proposal and try to figure out the long term
7  economic effect on Suncor Energy U.S.A. in terms of
8  its bottom line?
9       A.   Not that I recall.
10      Q.   Now, you're aware that Suncor contracts
11 will use -- depending on the contract may use various
12 versions of rack pricing.  You understand that,
13 right?
14      A.   Yes.
15      Q.   Okay.  Was there any guidance given to
16 Mr. Moss in terms of what rack price to agree to for
17 a particular buyer?  Guidance from you or anybody
18 else.
19      A.   No.
20      Q.   Do you know if anybody within the
21 company ever tried to analyze or whether they did
22 analyze the economic effect of choosing one rack
23 price, for instance Suncor Denver rack as opposed to
24 OPIS rack average for Denver or something like that?
25 Did anybody ever figure out what the economic effect

Page 14

1  of that was?
2       A.   I have no idea.
3       Q.   Do you know if there was -- do you
4  happen to know if there were any reasons that
5  Mr. Moss would use or agree to one rack price over
6  another?
7       A.   No.
8       Q.   Do you recall that during the time you
9  were in this job of director of sales and marketing,
10 Kroger, a U.S. entity called Kroger, a grocery chain
11 named Kroger, was a big customer -- or a customer of
12 Suncor Energy?
13      A.   I'm sorry.  What was your question?
14      Q.   Do you recall Kroger, a grocery store
15 chain --
16      A.   Yes.
17      Q.   -- being a customer?
18      A.   **I think they were a customer when I was**
19 **there, but I'm not sure of the exact timing of when**
20 **they were signed or anything like that.  I honestly**
21 **don't recall.**
22      Q.   And it would have been -- Kroger
23 operated actually -- to clarify this for you,
24 operated under two names that are relevant to this
25 lawsuit.  One is Dillon Stores, usually doing

Page 15

1  business as King Soopers or City Markets.  That's
2  one.  And the other is Mini Mart doing business as
3  Loaf 'N Jug, which is a chain of convenience stores.
4            Those names sound familiar to you at
5  all?
6       A.   Yes, I recognize those names.
7       Q.   Were you involved with Mr. Moss in
8  negotiating any contracts with those entities, namely
9  Kroger, Dillon or Mini Mart?
10      A.   No.
11      Q.   Do you recall that there was at least
12 one, perhaps two while you were stationed in
13 Colorado, RFP's, that's requests for proposal, that
14 came from Kroger or Dillon or Mini Mart?
15      A.   I don't recall one way or the other.
16      Q.   Do you have any knowledge as to whether
17 Suncor Energy U.S.A. entered into any long term
18 unbranded contracts with Kroger, Dillon or Mini Mart
19 during the time you were in Colorado?
20           Do you know whether they even -- that
21 even happened?
22      A.   No, I don't.  I don't recall.
23      Q.   Do you have a set of -- it looks like
24 you do, a stack of paper in front of you that was
25 sent --

Page 16

1       A.   Yes, I do.
2       Q.   -- probably yesterday, somebody printed
3  it out for you?
4       A.   Yeah.
5       Q.   I hope they're in some sort of order.
6  Each document has a -- you have copies, of course,
7  and it has an exhibit sticker usually in the lower
8  right-hand corner, and -- but first of all, if you
9  could find a document that is on a memo type of --
10 well, it looks like a meeting notice from Outlook.
11 It says subject Dave Wilson Kroger Mirage Lobby on
12 it, a single page.  It might be at the bottom of your
13 stack judging by -- it won't be stapled, it will be
14 all by itself.
15           MR. SHAHEEN:  It probably is, Don, at
16 the bottom, if they printed them the way that they
17 were sent to me.
18      A.   Okay.  Give me a minute, please.
19      Q.   (BY MR. BENNINGTON) Go ahead.  Take
20 your time.  It's all right.  We've got lots of time.
21           MR. SHAHEEN:  It's second from the
22 bottom, Don.
23           (Whereupon, Deposition Exhibit 136 was
24 marked for identification by the reporter.)
25      A.   Okay.  I've got it.

4 (Pages 13 to 16)