documents produced by Suncor, Ms. Shields did *not* review all of the relevant documents. Ex. 28, Bennington Decl. ¶¶ 3-5; Ex. 29 (see five highlighted documents not reflected in Ms. Shields' declaration. Ms. Shield's declaration omits 8,225,532 gallons of a total of 71,918,910 gallons of Suncor out-of-state Fuel purchases indicated by Suncor's own records.[27]

Second, Ms. Shields concedes that there were relevant out of state purchases of refined products in April 2011, which is during the price discrimination period. Although Ms. Shields does not quantify them, those purchases as reflected in the documents referenced by Ms. Shields alone amount to at the very least 9,240,000 gallons of Fuel (see Ex. 29 lines 10 and 11) and potentially as much as 45,654,000 gallons of Fuel (see *id.*, lines 10, 11, 12, 13, 15, 16, 22, 24, 26 and 27).

Third, Ms. Shields makes additional statements that are contradicted by the documents that she did review, *e.g.*, her statement that the Suncor transaction summaries "confirm that, from October 2009 through March 2011, Suncor did not acquire any" subPUL or subRUL "that was produced outside of Colorado." Motion Ex. AA (Doc. 185-30) at ¶¶ 3.a. and 3.c. The documents referenced at lines 18 and 20 of Exhibit 29 show that statement to be untrue. Those documents evidence nearly 4.1 million gallons of sub grade gasoline purchased from

---

[27] As Ms. Shields was not previously disclosed as a potential witness and her declaration raised issues never before asserted by Suncor and suggested that additional documents responsive to Plaintiffs' previously served discovery requests exist, Plaintiffs have requested supplementation pursuant to Fed. R. Civ. P. 26(e). To the extent Suncor produces additional documents demonstrating genuine issues as to the in commerce element, Plaintiffs will request to supplement this Response.