CHRISTOPHER WEHRLE - JANUARY 10, 2013

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation, WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

Plaintiffs,

vs.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

Defendant.

vs.

HOSSEIN AND DEBRA LYNN TARAGHI,

Third-Party Defendants.

------------------------------------------------

DEPOSITION OF CHRISTOPHER WEHRLE
January 10, 2013
CONTAINS HIGHLY CONFIDENTIAL TESTIMONY

------------------------------------------------

                Deposition location:
                555-17th Street, Suite 3200
                Denver, Colorado

APPEARANCES:

        KENNETH R. BENNINGTON, ESQ.
        BENNINGTON JOHNSON BIERMANN &
        CRAIGMILE, LLC
        370-17th Street, Suite 3500
        Denver, Colorado 80202

           and

EXHIBIT BB

CHRISTOPHER WEHRLE - JANUARY 10, 2013

Page 2

```
 1      PHILIP W. BLEDSOE, ESQ.
        POLSINELLI SHUGHART, P.C.
 2      1515 Wynkoop Street
        Suite 600
 3      Denver, Colorado 80202
 4           For the Plaintiffs.
 5      ANTHONY J. SHAHEEN, ESQ.
        HOLLAND & HART, LLP
 6      555-17th Street
        Suite 3200
 7      Denver, Colorado 80202
 8           For the Defendant.
 9  ALSO PRESENT: MICHAEL KORENBLAT, ESQ.
                  STEVEN EWING
10
11          The deposition of CHRISTOPHER WEHRLE,
12  called for examination by the Defendant, was taken in
13  the offices of HOLLAND & HART, LLP, 555-17th Street,
14  Suite 3200, Denver, Colorado, commencing at 9:37 a.m.
15  on January 10, 2013, before Patricia M. Wrede of
16  Avery/Woods Reporting Service, Inc., 455 Sherman
17  Street, Suite 250, Denver, Colorado 80203, a
18  Registered Professional Reporter and a Notary Public
19  in and for the State of Colorado, pursuant to the
20  Federal Rules of Civil Procedure.
21  ****************
```

Page 3

```
 1  INDEX OF EXAMINATION
 2                                          PAGE
 3  EXAMINATION BY MR. SHAHEEN                 4
 4
 5  INDEX OF EXHIBITS
 6  EXHIBIT NO.                             PAGE NO.
 7  Deposition Exhibit No. 30                  44
    (Customer List)
 8  Deposition Exhibit No. 31                  52
    (Western Contracts)
 9  Deposition Exhibit No. 137                 31
    (December 2009 E-Mail String)
10  Deposition Exhibit No. 138                 37
    (September 2009 E-Mail String)
11  Deposition Exhibit No. 139                 40
    (2-15-11 E-Mail, Wehrle to Landenberger)
12  Deposition Exhibit No. 140                 56
    (2-3-11 E-Mail, Hagen to Wehrle)
13  Deposition Exhibit No. 141                 57
    (Confirmation of Purchase/Sale Agreement)
14  Deposition Exhibit No. 142                 58
    (4-21-11 E-Mail, Hagen to Wehrle)
15  Deposition Exhibit No. 143                 62
    (7-19-11 E-Mail, Wehrle to Taraghi)
16  Deposition Exhibit No. 144                 63
    (Dispatch Sheet 7-29-11 through 8-1-11)
17  Deposition Exhibit No. 145                 64
    (Price Analysis)
18  Deposition Exhibit No. 146                 75
    (April 2010 E-Mail String)
19  Deposition Exhibit No. 147                 77
    (Notes of 5-8-11 Meeting)
20  Deposition Exhibit No. 148                 87
    (Credit Line Cuts)
21  Deposition Exhibit No. 149                 92
    (11-17-11 Letter, Holly Frontier to
22   Western)
    Deposition Exhibit No. 150                 95
23  (Info re Offen Pricing)
    Deposition Exhibit No. 151                 96
24  (SB Fuels Pricing Info)
    Deposition Exhibit No. 152                 96
25  (Western Petroleum Pricing Info)
```

Page 4

```
 1  CHRISTOPHER WEHRLE,
 2  being first duly sworn to state the truth, the whole
 3  truth and nothing but the truth, testified on oath as
 4  follows, Mr. Bledsoe not being present:
 5                    EXAMINATION
 6  Q.  (BY MR. SHAHEEN) Good morning,
 7  Mr. Wehrle. I'm Tony Shaheen. I represent Suncor.
 8  A.  Okay.
 9  Q.  Would you state your full name for the
10  record, please?
11  A.  Christopher Lee Wehrle.
12  Q.  It's my understanding from your
13  testimony at the preliminary injunction hearing that
14  you're the fuel manager for Western Convenience
15  Stores.
16  A.  Yes.
17  Q.  How long have you been the fuel
18  manager?
19  A.  Just over three years.
20  Q.  And starting in when?
21  A.  It was 9-9-09. September 9th, 2009.
22  That's an easy one to remember.
23  Q.  It is.
24  (Whereupon, Mr. Bledsoe entered the
25  room and there was discussion outside the record.)
```

