**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,

    Plaintiffs,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

    Defendant,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

    Third-Party Defendants.

**REVISED PROPOSED FINAL PRETRIAL ORDER**

**1.  DATE AND APPEARANCES**

An initial Final Pretrial Conference occurred October 30, 2013.  Plaintiff and Third-Party Defendants were represented by Kenneth R. Bennington and Kathleen E. Craigmile of Bennington Johnson Biermann & Craigmile, LLC and Philip W. Bledsoe of Polsinelli, PC. Defendant was represented by Anthony J. Shaheen of Holland & Hart LLP and by William L. Monts, III of Hogan Lovells LLP.

A second Pretrial Conference was held on November 20, 2013, at which Plaintiff and Third-Party Defendants were represented by Kenneth R. Bennington and Kathleen E. Craigmile of Bennington Johnson Biermann & Craigmile, LLC and Philip W. Bledsoe of Polsinelli, PC. Defendant was represented by Anthony J. Shaheen of Holland & Hart LLP.  The additional Pretrial Conference was held in order to give the parties the opportunity to confer and develop a

more comprehensive set of stipulations. This Proposed Final Pretrial Order reflects those additional stipulations and certain reductions in witnesses, witness testimony and the estimated length of trial.

## 2. JURISDICTION

This Court has subject matter jurisdiction over Plaintiff's Robinson-Patman Act claim pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337(a) and 15 U.S.C. § 13(a). The Court has supplemental jurisdiction over Plaintiff's claim pursuant to C.R.S. 6-2-108, *et seq.*, and Defendants' counterclaims and third-party claims pursuant to 28 U.S.C. § 1367.

## 3. CLAIMS AND DEFENSES

Pursuant to the Court's Opinion and Order Granting in Part and Denying in Part Motions for Summary Judgment entered September 5, 2013, # 251 (hereinafter "Summary Judgment Order"), the following claims will proceed to trial as set forth in the Summary Judgment Order: Plaintiff's Robinson-Patman Act claim; Plaintiff's Colorado Unfair Trade Practices Act claim; Defendant's counterclaim for breach of contract; and Defendant's third-party claim of breach of guaranty. The information with respect to these claims and relevant affirmative defenses as required by the Court's Trial Preparation Order-Civil is contained at **Exhibit 1**.[1]

## 4. STIPULATIONS

The parties have reached the following stipulations for trial. These stipulations are for the purposes of this case only and are not made for the purpose of any other matter.

---

[1] The statements of claims and defenses are based on those claims that the Court determined will proceed to trial in its Summary Judgment Order and its determinations of law and fact set forth in the Summary Judgment Order. By submitting these statements and this Final Pretrial Order, no party waives its, his or her right to appeal any otherwise appealable determination in this action.

1.     Plaintiff Western Convenience Stores, Inc. ("Western") is a Colorado corporation with its principal place of business in Centennial, Colorado.

2.     Defendant Suncor Energy (U.S.A.) Inc. ("Suncor") is a Delaware corporation with its principal place of business in Colorado.

3.     Western is in the business of operating convenience stores which sell as principal products gasoline and diesel fuel.

4.     Suncor is in the business of refining and selling gasoline and diesel fuel and other petroleum products.

5.     Suncor operates the only petroleum refineries in Colorado, a "west plant" and an "east plant" on either side of Brighton Boulevard in Commerce City. Suncor purchased the refineries from ConocoPhillips Company and an affiliate of Valero Energy Corporation in 2003 and 2005, respectively.

6.     During the time relevant to this action, Suncor operated the only petroleum refineries in Colorado.

7.     Suncor sells both unbranded fuel products, which contain additives required to meet minimum government specifications, and branded fuel products (specifically, Shell® and Phillips 66® gasoline), which contain in addition to the government requirements certain additives specified by Shell or Phillips.

8.     This case involves only Suncor's sale of unbranded gasoline or diesel fuel.

9.     Dillon Companies, Inc., d/b/a King Soopers, Inc., and City Market (together "Dillon") and Mini-Mart, Inc., d/b/a Loaf 'N Jug ("Loaf 'N Jug") are subsidiaries of The Kroger Company (collectively, "Kroger").

