**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,

      Western/Counter Defendant,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

      Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

      Third-Party Defendants.

_____

**RESPONSE TO PLAINTIFF'S MOTION FOR LIMITED DISCLOSURE OF CERTAIN
"SECRET" DISCOVERY MATERIALS IN ADVANCE OF MARCH 17, 2014 TRIAL BY
INTERESTED NON-PARTY DILLON COMPANIES, INC.**
_____

      Interested Non-Party Dillon Companies, Inc. ("Dillon"), by and through its

attorneys, Montgomery Little & Soran, P.C., respectfully submits this Response to

Plaintiff Western Convenience Stores, Inc.'s ("Western") Motion for Limited Disclosure

of Certain "Secret" Discovery Materials in Advance of March 17, 2014 Trial (Doc. #269).

## SUMMARY OF RESPONSE

1.      This is Western's fifth motion requesting to give Mr. Hossein Taraghi ("Mr. Taraghi") access to Dillon's trade secrets which Mr. Taraghi is not authorized to view under the Protective Order (Doc. #49) and Supplemental Protective Order (Doc. #140). As detailed herein, Magistrate Judge Shaffer and this Court have already rejected four prior attempts.

2.      Magistrate Judge Shaffer previously denied two identical motions by Western on June 25, 2012 (Doc. #84) and January 28, 2013 (Doc. #180).  Western did not appeal these orders under F.R.C.P. 72.  During a subsequent hearing on July 22, 2013, after Western had filed what amounted to another identical motion (*See* Doc. #193), Magistrate Judge Shaffer warned that the Court may award fees and costs against Western under F.R.C.P. 37(a)(5).  Transcript (Doc. #250), pp. 40-43.

3.      On September 5, 2013, this Court resolved the third motion (Doc. #193) with its Order dated September 5, 2013 (Doc. #251) (as clarified by the Court during the October 30, 2013 pre-trial conference) regarding redacting the exhibits to the motion for summary judgment.   *See* Doc. #251, pp. 41 to 47.  In that Order, the Court ordered Dillon's trade secret information to be redacted from the summary judgment exhibits and the remainder to be disclosed to the public (as well as Mr. Taraghi).

4.      Dissatisfied with the Court's Order, towards the end of the October 30, 2013 pre-trial conference, Western asked a fourth time to provide Dillon's trade secrets to Mr. Taraghi.  The Court responded that Western should try to narrow any disputed

facts involving Dillon's trade secrets and try to stipulate concerning what information Mr. Taraghi could see to allow him to make an informed decision.  See Transcript of October 30, 2013 Hearing, Exhibit A, page 29, lines 11-17.

5.      Notwithstanding the Court's instructions, Western's fifth motion (Doc. #269) does not attempt to significantly narrow the information Western seeks to disclose to Mr. Taraghi.  Western has not provided Dillon with copies of the trial exhibits that Western apparently wants to share with Mr. Taraghi and Dillon is left to guess regarding what the trial exhibits will be.  Further, the motion apparently seeks to provide access to more than just the trial exhibits to Mr. Taraghi.  While Western's motion excludes about 4,000 pages of marketing studies that Dillon produced to Western in response to Western's subpoenas (*see* Exhibit E, page 2, chart of documents Dillon produced to Western), this would still leave approximately 94,000 pages of Dillon's trade secrets that Dillon produced to Western that Western apparently wants to provide to Mr. Taraghi.

6.      Because Western's motion flies in the face of Magistrate Judge Shaffer's prior Orders and the Court's own Orders, it should be denied on its face.  However, if the Court decides to consider Western's fifth motion on its merits, which it should not, then the motion should still be denied for several reasons.  First, the trade secrets Western wants to show to Mr. Taraghi are not competitively stale.  Magistrate Judge Shaffer made extensive findings that the trade secrets continue to constitute trade secrets notwithstanding their age because the pricing methodologies are still used and would be valuable to competitors.  Transcript of Hearing on January 28, 2013 (Doc.

3

#180) at 32:4-5, 32: 19-20, 33:18-20, 34:14, 38:18-39:1 and 46:3-4.  Dillon's employees, who work in the retail fuel industry, recently re-affirmed these facts via amended and restated declarations on October 3, 2013 (Doc. #253-14) and October 14, 2013 (Doc. #257-1).

7.       Second, Magistrate Judge Shaffer found that Western did not need to show the information to Mr. Taraghi because Western's experts could adequately present their case without Mr. Taraghi's input.  Mr. Taraghi already has redacted versions of the exhibits to the motions for summary judgment (including numerous expert reports) pursuant to the Court's order (Doc. #251) regarding same.  Western has not shown why it cannot prepare Mr. Taraghi for trial using these redacted documents.

8.       Third, Western is trying to undo the provisions of the Supplemental Protective Order (Doc. #140) that Western agreed to and Dillon relied upon in producing its trade secrets to a direct competitor (Western) notwithstanding Western's promises to abide by same.  Western's request to expose Dillon's trade secrets to Mr. Taraghi (and even the world) in defiance of its own promises and ignorning Court assurances should be rejected by the Court.  If the Court permitted Western to renege on the protective orders then non-parties in other matters would be discouraged from obeying subpoenas out of fear that protective orders offer no real protection.

