```
 1                IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLORADO
 2
     Civil Action No. 11-cv-01611-MSK-CBS
 3
     WESTERN CONVENIENCE STORES, INC., and
 4   WESTERN TRUCK ONE, LLC,

 5       Plaintiffs/Counterclaim Defendants,

 6   vs.

 7   SUNCOR ENERGY (U.S.A.) INC.,

 8       Defendant /Counterclaim Plaintiff.

 9   and

10   SUNCOR ENERGY (U.S.A.) INC.,

11    Third-Party Plaintiff,

12   v.

13   HOSSEIN TARAGHI, and
     DEBRA LYNN TARAGHI,
14
      Third-Party Defendants.
15   _____

16
                           REPORTER'S TRANSCRIPT
17                       FINAL PRETRIAL CONFERENCE

18   _____

19          Proceedings before the HONORABLE MARCIA S. KRIEGER,

20   Judge, United States District Court for the District of

21   Colorado, commencing at 3:05 p.m., on the 30th day of October,

22   2013, in Courtroom A901, United States Courthouse, Denver,

23   Colorado.

24              THERESE LINDBLOM, Official Reporter
                901 19th Street, Denver, Colorado 80294
25         Proceedings Reported by Mechanical Stenography
                 Transcription Produced via Computer
```



1   is the correct point to best settle?  And you rely on your good
2   counsel to tell you when they think the moment is correct.
3   Settling has none of the drawbacks that a trial in front of me
4   will have.  It will result in a final decision, and it will
5   result in a decision that is made by the people who know what
6   is going on and what went on and who will live with the outcome
7   of it.
8          I bring that to your attention because you've got that
9   option available to you.  You can settle if you choose to.  And
10  notwithstanding all of the time and expertise that has been put
11  in by the attorneys, I'm pretty sure that they've all said the
12  same thing to you as I have.  And I want you to know, we all
13  see it the same way, trials are expensive, they're complicated,
14  and this one will be well prepared before we begin it.  You've
15  got able trial counsel on both sides of this case.  And,
16  frankly, I look forward to the trial; but I want you to know
17  what you're getting into and so you have reasonable
18  expectations of what it's going to look like.
19         Anything else that, counsel, that you would like to
20  know or, parties, you would like your counsel to ask while
21  we're here in the courtroom?
22         *MR. BENNINGTON:*  Yes, Your Honor.  I know Mr. Taraghi
23  would like me to ask and to raise this with you, and that is,
24  settlement is complicated by the netherworld he's had to live
25  in for the entirety of this case, which is, he hasn't had

1  access to much of the underlying data on which the case is
2  built.  And for that reason, it is difficult for him to
3  consider settling or to approach it -- let's put it that way --
4  not having full command of the facts.  We have raised this a
5  number of times and got to the point where we were annoying
6  Judge Shaffer about getting public -- not public access, but
7  getting Mr. Taraghi's access to data which is now, Your
8  Honor -- what did we decide, four years -- two and a half?
9        *MR. BLEDSOE:*  The newest data is two and a half.
10        *MR. BENNINGTON:*  And the oldest data is over four.
11  We're -- he's prevented from seeing the data that would help
12  him make that decision.  So we would renew our motion, not for
13  public access -- I understand that, and that will wait.  But we
14  are renewing our motion, if that's appropriate at this moment,
15  that Mr. Taraghi be able to see unredacted --
16        *THE COURT:*  What motion is that you're renewing?
17  Because it hasn't been before me.  It's been before Magistrate
18  Judge Shaffer, so I'm sort of in the dark.
19        *MR. BENNINGTON:*  Fair enough.  That's true.  We've
20  litigated it I think four times in front of him.  And his --
21  his admonition to us -- I think it's fair to state this -- is
22  that when you get to trial, it will undoubtedly be a public
23  trial, at that point Mr. Taraghi will be seeing it all.  I
24  think that's a fair summary of what he's been telling us.
25        *THE COURT:*  Well, you know, let's start with this:  If

1 you go through the exercise that I have just suggested in
2 deciding what facts you can agree upon, what happened, what
3 sales occurred when, on what date, in what amount, for what
4 price, you may be able to agree as to what information
5 Mr. Taraghi can see that would allow him to make an informed
6 decision.
7    *MR. BENNINGTON:* And Mr. Bledsoe is reminding me, yes,
8 we certainly could go through the exercise, and that may get us
9 to that point. But, for example, Mr. Taraghi has in mind what
10 he thinks the differential always was. And if I told you what
11 he thinks, and based on what you've seen in the summary
12 judgment motions, you'd see, it's different. And it's
13 sufficiently different -- without going into detail -- that it
14 has skewed his judgment and ability to assess the value of the
15 case and when, as you say, the lines cross.
16    *THE COURT:* Uh-huh.
17    *MR. BENNINGTON:* But we'll try our best.
18    *THE COURT:* Well, and you may be able to agree upon
19 the difference.
20    *MR. BENNINGTON:* I don't -- we can agree on the
21 difference. Actually, that's one thing we are able --
22    *THE COURT:* You may be able to -- you may be able to
23 disclose the difference to Mr. Taraghi by agreement.
24    *MR. BENNINGTON:* Your Honor, Mr. Shaheen and I, we've
25 long since gotten over any disagreement on this. The problem

```
 1  is sitting in the back of the room in the form of Kroger's
 2  counsel.  If it were up to Mr. Shaheen and I, we wouldn't be
 3  having this discussion nor would there be --
 4           THE COURT:  I suspected that might be the case.
 5           MR. BENNINGTON:  -- nor would there be any worry about
 6  a public proceeding.  We are dealing with another set of
 7  objections.
 8           THE COURT:  I understand.  And let me advise Dillon,
 9  although Dillon Companies has an interest in its trade secrets
10  not being disclosed, it doesn't drive the bus in this
11  litigation.  If there is information that is derived from the
12  discovery that doesn't constitute Dillon's trade secrets, it
13  may be able to be disclosed.  And so I would ask you all to get
14  out your very pincer-like tools, analytical tools, to think
15  about that.  And if necessary, file a stipulated motion, and
16  we'll hear from Dillon as to what objection they have to the
17  disclosure of information.
18           MR. BENNINGTON:  Very well.  We'll do that.
19           MR. SHAHEEN:  Your Honor, can I just say one thing?
20  In support of what Mr. Bennington said -- and I certainly
21  understood what you said about stipulating.  But I think they
22  would agree that we actually prepared some stipulations along
23  the very lines Your Honor talked about.
24           THE COURT:  I suspected so.
25           MR. SHAHEEN:  And we took them out precisely because
```