**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation,

      Western/Counter Defendant,

v.

SUNCOR ENERGY (U.S.A.), INC. a Delaware corporation,

      Defendant/Counter Claimant/Third-Party Plaintiff,

v.

HOSSEIN AND DEBRA LYNN TARAGHI,

      Third-Party Defendants.

_____

**MOTION BY INTERESTED NON-PARTY DILLON COMPANIES, INC. TO RESTRICT
ACCESS TO DILLON'S TRADE SECRETS AT TRIAL**
_____

      Interested Non-Party Dillon Companies, Inc. ("Dillon"), by and through its

attorneys, Montgomery Little & Soran, P.C., respectfully submits this Motion to Restrict

Access to Dillon's Trade Secrets At Trial pursuant to D.C. Colo. L. Civ. R. 7.2(B).

**<u>CERTIFICATE OF CONSULTATION</u>**

      1.    Dillon certifies that it consulted with counsel for Plaintiff Western

Convenience Stores, Inc. ("Western") and Defendant Suncor Energy (U.S.A.), Inc.

("Suncor") before filing this motion by sending drafts of this motion to counsel via e-mail

on January 31 2014 and February 5, 2014 and discussing the draft motions via

telephone and e-mail correspondence.  Western will object to the relief requested in this motion.  Suncor may object to portions of the relief requested in this motion.

## SUMMARY

2.      Although there is a presumption of public access to judicial documents, there is a well-established exception when the testimony or document contains "sources of business information that might harm a litigant's competitive standing."  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978).  However, "sealing orders [must be] narrowly tailored to the compelling fair trial interests at stake." *U.S. v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). Here, Dillon has a compelling interest to protect its trade secrets from disclosure to its competitors at trial.

3.      Accordingly, Dillon requests that the Court order the parties to take reasonable and narrowly tailored measures to protect Dillon's trade secrets at trial.  As explained in more detail below, Dillon respectfully requests that the Court order that: (A) Western and Suncor not display un-redacted trial exhibits with Dillon's trade secret information to the public during the trial; (B) Western representatives and employees not use Dillon's trade secret information except for purposes of this lawsuit; (C) the un-redacted trial exhibits be used during the trial such as not to impede the trial presentation; and (D) subject to subparagraphs (A)-(C) above, the un-redacted documents be restricted under D.C.Colo. L. Civ. R. 7.2 and not be provided to anyone

besides the Court, the parties, and their counsel unless they are first redacted pursuant to the Court's Redaction Order.

## BACKGROUND

*Introduction*

4.      In this case, Western alleges that Defendant Suncor Energy (U.S.A.), Inc. ("Suncor") violated the Robinson-Patman Act, 15 U.S.C. § 13(a).  Specifically, Western claims that Suncor sold petroleum products to a number of Western's competitors, including Dillon, at prices lower than the prices Western paid Suncor for petroleum products of like grade and quality.  *See generally*, Amended Complaint (Doc. #4).

5.      Dillon is not a party to this action.  Dillon became an interested non-party in this case on April 26, 2012, when Western served Dillon, a direct competitor, with a Subpoena to Produce Documents, Information or Objects or to Permit Inspection of Premises (Doc. #57-1) and Dillon thereafter filed a motion to quash same.  Doc. #57.

*Protective Orders*

6.      On March 12, 2012, Magistrate Judge Shaffer entered a protective order (Doc. #49) including an attorney's eyes only provision.  On October 17, 2012, the Court entered the Supplemental Protective Order (Doc. #140), which again included an attorney's eyes only provision.  The Supplemental Protective Order: (A) permitted Dillon to designate documents including Dillon's trade secret information as "Secret" (Doc. #140, Paragraph 5); (B) prohibited disclosure of "Secret" documents (Doc. #140, Paragraph 6); and (C) required "Secret" documents to be filed with the Court under restriction pursuant to D.C.Colo.Civ.R. 7.2. (Doc. #140, Paragraph 15).

