IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-01611-MSK-CBS

**WESTERN CONVENIENCE STORES, INC., and
WESTERN TRUCK ONE, LLC,**

      Plaintiffs/Counterclaim Defendants,

v.

**SUNCOR ENERGY (U.S.A.) INC.,**

      Defendant /Counterclaim Plaintiff,

**and**

**SUNCOR ENERGY (U.S.A.) INC.,**

      Third-party Plaintiff,

v.

**HOSSEIN TARAGHI, and
DEBRA LYNN TARAGHI,**

      Third-Party Defendants.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
WESTERN'S MOTION TO DISCLOSE DISCOVERY MATERIALS**
_____

      **THIS MATTER** comes before the Court pursuant to Western's Motion to Disclose

Discovery Materials **(# 269)**, Interested Party Dillon's response **(# 272)**, and Western's reply

**(#73)**. The Court heard oral argument on the motion on January 14, 2014 **(# 278)**, and the parties

subsequently filed additional documents **(# 281-290)** refining their positions on the matter. The Court is now prepared to formally rule on that motion.[1]

The Court briefly summarizes the nature of the dispute. Western and Dillon are competitors in the business of retail sales of gasoline and other motor fuels. At times relevant to this lawsuit, both made wholesale purchases of fuel from Suncor.

Western asserts that Suncor engaged in unlawful price discrimination in favor of Dillon, selling fuel to Dillon at more favorable rates than it offered the same product to Western. Suncor asserts a counterclaim against Western for sums owed for past fuel purchases, and brings a cross-claim against Western's principals, the Taraghis, on their guarantee of Western's obligation to Suncor.

During the discovery phase of this action, Western obtained information in both the possession of Suncor and Dillon concerning various matters, including the price and volume of Suncor's sales of fuel to Dillon, and the price and volume of Dillon's retail fuel sales from various locations. Dillon contended then and now that information about its wholesale purchases and retail sales of gasoline constituted trade secrets that should not be disclosed to Western or Dillon's other competitors.

During discovery, Dillon's interest was addressed by a protective order that entitled Western's counsel and retained experts to view Dillon's wholesale purchase and retail sales information, but forbade the recipients of the information from sharing it with Mr. Taraghi, because he controlled Western, one of Dillon's primary competitors.

---

[1] In doing so, the Court withdraws the February 5, 2014 text order **(# 291)** purporting to rule on the motion. That order failed to provide meaningful explanation of the Court's reasoning and intentions.

Now, with the case on the eve of trial, Western seeks relief from the protective order to share information, including aspects of Dillon's purchase and sales histories with Mr. Taraghi. Western offers two justifications for relief from the protective order: (i) the need to review certain information in preparation of Mr. Taraghi to testify as a percipient witness in this case; and (ii) the need for Mr. Taraghi, as both a principal of the Western (the Plaintiff) and a Cross-Defendant subject to potential individual liability as Western's guarantor, to be permitted to assess the evidence and evaluate the strength of Western's and Suncor's claims.

At a hearing on January 14, 2014, the parties discussed and offered some clarification as to the nature of the information that Western sought to share with Mr. Taraghi. As the Court understands that discussion, the parties ultimately agreed that the disclosure to Mr. Taraghi would be limited to certain specified documents and spreadsheets, each relating to a specific Dillon or Western store, covering a period from October 2009 to May 2011. The Court directed the parties to prepare a list of the particular stores they intended to rely on at the time of trial, such that the data as to those stores – and only those stores – would be the ones that were most representative of the parties' relative positions and would thus adequately apprise Mr. Taraghi of the respective merits of the parties' claims and defenses. Both sides supplied the Court with their list of representative stores, and both sides provided Dillon with their lists as well.

