**I**N **T**HE **U**NITED **S**TATES **D**ISTRICT **C**OURT
**F**OR **T**HE **D**ISTRICT **O**F **C**OLORADO

Civil Action No. 11-cv-01611-MSK-CBS

WESTERN CONVENIENCE STORES, INC., a Colorado corporation;
WESTERN TRUCK ONE, LLC, a Colorado limited liability company,

     Plaintiffs and Counterclaim Defendant,

vs.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

     Defendant and Counterclaimant

and

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation,

     Third-Party Plaintiff

vs.

HOSSEIN TARAGHI and DEBRA LYNN TARAGHI,

     Third-Party Defendants.

---

**DEFENDANT, COUNTERCLAIMANT AND THIRD-PARTY PLAINTIFF SUNCOR ENERGY (U.S.A.) INC.'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**

---

Pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, Local Rule 54.3 and this Court's judgment entered on September 8, 2014 (Dkt. #321), Suncor Energy (U.S.A.) Inc. ("Suncor") moves this Court for entry of an order awarding attorneys' fees and related non-taxable expenses against Western Convenience Stores, Inc. ("WCS") and Third-Party Defendants Hossein and Debra Lynn Taraghi (collectively, the "Taraghis") in the amount of

$4,869,644.56.[1] Suncor is entitled to such award pursuant to the Master Product Purchase and Sales Agreement ("MPPSA") with WCS and the Taraghis' Personal Guaranty.

## INTRODUCTION

After trial, on September 8, 2014, the Court entered judgment for Suncor for $5,223,042.37 against WCS for past due payments for gasoline and diesel purchased from Suncor in May 2011. It also entered judgment for Suncor for $3,000,000 against the Taraghis, who had personally guaranteed WCS's indebtedness to Suncor up to that amount (Dkt. #321). Under the MPPSA, Suncor is entitled to recover from WCS all of its "costs and expenses (including reasonable attorney's fees, court costs, and all other legal expenses) of collecting past due payments," *See* Trial Ex. 106, Ex. A. ¶ 20, attached as Exhibit 1. Similarly, under its Personal Guaranty with the Taraghis, Suncor, as "the prevailing party," is entitled to recover in

> any action or proceeding . . . commenced to enforce or interpret [the] Guaranty, . . . the reasonable out-of-pocket costs and expenses of maintaining such action or proceeding, including reasonable attorneys' fees and disbursements incurred before such action or proceeding is commenced, before trial, at trial, after trial and on appeal . . .

*See* Trial Ex. 255 ¶ 15, attached as Exhibit 2.

---

[1] Pursuant to Local Rule 54.3(b)(2), descriptions of the services rendered, the time spent, the hourly rate and the amount charged are attached as Exhibits to the Declaration of Michael Korenblat filed in support of this Motion. Mr. Korenblat also declares as to the reasonableness of the costs and fees.

Summaries of the relevant qualifications and experience of the individuals from Hogan Lovells for whose services reimbursement is sought are attached as Exhibits and/or explained in the Declaration of William Monts filed in support of this Motion. Summaries of the relevant qualifications and experience of the individuals from Holland & Hart and all others for whose services reimbursement is sought are attached as Exhibits and/or explained in the Declaration of Anthony Shaheen filed in support of this Motion.

Suncor is not seeking any attorneys' fees in preparing for, responding to and participating in an evidentiary hearing on Plaintiffs' motion for a preliminary injunction related to certain state-law contract and tort claims or for successfully defending against Western Truck One's claims.

To be sure, the $4.8 million dollars in fees and costs that Suncor is seeking is a lot of money. But antitrust cases are, by their very nature, expensive to defend because they are complicated and the stakes are high. Mr. Taraghi and the two law firms he hired made the deliberate choice to assert and hide behind an antitrust claim to avoid paying Suncor. That was their tactical decision.

WCS and the Taraghis have never disputed that WCS bought more than $3.7 million worth of gasoline and diesel fuel from Suncor in May 2011 and did not pay for it. *See* Opinion and Order Granting in Part and Denying in Part Motions for Summary Judgment (Dkt. #251) ("SJ Order"), at 35-38. In the very first hearing in this case, Mr. Taraghi, WCS's principal, admitted to Magistrate Shaffer that WCS was obligated to pay for fuel that it purchased from Suncor but he directed WCS's bank to reject Suncor's pending ACH transactions "[b]ecause [he] felt they owe me money…they owe me more money than I owe them." *See* Motions Hearing, Sept. 28, 2011, attached as Exhibit 3, at 58:4-59:3; 60:22-62:14.