Page 5

```
 1  Q.  Mr. Wehrle, as your lawyer, Ken
 2  Bennington, has told all of the Suncor witnesses, it
 3  doesn't do us any good if we don't understand each
 4  other, and I really don't do what you do, I mean, I
 5  don't buy fuel, I'm not really in this industry, so
 6  if I ask you a question that's confusing or you don't
 7  understand, please stop me and let's clarify.
 8  A.  Okay.
 9  Q.  And then just one definition I want to
10  use because this is confusing. When I talk about
11  just a discount, what I mean is the contract price,
12  that is, you know, typically in your case the Western
13  Convenience contracts were rack minus something.
14  That minus something is what I mean by discount.
15  When I'm talking about an off contract discount,
16  something special in addition, I will say off
17  contract discount. Is that okay with you?
18  A.  Yes.
19  Q.  That way -- because there's a lot of
20  confusion.
21  Did I understand correctly at the
22  preliminary injunction hearing that your job as fuel
23  manager is to get the best price you can for the gas
24  that you buy for Western Convenience?
25  A.  Part of it. It's for supply, you look
```

CHRISTOPHER WEHRLE - JANUARY 10, 2013

Page 74

1  depends on the pricing.
2  Q.  Is there a strategy or is there -- when
3  did Western Convenience do the blending?
4  A.  I don't know specific dates. Sometimes
5  you have to blend, like if refineries now only make
6  an 82-something octane, that's what unleaded fuel is,
7  and if you don't put ethanol it's not up to spec.
8  Ethanol brings it up to an octane to sell it at a
9  retail level.
10  Q.  Well, did Western Convenience blend,
11  for example, when the price for -- I'll call it for
12  the gasoline -- for gasoline was high and that by
13  blending it, it would get them a better price?
14  A.  Sometimes. If ethanol is cheaper than
15  gas, then if you blend 10 percent you can make it a
16  better price.
17  Q.  At any time --
18  A.  Right now for example, you don't -- if
19  you had clear gasoline that was 85 octane, you
20  wouldn't blend ethanol in it because it's 30 cents
21  more than gasoline; just sell clear gas.
22  Q.  There's a pretty good margin right now
23  on gasoline.
24  A.  It's never good enough.
25  Q.  But it's better than the summer months.

Page 75

1  A.  Yeah, it's better than sometimes.
2  Q.  At any point since you've been fuel
3  manager, did Western Convenience blend gasoline and
4  natural gas?
5  A.  No.
6  MR. SHAHEEN:  We're going to have to
7  get Steve back in.
8  (Whereupon, Mr. Ewing reentered the
9  room.)
10  (Whereupon, Deposition Exhibit 146 was
11  marked for identification by the reporter.)
12  Q.  I've handed you what's been marked as
13  Exhibit 146.
14  A.  M-hm.
15  Q.  It's an e-mail from the OPIS
16  administrator to you, correct?
17  A.  M-hm.
18  Q.  April 7, 2010.
19  Is the handwriting on this yours?
20  A.  M-hm.
21  Q.  So --
22  MR. BENNINGTON:  Say yes or no.
23  A.  I'm sorry. Yes.
24  MR. BENNINGTON:  The answer is yes?
25  THE DEPONENT:  Yes.

Page 76

1  Q.  (BY MR. SHAHEEN) It says price for
2  natural gas 4-7-10, 1.95.76.
3  Is that your handwriting?
4  A.  Yes.
5  Q.  What are you trying to figure out here
6  as reflected on Exhibit 146?
7  A.  I don't remember what this would be.
8  Q.  But it's your testimony anyway that
9  during the time you've been at Western Convenience,
10  Western Convenience hasn't blended using natural gas.
11  A.  No, we haven't.
12  Q.  At least it appears from Exhibit 146
13  that at least you were considering what the price
14  difference would be if you blended with natural gas.
15  Is that a fair conclusion?
16  A.  I don't remember.
17  Q.  Well, why would you be writing down
18  price for natural gas if you weren't thinking about
19  whether or not you should blend with natural gas?
20  A.  I don't know. I don't remember.
21  Q.  Do you know the last time that Western
22  Convenience bought natural gas?
23  A.  Not since I've been there.
24  Q.  Am I correct, Mr. Wehrle, that in
25  terms -- that -- well, let me back up.

Page 77

1  I remember unmistakably at the
2  preliminary injunction hearing at least three times
3  you said you had no part of the retail side of the
4  business. Is that still correct?
5  A.  That's still correct.
6  Q.  And so if I were to ask you about how
7  the prices were set at the gas stations, you wouldn't
8  know about that.
9  A.  No.
10  Q.  And if I asked you about price surveys
11  that were done, you wouldn't know about that either.
12  A.  No.
13  Q.  It would be Mr. Taraghi I should be
14  asking?
15  A.  Yes.
16  (Whereupon, Deposition Exhibit 147 was
17  marked for identification by the reporter.)
18  Q.  I've handed you what's been marked as
19  Exhibit 147. Can you tell me what this is?
20  MR. BENNINGTON:  Objection. I don't
21  know how you got this. First I'd like you to ask him
22  who it was prepared by and for whom it was prepared.
23  My belief is this is privileged and it was
24  inadvertently produced. If that is the case, of
25  course, that will --