10. Western operates 39 stores in Colorado and three stores in Nebraska that sell gasoline and/or diesel fuel.

11. The period of time for which Western seeks damages in this case is from October 2009 through May 2011 ("Damages Period").

12. Suncor sold gasoline and diesel to both Western and Kroger during the Damages Period.

13. During the Damages Period, Suncor was engaged in commerce in more than one state.

14. Retail fuel sales is a competitive business.

15. A barrel of gasoline or diesel is equivalent to 42 gallons.

16. A standard truckload of gasoline contains approximately 8,500 gallons and a standard truckload of diesel contains approximately 7,500 gallons.

17. Western and Suncor entered into a Master Purchase and Sale Agreement ("Master Agreement") dated January 17, 2007 that, among other matters, governed the purchase and sale of petroleum products between Western and Suncor.

18. Thereafter, Western and Suncor executed and/or agreed to a number of Confirmation of Purchase/Sale Agreements pursuant to the Master Agreement ("confirmations"), some of which were not executed, which set forth volumes of and prices for gasoline and/or diesel to be purchased by Western from Suncor.

19. In 2007, pursuant to a confirmation, Western and Suncor agreed to purchase and sell gasoline for a one year period from January 1, 2007 through December 31, 2007. The price in the confirmation for 2007 was based on the Suncor unbranded rack price less a specified amount.

4

20. On November 27, 2007, Steve Moss, Manager Unbranded Sales for Suncor, sent Hossein Taraghi an email attaching a proposal for renewing the 2007 one year contract between Suncor and Western.

21. Western and Suncor executed a one-year confirmation on or about January 1, 2008 for Western's purchase of gasoline and diesel.

22. The 2008 confirmation was the last one-year confirmation between Western and Suncor for the sale and purchase of gasoline and diesel. Thereafter, Western purchased gasoline and diesel based on one-month confirmations or unwritten agreements, with the exception of February 1, 2011 – April 30, 2011, during which Western purchased fuel pursuant to a three-month confirmation.

23. Suncor has not directly sold Western any fuel since May 25, 2011.

24. On February 11, 2008, Kroger sent Suncor a request for proposal ("RFP"), inviting Suncor to submit a bid to supply gasoline and diesel in Grand Junction, Colorado, starting May 1, 2008 for twelve months. Kroger accepted Suncor's proposal.

25. On March 13, 2008, Kroger sent another email inviting Suncor to submit a proposal to supply gasoline and diesel to King Soopers in Denver. Suncor responded, offering to sell the E-10 and clear gasolines at the OPIS Rack Average price less $■■[2] per gallon. Suncor subsequently increased the reduction to $■■ per gallon, telling Kroger that is "the best pricing we can do, this reflects the current market and is by far Suncor's best pricing offered in the market." Kroger did not accept this proposal.

---

[2] The parties have redacted the Kroger pricing and volume data in the same manner as was directed at the October 30 initial pretrial conference for the filing of summary judgment motions and exhibits. Kroger has been provided a copy of the unredacted version of this Revised Proposed Final Pretrial Order and has been asked to stipulate to its refiling in unredacted form.

5

26.     On July 17, 2009, Kroger sent Suncor an "informal RFP" inviting it to bid to supply E-10 gasolines and diesel for King Soopers in Denver and Colorado Springs. Suncor responded by offering a price for E-10 gasolines at the OPIS Rack Average price less $■■ cents per gallon. Suncor won the bid, starting October 1, 2009 through September 30, 2010 (the "King Soopers 2009 contract").

27.     On November 25, 2009, Kroger sent Suncor an RFP to supply gasoline to MiniMart, d/b/a Loaf 'N Jug, starting February 2010. On December 14, Suncor responded, bidding a price of the OPIS Rack Average price less $■■■■ for E-10 gasolines and less $■■■■ per gallon for diesel. Suncor won the bid and entered into a one year contract starting February 1, 2010 and ending January 31, 2011.