4

## **BACKGROUND**

*Introduction*

9.      In this case, Western alleges that Defendant Suncor Energy (U.S.A.), Inc. ("Suncor") violated the Robinson-Patman Act, 15 U.S.C. § 13(a).  Specifically, Western claims that Suncor sold petroleum products to a number of Western's competitors, including Dillon, at prices lower than the prices Western paid Suncor for petroleum products of like grade and quality.  *See generally*, Amended Complaint (Doc. #4).

10.      On March 12, 2012, Magistrate Judge Shaffer entered a protective order (Doc. #49) including an attorney's eyes only provision.  Upon information and belief, Suncor produced several thousand pages of information to Western including Dillon's trade secrets, without Dillon's consent, under the provisions of the original Protective Order.  Because Suncor designated several of the documents as "Highly Confidential" under the attorney's eyes only provision of the Protective Order, Mr. Taraghi was not able to see these documents.

*First Motion to Re-Designate*

11.      On May 21, 2012, Western filed a Motion Challenging Defendant's Designation of Certain Documents and Data as "Highly Confidential" Pursuant to the Protective Order ("Western's First Motion to Re-Designate") (Doc. #59).  This was the first of several attempts by Western to have Mr. Taraghi view restricted documents without authorization under the original Protective Order (Doc. #49) and the Supplemental Protective Order (Doc. #140).

12.     On June 14, 2012, Suncor filed a response (Doc. #72) to Western's First Motion to Re-Designate including a declaration (Doc. #72-1) from one of Suncor's employees, Steven Ewing, stating, among other things that: (1) the fuel industry is extremely competitive; (2) pricing information is kept in strict confidence pursuant to numerous confidentiality agreements; and (3) Western could use the historical pricing information for making current fuel purchasing decisions to its competitive advantage. *See* Doc. #72-1 (declaration of Steven Ewing).  On June 25, 2012, Magistrate Judge Shaffer held a hearing during which he denied Western's Original Motion to Re-Designate.  *See* Doc. #126 (transcript of June 25, 2012 hearing); Doc. #84 (minute entry of hearing on June 25, 2012).

*Western's Assurances of Compliance with Protective Orders*

13.     On June 11, 2012, in response to Dillon's motion to quash a Western subpoena[1], Western represented that: "Even if the Court determines that the materials deserve protection, the trade secrets may be designated 'Highly Confidential'  pursuant to the Protective Order *such that they cannot be disclosed to Plaintiffs' representatives.*" *See* Response to Motion to Quash (Doc. #71) at p. 2 (emphasis added).  Later in their Response, Western quoted from the Protective Order, chiding Dillon for ignoring it and unequivocally asserting: "A Highly Confidential designation prevents the Plaintiffs from

---

[1] Dillon is not a party to this action.  Dillon became an interested non-party in this case on April 26, 2012, when Western served Dillon, a direct competitor, with a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises (Doc. #57-1) and Dillon thereafter filed a motion to quash same.  Doc. #57.

disclosing any of Dillon's materials to Plaintiffs' corporate representatives." *Id.* at 4-5. Finally, Western concluded by assuring the Court that "by the explicit language of the Protective Order, Dillon is protected." *Id.* at 6.

14.    On October 3, 2013, Western's counsel stated during a hearing: ". . . [W]hatever [is in the studies responsive to Request No. 10 of the First Subpoena] is likely to be subject to a trade secret argument, which takes us back to we've got a protective order.  And there's no point in repeating it.  We've always believed and the Court has suggested and stated unequivocally that this can be protected." Transcript of October 3, 2012 Hearing (Doc. #136), p. 12, lines 7-13.

15.    On October 17, 2012, Western voluntarily entered into the Supplemental Protective Order (Doc. #140), which includes an attorney's eyes only provision withholding documents designated "Highly Confidential" and "Secret" from Mr. Taraghi. Western said that this "will take care of everybody's concerns." *See* Transcript of January 28, 2013 Hearing (Doc. #180) at 30:17-22 and 31:2-7.  As Magistrate Judge Shaffer noted, Western was "perfectly willing to operate on the attorneys'-eyes-only basis." *Id.* at 31:4-7.

*Second Motion to Re-Designate*

16.    Only two months later, after Dillon had produced documents including Dillon's trade secrets to Western subject to the Supplemental Protective Order, Western sought to undo the very same protections upon which Dillon relied.  During a status conference on December 12, 2012, Western discussed filing a second motion to re-

7

classify "secret" documents that Dillon produced under the Supplemental Protective Order (Doc. #140), to a lower designation so that Mr. Taraghi could view them.  *See* Doc. #197, transcript of hearing.  After hearing Western's request, Magistrate Judge Shaffer commented, "I don't necessarily hear a rationale based on need so much as . . . an expression of desire."  Doc. # 197, transcript, page 13, lines 4-5.