3

*Motions to Re-Designate*

7.       From May 21, 2012 until December 16, 2013, Western submitted five motions seeking to have Mr. Taraghi view restricted documents without authorization under the original Protective Order (Doc. #49) and the Supplemental Protective Order (Doc. #140).  Doc. #59; Doc. #153; Doc. #193; Doc. #272-1, pp. 26-27; Doc. #269.  The first four motions were denied and the fifth was granted in part and denied in part.  *See* Doc. #84; Doc. #179; Doc. #251, pages 41-47 ("Redaction Order"); Doc. #278; Doc. #291[1].

8.       Dillon's response (Doc. #165) to Western's second motion to re-designate (Doc. #153) included declarations from two Dillon employees[2] concerning why the documents should remain classified as "Secret" under the Supplemental Protective Order (Doc. #140).  These Dillon employees explained that the pricing materials include Dillon's trade secret information that: (A) is held in strict confidence; (B) was obtained and developed by Dillon at significant time and expense to Dillon; (C) is used in Dillon's current analysis and calculations; (D) is valuable to Dillon and benefits Dillon economically; and (E) would be of value to a competitor.  *See* Giannola Sup. Dec. (Doc. #165-1) at ¶¶ 7-13; Thiessen Dec. (Doc. #165-2) at ¶¶ 8-19.  Accordingly, even though

---

[1] Dillon has consulted with Western and Suncor regarding the Court's Order dated February 5, 2014 (Doc. #291) and understands that Western may seek clarification of same.

[2] On January 25, 2013, Dillon submitted a declaration from a third Dillon employee, Ed Sharpe, in support of Dillon's response.  Doc. #174 ("Sharpe Declaration").

some of the pricing materials date to 2009, they still include Dillon's trade secrets.  *Id.*
Dillon continues to rely upon its historical pricing data in making current business
decisions regarding its retail fuel operations[3].  *Id.*

9.    During a hearing on January 28, 2013, Magistrate Judge Shaffer found
that Dillon had met its burden regarding trade secrets.  Doc. #180, 38:4 – 39:6; *see also*
Minute Entry dated January 28, 2013 (Doc. #179).  Western did not file any objection to
Magistrate Judge Shaffer's Order under F.R.C.P. 72(a).

*Court's Redaction Order*

10.    On September 5, 2013, the Court issued its Order regarding restricting
access to the motions for summary judgment and exhibits thereto ("MSJ Documents").
Doc. #251, pages 41-47 ("Redaction Order").  The Court's Redaction Order directed
that certain categories of information be redacted from the MSJ Documents.  The
Court's Redaction Order states: "The Court agrees with Dillon that, as a non-party, it
should not be forced to expose data that could conceivably compromise its competitive
position with its suppliers or competitors, and the Court is satisfied that disclosure of
specific prices charged to Dillon or quantities of fuel purchased poses a significant risk
in that regard."  Redaction Order, p. 44.

---

[3] Ms. Giannola and Mr. Thiessen recently affirmed and restated these declarations.  See Doc. #253-14
(October 3, 2013) and Doc. #257-1 (October 14, 2013).  Ms. Giannola's declarations (Doc. #165-1 and
Doc. #257-1) are collectively referred to herein as the "Giannola Declarations" and Mr. Thiessen's
declarations (Doc. #165-2 and Doc. #253-14) are collectively referred to herein as the "Thiessen
Declarations."

11.     On October 3, 2013, Dillon filed a Motion (Doc. #253) regarding the Court's Redaction Order which included declarations from Dillon employees explaining why additional categories of information in the MSJ Documents are also trade secrets. Dillon hereby incorporates and restates its motion (Doc. #253), its Status Report (Doc. #257) regarding the motion, and all of the exhibits thereto (Doc. #253-1 to Doc. #253-17 and Doc. #257-1 to Doc #257-6), as if fully set forth herein.

*Pretrial Conference*

12.     On October 30, 2013, the Court held a Pre-Trial Conference and granted Dillon's motion (Doc. #253) regarding the Redaction Order in part.  The Court held that certain additional categories of information would also be redacted from the MSJ Documents pursuant to the Court's Redaction Order.