The Court has now had the opportunity to review the parties' submissions, as well as Dillon's response. Dillon has interposed a general objection to the Court lifting the disclosure restrictions imposed by the protective order on the basis that the Magistrate Judge already determined the need for protection of such information in entering it. The Court rejects Dillon's argument that proceedings before and rulings by the Magistrate Judge during discovery are binding with regard to the question currently before the Court. The protective order was

designed to cover much more information than is subject to this motion, the protective order was designed to apply during the discovery phase of the case, and it is subject to reconsideration at any time.

With the impending trial, the interests of the parties in preparation take on increasing importance. The request has been targeted at the evidence that will be presented at trial. Dillon has not argued that disclosure of the data relating to the specifically-identified stores at this time will cause it to suffer any particularly undue prejudice.

Accordingly, the Court finds that Mr. Taraghi's need to review the identified store data in preparation for trial outweighs Dillon's interest may have in preserving the confidentiality of such material. The protective order is hereby modified to permit Western to share the following information with Mr. Taraghi: the document types mutually-identified by the parties at the January 14, 2014 hearing, for dates between October 2009 and May 2011, with regard to the following stores[2]:

    KS 12
    KS 76
    KS 133
    LNJ 1
    LNJ 3
    LNJ 14

---

[2] The parties expressed some reluctance about publicly disclosing the particular comparator stores they intended to rely upon, citing matters of trial strategy and the perceived benefits of surprise over the other side. Needless to say, as desirable as "surprise" might be for an advocate, it is often the enemy of a fair, efficient and comprehensive trial. The broad discovery rules in the Federal Rules of Civil Procedure are largely designed to ensure that no party is surprised by their opponent's evidence or positions, and litigators are often taught that they are not truly prepared for trial until they are ready to present the other side's arguments as fully as their own side's. The Court has every confidence that all parties in this litigation are fully aware of the strongest evidence and arguments that support their position, as well as the strongest evidence and arguments of their opponents. Thus, the Court sees little harm in both parties being apprised of the comparator stores that will be the focus of trial, and any arguable harm that results from such disclosure is readily offset by the benefits to the judicial system of all parties making an efficient and focused trial presentation.

       LNJ 54
       LNJ 55
       City Market 451
       Loaf and Jug, 5091 S. Jellison Way, Littleton
       Loaf and Jug, 9028 S. Woodman Way, Parker
       Loaf N Jug, 200 Lashley St., Longmont
       Loaf N Jug, 150 E. Drake, Fort Collins
       Loaf N Jug, 1201 W. Pueblo Blvd, Pueblo
       King Soopers, 3250 Centennial Blvd., Colorado Springs
       King Soopers, 2255 Main St., Longmont
       King Soopers, 1611 Pace St., Longmont

The Court agrees with Dillon that some restrictions on the manner of disclosure are appropriate and will not hamper Mr. Taraghi's preparation for trial. Accordingly, the disclosure of the above-referenced information to Mr. Taraghi: (i) shall be undertaken only in the presence of counsel for Western; (ii) Mr. Taraghi may review the disclosed information, but may not make or retain copies of the information that is disclosed to him (and may not transcribe the information, in whole or part, via note taking); and (iii) Mr. Taraghi may make use of the information only for the purposes of trial preparation and evaluation of the claims and defenses put forward in this case, and may not use the information for any other purpose.

Western and Mr. Taraghi also request that the Court permit Mr. Taraghi to review fuel purchase contracts between Dillon and Suncor. The parties' initial briefing did not specifically address the issue of the disclosure of the contracts in any particular detail. The parties briefly alluded to these contracts during the motion hearing on January 14, 2014, but not with sufficient depth to fully apprise the Court of the nature of the dispute. As the Court understands it, each is a "one to two-page" document that "set[s] forth the price per gallon of fuel" sold by Suncor to Dillon. Each contract covers a period of one to two years, and Western believes that there are eight to nine contracts that it wishes to share with Mr. Taraghi. Western's counsel acknowledged that, to some extent, the price information contained in the contracts could be

derived based on a review of the price and volume material, albeit with some difficulty.  Dillon opposes the request to disclose the contents of the contracts to Mr. Taraghi, but did not specifically explain (in either its briefing, its supplemental response to Mr. Taraghi and Suncor's supplemental filings, or in oral argument on January 14) how disclosure of the contracts to Mr. Taraghi would harm Dillon.