Mr. Taraghi is a sophisticated, successful businessman with more than 30 years' experience in the retail gasoline and convenience store business. He and his attorneys elected to ignore well-settled law that an alleged violation of the Robinson-Patman Act does not relieve the purchaser of the obligation to pay for the goods purchased. *See Bruce's Juices v. American Can Co.*, 330 U.S. 743 (1947). Instead, they fashioned a defense linking WCS's Robinson-Patman Act claim to Suncor's claim for money due and owing. Thus, by their deliberate choice and tactics, WCS and the Taraghis exposed themselves to liability for costs, fees and non-taxable expenses. Exhibit 1, Ex. A ¶ 20 (WCS liable only for costs, fees and expenses incurred in collecting past due payments); Exhibit 2, ¶ 15 (cost, fees and expenses available only to prevailing party for cost of maintaining an action to interpret or enforce the Personal Guaranty).

*WCS could have paid for the gasoline and diesel fuel and then sued Suncor, thereby avoiding any liability for attorneys' fees and expenses. It did not.* Instead, WCS and the Taraghis alleged Suncor had engaged in unlawful price discrimination in violation of section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a), and the Colorado Unfair Trade Practices Act, C.R.S. § 6-2-108. In response to Suncor's counterclaim and third party claim, WCS asserted as its sixth affirmative defense and the Taraghis as their seventh defense, that "Defendant's Counterclaim is subject in whole or in part to setoff in the amount of damages suffered by Plaintiff by reason of Defendant's unlawful price discrimination and Defendant's repudiation and breach of the parties' contracts." Plaintiff Western Convenience Stores, Inc.'s Reply to Defendant's Counterclaim (Dkt. #36); Answer of Third Party Defendants to Third Party Complaint (Dkt. #44). That alleged unlawful conduct, they contended, breached Suncor's obligation under the MPPSA to comply with all applicable "laws, orders, rules, regulations, and ordinances during the terms of this Agreement," Exhibit 1, Ex. A ¶ 7, and thus relieved WCS from any obligation to make payment for the fuel purchases.

Because of that linkage, the Court denied Suncor's motion for summary judgment on its counterclaim and third-party claim, ruling that "to the extent WCS can show that Suncor did indeed engage in unlawful price discrimination, it may be that such conduct violated Paragraph 7 of the Master Agreement." SJ Order at 36. The Court also ruled that the materiality of any such breach "is appropriate for consideration by the factfinder, based on a complete record regarding the parties' expectations at the time of contract formation and other factors." *Id*. at 37.

Accordingly, as a result of WCS's and the Taraghi's actions in refusing to pay, the defenses they asserted and the Court's ruling denying Suncor's motion for summary judgment,

Suncor had to defeat WCS's Robinson-Patman and Colorado Unfair Trade Practices claims in order to be able to collect on the money due and owing from WCS and the Taraghis.

## ARGUMENT

### A. Suncor Is Entitled to Attorneys' Fees and Related Non-Taxable Costs Under the MPPSA and Personal Guaranty.

Suncor is entitled to all reasonable attorneys' fees and non-taxable related expenses incurred in collecting the amounts due from WCS and the Taraghis. Contract provisions shifting fees and other costs and expenses to prevailing parties are enforceable as costs when the fee- and expense-shifting provision is not the subject of the dispute between the parties and the contract is proved to exist. *Butler v. Lembeck*, 182 P.3d 1185, 1189 (Colo. App. 2007). Here, there was no dispute about the validity or enforceability of the MPPSA or the Personal Guaranty. *See* Amended Complaint ¶¶ 6, 8, 40-46; SJ Order 35-38. Likewise, the fee- and expense-shifting provisions in both the MPPSA and Personal Guaranty were not disputed at trial. The focus of the trial was largely on the price discrimination claims.

The fee- and expense-shifting provisions of both the MPPSA and the Personal Guaranty entitle Suncor to recovery of attorneys' fees and related non-taxable expenses against both WCS and the Taraghis. The MPPSA states that "[WCS] shall pay all of Suncor's costs and expenses (*including reasonable attorney's fees, court costs, and all other legal expenses*) of collecting past due payments." Exhibit 1, Ex. A ¶ 20 (emphasis added). Similarly, the Personal Guaranty obligates the Taraghis to pay "the reasonable out-of-pocket costs and expenses of maintaining such action or proceeding, including reasonable attorneys' fees and disbursements incurred." Exhibit 2, ¶ 15.

Much of the testimony at trial addressed whether the Kroger entities, the allegedly favored buyer, used any price differential to lower its prices and take sales away from WCS or

otherwise cause WCS to lose profits. That subject matter requires expert testimony. Both WCS and Suncor called expert witnesses during their respective affirmative trial cases. WCS called four separate experts at trial: two economists, a statistician and one industry expert.

Suncor retained economists to rebut Plaintiffs' experts and to assist counsel in preparing and trying the case, with one (Dr. Griffin) testifying at trial and the other (Dr. Schulman) doing much of the work at a lower rate. Declaration of Michael Korenblat, filed separately, ¶9. Collectively, Suncor's experts performed econometric analysis, reviewed and critiqued the Plaintiffs' expert reports and models, prepared rebuttal reports and demonstrated, among other matters, that Kroger did not "pass through" the price differential it received. Suncor's costs for its expert witness and consultants are included within the plain language of both the MPPSA and the Personal Guaranty. Exhibit 1, Ex. A ¶ 20; Exhibit 2, ¶ 15. *See Butler*, 182 P.3d at 1189 ("We interpret fee-shifting provisions in a contract in a common sense manner.") (citing *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001)).