28.     Afterwards, Suncor and Kroger agreed to lower the price in the King Soopers 2009 contract from the OPIS Rack Average price less $■■ per gallon to $■■■■ per gallon. The lowered price began on or about February 1, 2010.

29.     Pricing for the King Soopers and Loaf 'N Jug contracts for gasolines and diesel was all based on the OPIS Rack Average price, and the differentials received were all reductions off the OPIS Rack Average.

30.     During the Damage Period, pricing for Western's confirmations for gasolines and diesel was based on the Suncor rack price, and the differential received was a reduction off Suncor's rack price.

31.     Suncor also had contracts/confirmations with FMI and with Truman Arnold Companies ("TAC") for the purchase and sale of fuel.

32. The parties stipulate that there is a reliable foundation for and stipulate to the admissibility of the relevant contracts and confirmations between Suncor and Western, between Suncor and Kroger, and between Suncor and FMI or TAC.

33. Both Western and Kroger prepared retail price surveys of competitive fuel retailers.

34. Western and Suncor stipulate to the accuracy and validity of the data produced by Western, Suncor, and Kroger in this litigation and relied on by the Western and Suncor experts to reach the conclusions stated in their written reports. The parties disagree as to the statistical analyses and conclusions based on that data.

35. From some time in 2006 until February 2009, Western purchased clear gasoline from Suncor which it blended with natural gasoline and ethanol at two terminals in Dupont and Fountain, Colorado, operated by the Rocky Mountain Pipeline System, LLC ("RMPL").

36. Kroger and Western purchased fuel from Suncor at primarily the following three terminal locations: Commerce City, Fountain and Grand Junction.

37. When Kroger and Western purchased the same type of gasoline product from Suncor on the same dates at the same terminals, the parties do not dispute that such gasoline product was of like grade and quality.

38. When Kroger and Western purchased the same type of diesel product from Suncor on the same dates at the same terminals, the parties do not dispute that such diesel product was of like grade and quality.

39. During the Damages Period, Western also purchased gasoline and diesel from other suppliers, including third parties ("middlemen") who purchased the fuel from Suncor and then resold it to Western and other retailers at Suncor's terminals or at terminals owned by others.

40. Suncor was not responsible for transporting fuel for either Western or Kroger and did not transport fuel for either of them.

41. During the Damages Period, Suncor gave Western its standard pricing for unbranded customers for gasoline and diesel. The pricing to Western was based on the daily Suncor Rack price less a stated cents per gallon (cpg) amount for the particular grade of fuel and terminal.

42. Suncor's prices to Kroger were not the result of a functional discount.

43. From time to time during the Damages Period, Suncor offered customers, including Western, various special discounts off the agreed contract price for gasoline and diesel fuel.

44. Suncor did not disclose to either Western or Kroger the prices paid by the other.

45. Kroger considers the prices it paid to Suncor for fuel to be a competitive secret.

46. In this action, Kroger designated the prices it paid for fuel from Suncor as "Secret" under the Supplemental Protective Order (Doc. 49).

47. In this action, Suncor designated the prices Kroger paid Suncor for fuel as "Highly Confidential," pursuant to the Protective Order (Doc 140).

48. Gasoline that contains ethanol is chemically different than gasoline that does not contain ethanol.

49. Clear gasoline is gasoline that does not contain any ethanol. E-10 is gasoline that contains approximately10% ethanol.

50. Suncor did not produce ethanol at its Commerce City facilities. Approximately one-third of the ethanol for its E-10 and other ethanolized products was produced by suppliers outside of Colorado.

51.     When Western and Kroger took delivery of fuel purchased from Suncor at the RMPL Dupont and Fountain terminals, the fuel came from common storage tanks in which fuel refined by Suncor may or may not have been mixed with fuel refined by out of state suppliers.