17.     Undeterred, on December 18, 2012, Western filed a second motion (Doc. #153) ("Second Motion to Re-Designate") challenging Suncor and Dillon's designation of discovery material under the Supplemental Protective Order (Doc. #140) so that Western could provide it to Mr. Taraghi.

18.     On January 11, 2013, Suncor filed a response (Doc. #164) to Western's Second Motion to Re-Designate (Doc. #153).  Dillon also filed a response (Doc. #165). Dillon's response included declarations from two Dillon employees[2] concerning why the documents should remain classified as "Secret" under the Supplemental Protective Order (Doc. #140).  These Dillon employees explained that the pricing materials include Dillon's trade secret information that: (A) is held in strict confidence; (B) was obtained and developed by Dillon at significant time and expense to Dillon; (C) is used in Dillon's current analysis and calculations; (D) is valuable to Dillon and benefits Dillon economically; and (E) would be of value to a competitor.  See Giannola Sup. Dec. (Doc. #165-1) at ¶¶ 7-13; Thiessen Dec. (Doc. #165-2) at ¶¶ 8-19.  Accordingly, even though

---

[2] On January 25, 2013, Dillon submitted a declaration from a third Dillon employee, Ed Sharpe, in support of Dillon's response.  Doc. #173.

some of the Pricing Materials date to 2009, they still include Dillon's trade secrets.  *Id.*
Dillon continues to rely upon its historical pricing data in making current business
decisions regarding its retail fuel operations[3].  *Id.*

19.     On January 28, 2013, Magistrate Judge Shaffer held a hearing
concerning, among other things, Western's Second Motion to Re-Designate.  See
Hearing Transcript (Doc. #180).    On pages 19-26 of the hearing transcript, Magistrate
Judge Shaffer distinguished *Innovatier v. Cardxx, Inc.*, 2008 U.S. LEXIS 94560 (D.
Colo. 2008),  upon which Western continues to rely, because, among other things,
Dillon and Western are direct competitors and Mr. Taraghi was not involved with, or
necessary to explain, the exchange of the protected information at issue.  *See* Doc.
#180, pp. 19-26.

20.     Instead, Magistrate Judge Shaffer found that Dillon had met its burden
regarding trade secrets, and that the burden shifted back to Western to show a need for
disclosing the trade secrets to Mr. Taraghi.  Doc. #180, 38:4 – 39:6.  Magistrate Judge
Shaffer was not persuaded that Western met this burden.  *Id.*  Accordingly, Magistrate
Judge Shaffer found the instant case more analogous to *Stanislaus Food Products Co.*
*v. USS-POSCO Industries*, 2012 U.S. Dist. LEXIS 176346 (E.D. Cal. 2012).  At the
conclusion of the hearing, Magistrate Judge Shaffer denied Western's Second Motion to
Re-Designate.  *See* Transcript (Doc. #180), pp. 48-55 and Minute Entry dated January

---

[3] Ms. Giannola and Mr. Thiessen recently affirmed and restated these declarations.
See Doc. #253-14 (October 3, 2013) and Doc. #257-1 (October 14, 2013).

28, 2013 (Doc. #179).  Western did not file any objection to Magistrate Judge Shaffer's Order under F.R.C.P. 72(a).

*Western's Third Motion to Re-Designate*

21.     On February 12, 2013, Suncor filed an unopposed motion to restrict access to a motion for summary judgment Suncor filed as required by the rules.  Doc. #188.  On March 6, 2013, Western filed a response (Doc. #193) ("Third Motion to Re-Designate") stating that although Western initially did not oppose Suncor's motion to restrict access, Western reconsidered and decided to oppose same.  *See* Response (Doc. #193), p. 2.  Despite the Court's prior denials of Western's First and Second Motions to Re-Designate (Doc. #59 and Doc. #153), and the provisions of the Supplemental Protective Order (Doc. #140), Western again asked to provide Dillon's trade secret information to Mr. Taraghi, or alternatively to provide the public with access to Suncor's motion for summary judgment and the exhibits thereto.

22.     On March 25, 2013, Suncor filed a response to Western's Third Motion to Re-Designate.  Doc. #205.  Suncor's response includes a summary of Western's prior motions and Magistrate Judge Shaffer's previous findings and orders.  On March 27, 2013, Dillon also filed a response to Western's Third Motion to Re-Designate.  Doc. # 206-1 (re-filed as Doc. #220 per the Court's Order).

*Warning Regarding Third Motion to Re-Designate*

23.     On April 26, 2012, Dillon filed a motion for fees and costs for responding to Western's discovery requests.  Doc. #226.  This motion remains pending before the

Court.  On July 22, 2013, the Court held a hearing regarding Dillon's motion for fees and costs.  Transcript (Doc. #250); Minute Order (Doc. #248).  During the hearing, Magistrate Judge Shaffer told counsel for Western that in the face of two prior unsuccessful attempts, filing a third motion was not a good idea and could result in an award of attorney fees and costs against Western under F.R.C.P. 26(c) and F.R.C.P. 37(a)(5).  Transcript (Doc. #250), pp. 38, 40-41. 42-43.