*Requests for Trial Exhibits*

13.     Dillon requested all of the trial exhibits related to Dillon via written requests on November 21, 2013, December 5, 2013 (Doc. #272-2), January 3, 2014 (Doc. #272-4), and January 7, 2014 (Doc. #276-2, pages 7-8).  While Western and Suncor have provided a Joint Exhibit List (Doc. #266-3) to Dillon, as of the filing of this motion, Dillon has received some, but not all, of the trial exhibits.  Accordingly, Dillon respectfully requests permission to supplement or amend this motion, if necessary, upon receipt of all of the actual trial exhibits.

14.     The trial of this matter is scheduled to begin on March 17, 2014.

## LEGAL AUTHORITIES

*Restriction of Public Access*

15.     There is a general, qualified presumption that documents essential to the judicial process are to be available to the public.  *Baroness Small Estates, Inc. v. Round Hill Cellars*, 2011 WL 6152969, *7 (D. Colo. Dec. 12, 2011) (Chief United States District Judge Marcia S. Krieger) (citing *U.S. v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997)); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978).  "Under [the doctrine of common law right of access], judicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure."  *U.S. v. McVeigh*, 119 F.3d at 811, *citing Nixon*, 435 U.S. at 599.

16.     "The public shall have access to all documents filed with the court and all court proceedings, unless restricted by court order or as provided in [D.C.Colo. L. Civ. R. 7.2(D) (Filing Restricted Documents)]." D.C.Colo. L. Civ. R. 7.2(A).  A showing of compelling reasons for restriction of public access is necessary, as it critical that the public be able to review the factual basis of the Court's decisions and evaluate the Court's rationale so that it may be confident that the Court is functioning as a neutral arbiter. *See* Redaction Order, Doc. #251 at p. 43; *referring to McVeigh*, 119 F.3d at 814; *see also Saint Alphonsus Medical Center-Nampa Inc., v. St. Luke's Health System, LTD*, 2013 U.S. Dist LEXIS 134402 (D. Id. 2013).

17.     A party seeking to restrict access must: (1) identify the specific document for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and

7

serious injury that would result if access is not restricted; (4) explain why no alternative to restricted access is practicable or why only restricted access will adequately protect the interest in question; and (5) identify the restriction level sought.  *See* D.C.Colo. L. Civ. R. 7.2(B)(1)-(5).

18.     Protecting a non-party's trade secrets from its competitors is a compelling reason that outweigh's the public's right to access and justifies restricting access to the Court's proceedings and records.  *See Nixon*, 435 U.S. at 598: "It is uncontested, however, that the right to inspect and copy judicial records is not absolute.  Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes.  For example . . . courts have refused to permit their files to serve as . . .  sources of business information that might harm a litigant's competitive standing . . . ."; *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("The publication of materials that could result in infringement upon trade secrets has long been considered a factor that would overcome this strong presumption."); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("[i]n general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets."; *Apple Inc. v. Samsung Electronics Co., Ltd. et al.*, 727 F.3d 1214 (Fed. Cir. 2013).

*19.* Courts in several districts have sealed trial exhibits and proceedings and restricted their use in order to balance the public's interest with a third party's need to protect its trade secrets from its competitors. *See, e.g. Saint Alphonsus Medical Center-Nampa Inc., v. St. Luke's Health System, LTD*, 2013 U.S. Dist. LEXIS 134402 (D. Id. 2013); *Microsoft Corp. v. Motorola, Inc.*, 2012 U.S. Dist. LEXIS 164255 (W.D. Wash. 2012); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 113132 (N.D. Cal. 2012); *Johnson v. E.I. Dupont Denemours & Co.*, 7 So. 3d 734 (La. App. 2009); *CDA of Am. Inc. v. Midland Life Ins. Co.*, 2006 U.S. Dist. LEXIS 97327 (S.D. Ohio 2006); *Newark Group, Inc. v. James F. Sauter*, 2004 U.S. Dist LEXIS 31334 (S.D. Ohio 2004); *Crane Helicopter Servs. v. U.S.*, 56 Fed. Cl. 313 (Fed. Cl. 2003); *Walden v. M.A.R.T.A.*, 288 S.E.2d 671 (Ga. App. 1982).