The Court finds it appropriate to permit Western to discuss the contents of the contracts with Mr. Taraghi.  As the Court understands, the contracts established an overall formula for Dillon's purchases from Suncor – *e.g.* that for the year 2010, Dillon would purchase fuel at a specific rack rate (which fluctuated daily), less a discount of (hypothetically) 5.3 cents per gallon. The Court further understands that, because the rack rate fluctuated daily, deriving the discount figure that Dillon and Suncor agreed to would be non-trivial, even with knowledge of the prices paid per gallon by Dillon's stores (*i.e.* the individual store price and volume information discussed above).  Because the different discounts offered by Suncor to Dillon and Western are at the heart of Western's price discrimination claim, and because the price and volume information discussed above could – albeit with effort – reveal the same information contained in the contracts, depriving Western of the opportunity to share the contract information with Mr. Taraghi would merely obstruct (but not prevent) Mr. Taraghi from ascertaining the facts that are central to this dispute.  Accordingly, the Court finds that it is appropriate to permit Western to share with Mr. Taraghi the price and volume quantities shown in the contracts (but no other contractual terms), and only for contracts covering the period of 2009 to 2011 (the damage period in this action).  Mr. Taraghi's review of this information will be subject to the same restrictions enumerated above.

Finally, Western requests the ability to share with Mr. Taraghi the reports of various experts in this case. Once again, although the parties briefly discussed the experts' reports at the January 14 hearing, neither that discussion nor the parties' briefing sheds any useful light on the necessity of Mr. Taraghi reviewing the expert reports as part of his preparation for trial and evaluation of the case, nor on the prejudice that would befall Dillon if the reports were disclosed.

The Court finds Western's arguments for Mr. Taraghi's review of the expert reports to be less persuasive for several reasons. First, and perhaps most importantly, Western has taken the position that Mr. Taraghi himself possesses the same expertise as the experts themselves – that he will "advise the experts . . . as to whether they've got it right," and that "under [Rule] 702 . . . he qualifies as an expert" (although Western concedes he has not been disclosed as a Rule 702 expert). Since Mr. Taraghi will be permitted to review some of the same data that the experts reviewed (or, at the very least, the data that each side contends presents their position most favorably), his expertise will allow him to reach his own opinions as to the issues presented, making his need to review the opinions of other experts less essential for trial preparation and case evaluation. Second, the Court notes that the parties have agreed that the expert reports themselves will not be offered as evidence, and that the parties will rely instead on the experts' testimony. The Court understands that the expert reports are fairly comprehensive, and may delve into matters that exceed the limited factual and legal issues that will be presented at trial. Presumably, then, some of what is in the expert reports may not ultimately be produced at trial, making Mr. Taraghi's review of the <u>entirety</u>[3] of that material unnecessary. Accordingly, the Court denies the request that Western be permitted to share the expert reports with Mr. Taraghi.

---

[3] It may very well be that it is essential for Western to share with Mr. Taraghi certain specific conclusions reached by certain experts. However, the parties have not addressed the possibility of sharing with Mr. Taraghi only certain specified portions of the expert reports.

For the foregoing reasons, Western's Motion to Disclose Discovery Materials **(# 269)** is

**GRANTED IN PART** and **DENIED IN PART** on the terms set forth herein.

Dated this 13th day of February, 2014.
**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge

---

Western has not, for example, made a proffer of redacted expert reports that might satisfy this need, or proposed a summary of the experts' opinions that could be shared with Mr. Taraghi without unnecessarily disclosing other, more sensitive information contained in the reports. The Court does not speculate as to whether a narrower request to share only specific, targeted information from the expert reports with Mr. Taraghi might be appropriate.