### B. Suncor's Request for Costs and Fees Is Reasonable.

The costs and fees for which Suncor seeks reimbursement are reasonable when measured against the complexity of the issues and the potential exposure if Suncor had lost. Declaration of Michael Korenblat, ¶¶5-8 and 16. When first brought, this case involved nearly all of Suncor's unbranded and branded gasoline customers. *Id.,* ¶10. Eventually, the case was pared down to only unbranded gasoline and the Kroger family as the favored buyer. *Id.* But that took time and was expensive.

The fee amounts for which Suncor seeks recovery also reflect time reasonably spent by counsel in drafting pleadings and motions, responding to Plaintiffs' discovery, drafting discovery to Plaintiffs, preparing for, taking and defending depositions, working with expert witnesses and

preparing for and trying this case. *Id. ¶*15. E-discovery was extensive and expensive, even without the complications that Kroger brought to the case. *Id., ¶¶*11-12.

Although Suncor seeks fees, costs and disbursements incurred in defending the price discrimination claims, those fees, costs and disbursements were, as discussed above, necessarily incurred in obtaining judgment on its counterclaim and third-party claim. In order to prevail on its counterclaim and third-party claim, Suncor had to *first* prevail on the price discrimination claims. Therefore, the costs, fees and non-taxable expenses that Suncor incurred in doing so are properly treated as costs of "collecting past due payments" under the MPPSA, Exhibit 1, Ex. A ¶ 20, and the "costs and expenses" of maintaining an action to enforce the Personal Guaranty. Exhibit 2, ¶ 15.

Finally, although the Taraghis' liability for WCS's indebtedness is capped at $3 million under the Personal Guaranty, there is no cap on their obligation to pay costs, fees and expenses Suncor incurred in any action. Indeed, the Personal Guaranty agreement makes that clear in three respects. *First*, the attorneys' fees provision is mutual and runs in favor of a "prevailing party." Exhibit 1, ¶ 15. Thus, by its express terms, the attorneys' fee provision is an independent obligation and applies to both parties. *Second*, the cap in the Personal Guaranty applies only to the Taraghis' liability for any unpaid obligations of *WCS*. *Id*. ¶ 1(a). The attorneys' fees provision is a separate covenant, applies only to parties to the Personal Guaranty and imposes distinct liabilities on those parties. *Id*. ¶ 15. *Third*, the attorneys' fee provision makes the losing party responsible for "the reasonable out-of-pocket costs and expenses of maintaining" an action to interpret or enforce the Personal Guaranty, whether those costs are "incurred before such action or proceeding is commenced, before trial, at trial, after trial and on appeal." *Id*. In other words, the attorneys' fees provision contemplates payment for costs and

expenses that are independent of any obligations of WCS that are the subject of the guaranty. Because Suncor incurred the same costs, fees and expenses in enforcing that Personal Guaranty that it incurred in obtaining judgment under the MPPSA, those amounts are fully recoverable from the Taraghis.

## CONCLUSION

For the foregoing reasons, Suncor respectfully requests that the Court enter an award of costs, attorneys' fees and non-taxable expenses against WCS and the Taraghis in the amount of $4,869,644.56.

Dated:  September 22, 2014

Respectfully submitted,

*s/ Anthony J. Shaheen*
HOLLAND & HART LLP
Post Office Box 8749
Denver, CO  80201-8749
Telephone: 303-295-8054
Fax: 303-291-9126
E-Mail:  ajshaheen@hollandhart.com


*s/ William L. Monts III*
J. Robert Robertson
William L. Monts III
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C.  20004-1109
Telephone:  202-637-5600
Fax:  202-637-5910
E-Mail:  robby.robertson@hoganlovells.com
             william.monts@hoganlovells.com

*Attorneys for Defendant, Counterclaimant and Third-Party Plaintiff Suncor Energy (U.S.A.) Inc.*

- 9 -

## CERTIFICATE OF SERVICE

   I hereby certify that on September 22, 2014, I served the **DEFENDANT, COUNTERCLAIMANT AND THIRD-PARTY PLAINTIFF SUNCOR ENERGY'S MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE EXPENSES**, by causing the foregoing to be presented to the Clerk of Court for filing and uploading to the CM/ECF system.

Kenneth R. Bennington
Kathleen E. Craigmile
Adam F. Aldrich
BENNINGTON JOHNSON BIERMANN & CRAIGMILE, LLC
370 17th Street, Suite 3500
Denver, CO 80202
krb@benningtonjohnson.com
kec@benningtonjohnson.com
afa@benningtonjohnson.com

Philip W. Bledsoe
POLSINELLI SHUGHART, P.C.
1515 Wynkoop Street, Suite 600
Denver, CO 80202
pbledsoe@polsinelli.com

                 *s/Anthony Shaheen*

7144444_1