52.     The table below reflects the volume, in gallons, of purchases by Western and Kroger from Suncor at the various terminals during the Damages Period:

| Suncor Total Sales | Dillon | MM | Kroger Total | WCS |
|---|---|---|---|---|
| Suncor East Plant Terminal | | | | 5,247,286 |
| CFM Fruita Terminal (GJ) | | | | 903,609 |
| Suncor Grand Junction Products Terminal | | | | 2,110,929 |
| Plains RMPL Dupont Terminal | | | | 5,846,013 |
| Plains RMPL Fountain Terminal | | | | 14,251,129 |
| Suncor West Plant Terminal | | | | 36,760,802 |
| Total | | | | 65,119,768 |

53.     Premium E-10, Midgrade E-10 and Regular E-10 are chemically different than subPUL or subRUL.

54.     Western and Kroger compete with each other, and with other retailers, for fuel sales in certain markets in Colorado.

55.     The following Western stores compete with one or more Kroger stores:

| Store | Address | City |
|---|---|---|
| 106 | 20421 E. Hwy 24 | Woodland Park |
| 109 | 3505 S. Kipling Parkway | Lakewood |
| 112 | 1351 Bridge Street | Brighton |
| 113 | 227 W. Filmore Street | Colorado Springs |
| 116 | 11515 N Hwy 83 | Parker |
| 117 | 416 Hwy 87 | Walsenburg |
| 119 | 1331 W. Eisenhower | Loveland |
| 121 | 356 Bent Ave | Las Animas |
| 122 | 1228 Royal Gorge Blvd | Canon City |
| 124 | 2525 Broadway | Grand Jct. |
| 125 | 2998 North Ave. | Grand Jct. |
| 126 | 938 S. Townsend Ave. | Montrose |
| 127 | 1502 Howard St. | Delta |

| Store | Address | City |
|---|---|---|
| 128 | 2507 E. Platte Avenue | Colorado Springs |
| 129 | 1500 N. Main St. | Longmont |
| 130 | 1113 W. Drake Rd. | Fort Collins |
| 133 | 123 West Cranston | Fowler |
| 134 | 1905 West Uintah | Colorado Springs |
| 135 | 3201 Lake Ave. | Pueblo |
| 136 | 2775 Briargate Blvd. | Colo. Spgs. |
| 138 | 382 East Mountain Ave. | Ft. Collins |
| 140 | 12702 Lowell Blvd. | Broomfield |
| 141 | 11000 HWY 50 | Poncha Springs |
| 143 | 2714 Thatcher Ave | Pueblo |
| 146 | 1430 Highway 50 | Delta |
| 147 | 1242 S Prairie Ave | Pueblo |
| 149 | 500 South Lincoln Street | Steamboat Springs |

56.     Suncor notified Western on May 23, 2011 that it was suspending all sales of gasoline and diesel to Western effective immediately.

57.     Western did not make payment for the fuel it took between May 9 and May 25, 2011.  The Suncor invoices that were not paid total $3,755,141.95.

## 5.  PENDING AND ANTICIPATED MOTIONS

A motion by Kroger for an award of attorneys' fees and costs associated with document and deposition subpoenas (Doc. 226) is fully briefed and pending before the Magistrate Judge.

As directed by the Court on October 30, 2013, the Court will not entertain written motions in limine.  Suncor may move during trial to exclude specific aspects of the testimony of one of Western's experts, Keith Leffler, principally on the grounds that the testimony is not relevant, is cumulative and usurps the role of the Court.

As stated below under *Special Issues*, it is Plaintiff Western's understanding that trial will be a public proceeding at least to the extent that Western and its employees will not be excluded

10

during the presentation of evidence which is subject to the Supplemental Protective Order (Doc. 171). Should that issue remain in question, Western intends to move for an order that neither Mr. Taraghi (in his capacity as owner and corporate representative of Western and as a Third-Party Defendant) nor employees of Western will be excluded except as may otherwise be provided for under Fed. R. Civ. P. 43(a) or Fed. R. Evid. 615.

### 6.  WITNESSES

The joint list of witnesses as required by the Court's Trial Preparation Order-Civil is contained at **Exhibit 2.**

### 7.  EXHIBITS

The joint list of exhibits as required by the Court's Trial Preparation Order-Civil is contained at **Exhibit 3.**

### 8.  DISCOVERY

Discovery has been completed.