*Court's Redaction Order*

24.     On September 5, 2013, the Court issued its order regarding the various motions to restrict access to the exhibits to the motions for summary judgment. Doc. #251, pages 41-47 ("Redaction Order").  The Court's Redaction Order states: "The Court agrees with Dillon that, as a non-party, it should not be forced to expose data that could conceivably compromise its competitive position with its suppliers or competitors, and the Court is satisfied that disclosure of specific prices charged to Dillon or quantities of fuel purchased poses a significant risk in that regard."  Redaction Order, p. 44.

25.     On October 3, 2013, Dillon filed a motion regarding the Court's Redaction Order.  Dillon submitted with the motion supplemental declarations from Ms. Giannola and Mr. Thiessen re-affirming and re-stating their prior testimony that the pricing materials still constitute trade secrets and are not stale.  Doc. #253-14 and Doc. #257-1.

*Pretrial Conference and Fourth Motion to Re-Designate*

26.     On October 30, 2013, the Court held a pre-trial conference.  During the pre-trial conference, the Court clarified its Order regarding redacting the exhibits to the

11

motions for summary judgment. Towards the end of the pre-trial conference, notwithstanding the denials of its previous motions, Western again renewed its motion to provide Dillon's trade secrets to Mr. Taraghi.  *See* Exhibit A, Transcript, pp. 26-27. The Court responded: "What motion is that you're renewing? Because it hasn't been before me. It's been before Magistrate Judge Shaffer, so I'm sort of in the dark.  . . . [L]et's start with this: If you go through the exercise that I have just suggested in deciding what facts you can agree upon, what happened, what sales occurred when, on what date, in what amount, for what price, you may be able to agree as to what information Mr. Taraghi can see that would allow him to make an informed decision." Exhibit A, Transcript pp. 27-28.

27.     Later the Court stated: "If there is information that is derived from the discovery that doesn't constitute Dillon's trade secrets, it may be able to be disclosed. And so I would ask you all to get out your very pincer-like tools, analytical tools, to think about that. And if necessary, file a stipulated motion, and we'll hear from Dillon as to what objection they have to the disclosure of information."  Exhibit A, Transcript, pp. 29:11-17.

*Request for Trial Exhibits*

28.     On November 21, 2013, counsel for Dillon sent an e-mail to counsel for Western & Suncor requesting a copy of the trial exhibits, which request was renewed by letter dated December 5, 2013.  Exhibit B.  On December 17, 2013, counsel for Western responded that they were not sure when the trial exhibits would be completed and

stating that Dillon should already have the underlying documents.  Exhibit C.  On January 3, 2013, counsel for Dillon sent counsel for Western an e-mail renewing the request for the trial exhibits and attempting to clarify whether Western has actually narrowed the documents that it wants to produce to Mr. Taraghi in accordance with the Court's instructions during the pre-trial conference.  Exhibit D.

*Western's Fifth Motion to Re-Designate*

29.     On December 16, 2013, Western filed its Motion for Limited Disclosure of Certain "Secret" Discovery Materials in Advance of March 17, 2014 Trial (Doc. #269) ("Fifth Motion to Re-Designate").

30.     Western's motion apparently seeks to produce more than just the trial exhibits to Mr. Taraghi.  In Paragraph 9 of its Fifth Motion to Re-Designate Western states: "To limit disclosure of Dillon's "Secret" information to Mr. Taraghi, Western excludes any of Dillon's market studies, reports, or internal company policies that include pricing or volume data from the scope of this Motion."  Fifth Motion to Re-Designate, Paragraph 9.  From August 17, 2012 until April 11, 2013, Dillon produced 98,437 pages of documents in response to Western's subpoenas to Dillon.  *See* Exhibit E, chart of document Dillon produced.  Most of these documents were designated as Highly Confidential Information or Secret under the Supplemental Protective Order (Doc. #140).  According to Paragraph 9 of Western's Fifth Motion to Re-Designate, Western does not seek to disclose "market studies, reports, or internal company policies that include pricing or volume data" to Mr. Taraghi.  These documents are labeled as

"10-Marketing Studies" on Exhibit E, page 2.  These documents constitute 4,054 pages

of the documents listed on Exhibit E.  *See* Exhibit E, page 2.  This leaves approximately

94,383 pages of documents with Dillon's trade secret information that Western

apparently seeks to provide to Mr. Taraghi via its Fifth Motion to Re-Designate.

## LEGAL AUTHORITIES

*F.R.C.P. 72(b)*

31.     Within fourteen days after service of a copy of the Recommendation, any

party may serve and file written objections to the Magistrate Judge's proposed findings

and recommendations with the Clerk of the United States District Court for the District of

Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).  A general objection that does not put the District Court on notice of the

basis for the objection will not preserve the objection for *de novo* review.  "[A] party's

objections to the magistrate judge's report and recommendation must be both timely

and specific to preserve an issue for de novo review by the district court or for appellate

review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street,*

*Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar de novo review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

14

recommendation de novo despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

*Motions to Reconsider*

32.     The Federal Rules of Civil Procedure permit a litigant subject to an adverse judgment to "file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P 60(b)." *Lewin v. Allred*, 2012 U.S. Dist. LEXIS 184759, 17-18 (D. Colo. Nov. 16, 2012) (Chief United States District Judge Marcia S. Krieger), *quoting Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). The grounds for granting a motion to reconsider are three fold: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Lewin*, 2012 U.S. Dist. LEXIS 184759 at 17-18, *quoting Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). When reviewing a motion for reconsideration it is not appropriate for the court to revisit previously addressed issues

or consider new arguments that could have been raised in earlier briefing. *Lewin*, 2012 U.S. Dist. LEXIS 184759 at 17-18 *citing Van Skiver*, 952 F.2d at 1243.