*Protection of Trade Secrets*

20. Under Colorado law, a "trade secret" is "any scientific or technical information, design, process, procedure, formula, [or] confidential business or financial information . . . which is secret and of value." *L-3 Comm. Corp. et al. v. Jaxon Engineering & Maintenance, Inc. et al.*, 2013 U.S. Dist. LEXIS 139219, 7 (D. Colo. 2013) (Chief United States District Judge Marcia S. Krieger), *quoting* C.R.S. § 7-74-102(4).  The owner of such information "must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes." *Id.* at 7-8, *quoting* C.R.S. § 7-74-102(4).  To adequately demonstrate that it has taken sufficient measures to prevent the

dissemination of the information, the owner must take steps that are "reasonable under the circumstances" to preserve the information's secrecy, but "extreme and unduly expensive procedures need not be taken." *Id.* at 8, *quoting Saturn Systems, Inc. v. Militare*, 252 P.3d 516, 521-22 (Colo. App. 2011). Whether a secret's owner has sufficiently attempted to protect the secrecy of that information is typically a question of fact to be resolved by the factfinder. *Id.*; *See Also Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

21.    Even though trade secret information may be several years old, as long as the information remains held in confidence and can be used to independently derive economic value, it isn't "stale" such as to lose its protection as a trade secret.  *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02 Civ. 5068 (JFK), 2009 U.S. Dist. LEXIS 11504, 2009 WL 222160, 3-4 (S.D.N.Y. Jan 30, 2009) (noting that 10-year-old commercial information could still be sensitive, where business plans identified trends and strategies that could be extrapolated out to the present day and show how [a party] intends to compete); *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 911 (Mo. Ct. App. 2005) (three year old premium zip code data still derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.)

## **ARGUMENT**

A.    *The Court Should Restrict Access to Dillon's Trade Secrets Because Dillon Has A Compelling Interest to Protect its Trade Secrets From Its Competitors.*

22.    Both this Court and Magistrate Judge Shaffer found that Dillon's pricing materials constitute trade secrets.  *See* Court's Redaction Order (Doc. #251); January 28 Hearing Transcript (Doc. #180); *see also* Dillon's Motion (Doc. #253) regarding the Court's Redaction Order; Status Report (Doc. #257) and the exhibits and declarations thereto.  Further, the declarations by Ms. Giannola, Mr. Thiessen and Mr. Sharpe, detail serious and substantial competitive injuries that would result to Dillon by allowing a competitor to review Dillon's trade secrets.  *See* Giannola Declarations, Doc. #165-1 and Doc. #253-14; Thiessen Declarations (Doc. #165-2 and Doc. #257-1); and Sharpe Declaration (Doc. #174).

23.    For example and without limitation, because the pricing materials show the prices and volumes of fuel Dillon purchased from Suncor for a specific geographic location, a direct competitor would have the ability to estimate Dillon's retail sale prices and volumes in that geographic area.  *See* Sharpe Declaration, Doc. #174, Paragraph 12; Thiessen Supplemental Declaration, Doc. #253-14, Paragraph 17.  The competitor could then use this information in choosing the best places to establish new retail fuel locations to enhance its ability to compete with Dillon. *See Id.*

24.    As another example, knowing the contract prices that Dillon paid to Suncor would give a competitor an advantage in determining what Dillon's contract prices will be in the future.  *See* Sharpe Declaration (Doc. #174), Paragraphs 9-11, 13-

11

14; First Supp. Thiessen Declaration, Paragraphs 13-16.  Specifically a competitor would be able to set prices at locations competitive to Dillon knowing how Dillon would set its prices and how Dillon would respond to its competitor's prices.  Giannola Declaration (Doc. #257-1), Paragraph 5.

25.     For these and the other reasons articulated in the Sharpe, Giannola and Thiessen Declarations, Dillon has a compelling interest to protect its trade secrets from its competitors during the trial of this matter.  The Court should restrict access to Dillon's trade secrets pursuant to D.C.Colo. L. Civ. R. 7.2 as set forth below.