### 9.  SPECIAL ISSUES

Kroger has asserted privacy interests in certain information that has been produced in discovery. However, it remains Plaintiff Western's understanding, based on guidance on this issue from the Magistrate Judge, that trial in this case will be a public proceeding and that the owner of Western, Mr. Taraghi, will not be excluded from trial when testimony addresses matters such as the Kroger pricing and volumes that are subject to redaction. *See* Fed. R. Civ. P. 43(a), 77(b); Fed. R. Evid. 615. If that understanding is incorrect or in doubt, Western will file a pretrial motion on that issue.

The Court ruled on October 30, 2013 that it will not admit into evidence the experts' reports (Trial Exhibits 400-408) in addition to the experts' live testimony.

The Court will entertain trial briefs, including on the legal issues underlying Western's statutory claims and its affirmative defense of voidness of the Master Agreement, as being against public policy. The briefs, however, may not present argument but should only identify cases that the parties would like the Court to read. The parties are free to make argument from those cases during trial.

### 10. SETTLEMENT

a. Counsel for the parties met in person on October 20, 2011 and on September 24, 2013 to discuss in good faith the settlement of the case.

b. The participants in the settlement discussions included counsel for both parties and a party representative for Suncor at the October 20, 2011 discussion.

c. The parties were promptly informed of all offers of settlement.

d. Counsel for the parties do not intend to hold future settlement conferences.

e. It appears from the discussion by all counsel that there is no possibility of settlement.[3]

---

[3] Plaintiff and Third-Party Defendant's statement: No offers of settlement have been made. Western and Mr. Taraghi are willing to engage in further settlement efforts. Western and Mr. Taraghi wish to again raise the difficulty of evaluating or even discussing settlement when the vast bulk of discovery in this case has been designated Highly Confidential or Secret (i.e., attorneys' and experts' eyes only) by both Suncor and Kroger. This issue has been the subject of several motions relating to access by Western and Mr. Taraghi to data that is now more than two years old; however, the secrecy imposed by the Supplemental Protective Order (Doc. 140) still prevents Western and Mr. Taraghi from understanding substantial aspects of Western's case against Defendant Suncor. Western and Mr. Taraghi have been and remain willing to enter into settlement discussions, but remain concerned that they cannot effectively or adequately do so

12

     f.    Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the Court or by order of the Court to prevent manifest injustice.   The pleadings will be deemed merged herein.    This Final Pretrial Order supersedes the Scheduling Order.    In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

Trial is to the Court at the Alfred A. Arraj United States Courthouse, Courtroom A901. The estimated length of trial is eight days.

DATED this _____ day of _____, 2013.

                                          BY THE COURT

                                          United States District Judge

---

without access to key facts and analysis, in particular, full review of the parties' expert reports and ability to discuss all aspects of the reports with Western's experts and counsel.

13

APPROVED:

s/ Kenneth R. Bennington                s/ Anthony J. Shaheen

Kenneth R. Bennington                   Anthony J. Shaheen
Kathleen E. Craigmile                   HOLLAND & HART, LLP
Adam F. Aldrich                         555 17th Street, Suite 3200
BENNINGTON JOHNSON BIERMANN             Denver, CO 80202
& CRAIGMILE, LLC                        Telephone: (303) 295-8000
370 17th Street, Suite 3500             ajshaheen@hollanhart.com
Denver, CO 80202
Telephone: (303) 629-5200               J. Robert Robertson
krb@benningtonjohnson.com               William L. Monts III
kec@benningtonjohnson.com               HOGAN LOVELLS US LLP
afa@benningtonjohnson.com               555 Thirteenth Street, NW
                                        Washington, D.C. 20004
Philip W. Bledsoe                       Telephone: (202) 637-5600
Joseph T. VanLandingham                 robby.robertson@hoganlovells.com
Polsinelli PC                           william.monts@hoganlovells.com
1225 Seventeenth Street, 29th Floor
Denver, CO 80202-5529
Telephone:  (303) 572-9300              *Attorneys for Defendant*
pbledsoe@polsinelli.com                 *Suncor Energy (U.S.A.) Inc.*

*Attorneys for Plaintiff and Third-Party*
*Defendants*

14