*F.R.C.P. 26*

33.    F.R.C.P. 26(c)(1) states in part: The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . (B) specifying terms, including time and place for the disclosure or discovery. . . [and] (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ."

34.    Under F.R.C.P. 26(c), courts also consider the burden imposed on the producing party, the relevance of the request, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998).

35.    Competitive disadvantage is a type of harm contemplated under F.R.C.P. 26 that weighs in favor of protecting the confidentiality of information that threatens to cause such harm. *Netquote, Inc. v. Byrd*, 2007 U.S. Dist. LEXIS 62292 (D. Colo. Aug. 23, 2007); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866 (E.D. Pa. 1981) ("Competitive disadvantage is a type of harm cognizable under rule 26.").

16

36.     F.R.C.P. 26(c)(3) (Awarding Expenses) states: "Rule 37(a)(5) applies to the award of expenses."

*F.R.C.P. 37(a)(5)*

37.     F.R.C.P. 37(a)(5)(B) (If the Motion Is Denied) states: "If [a motion for an order compelling disclosure or discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

*Protection of Trade Secrets*

38.     Under Colorado law, a "trade secret" is "any scientific or technical information, design, process, pro-cedure, formula, [or] confidential business or financial information . . . which is secret and of value." *L-3 Comm. Corp. et al. v. Jaxon Engineering & Maintenance, Inc. et al.*, 2013 U.S. Dist. LEXIS 139219 at *7 (D. Colo. 2013) (Chief United States District Judge Marcia S. Krieger), *quoting* C.R.S. § 7-74-102(4). The owner of such information "must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.* at *7-8, *quoting* C.R.S. § 7-74-102(4).  To adequately demonstrate that it has taken sufficient measures to prevent the dissemination of the information, the owner must take steps that are "reasonable under

17

the circumstances" to preserve the information's secrecy, but "extreme and unduly expensive procedures need not be taken." *Id.* at *8, *quoting Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 521-22 (Colo. App. 2011). Whether a secret's owner has sufficiently attempted to protect the secrecy of that information is typically a question of fact to be resolved by the factfinder. *Id.*; *See Also Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

39.     Even though trade secret information may be several years old, as long as the information remains held in confidence and can be used to independently derive economic value, it isn't "stale" such as to lose its protection as a trade secret.  *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, 2009 WL 222160, at *3-4 (S.D.N.Y. Jan 30, 2009) (noting that 10-year-old commercial information could still be sensitive, where business plans identified trends and strategies that could be extrapolated out to the present day and show how [a party] intends to compete); *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 911 (Mo. Ct. App. 2005) (three year old premium zip code data still derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.)

40.     Once a non-party opposing disclosure meets its initial burden of establishing that certain documents qualify as trade secrets and should be covered by a protective order, the burden shifts back to the party seeking disclosure to demonstrate

how nondisclosure would prejudice plaintiffs' ability to litigate the case and that this prejudice outweighs the risk of disclosure to competitors. *Stanislaus Food Products Co. v. USS-POSCO Industries*, 2012 U.S. Dist. LEXIS 176346 (E.D. Cal. 2012); *Layne Christiansen Co. v. Pure Light Co.*, 271 F.R.D. 240 (D. Kan. 2010); *S2 Automation, LLC v. Micron Technology, Inc.*, 283 F.R.D. 671 (D. N.M. 2012).

41.     When the disclosure of confidential information is at issue, courts must weigh the claim of confidentiality against the need for disclosure. *Bonanno v. Quizno's Franchise Co. LLC*, 255 F.R.D. 550, 554 (D. Colo. 2009). A court must balance the requesting party's need for information against the injury that might result if disclosure is compelled. *Crum & Crum Enterprises, Inc. v. NDC of California*, 2011 U.S. Dist. LEXIS 24690 (D. Del. March 10, 2011). There is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a nonparty is sought. *Stanley Works v. Newell Co.*, 1992 U.S. Dist. LEXIS 13817 (N.D. Ill. Aug. 27, 1992).

42.     In *Hertz v. The Luzenac Group et al.*, 576 F.3d 1103, 1109 (10th Cir. 2009), the Tenth Circuit expressed its concern with a trial court's denial of a request to file trade secrets under seal.  The Tenth Circuit stated: "We are concerned that the district court took steps--in apparent confidence in the correctness of its decision--that could cause potential litigants to lose some degree of faith in the courts as an appropriate forum for resolving trade secret or like business disputes. Luzenac filed a

majority of its documents under seal and requested that the district court order also be filed under seal. The district court denied this request. According to Luzenac, the district court's order contains sufficient information for someone to replicate the production process of 604AV. If true, the district court's actions could have the regrettable effect of discouraging parties from resolving similar disputes through court litigation." *Id.* at 1109, note 3.