B.      *The Court Should Order Reasonable and Limited Measures to be Taken During the Trial to Protect Dillon's Trade Secrets.*

26.     During the trial, Dillon respectfully requests that the Court impose reasonable and limited measures to protect Dillon's trade secrets from its competitors. Specifically, Dillon respectfully requests that the Court require Western and Suncor to turn away computer screens displaying trial exhibits with Dillon's trade secrets from the public and not display any of Dillon's trade secrets on an overhead projector.

27.     Because Western is a direct competitor of Dillon's, Dillon respectfully requests that the Court order that Mr. Taraghi, Western, and Western's employees: (A) cannot view Dillon's trade secret information except in the Courtroom; (B) cannot remove Dillon's trade secret information or any notes or information derived therefrom from the Courtroom; and (C) cannot use Dillon's trade secret information except for purposes of this lawsuit and no other purpose.

28.     Subject to the limitations in Paragraphs 26-27 above and the redactions of any documents filed in the ECF/PACER system discussed below, Dillon does not object to the un-redacted deposition transcripts and trial exhibits being used during the trial such as not to impede the trial presentation.

C.     *Any Deposition Transcripts and Trial Exhibits Should Be Redacted Before Being Made Publically Available.*

29.     Dillon is currently unaware of any requirement to file the deposition transcripts and trial exhibits in the ECF/PACER system and requests that they not be filed therein if possible.  However, if Western or Suncor file any un-redacted deposition transcripts or trial exhibits with Dillon's trade secrets in the ECF/PACER system then Dillon respectfully requests that they be filed under Level 1 Restriction, with Dillon to redact the deposition transcripts or trial exhibits pursuant to the Court's Redaction Order and file them with the Court within thirty (30) days thereafter.

D.     *Trial Exhibits 158 and 167 Should Be Excluded.*

30.     The Joint Exhibit List (Doc. #266-3) appears to include five categories of documents related to Dillon.  *See* Exhibit A, Chart of Trial Exhibits[4].  The first four categories of trial exhibits include Dillon's trade secrets with information already addressed by the Court's Redaction Order.  However, the fifth category includes two of

---

[4] As noted above in Paragraph 13 of this motion, Dillon has been provided with some, but not all, of the trial exhibits.  Exhibit A includes an initial list of the trial exhibits that Dillon seeks to restrict.  Dillon respectfully requests permission to supplement or amend this chart, if necessary, upon receipt of all of the actual trial exhibits.

Dillon's marketing studies: Trial Exhibits 158 and 167.  *See* Exhibit A.  These marketing studies are highly sensitive trade secrets and were intended for Kroger's internal use only.  Further, they may not be necessary to Western and Suncor's trial presentation. *See* Doc. #266-1 (list of claims and defenses in Final Pretrial Order), pp. 3 and 5-6. Dillon respectfully requests that the Court require Western and Suncor to exclude these exhibits if possible.  *See, L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*, 2013 U.S. Dist. LEXIS 139219, 32-33 (D. Colo. Sept. 27, 2013) (Chief United States District Judge Marcia S. Krieger).  Alternatively Dillon respectfully requests that the Court determine that the marketing studies constitute Dillon's trade secrets that should be restricted from public access for the reasons stated in, *inter alia*, Ms. Giannola's Supplemental Declaration dated August 31, 2012 (Doc. #165-1), Paragraphs 18-23.[5]

> E. *Any Trial Transcripts Should Be Redacted Before Being Made Publically Available.*

31.     If the Court approves, then Dillon will undertake redacting the deposition transcripts and trial exhibits, if necessary, as discussed above.  However, after the trial, Dillon respectfully requests that the Court require Western and Suncor to initially redact the trial transcripts to share the expenses with Dillon.

32.     Accordingly, Dillon respectfully requests that if any trial transcripts are filed in the ECF/PACER system, then Western and Suncor file them under Level 1

---

[5] Dillon anticipates asking for the Court's permission to submit a supplemental declaration in support of this motion explaining in greater detail why these marketing studies are trade secrets.

Restriction, redact the trial transcripts pursuant to the Court's Redaction Order, obtain Dillon's approval of same, and thereafter file the redacted trial transcripts in the ECF/PACER system as publically available documents.  Dillon respectfully requests that these redactions to the trial transcripts be evenly split between Western and Suncor (50%-50%).