*Restriction of Public Access*

43.     D.C. Colo. L. Civ. R. 7.2(B)(2) allows for restriction of public access to documents filed with the Court. Under the Rule, the movant must set forth why "such interest outweighs the presumption of public access. D.C. Colo. L. Civ. R. 7.2(B)(2). The movant must also, among other things: (A) "identify a clearly defined and serious injury that would result if access is not restricted" and (B) "Explain why no alternative to restricted access is practicable or why only restricted access will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits)."; D.C. Colo. L. Civ. R. 7.2(B)(3) and (4).

44.     When the presumption that judicial files are to be available to the public is outweighed by interests that favor nondisclosure, a court may restrict access to such material. *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). The interests of protection and preservation of confidential proprietary information have justified restricting public access to such information. *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010); *See also Nixon v. Warner Communications*, 435 U.S. 589,

20

598 (1978) (reiterating that "courts have refused to permit their files to serve as sources of business information that might harm a litigant's competitive standing").

45.     There is a general, qualified presumption that documents essential to the judicial process are to be available to the public. *Baroness Small Estates, Inc. v. Round Hill Cellars*, 2011 WL 6152969, *7 (D. Colo. Dec. 12, 2011) (Chief United States District Judge Marcia S. Krieger) (citing *U.S. v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997)). However, documents filed with the Court "may be sealed when the public's right of access is outweighed by interests that favor nondisclosure." *Id.*  Further, the Court's *Baroness* decision and related decisions are not in the context of protecting a non-party's trade secrets from a competitor such as is at issue here.  *See Baroness Small Estates, Inc.* at *8 (documents not sealed because the parties made "general and inspecific" claims of privacy and because they sought to seal entire documents rather than only sealing pertinent parts); *See Also Martin v. Sears, Roebuck and Co.*, 2009 WL 4730466, *13 (D. Colo. Dec. 7, 2009) (Chief United States District Judge Marcia S. Krieger) (documents not sealed based upon "vague invocations of the privacy rights of nonparties");  *Mrs. Colorado-America, Inc. v. Mrs. Colorado United States Pageant*, 2007 WL 1245565 (D. Colo. April 30, 2007) (Chief United States District Judge Marcia S. Krieger) (documents not sealed because parties "articulate no compelling rationale . . . other than citing to the parties' Protective Order").  In contrast, the instant case involves specific findings by Magistrate Judge Shaffer and this Court that Dillon's pricing

materials constitute trade secrets.  *See* January 28 Hearing Transcript (Doc. #180), Court's Redaction Order (Doc. #251).

46.     Other courts have closed limited portions of trials to the public and party representatives in order to balance the public's interest with a third party's need to protect its trade secrets from its competitors.  *See, e.g. Saint Alphonsus Medical Center-Nampa Inc., v. St. Luke's Health System, LTD*, 2013 U.S. Dist LEXIS 134402 (D. Id. 2013);  *Microsoft Corp. v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 164255 (W.D. Wash. 2012); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist LEXIS 113132 (N.D. Cal. 2012); *Johnson v. E.I. Dupont Denemours & Co.*, 7 So. 3d 734 (La. App. 2009); *CDA of Am. Inc. v. Midland Life Ins. Co.*, 2006 U.S. Dist. LEXIS 97327 (S.D. Ohio 2006); *Newark Group, Inc. v. James F. Sauter*, 2004 U.S. Dist LEXIS 31334 (S.D. Ohio 2004); *Crane Helicopter Servs. v. U.S.*, 56 Fed. Cl. 313 (Fed. Cl. 2003); *Walden v. M.A.R.T.A.*, 288 S.E.2d 671 (Ga. App. 1982); 69 A.L.R. Fed 892 at 2 ("Courts have the power to order a trial, or portions thereof, to be conducted in private, as, for example, where secret processes of manufacturing or trade secrets are involved."); 75 Am Jur 2d Trial § 141 ("Closure of court proceedings or records should only occur when necessary . . . to protect trade secrets . . . ."); Wright and Miller § 5652, pp. 406-407 (notwithstanding the tradition of open trials, in some cases courts have permitted *in camera* testimony regarding trade secrets to insure that the secret is not likely to fall into the hands of competitors, however, in some cases disclosure will be necessary to do justice).

## **ARGUMENT**

A.   *Western Waived Its Right to Appeal Magistrate Judge Shaffer's Prior Orders.*

47.   To the extent it believed Magistrate Judge Shaffer "g[o]t it wrong," Western had fourteen days from January 28, 2012 to appeal to Chief United States District Judge Marcia S. Krieger.  Transcript of January 28, 2013 Hearing (Doc. #180) at 55:9-13.  Western did not appeal, and thereby waived any further argument regarding this issue.