WHEREFORE, Dillon respectfully requests that the Court issue an order that:

i. Mr. Taraghi, Western, and Western's employees: (A) cannot view Dillon's trade secret information except in the Courtroom; (B) cannot remove Dillon's trade secret information or any notes or information derived therefrom from the Courtroom; and (C) cannot use Dillon's trade secret information except for purposes of this lawsuit and no other purpose;

ii. during the trial, for Western and Suncor to turn away computer screens displaying trial exhibits with Dillon's trade secrets from the public and not display any of Dillon's trade secrets on an overhead projector;

iii. subject to the limitations in subparagraphs (i) and (ii) above, the un-redacted deposition transcripts and trial exhibits be used during the trial such as not to impede the trial presentation;

iv. subject to subparagraphs (i)-(iii) above, that any deposition transcripts, trial exhibits (see Exhibit A), and trial transcripts including Dillon's trade secrets: (A) be restricted pursuant to D.C.Colo. L. Civ. R. 7.2; (B) not be

provided to anyone besides the Court, the parties to this lawsuit, and their counsel; and (C) not be filed in the ECF/PACER system if possible;

v.     if any un-redacted deposition transcripts, trial exhibits or trial transcripts including Dillon's trade secrets are filed in the ECF/PACER system then they be filed under Level 1 Restriction and thereafter redacted as provided in subparagraphs (A)-(C) below;

(A)     that Western and Suncor file any such un-redacted deposition transcripts and trial exhibits in the ECF/PACER system under Level 1 Restriction, with Dillon thereafter to redact the deposition transcripts and trial exhibits pursuant to the Court's Redaction Order and file them with the Court within thirty (30) days thereafter[6];

(B)     that Western and Suncor file any such un-redacted trial transcripts with the Court in the ECF/PACER system under Level 1 Restriction, redact the trial transcripts pursuant to the Court's Redaction Order, obtain Dillon's approval of

---

[6] Any such un-redacted deposition transcripts, trial exhibits, and trial transcripts would remain in the Court's ECF/PACER system under Level 1 Restriction for purposes of ensuring a complete and unrestricted record is available for any further court review.  *See* Court's Redaction Order (Doc. #251), p. 45.

same, and thereafter file the redacted trial transcripts in the

ECF/PACER system as publically available documents[7];

(C)     that the initial redactions to the trial transcripts referred to in

subparagraph (B) above be split evenly between Western

and Suncor (50%-50%);

vi.   Western and Suncor exclude Trial Exhibits 158 and 167 (Dillon's

marketing studies) if possible[8]; and

vii.   For such further relief as the Court deems appropriate.


Dated:  February 7, 2014.


s/ Michael R. McCormick
Christopher A. Taravella, #7790
Michael R. McCormick, #33682
Montgomery Little & Soran, P.C.
5445 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Phone Number: (303) 773-8100
Fax Number: (303) 220-0412
E-mail:  ctaravella@montgomerylittle.com
         mmccormick@montgomerylittle.com
*Attorney for Dillon Companies, Inc.*
*Interested Non-Party*

---

[7] See footnote 6 above.

[8] Alternatively, Dillon requests that the Court determine that Trial Exhibits 158 and 167 constitute Dillon's trade secrets such that they should be restricted from public access.

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2014 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
Bennington Johnson Biermann &
Craigmile, LLC
370 17th Street, Suite 3500
Denver, CO 80202

Philip Wayne Bledsoe
Joseph T. VanLandingham
Polsinelli Shughart LLP
1515 Wynkoop Street, Suite 600
Denver, CO  80202

Michael Korenblat
Suncor Energy Services, Inc.
717 17th Street, Suite 2900
Denver, CO  80202

William Leitzsey Monts, III
John Robert Robertson
Hogan Lovells US LLP-DC
555 13th Street NW
Columbia Square #1300
Washington DC 20004-1109

Anthony Shaheen
Keeya M. Jeffrey
Holland & Hart LLP-Denver
555 17th Street, Suite 3200
Denver, CO  80201


s/ *Michael R. McCormick*
Montgomery Little & Soran, P.C.