B.   *If There Were Any Remaining Issues, Which is Denied, Then the Court Resolved Them Via the Redaction Order.*

48.   If there were any remaining issues that were not resolved by Magistrate Judge Shaffer's January 28, 2013 Order, which is denied, then the Court resolved them via its September 5, 2013 Redaction Order (Doc. #251) as clarified during the pre-trial conference on October 30, 2013.  *See* Doc. #251, pp. 41 to 47.  In the Redaction Order, the Court directed Dillon's trade secret information to be redacted from the summary judgment exhibits and the remainder to be disclosed to the public (as well as Mr. Taraghi).

C.     *Western Failed to Follow the Court's Instructions to Narrow Disputed Information*

49.     Instead of following the Court's instructions to narrow disputed information, Western apparently seeks to provide Mr. Taraghi more than just trial exhibits and provide approximately 94,383 pages of Dillon's trade secrets.  *See* Paragraph 30 above and Exhibit E (chart of information produced to Western).  If the Court was willing to hear Western's Fifth Motion to Re-Designate on the merits, which it should not, then the Court should require Western to significantly narrow its request before even hearing the motion.

D.     *Even if the Court is Willing to Hear Western's Motion on its Merits, Which It Should Not, Then Western's Motion Should Still Be Denied.*

50.     However, if the Court decides to consider Western's Fifth Motion to Re-Designate on its merits, which it should not, then it should still be denied for several reasons.

i.     Dillon's Trade Secrets Are Not Stale and Remain Valuable to Competitors.

51.     Western's Fifth Motion to Re-Designate should be denied on its face because it contravenes the Court's prior Orders finding that Dillon's trade secrets are not stale.   Contrary to Plaintiffs' unsupported assertions, Dillon's trade secrets are not "stale" merely because they pertain to documents and data dated between January 1, 2009 and May 31, 2011.  As Dillon previously demonstrated to Magistrate Judge Shaffer, Dillon's purchasing materials are trade secrets that would show a competitor Dillon's internal business strategies, both in the past and for the future.  *See* Transcript

24

of hearing on January 28, 2013 (Doc. #180) at 32:4-5, 32:19-20, 33:18-20, 34:14,

38:18-39:1 and 46:3-4; Supplemental Declaration of Susan Giannola (Doc. #165-1);

Declaration of Chad Thiessen (Doc. #165-2) and Declaration of Ed Sharpe (Doc. #174).

Dillon's competitors could use this information to aggressively compete against Dillon

which would result in substantial harm to Dillon's ability to remain competitive in the fuel

market. *See Id.*

> ii.      Necessity, Not Desire, Is Required.

52.      Second, Western has not made a sufficient showing of necessity.Western

claims that although the Supplemental Protective Order allows disclosure of Dillon's

trade secrets to Western's counsel and Western's five expert witnesses, Western will be

substantially prejudiced in preparing for trial unless Mr. Taraghi is permitted to review

Dillon's trade secrets as well.   Western does not provide any specific explanation as to

why Western's prosecution of this action will be prejudiced unless Mr. Taraghi,

personally, is privy to Dillon's trade secrets.  Western has not shown why the redacted

information provided to Mr. Taraghi under the Court's Redaction Order is insufficient to

allow him to prepare for trial.  Western's counsel does not aver that their five experts

have been hindered in or are unable to prepare their testimony for trial.

53.      In denying Western's prior attempts to defeat the Protective Orders,

Magistrate Judge Shaffer repeatedly told Western that its arguments were "weak" and

that they had to demonstrate "need" or "necessity."  See Transcript of January 28, 2013

Hearing (Doc. #180) at 28:12-13 and 24-25, 33:3-11 and 15-17, 34:10-14 and 17-19,

38:24-39:6, 41:23-42:5, 44:15-18, 45:24-46:5, 47:21-22, and 52:14-53:1.  However,

Western still makes no showing of need, only desire.  Despite the admonitions and directions of Magistrate Judge Shaffer, Western has not submitted an affidavit, let alone a specific and detailed affidavit, from their experts "demonstrating necessity" or the specific "questions they would like to ask Mr. Taraghi." *See* Transcript (Doc. #180) at 33:7-17, 42:3-5, 47:21-22, and 52:14-53:1.

54.    The circumstances of the instant case are different than the case relied upon by Western, *Innovatier v. Cardxx, Inc.*, 2008 U.S. LEXIS 94560 (D. Colo. 2008). In the facts of that case, "outside counsel and outside consultants [were] not equipped to decipher the subtleties between the parties' technologies. . . .", *Id.* at *4, and " . . . in-house designees [were] the only people who [could] adequately evaluate and deter-mine whether the parties' technologies [were] in fact different . . . ." *Id.*  Magistrate Judge Shaffer correctly distinguished that case by noting that Mr. Taraghi was not involved with, or necessary to analyze, the pricing materials and communications at issue in this case.  *See* Doc. #180, pp. 19-26.  As Magistrate Judge Shaffer stated: "The standard [for reclassifying 'Highly Classified' documents] is not desirable or desirability . . . the standard is necessity."  Transcript of January 28, 2013 hearing (Doc. #180) at pp. 52-53.

55.    Further, disclosing Dillon's pricing information to Mr. Taraghi would potentially violate anti-trust laws.  The Sherman Act, 15 U.S.C. § 1-7, prohibits any agreement among competitors to fix prices, rig bids, or engage in other anticompetitive activity.  *See Abraham v. Intermountain Health Care, Inc.*, 461 F.3d 1249, 1256 (10th

Cir. Utah 2006); *United States v. Container Corp. of Am.*, 393 U.S. 333, 336-337 (U.S. 1969); *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 511 (U.S. 2008) (fines and jail sentences for violation of Sherman Act).  Western is requesting that Dillon, in effect, participate in potential price collusion with a competitor that may be in violation of numerous federal and state antitrust laws.

> ### iii.      Western is Attempting To Undo the Provisions of the Protective Order.

56.      Having argued that Dillon should produce its trade secrets and other confidential documents pursuant to the Protective Order (Doc. #49) and, then, having subsequently agreed to an even more stringent Supplemental Protective Order (Doc. #140), Western "cannot later make a public access claim which it bargained away in order to expeditiously receive the documents in the first place."  *Pittston Co. v. USA*, 2002 WL 32158052, at *2 (E.D. Va. Oct. 2, 2002) (citing cases).  In *Pittston*, the court found that the plaintiff agreed to the protective order and the producing party relied on it. *Id.* at *2.  The facts here are even more compelling.  Dillon's counsel warned Magistrate Judge Shaffer that this was a "slippery slope":  "As soon as I agree to a designation attorneys' eyes only they're going to come back in here and say now you've got to give up more."  *See* Transcript (Doc. #180) at 29:20-30:7.  Magistrate Judge Shaffer told him "no, that would never happen"  and "Mr. Taraghi, you can count on the fact that we're going to negotiate a protective order that's responsive to the concerns of everybody." *Id.* at 30:7-13.

57.     However, it did happen.  After agreeing to the Supplemental Protective Order with an attorney's eyes only provision, Western almost immediately filed a Second Motion to Re-Designate seeking to undo it.  Magistrate Judge Shaffer said "I basically gave [counsel for Dillon's prognostication of future events a rather short shrift. And I almost feel like I have to apologize. He was more clairvoyant than I am." Transcript (Doc. #180) p. 30, lines 10-13.

58.     As Magistrate Judge Shaffer stated at the January 28, 2013 hearing, "you [i.e. Western] were perfectly willing to operate on the attorneys'-eyes-only basis.  So, to some extent no good deed goes unpunished."  Transcript (Doc. #180), p. 31 lines 6-10.

59.     Moreover, Western took the position at the January 28, 2013 hearing that certain of the Dillon documents were trade secrets, but now, having obtained those documents, they want them disclosed to Mr. Taraghi (and even the public).  See Transcript (Doc. #180) at 33:21-34:4.

60.     As a policy consideration, the Court should not allow this type of tactical maneuvering.  If the Court allows parties to voluntarily enter into protective orders and then challenge those agreements as if they were forced upon them, it only encourages parties to engage in wasteful and misleading litigation practices.  An order requiring disclosure of Dillon's trade secrets would send the message that the Court's protective orders have essentially no value, and can be easily overcome once the documents have been disclosed under seal.  *See Hertz v. The Luzenac Group et al.*, 576 F.3d

1103, 1109, note 3 (10th Cir. 2009) (noting importance of ability of non-parties to rely upon protective orders to keep trade secrets under seal).

61.     The Court indicated that it may allow Mr. Taraghi, and perhaps the public, to be present during testimony at trial regarding some of Dillon's trade secrets. However, Dillon should not be forced to disclose its trade secrets to Mr. Taraghi before the trial, especially considering the possibility of settlement.  Further, pursuant to the legal authorities cited in paragraph 46 above, Dillon respectfully requests that the Court close the Courtroom and exclude Mr. Taraghi from a limited portion of the trial during such testimony and permit redacting trial transcripts of same under D.C. Colo. L. Civ. R. 7.2.

      *E.    The Court Should Award Dillon its Fees and Costs.*

62.     During the hearing on January 28, 2013, Western was warned by Magistrate Judge Shaffer that the Court may award attorney fees and costs against Western under F.R.C.P. 37(a)(5).  *See* Paragraph 23 above.  Dillon respectfully submits that it would be appropriate for the Court to award Dillon its fees and costs against Western for responding to Western's Fifth Motion to Re-Designate.

WHEREFORE, Dillon respectfully requests that the Court deny Western's Fifth Motion to Re-Designate and award Dillon its attorney's fees and costs for responding to same.

Dated:  January 6, 2014.

s/ Michael R. McCormick
Christopher A. Taravella, #7790
Michael R. McCormick, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
            mmccormick@montgomerylittle.com
*Attorney for Dillon Companies, Inc.*
*Interested Non-Party*

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann &
Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO  80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO  80202

William LeitzseyMonts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-D enver
555 17th Street, Suite 3200
Denver, CO  80201

s/ *Michael R. McCormick*
Montgomery Little & Soran, P.C.